**Exhibit D**

Case 1:24-cv-00903-NRM-JRC    Document 13-6    Filed 04/08/24    Page 1 of 5 PageID #: 205

# NYCB INVESTOR ALERT: Robbins Geller Rudman & Dowd LLP Files Class Action Lawsuit Against New York Community Bancorp, Inc. and Announces Opportunity for Investors with Substantial Losses to Lead the New York Community Bancorp Class Action Lawsuit

**Robbins Geller Rudman & Dowd LLP**

---

NEWS PROVIDED BY
**Robbins Geller Rudman & Dowd LLP** →
13 Feb, 2024, 19:37 ET

---

SAN DIEGO, Feb. 13, 2024 /PRNewswire/ -- **Robbins Geller Rudman & Dowd LLP** announces that purchasers of New York Community Bancorp, Inc. (NYSE: **NYCB**) securities between March 1, 2023 and February 5, 2024, inclusive (the "Class Period"), have until April 8, 2024 to seek appointment as lead plaintiff of the *New York Community Bancorp* class action lawsuit. Captioned *Miskey v. New York Community Bancorp, Inc.*, No. 24-cv-01118 (E.D.N.Y.), the *New York Community Bancorp* class action lawsuit charges New York Community Bancorp and certain of New York Community Bancorp's top executives with violations of the Securities Exchange Act of 1934. A previously filed complaint, captioned *Lemm v. New York Community Bancorp, Inc.*, No. 24-cv-00903, is also pending in the Eastern District of New York.

**If you suffered substantial losses and wish to serve as lead plaintiff of the *New York Community Bancorp* class action lawsuit, please provide your information here:**

**https://www.rgrdlaw.com/cases-new-york-community-bancorp-inc-class-action-lawsuit-nycb.html**

**You can also contact attorney J.C. Sanchez of Robbins Geller by calling 800/449-4900 or via e-mail at jsanchez@rgrdlaw.com.**

**CASE ALLEGATIONS**: On March 19, 2023, New York Community Bancorp acquired $38.4 billion in assets from Signature Bridge Bank, N.A.

The *New York Community Bancorp* class action lawsuit alleges that defendants throughout the Class Period made false and/or misleading statements and/or failed to disclose that: (i) the Signature Bank acquisition would not be immediately accretive to New York Community Bancorp because it caused New York Community Bancorp to be required to comply with materially enhanced prudential standards, including, among other things, risk-based and leverage capital requirements, and liquidity standards, and required that New York Community Bancorp build capital, reinforce its balance sheet and strengthen its risk management processes; (ii) New York Community Bancorp failed to comply with the materially enhanced prudential standards; (iii) New York Community Bancorp overstated the quality of its commercial office loan assets; (iv) New York Community Bancorp was experiencing higher net charge-offs and deterioration in its commercial office portfolio than represented; (v)  New York Community Bancorp was reasonably likely to incur higher loan losses because it was experiencing higher net charge-offs and deterioration in its commercial office portfolio; (vi) New York Community Bancorp was reasonably likely to be forced to increase its allowance for credit losses due to its status as Category IV bank; (vii) New York Community Bancorp's loan loss provisions were understated so it overstated quarterly earnings and/or understated quarterly losses; and (viii) New York Community Bancorp failed to have adequate internal risk or disclosure controls and procedures.

On January 31, 2024, New York Community Bancorp disclosed that it had recorded a $552 million provision for loan losses, up significantly from the $62 million reported just one quarter earlier, and that as a result, New York Community Bancorp had incurred a 4Q23 loss of $252

million, or $0.36 per share, down significantly from a profit of $0.27 per share Wall Street consensus estimate.  New York Community Bancorp also disclosed it would cut its quarterly dividend from $0.17 to $0.05 per share.  On this news, the price of New York Community Bancorp stock fell nearly 38%.

Then, on February 5, 2024, *Bloomberg* reported, citing "people with direct knowledge of the matter," that it had been "mounting pressure from a top US watchdog" that "led to" New York Community Bancorp's "surprise decision to slash its dividend and stockpile cash in case commercial real estate loans [went] bad."  According to the *Bloomberg* article, "[t]he drastic financial moves . . . followed behind-the-scenes conversations with officials from the Office of the Comptroller of the Currency, the people said, asking not to be identified describing the confidential discussions."  On this news, the price of New York Community Bancorp stock fell more than 22%.

The plaintiff is represented by Robbins Geller, which has **extensive experience** in prosecuting investor class actions including actions involving financial fraud.  You can view a copy of the complaint **by clicking here.**

**THE LEAD PLAINTIFF PROCESS**: The Private Securities Litigation Reform Act of 1995 permits any investor who purchased New York Community Bancorp securities during the Class Period to seek appointment as lead plaintiff in the *New York Community Bancorp* class action lawsuit.  A lead plaintiff is generally the movant with the greatest financial interest in the relief sought by the putative class who is also typical and adequate of the putative class.  A lead plaintiff acts on behalf of all other class members in directing the *New York Community Bancorp* class action lawsuit.  The lead plaintiff can select a law firm of its choice to litigate the *New York Community Bancorp* class action lawsuit.  An investor's ability to share in any potential future recovery is not dependent upon serving as lead plaintiff of the *New York Community Bancorp* class action lawsuit.

**ABOUT ROBBINS GELLER**: Robbins Geller is one of the world's leading complex class action firms representing plaintiffs in securities fraud cases.  The Firm is ranked #1 on the most recent ISS Securities Class Action Services Top 50 Report for recovering more than $1.75 billion for investors in 2022 – the third year in a row Robbins Geller tops the list.  And in those three years alone, Robbins Geller recovered nearly $5.3 billion for investors, more than double the amount

recovered by any other plaintiffs' firm. With 200 lawyers in 10 offices, Robbins Geller is one of the largest plaintiffs' firms in the world and the Firm's attorneys have obtained many of the largest securities class action recoveries in history, including the largest securities class action recovery ever – $7.2 billion – in *In re Enron Corp. Sec. Litig.* Please visit the following page for more information:

**https://www.rgrdlaw.com/services-litigation-securities-fraud.html**

Attorney advertising.

Past results do not guarantee future outcomes.

Services may be performed by attorneys in any of our offices.

Contact:

Robbins Geller Rudman & Dowd LLP

655 W. Broadway, Suite 1900, San Diego, CA  92101

J.C. Sanchez, 800-449-4900

**jsanchez@rgrdlaw.com**

SOURCE Robbins Geller Rudman & Dowd LLP