## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| WALTER EDWARD LEMM, JR., Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>    v.<br><br>NEW YORK COMMINUTY BANCORP, INC., THOMAS R. CANGEMI and JOHN J. PINTO,<br><br>    Defendants. | Case No. 1:24-cv-00903-NRM-JRC<br><br>Served on April 8, 2024 |
| DALE MISKEY, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>NEW YORK COMMINUTY BANCORP, INC., THOMAS ROBERT CANGEMI and JOHN J. PINTO,<br><br>    Defendants. | Case No. 1:24-cv-01118-NRM-JRC<br><br>Served on April 8, 2024 |

**SAND HOLLOW MANAGEMENT, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR: (1) CONSOLIDATION OF THE RELATED ACTIONS; (2) APPOINTMENT AS LEAD PLAINTIFF; AND (3) APPROVAL OF LEAD COUNSEL**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND .................................................................................................... 3

ARGUMENT .......................................................................................................................... 7

I.      THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES ................... 7

II.     SAND HOLLOW MANAGEMENT IS ENTITLED TO BE APPOINTED LEAD
        PLAINTIFF FOR THE CLASS ........................................................................................ 8

        A.     The PSLRA Standard For Appointing Lead Plaintiff ............................................ 8

        B.     Under the PSLRA, Sand Hollow Management Should be Appointed Lead
               Plaintiff .................................................................................................................. 9

               1.     Sand Hollow Management Filed a Timely Motion .................................... 9

               2.     Sand Hollow Management Has the Largest Financial Interest in the
                      Relief Sought by the Class ........................................................................ 10

               3.     Sand Hollow Management Meets Rule 23's Typicality and
                      Adequacy Requirements ........................................................................... 11

III.    SAND HOLLOW MANAGEMENT'S SELECTION OF THE FARUQI FIRM
        AS LEAD COUNSEL SHOULD BE APPROVED ........................................................ 14

CONCLUSION....................................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Baughman v. Pall Corp.*,
   250 F.R.D. 121 (E.D.N.Y. 2008) ...................................................................................9, 10, 11

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
   252 F.R.D. 188 (S.D.N.Y. 2008) ...................................................................................7, 11, 13

*Faris v. Longtop Fin. Techs. Ltd.*,
   No. 11 Civ. 3658(SAS), 2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011) ......................................9

*Ferreria v. Funko, Inc.*,
   No. 2:20-cv-02319-VAP-PJWx, 2020 WL 3246328 (C.D. Cal. June 11, 2020).......................1

*Foley v. Transocean Ltd.*,
   272 F.R.D. 126 (S.D.N.Y. 2011) .............................................................................................8

*In re Fuwei Films Sec. Litig.*,
   247 F.R.D. 432 (S.D.N.Y. 2008) ...................................................................................9, 10, 11

*In re GE Sec. Litig.*,
   No. 09 Civ. 1951(DC), 2009 WL 2259502 (S.D.N.Y. July 29, 2009) ....................7, 10, 11, 12

*In re Gentiva Sec. Litig.*,
   281 F.R.D. 108 (E.D.N.Y. 2012) .............................................................................................1

*Kaplan v. Gelfond*,
   240 F.R.D. 88 (S.D.N.Y. 2007) ...........................................................................................7, 8

*Kokkinis v. Aegean Marine Petroleum Network, Inc.*,
   No. 11 Civ. 0917(BSJ)(JCF), 2011 WL 2078010 (S.D.N.Y. May 19, 2011).........................13

*Levine v. AtriCure, Inc.*,
   508 F. Supp. 2d 268 (S.D.N.Y. 2007)......................................................................................9

*Malcolm v. Nat'l Gypsum Co.*,
   995 F.2d 346 (2d Cir. 1993)....................................................................................................7

*In re Olsten Corp. Sec. Litig.*,
   3 F. Supp. 2d 286 (E.D.N.Y. 1998) .......................................................................................10

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
   275 F.R.D. 187 (S.D.N.Y. 2011) ...........................................................................................12

*Pompano Beach Police & Firefighters' Ret. Sys. v. Comtech Telecomms. Corp.*,
     No. CV-09-3007 (SJF)(AKT), 2010 WL 3909331 (E.D.N.Y. Sept. 29, 2010).....................11

*Quan v. Advanced Battery Techs., Inc.*,
     No. 11 Civ. 2279(CM), 2011 WL 4343802 (S.D.N.Y. Sept. 9, 2011) ....................................12

*Reitan v. China Mobile Games & Entm't Grp., Ltd.*,
     68 F. Supp. 3d 390 (S.D.N.Y. 2014)..................................................................................14

*Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*,
     95 F. Supp. 3d 607 (S.D.N.Y. 2015).............................................................................10, 11

*In re Tronox, Inc. Sec. Litig.*,
     262 F.R.D. 338 (S.D.N.Y. 2009) ..................................................................................7, 9

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
     780 F.3d 597 (4th Cir. 2015) ..........................................................................................15

**Statutes**

15 U.S.C. § 78u-4(a) ............................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 6(a)(1)(C) .........................................................................................10

Fed. R. Civ. P.  23(a)(4).............................................................................................12

Fed. R. Civ. P. 42(a) ................................................................................................7

Anne Cullen,
     More Judges Are Demanding Diversity Among Class Counsel,
     Law360 (July 16, 2020) .........................................................................................17

Ralph Chapoco,
     Calls for Lawyer Diversity Spread to Complex Class Litigation, Bloomberg
     Law (July 30, 2020) ...............................................................................................17

Sand Hollow Management, LLC ("Sand Hollow Management") respectfully submits this memorandum of law pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by Private Securities Litigation Reform Act of 1995 ("PSLRA"), in support of its motion for the entry of an order: (1) consolidating the above-captioned, related actions ("Actions");[1] (2) appointing Sand Hollow Management as Lead Plaintiff; and (3) approving Sand Hollow Management's selection of the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel.[2]

## PRELIMINARY STATEMENT

The Actions presently pending before this Court are brought on behalf of all purchasers of New York Community Bancorp, Inc. ("NYCB" or the "Company," together with Thomas Robert Cangemi and John J. Pinto, the "Defendants") securities between March 1, 2023 and February 5, 2024, inclusive (the "Class Period"), which seeks to recover damages caused by Defendants' violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder.[3]

---

[1] The following two Actions are pending before this Court: (1) *Lemm v. New York Community Bancorp, Inc., et al.*, No. 1:24-cv-00903-NRM-JRC ("*Lemm*"), which was filed on February 6, 2024; and (2) *Miskey v. New York Community Bancorp, Inc., et al.*, No. 1:24-cv-01118-NRM-JRC ("*Miskey*"), which was filed on February 13, 2024. The *Lemm* Action is brought on behalf of "persons and entities that purchased or otherwise acquired NYCB securities between March 1, 2023 and January 30, 2024, inclusive . . . . pursu[ing] claims against the Defendants under the [Exchange Act]." *Lemm*, Class Action Complaint for Violations of the Federal Securities Laws ¶ 1, ECF No. 1 ("*Lemm* Complaint"). The *Miskey* Action is brought on behalf of "all purchasers of NYCB securities between March 1, 2023 and February 5, 2024, inclusive . . . . pursu[ing] remedies against NYCB and certain of the Company's senior executives under §§10(b) and 20(a) of the [Exchange Act] and Rule 10b-5 promulgated thereunder." *Miskey*, Complaint for Violations of the Federal Securities Laws ¶ 1, ECF No. 1 ("*Miskey* Complaint").

[2] Unless stated otherwise, the following conventions apply: (1) all citations, internal quotation marks and footnotes are omitted; (2) all emphases are added; and (3) all "Ex. _" references are to the exhibits attached to the Declaration of James M. Wilson, Jr. filed herewith.

[3] For the purposes of "determining a lead plaintiff . . . the longer, most inclusive class period . . . is proper[.]" *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012); *see Ferreria v. Funko, Inc.*, No. 2:20-cv-02319-VAP-PJWx, 2020 WL 3246328, at *2 n.2 (C.D. Cal. June 11, 2020) (quoting *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 624-25 (E.D. Wis.

As an initial matter, the Court must decide whether to consolidate the Actions. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). Pursuant to Rule 42(a)(2) of the Federal Rules of Civil Procedure, the Court may consolidate the actions before it that involve a common question of law or fact. Fed. R. Civ. P. 42(a)(2). The Actions may be consolidated as they allege violations of §§ 10(b) and 20(a) of the Exchange Act and Securities and Exchange Commission ("SEC") Rule 10b-5, promulgated thereunder. The Actions also allege claims involving substantially similar facts. As the Actions raise common issues of fact and law, and consolidation will be more efficient for the Court and the parties, the Actions should be consolidated.

With respect to the appointment of a lead plaintiff to oversee the Action, Congress established a presumption in the PSLRA that requires the Court to appoint the "most adequate plaintiff" as the lead plaintiff for the Action. 15 U.S.C. § 78u-4(a)(3)(B)(i). The "most adequate plaintiff" is the person who has the "largest financial interest in the relief" and who also satisfies Rule 23's typicality and adequacy requirements for class representatives. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

With losses of $1,446,642.62, Sand Hollow Management, to the best of counsel's knowledge, has the largest financial interest in the litigation of any movant. Sand Hollow Management also satisfies Rule 23's typicality and adequacy requirements. Sand Hollow Management's claims are typical of the Class's claims because it suffered losses on its NYCB investment as a result of Defendants' false and misleading statements. Further, Sand Hollow Management has no conflict with the Class and will adequately protect the Class's interests given its significant stake in the litigation and its conduct to date in prosecuting the litigation,

---

2009) (finding the "use [of] the most inclusive class period" proper for the purpose of a lead plaintiff motion)). Accordingly, the class period in the *Miskey* Complaint governs the appointment of a Lead Plaintiff for determining which movant possesses the largest financial interest.

including its submission of the requisite certification and selection of experienced class counsel. Accordingly, Sand Hollow Management is the presumptive Lead Plaintiff.

Lastly, if appointed Lead Plaintiff, Sand Hollow Management is entitled to select, subject to the Court's approval, lead counsel to represent the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Sand Hollow Management has engaged the Faruqi Firm for this purpose. The Faruqi Firm is an appropriate selection to serve as Lead Counsel because it is a highly experienced firm with substantial securities class action experience.

For the reasons summarized above and those explained more fully below, Sand Hollow Management's motion should be granted in its entirety.

### FACTUAL BACKGROUND[4]

NYCB is the bank holding company for Flagstar Bank, one of the largest regional banks in the United States. ¶ 18. The Company is headquartered in Hicksville, New York, and operates approximately 420 branches around the nation, including numerous branches in the Northeast and Midwest. *Id.* NYCB common stock was listed and traded on the New York Stock Exchange ("NYSE"), an efficient market, throughout the Class Period under the ticker symbol NYCB. *Id.* As of November 3, 2023, there were more than 722 million shares of NYCB common stock issued and outstanding. *Id.* NYCB also lists its preferred shares on the NYSE under the ticker symbols NYCB-PU and NYCB-PA. *Id.*

NYCB is one of the largest regional banks in the nation. ¶ 2. NYCB was founded in 1859 and became a public company in 1993. *Id.* Since that time, the Company has grown organically and through a series of mergers and acquisitions. *Id.* For most of its history, NYCB focused

---

[4]      Unless otherwise noted, references to "¶ __" are to paragraphs in the *Miskey* Complaint.  The *Lemm* Complaint contains substantially similar information.

primarily on conservative and traditional types of lending products and banking relationships, such as residential mortgages. *Id.*

During 2022, NYCB embarked on a plan to transform its business by expanding into commercial loan products. ¶ 3. NYCB rapidly expanded its operations and assets in an extremely short period first through its acquisition of Flagstar Bancorp, Inc. ("Flagstar") in late 2022 and then through its acquisition of a substantial amount of the assets of Signature Bridge Bank, N.A. ("Signature Bank") in early 2023. *Id.* NYCB nearly doubled its total assets from $63 billion to $123.8 billion over the short span of approximately four months as a result of these two transactions. *Id.*

Unbeknownst to investors, throughout the Class Period, Defendants made materially false and misleading statements about NYCB's business, financial condition and the impact of the Flagstar and Signature Bank acquisitions. ¶ 4. For example, on March 1, 2023, the first day of the Class Period, NYCB issued its fiscal year 2022 Annual Financial Report falsely claiming, as it would throughout the Class Period, that it had "strong" asset quality in its commercial lending facility and that "[b]ased upon all relevant and available information...management believes that the allowance for losses on loans was appropriate..." *Id.* When discussing the Signature Bank acquisition, Defendants misrepresented that it would be immediately accretive to the Company and failed to warn investors of the detrimental impact the acquisition would have on its balance sheet and financial condition. *Id.*

Importantly, NYCB's growth in total assets to over $100 billion subjected NYCB to, among other things, stricter risk-based and leverage capital requirements and liquidity standards. ¶ 5. Defendants failed to disclose that NYCB was required – but failed – to build up capital, reinforce its balance sheet, and strengthen its risk management processes. *Id.* Defendants falsely

assured investors that the Company had adequate internal risk and disclosure controls in place for NYCB's business and rapid growth. *Id.*

Defendants' materially false and misleading statements caused an artificial inflation in the price of NYCB common stock – reaching a Class Period high of more than $14 a share on July 28, 2023. ¶ 6.

On January 31, 2024, in connection with reporting its fourth quarter and fiscal year 2023 ("4Q23") financial results, NYCB disclosed that it had recorded a $552 million provision for loan losses, up significantly from the $62 million reported just one quarter earlier, and that as a result, the Company had incurred a 4Q23 loss of $252 million, or $0.36 per share, far below the profit of $0.27 per share expected by analysts based on the Company's statements. ¶ 7.

The Company also disclosed that NYCB had belatedly adjusted to its new capital and regulatory requirements as a result of the Signature Bank acquisition, stating that the Company's total assets had surpassed $100 billion, thereby "subjecting [it] to enhanced prudential standards, including risk-based and leverage capital requirements, liquidity standards" and more, and that as a result, it had "[taken] decisive actions to build capital, reinforce [its] balance sheet, strengthen [its] risk management processes, and better align [itself] with the relevant bank peers." NYCB also revealed it would slash the Company's historically stable quarterly dividend from $0.17 per share to just $0.05 per share. ¶ 8.

On this news, the market price of NYCB common stock declined precipitously, falling approximately $4 per share, or 39%, to close at $6.47 per share on January 31, 2024, on unusually high trading volume of more than 128.6 million shares traded, or 17 times its average trading volume over the preceding ten trading days. ¶ 9.

After the close of trading on January 31, 2024, Moody's Investors Service announced that it had placed all of NYCB's corporate debt ratings, including the bank's long-term issuer rating of Baa3 — the lowest investment-grade level — on review for possible downgrade to junk status, citing the Company's surprising 4Q23 loss and slashing of its dividend.  On this news, the market price of NYCB common stock closed down another $0.82 per share on nearly 126 million shares traded on February 1, 2024. ¶ 10.

Then, on February 5, 2024, after the close of trading, Bloomberg reported, citing "people with direct knowledge of the matter," that it had been "mounting pressure from a top US watchdog" that had "led to [NYCB's] surprise decision to slash its dividend and stockpile cash in case commercial real estate loans [went] bad."  According to Bloomberg, "[t]he drastic financial moves...followed behind-the-scenes conversations with officials from the Office of the Comptroller of the Currency [the "OCC"] ..."  Bloomberg also revealed that NYCB's chief risk officer and chief audit executive left the Company in the fourth quarter of 2023. ¶ 11.

On this news, the market price of NYCB common stock again declined precipitously, falling another $1.20 per share, or 22%, to close at $4.20 per share on February 6, 2024, its lowest level since 1997, on unusually high trading volume of more than 147 million shares traded. ¶ 12.

Finally, on February 6, 2024, after the close of trading, Moody's Investor Service slashed the Company's corporate debt rating to junk status. NYCB also announced that it had further shaken up its executive leadership, naming Alessandro DiNello, the former head of Flagstar, as executive chairman.  As reported by the Wall Street Journal, "[Dinello] said he was coming in to right the ship." ¶ 13.

Through the Actions, Sand Hollow Management seeks to recover for itself and absent class members the substantial losses that were suffered as a result of Defendants' fraud.

## ARGUMENT

## I.      THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

The PSLRA provides that, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the court shall not determine the most adequate plaintiff "until after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii) (the PSLRA advises courts to make the decision regarding the appointment of the lead plaintiff for the consolidated action "[a]s soon as practicable after [the consolidation] decision is rendered[.]" *Id.*).

Consolidation is appropriate when the actions before the court involve a common question of law or fact. *See* Fed. R. Civ. P. 42(a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same). Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact or law, and the differences do not outweigh the interest of judicial economy served by consolidation. *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007); *see In re GE Sec. Litig.*, No. 09 Civ. 1951(DC), 2009 WL 2259502, at *2-3 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Actions at issue here clearly involve common questions of fact and law. The Actions assert claims under the Exchange Act on behalf of investors who were defrauded by the defendants. The Actions allege substantially the same wrongdoing, namely that the defendants

7

issued materially false and misleading statements that artificially inflated the price of Meta securities and subsequently damaged the Class when the Company's stock price crashed as the truth emerged. Consolidation of the Actions is therefore appropriate. *See Kaplan*, 240 F.R.D. at 91-92 (finding consolidation appropriate despite differing class periods where the actions are all "securities fraud claims that arise from a common course of conduct." (internal quotation marks omitted)).

## II.   SAND HOLLOW MANAGEMENT IS ENTITLED TO BE APPOINTED LEAD PLAINTIFF FOR THE CLASS

### A.   The PSLRA Standard For Appointing Lead Plaintiff

The PSLRA governs the appointment of a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B). It provides that within 20 days of the filing of the action, the plaintiff is required to publish notice in a widely circulated business-oriented publication or wire service, informing class members of their right to move the Court, within 60 days of the publication, for appointment as lead plaintiff. *See Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127 (S.D.N.Y. 2011) (citing 15 U.S.C. § 78u-4(a)(3)(A)).

Under the PSLRA, the Court is then to consider any motion made by class members and is to appoint as lead plaintiff the movant that the Court determines to be "most capable of adequately representing the interests of class members . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(i). Further, the PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the person that:

> (aa) has either filed the complaint or made a motion in response to a notice [published by a complainant]; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Levine v. AtriCure, Inc.*, 508 F. Supp. 2d 268, 276-77 (S.D.N.Y. 2007) (same); *Baughman v. Pall Corp.*, 250 F.R.D. 121, 125 (E.D.N.Y. 2008) (describing the PSLRA's process for determining the "most adequate plaintiff"); *Tronox, Inc.*, 262 F.R.D. at 343-44 (same).

Once it is determined who among the movants seeking appointment as lead plaintiff is the presumptive lead plaintiff, the presumption can be rebutted only upon proof by a class member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008); *Baughman*, 250 F.R.D. at 125.

## B.     Under the PSLRA, Sand Hollow Management Should be Appointed Lead Plaintiff

As discussed below, Sand Hollow Management should be appointed Lead Plaintiff because all of the PSLRA's procedural hurdles have been satisfied, Sand Hollow Management holds the largest financial interest of any movant, and Sand Hollow Management otherwise satisfies Rule 23's typicality and adequacy requirements.

### 1.     Sand Hollow Management Filed a Timely Motion

Pursuant to the PSLRA, the first plaintiff to file a complaint in the action was required to publish notice within twenty (20) days of its filing. 15 U.S.C. § 78u-4(a)(3)(A)(i). Counsel for first-filed plaintiff Walter Edward Lemm, Jr. published notice of the lead plaintiff deadline via *Business Wire* on February 6, 2024. *See* Ex. A; *see Faris v. Longtop Fin. Techs. Ltd.*, No. 11 Civ. 3658(SAS), 2011 WL 4597553, at *3 (S.D.N.Y. Oct. 4, 2011) (finding publication in Business Wire sufficient to satisfy the PSLRA's notice requirement). Consequently, any member of the proposed Class was required to seek to be appointed lead plaintiff within 60 days after

9

publication of the notice, *i.e.*, on or before April 8, 2024.[5] *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Thus, Sand Hollow Management's motion is timely filed.

Additionally, pursuant to Section 21D(a)(2) of the Exchange Act, Sand Hollow Management timely signed and submitted the requisite certification, identifying all of its relevant NYCB trades during the Class Period, and detailing Sand Hollow Management's suitability to serve as Lead Plaintiff in this case. *See* Ex. B. The PSLRA's procedural requirements have therefore been met.

### 2.    Sand Hollow Management Has the Largest Financial Interest in the Relief Sought by the Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the person with the largest financial interest in the relief sought by the class. *See* 15 U.S.C. § 78u-4 (a)(3)(B)(iii)(I)(bb).

Although the PSLRA is silent as to any definitive methodology courts are to use in determining which movant has the largest financial interest in the relief sought, courts in this Circuit have typically looked to the following four factors in the inquiry: (1) the number of shares purchased by the movant during the Class Period; (2) the number of net shares purchased by the movant during the Class Period; (3) the total net funds expended by the movant during the Class Period; and (4) the approximate losses suffered by the movant. *See Fuwei*, 247 F.R.D. at 437; *Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 616 (S.D.N.Y. 2015); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *Baughman*, 250 F.R.D. at 125; *In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 WL 2259502, at *4 (S.D.N.Y. July 29, 2009). Courts have placed the most emphasis on the last of the four factors: the approximate loss

---

[5]    Given that the 60th day fell on a Saturday, April 6, 2024, Fed. R. Civ. P. 6(a)(1)(C) extends the deadline to Monday, April 8, 2024.

suffered by the movant. *See, e.g.*, *Baughman*, 250 F.R.D. at 125; *In re GE*, 2009 WL 2259502, at *4; *Fuwei*, 247 F.R.D. at 437; *Topping*, 95 F. Supp. 3d at 616.

Overall, during the Class Period, Sand Hollow Management purchased 700,000 net and 700,000 total NYCB shares, expended $4,392,522.62 in net funds and suffered losses of $1,446,642.62 attributable to the fraud. *See* Ex. C. Sand Hollow Management is presently unaware of any other movant with a larger financial interest in the outcome of this litigation.

### 3.   Sand Hollow Management Meets Rule 23's Typicality and Adequacy Requirements

The PSLRA also requires that, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). When assessing a potential lead plaintiff, only Rule 23(a)'s typicality and adequacy requirements are relevant. *See, e.g.*, *Pompano Beach Police & Firefighters' Ret. Sys. v. Comtech Telecomms. Corp.*, No. CV-09-3007 (SJF)(AKT), 2010 WL 3909331, at *2 (E.D.N.Y. Sept. 29, 2010); *Fuwei*, 247 F.R.D. at 436; *see also Blackmoss*, 252 F.R.D. at 191 ("At this stage of the litigation, the moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.").

Typicality is established where each class member's claim "arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Blackmoss*, 252 F.R.D. at 191 (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "However, a lead plaintiff's claims need not be identical to the claims of the class in order to satisfy the preliminary showing of typicality." *Topping*, 95 F. Supp. 3d at 623; *Fuwei*, 247 F.R.D. at 436.

11

Sand Hollow Management's claims are clearly typical of the Class's claims.  Sand Hollow Management purchased NYCB securities during the Class Period, suffered damages as a result of the Company's false and misleading statements, and therefore can assert the Class's claims against Defendants under the federal securities laws. Because the factual and legal bases of Sand Hollow Management's claims are similar to those of the Class's claims, Sand Hollow Management necessarily satisfies the typicality requirement. *See Quan v. Advanced Battery Techs., Inc.*, No. 11 Civ. 2279(CM), 2011 WL 4343802, at *3 (S.D.N.Y. Sept. 9, 2011) (finding movant typical where "he suffered losses as a result of [the company's] false and misleading statements during the same period as the other movants, plaintiffs, and potential class members, and [] he is alleging violations of the same provisions of the [Exchange Act], against the same defendants as the other parties").

With respect to adequacy, Rule 23(a)(4) requires that the representative party will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequate representation will be found if able and experienced counsel represent the proposed representative, and the proposed representative has no fundamental conflicts of interest with the interests of the class as a whole.  *See Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 190 (S.D.N.Y. 2011) ("In considering the adequacy of a proposed lead plaintiff, a court must consider: (1) whether the lead plaintiff's claims conflict with those of the class; and (2) whether class counsel is qualified, experienced, and generally able to conduct the litigation."); *In re GE*, 2009 WL 2259502, at *5 (Plaintiff "satisfies the adequacy requirement because its interests are aligned with those of the putative class, and it has retained competent and experienced counsel").

As evidenced by the representations in its certification, *see* Ex. B, Sand Hollow Management's interests are perfectly aligned with—and by no means antagonistic to—the Class. *See Kokkinis v. Aegean Marine Petroleum Network, Inc.*, No. 11 Civ. 0917(BSJ)(JCF), 2011 WL 2078010, at *2 (S.D.N.Y. May 19, 2011) (movant's certification evidenced adequacy to serve as lead plaintiff); *see also Blackmoss*, 252 F.R.D. at 191 (same). Contemporaneously with the filing of the instant motion, Jason Stubbs ("Stubbs"), Principal and Owner of Sand Hollow Management has submitted a Declaration with additional information about himself and Sand Hollow Management, his work and educational background, and experience investing, clearly demonstrating Sand Hollow Management's adequacy to represent class members. Ex. D. Sand Hollow Management provides business consulting and management services. *Id.* at ¶ 3. Stubbs also has owned and operated Invert Sports LLC for approximately 20 years. *Id.* Invert Sports LLC offers wakeboard and water ski and surf boats, watercraft rentals, boat charter, and wake sports. *Id.* Stubbs has been investing in the stock market for approximately 12 years and manages his own investments. *Id*. at ¶ 4. The investment transactions in NYCB securities that are the subject of this lawsuit were made by Sand Hollow Management. *Id.*

Sand Hollow Management has also selected and retained highly competent counsel to litigate the claims on behalf of itself and the Class. As explained below in Section III, the Faruqi Firm is highly regarded for its experience, knowledge, and ability to conduct complex securities class action litigation. *See* Ex. E. Consequently, Sand Hollow Management is more than adequate to represent the Class and has every incentive to maximize the Class's recovery.

In light of the foregoing, Sand Hollow Management respectfully submits that it is the presumptive Lead Plaintiff and should be appointed Lead Plaintiff for the Action.

### III.   SAND HOLLOW MANAGEMENT'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL SHOULD BE APPROVED

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the Lead Plaintiff is entitled to select and retain Lead Counsel for the Class, subject to the Court's approval. Sand Hollow Management has selected the Faruqi Firm to be Lead Counsel for the Class. The Faruqi Firm is a minority-owned and woman-owned law firm, and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. *See* Ex. E; *see also Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F. Supp. 3d 390, 401 (S.D.N.Y. 2014) (appointing the Faruqi Firm as sole lead counsel and noting: "Faruqi & Faruqi has extensive experience in the area of securities litigation and class actions.  The firm's resume indicates that it has litigated more than ten prominent securities class actions since its founding in 1995. Faruqi & Faruqi achieved successful outcomes in many of these cases.").

For example, the Faruqi Firm has previously obtained significant recoveries for injured investors. *See, e.g., In re Tahoe Res., Inc. Sec. Litig.*, No. 2:17-cv-01868-RFB-NJK (D. Nev.) (where, as sole lead counsel, the firm obtained final approval of $19.5 million settlement); *Lowthorp v. Mesa Air Grp., Inc.*, No. 2:20-cv-00648-MTL (D. Ariz.) (where, as sole lead counsel, the firm obtained final approval of $5 million settlement); *Rudani v. Ideanomics, Inc.*, No. 1:19-cv-06741-GBD (S.D.N.Y.) (where, as sole lead counsel, the firm obtained final approval of $5 million settlement); *In re Revolution Lighting Techs., Inc. Sec. Litig.*, No. 1:19-cv-00980-JPO (S.D.N.Y.) (where, as sole lead counsel, the firm obtained final approval of $2,083,333.33 settlement); *Sterrett v. Sonim Techs., Inc*., No. 3:19-cv-06416-MMC (N.D. Cal.) (where, as sole lead counsel, the firm obtained final approval of $2 million settlement); *Larkin v. GoPro, Inc.*, No. 4:16-cv-06654-CW (N.D. Cal. 2019) (where, as sole lead counsel, the firm

obtained final approval of $6.75 million settlement); *In re Avalanche Biotechnologies Sec. Litig.*, No. 3:15-cv-03185-JD (N.D. Cal. 2018) (appointed as sole lead counsel in the federal action, and together with lead counsel in a parallel state action obtained final approval of a $13 million global settlement); *Rihn v. Acadia Pharm., Inc.*, No. 3:15-cv-00575-BTM-DHB (S.D. Cal. 2018) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $2.925 million settlement); *In re Geron Corp., Sec. Litig.*, No. 3:14-CV-01224-CRB (N.D. Cal. 2017) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $6.25 million settlement); *In re Dynavax Techs. Corp. Sec. Litig.*, No. 3:13-CV-02796 (CRB) (N.D. Cal. 2016) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $4.5 million settlement); *McIntyre v. Chelsea Therapeutics Int'l, LTD*, No. 3:12-cv-00213-MOC-DCK (W.D.N.C. 2016) (where, as sole lead counsel, the Faruqi Firm secured the reversal of the district court's dismissal of the action at the Fourth Circuit, *see Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597 (4th Cir. 2015), and obtained final approval of a $5.5 million settlement); *In re L&L Energy, Inc. Sec. Litig.*, No. 1:13-CV-06704 (AJP) (S.D.N.Y. 2015) (where the Faruqi Firm, as co-lead counsel, secured a $3.5 million settlement); *In re Ebix, Inc. Sec. Litig.*, No. 1:11-CV-02400-RWS (N.D. Ga. 2014) (where the Faruqi Firm, as sole lead counsel for the class, secured a $6.5 million settlement); *Shapiro v. Matrixx Initiatives, Inc.*, No. CV-09-1479-PHX-ROS (D. Ariz. 2013) (where the Faruqi Firm, as co-lead counsel for the class, secured a $4.5 million settlement); *In re United Health Grp. Inc. Deriv. Litig.*, No. 27 CV 06-8085 (Minn. 4th Jud. Dist. 2009) (where the Faruqi Firm, as co-lead counsel, obtaining a recovery of more than $930 million for the benefit of the Company, and negotiating important corporate governance reforms designed to make the nominal defendant corporation a model of responsibility and transparency); *In re Tellium Inc. Sec. Litig.*, No. 3:02-cv-5878-FLW-JJH (D.N.J. 2006) (where the Faruqi Firm, as co-lead

15

counsel and recovering a $5.5 million settlement); *In re Olsten Corp. Sec. Litig.*, No. 0:97-CV-5056-DRH-ETB (E.D.N.Y. 2001) (where the Faruqi Firm, as co-lead counsel, recovered $24.1 million for class members); *Ruskin v. TIG Holdings, Inc.*, No. 1:98-cv-01068-LLS (S.D.N.Y. 2002) (where the Faruqi Firm, acting as co-lead counsel, recovered $3 million for the class); and *In re Purchase Pro Inc. Sec. Litig.*, No. 2:01-cv-0483-JLQ-PAL (D. Nev. 2006) (where the Faruqi Firm, as co-lead counsel for the class, secured a $24.2 million settlement).

The Faruqi Firm is also currently litigating several prominent securities class actions. *See, e.g., Clifton v. Willis*, No. 1:22-cv-03161-DDD-JPO (D. Colo.) (appointed sole lead counsel for the class of NewAge, Inc. shareholders); *Lim v. Hightower*, No. 4:23-cv-01454-BYP (N.D. Ohio) (appointed sole lead counsel for the class of Lordstown Motors Corp. shareholders); *Johnson v. Luminar Techs., Inc.*, No. 6:23-cv-982-PGB-LHP (M.D. Fla.) (appointed sole lead counsel for the class); *Kain v. Ampio Pharms., Inc.*, No. 22-cv-02105-WJM-MEH (D. Colo.) (appointed sole lead counsel for the class); *Murphy v. Argo Blockchain plc*, No. 1:23-cv-00572-NRM-SJB (E.D.N.Y.) (appointed sole lead counsel for the class); *In re Revance Therapeutics, Inc. Sec. Litig.*, No. 5:21-cv-09585-EJD (N.D. Cal.) (appointed sole lead counsel for the class); *In Re Peloton Interactive, Inc. Sec. Litig.*, No. 1:21-cv-02369-CBA-PK (S.D.N.Y.) (appointed sole lead counsel for the class); and *Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*, No. 20-4660-KSM (E.D. Pa.) (appointed sole lead counsel for the class).

The Faruqi Firm is a minority-owned and woman-owned[6] law firm, and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. The Faruqi Firm has a proven track record of successfully representing its clients in these matters and is nationally recognized for its

---

[6]     *See* Ex. F (certificate from Women's Business Enterprise National Council certifying the Faruqi Firm as a woman-owned business) (renewal pending).

excellence. Not only does the firm have the experience and expertise necessary to obtain significant successes for its clients, it has a demonstrated commitment to diversity and inclusion that clients and judges increasingly seek from the bar.[7] Class members in securities class actions have diverse backgrounds, and that diversity should be reflected in class counsel. Currently, over 40% of the firm's partnership positions are held by women and minorities, and the firm is committed to growing this figure in the coming years. *See* https://www.faruqilaw.com /our-attorneys. The Faruqi Firm is proud to be made up of such a diverse group of legal professionals and strongly believes that its clients are better served because of it.

## CONCLUSION

For the foregoing reasons, Sand Hollow Management respectfully requests that the Court: (1) consolidate the above-captioned, related actions; (2) appoint it as Lead Plaintiff; (3) approve its selection of the Faruqi Firm as Lead Counsel for the putative Class; and (4) grant such other relief as the Court may deem just and proper.

Dated: April 8, 2024                              Respectfully submitted,

**FARUQI & FARUQI, LLP**

By:      */s/ James M. Wilson, Jr.*
         James M. Wilson, Jr.

James M. Wilson, Jr.
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email:   jwilson@faruqilaw.com

---

[7]      *See* Anne Cullen, More Judges Are Demanding Diversity Among Class Counsel, Law360 (July 16, 2020), https://www.law360.com/articles/1292926/more-judges-are-demanding-diversity-among-class-counsel; Ralph Chapoco, Calls for Lawyer Diversity Spread to Complex Class Litigation, Bloomberg Law (July 30, 2020), https://www.bloomberglaw.com/document/ XA1TPNEG000000?bna_news_filter=social-justice&jcsearch=BNA.

Robert W. Killorin (*pro hac vice* forthcoming)
**FARUQI & FARUQI, LLP**
3565 Piedmont Road NE Building Four
Suite 380
Atlanta, GA 30305
Telephone: 404-847-0617
Facsimile: 404-506-9534
Email:  rkillorin@faruqilaw.com

*Attorneys for [Proposed] Lead Plaintiff*
*Sand Hollow Management, LLC and*
*[Proposed] Lead Counsel for the putative*
*Class*