UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| WALTER EDWARD LEMM, JR., Individually and on Behalf of All Others Similarly Situated, | Case No.  1:24-cv-00903-NRM-JRC |
| | Date of service:  April 8, 2024 |
| Plaintiff, | |
| v. | |
| NEW YORK COMMUNITY BANCORP, INC., THOMAS R. CANGEMI, and JOHN J. PINTO, | |
| Defendants. | |
| DALE MISKEY, Individually and on Behalf of All Others Similarly Situated, | Case No.  2:24-cv-01118-NRM-JRC |
| Plaintiff, | |
| vs. | |
| NEW YORK COMMUNITY BANCORP, INC., THOMAS ROBERT CANGEMI and JOHN J. PINTO, | |
| Defendants. | |

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF KENNETH DOBSON
FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF,
AND APPROVAL OF LEAD COUNSEL

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ...................................................................................................... 3

ARGUMENT ....................................................................................................................... 6

    I.      THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR
          ALL PURPOSES ................................................................................................ 6

    II.     DOBSON SHOULD BE APPOINTED LEAD PLAINTIFF ............................... 8

          A.     Dobson Is Willing to Serve as Class Representative ................................. 9

          B.     Dobson Has the "Largest Financial Interest" .............................................. 9

          C.     Dobson Otherwise Satisfies the Requirements of Rule 23 ....................... 10

          D.     Dobson Will Fairly and Adequately Represent the Interests
                 of the Class and Is Not Subject to Unique Defenses ............................... 13

    III.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD
          BE APPROVED ................................................................................................ 13

CONCLUSION ................................................................................................................... 15

TABLE OF AUTHORITIES

Page(s)

Cases

*Aude v. Kobe Steel, Ltd.*,
No. 17-CV-10085 (VSB), 2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018) ...................................11

*Bassin v. Decode Genetics, Inc.*,
230 F.R.D. 313 (S.D.N.Y. 2005) ...........................................................................................7

*Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*,
141 F.R.D. 229 (S.D.N.Y. 1992) .........................................................................................12

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
252 F.R.D. 188 (S.D.N.Y. 2008) ...........................................................................................7

*Chahal v. Credit Suisse Grp. AG*,
No. 18-CV-2268 (AT) (SN), 2018 WL 3093965 (S.D.N.Y. June 21, 2018) ..........................10

*Dookeran v. Xunlei Ltd.*,
No. 18-cv-467 (RJS), 2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018) .....................................12

*Fischler v. AMSouth Bancorporation*,
No. 96-1567-Civ-T-17A, 1997 WL 118429 (M.D. Fla. Feb. 6, 1997) ...................................11

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) .........................................................................................12

*Gluck v. CellStar Corp.*,
976 F. Supp. 542 (N.D. Tex. 1997) ......................................................................................11

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ................................................................................................10

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-CV-1825 (NGG) (RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ..................10, 14

*In re Drexel Burnham Lambert Grp., Inc.*,
960 F.2d 285 (2d Cir. 1992) ................................................................................................11

*In re GE Sec. Litig.*,
No. 09 Civ. 1951 (DC), 2009 WL 2259502 (S.D.N.Y. July 29, 2009) ...................................7

*In re Molson Coors Brewing Co. Sec. Litig.*,
233 F.R.D. 147 (D. Del. 2005) ............................................................................................14

*In re Olsten Corp. Sec. Litig.*,
　3 F. Supp. 2d 286 (E.D.N.Y. 1998) ...................................................................................10, 11

*In re Orion Sec. Litig.*,
　No. 08 Civ. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 7, 2008) ...................................11

*In re Oxford Health Plans, Inc. Sec. Litig.*,
　182 F.R.D. 42 (S.D.N.Y. 1998) .............................................................................................11

*In re Petrobras Securities Litigation*,
　No. 14-cv-09662 (S.D.N.Y.)...................................................................................................14

*In re Tronox, Inc. Sec. Litig.*,
　262 F.R.D. 338 (S.D.N.Y. 2009) ..............................................................................................7

*Janbay v. Canadian Solar, Inc.*,
　272 F.R.D. 113 (S.D.N.Y. 2010) ............................................................................................11

*Johnson v. Celotex Corp.*,
　899 F.2d 1281 (2d Cir. 1990)....................................................................................................7

*Kaplan v. Gelfond*,
　240 F.R.D. 88 (S.D.N.Y. 2007) ..............................................................................................11

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
　311 F.R.D. 373 (S.D.N.Y. 2015) ............................................................................................14

*Lax v. First Merchants Acceptance Corp.*,
　No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 6, 1997).................................................9, 10

*Lemm, Jr. v. New York Community Bancorp, Inc. et al.*,
　No. 1:24-cv-00903 (E.D.N.Y.) ...................................................................................... *passim*

*Malcolm v. Nat'l Gypsum Co.*,
　995 F.2d 346 (2d Cir. 1993).......................................................................................................7

*Miskey v. New York Community Bancorp, Inc. et al.*,
　No. 2:24-cv-01118 (E.D.N.Y.) ...................................................................................... *passim*

*Nurlybaev v. ZTO Express (Cayman) Inc.*,
　No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017) ......................10

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
　229 F.R.D. 395 (S.D.N.Y. 2004) ............................................................................................10

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
　589 F. Supp. 2d 388 (S.D.N.Y. 2008)......................................................................................14

iii

**Statutes**

15 U.S.C. § 78u-4 ................................................................................................ *passim*

Private Securities Litigation Reform Act of 1995 ................................................ *passim*

Securities Exchange Act of 1934 ......................................................................... *passim*

**Rules**

Fed. R. Civ. P. 23 ................................................................................................ *passim*

Fed. R. Civ. P. 42 ......................................................................................................1, 6, 7

Kenneth Dobson ("Dobson") respectfully submits this memorandum of law in support of his motion, pursuant to Federal Rule of Civil Procedure 42 ("Rule 42") and Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing Dobson as Lead Plaintiff on behalf of a class (the "Class") consisting of all persons and entities that purchased or otherwise acquired New York Community Bancorp, Inc. ("NYCB" or the "Company") securities between March 1, 2023 and February 5, 2024, inclusive (the "Class Period"); and (3) approving proposed Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.[1]

## PRELIMINARY STATEMENT

The *Lemm* and *Miskey* Complaints allege that the above-captioned defendants ("Defendants") defrauded investors in violation of the Exchange Act. NYCB investors, including Dobson, incurred significant losses following the disclosures of Defendants' alleged fraud, which caused NYCB's share price to fall sharply, damaging Dobson and other NYCB investors.

Consolidation is appropriate under Rule 42(a) where actions involve common questions of law or fact. Here, the Related Actions are putative class actions alleging violations of the

---

[1] On February 6, 2024, the first-filed of the Related Actions was filed in this Court, styled *Lemm, Jr. v. New York Community Bancorp, Inc. et al.*, No. 1:24-cv-00903 (E.D.N.Y.) (the "*Lemm* Action"), alleging a class period including persons and entities that purchased or otherwise acquired NYCB securities between March 1, 2023 and January 30, 2024, inclusive. *See* Dkt. No. 1 ("*Lemm* Complaint") at 1 ¶ 1. On February 13, 2024, a second action alleging substantially the same wrongdoing as the *Lemm* Action against the same defendants was filed in this Court, styled *Miskey v. New York Community Bancorp, Inc. et al.*, No. 2:24-cv-01118 (E.D.N.Y.) (the "*Miskey* Action"), alleging a larger class period including all purchasers of NYCB securities between March 1, 2023 and February 5, 2024, inclusive. *See Miskey* Action, Dkt. No. 1 ("*Miskey* Complaint") at 1 ¶ 1. Therefore, without conceding that this is the appropriate class period, to avoid excluding any potential class members, this motion has adopted the largest class period alleged in the *Miskey* Action.

Exchange Act by the same defendants arising from substantially the same alleged fraud. As such, the Related Actions involve common questions of both law ***and*** fact, and consolidation is plainly warranted.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant that possesses the largest financial interest in the outcome of the litigation and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). During the Class Period, Dobson purchased 10,000 shares of NYCB common stock, expended $114,469 on these purchases, retained 10,000 of his shares of NYCB common stock, and, as a result of the disclosures of Defendants' alleged fraud, incurred losses of approximately $75,528 in connection with his Class Period transactions in NYCB securities. *See* Declaration of Jeremy A. Lieberman in Support of Motion ("Lieberman Decl."), Exhibit ("Ex.") A at *2. Accordingly, Dobson believes that he has the largest financial interest in the relief sought in this litigation. Beyond his considerable financial interest, Dobson also meets the applicable requirements of Rule 23 because his claims are typical of absent Class members and because he will fairly and adequately represent the interests of the Class.

To fulfill his obligations as Lead Plaintiff and vigorously prosecute the Related Actions on behalf of the Class, Dobson has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.

Accordingly, Dobson respectfully requests that the Court enter an Order consolidating the Related Actions, appointing Dobson as Lead Plaintiff for the Class, and approving his selection of Pomerantz as Lead Counsel for the Class.

STATEMENT OF FACTS

As alleged in the *Lemm* and *Miskey* Complaints, NYCB is a large commercial-real estate lender in the New York City market area, where it specializes in rent-regulated, non-luxury apartment buildings. *Lemm* Complaint at 1 ¶ 2; *see also Miskey* Complaint at 1 ¶ 2. NYCB is engaged in several national businesses, including multi-family lending, mortgage originations and servicing, and warehouse lending. *Lemm* Complaint at 1 ¶ 2; *see also Miskey* Complaint at 1 ¶ 2. The Company's specialty finance loans and leases are generally made to large corporate obligors that participate in stable industries nationwide, and its warehouse loans are made to mortgage lenders across the country. *Lemm* Complaint at 1 ¶ 2. For most of its history, NYCB focused primarily on conservative and traditional types of lending products and banking relationships, such as residential mortgages. *Miskey* Complaint at 1 ¶ 2.

During 2022, NYCB embarked on a plan to transform its business by expanding into commercial loan products. *Id.* at 1 ¶ 3. NYCB rapidly expanded its operations and assets in an extremely short period first through its acquisition of Flagstar Bancorp, Inc. ("Flagstar") in late 2022 and then through its acquisition of a substantial amount of the assets of Signature Bridge Bank, N.A. ("Signature Bank") in early 2023. *Id.* at 1-2 ¶ 3; *see also Lemm* Complaint at 1 ¶ 3. NYCB nearly doubled its total assets from $63 billion to $123.8 billion over the short span of approximately four months as a result of these two transactions. *Miskey* Complaint at 2 ¶ 3.

Unbeknownst to investors, throughout the Class Period, Defendants made materially false and misleading statements about NYCB's business, financial condition and the impact of the Flagstar and Signature Bank acquisitions. *Id.* at 2 ¶ 4; *see also Lemm* Complaint at 2 ¶ 6. For example, on March 1, 2023, the first day of the Class Period, NYCB issued its fiscal year 2022 Annual Financial Report falsely claiming, as it would throughout the Class Period, that it had

3

"strong" asset quality in its commercial lending facility and that "[b]ased upon all relevant and available information . . . management believes that the allowance for losses on loans was appropriate[.]" *Miskey* Complaint at 2 ¶ 4. When discussing the Signature Bank acquisition, Defendants misrepresented that it would be immediately accretive to the Company and failed to warn investors of the detrimental impact the acquisition would have on its balance sheet and financial condition. *Id.*

Importantly, NYCB's growth in total assets to over $100 billion subjected NYCB to, among other things, stricter risk-based and leverage capital requirements and liquidity standards. *Id.* ¶ 5; *see also Lemm* Complaint at 2 ¶ 4. Defendants failed to disclose that NYCB was required – but failed – to build up capital, reinforce its balance sheet, and strengthen its risk management processes. *Miskey* Complaint at 2 ¶ 5; *see also Lemm* Complaint at 2 ¶ 6. And Defendants falsely assured investors that the Company had adequate internal risk and disclosure controls in place for NYCB's business and rapid growth. *Miskey* Complaint at 2 ¶ 5.

Defendants' materially false and misleading statements caused an artificial inflation in the price of NYCB common stock – reaching a Class Period high of more than $14 a share on July 28, 2023. *Id.* ¶ 6.

On January 31, 2024, before the market opened, NYCB announced its fiscal fourth quarter 2023 financial results. *Lemm* Complaint at 2 ¶ 4; *see also Miskey* Complaint at 3 ¶ 7. The Company reported a fourth quarter net loss of $252 million due to "a $552 million provision for loan losses," which was "primarily attributable to higher net charge-offs" and "a significant increase in the ACL [allowance for credit losses]" coverage ratio. *Lemm* Complaint at 2 ¶ 4. The Company also disclosed that NYCB had belatedly adjusted to its new capital and regulatory requirements as a result of the Signature Bank acquisition, stating that the Company's total assets

4

had surpassed $100 billion, thereby "subjecting [it] to enhanced prudential standards, including risk-based and leverage capital requirements, liquidity standards" and more, and that as a result, it had "[taken] decisive actions to build capital, reinforce [its] balance sheet, strengthen [its] risk management processes, and better align [itself] with the relevant bank peers." *Miskey* Complaint at 3 ¶ 8; *see also Lemm* Complaint at 2 ¶ 4.  NYCB also revealed it would slash the Company's historically stable quarterly dividend from $0.17 per share to just $0.05 per share.  *Miskey* Complaint at 3 ¶ 8; *see also Lemm* Complaint at 2 ¶ 4.

On this news, the market price of NYCB common stock declined precipitously, falling approximately $4 per share, or 39%, to close at $6.47 per share on January 31, 2024, on unusually high trading volume of more than 128.6 million shares traded, or 17 times its average trading volume over the preceding ten trading days.  *Miskey* Complaint at 3 ¶ 9; *see also Lemm* Complaint at 2 ¶ 5.

After the close of trading on January 31, 2024, Moody's Investors Service announced that it had placed all of NYCB's corporate debt ratings, including the bank's long-term issuer rating of Baa3 — the lowest investment-grade level — on review for possible downgrade to junk status, citing the Company's surprising 4Q23 loss and slashing of its dividend.  *Miskey* Complaint at 3 ¶ 10.  On this news, the market price of NYCB common stock closed down another $0.82 per share on nearly 126 million shares traded on February 1, 2024.  *Id.*

Then, on February 5, 2024, after the close of trading, *Bloomberg* reported, citing "people with direct knowledge of the matter," that it had been "mounting pressure from a top US watchdog" that had "led to [NYCB's] surprise decision to slash its dividend and stockpile cash in case commercial real estate loans [went] bad."  *Id.* at 4 ¶ 11.  According to *Bloomberg*, "[t]he drastic financial moves . . . followed behind-the-scenes conversations with officials from the

5

Office of the Comptroller of the Currency [the 'OCC'.]"  *Id.*  Bloomberg also revealed that NYCB's chief risk officer and chief audit executive left the Company in the fourth quarter of 2023.  *Id.*

On this news, the market price of NYCB common stock again declined precipitously, falling another $1.20 per share, or 22%, to close at $4.20 per share on February 6, 2024, its lowest level since 1997, on unusually high trading volume of more than 147 million shares traded.  *Id.* ¶ 12.

Finally, on February 6, 2024, after the close of trading, Moody's Investor Service slashed the Company's corporate debt rating to junk status.  *See id.* ¶ 13.  NYCB also announced that it had further shaken up its executive leadership, naming Alessandro DiNello, the former head of Flagstar, as executive chairman.  *Id.*  As reported by the *Wall Street Journal*, "[DiNello] said he was coming in to right the ship."  *Id.*

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Dobson and other Class members have suffered significant losses and damages.  *See Lemm* Complaint at 3 ¶ 7.

ARGUMENT

I.      THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation of related cases is appropriate where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay, and overlap in adjudication: "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay."  Fed. R. Civ. P. 42(a); *see also Manual for Complex Litigation (Third)* § 20.123 (1995).

6

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact. *See* Fed. R. Civ. P. 42 (a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same). Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation. *See In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 WL 2259502, at *1-3 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Related Actions at issue here clearly involve common questions of law *and* fact. Each action is brought against the same defendants in connection with violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder. Accordingly, the Related Actions allege substantially the same wrongdoing, namely that Defendants issued materially false and misleading statements and omissions that artificially inflated the prices of NYCB's securities and subsequently damaged the Class when the Company's share price plummeted as the truth emerged. Consolidation of the Related Actions is therefore appropriate. *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *GE*, 2009 WL 2259502, at *2 ("Consolidation promotes judicial convenience and avoids unnecessary costs to the parties.").

7

## II.   DOBSON SHOULD BE APPOINTED LEAD PLAINTIFF

Dobson should be appointed Lead Plaintiff because he has timely filed a motion for appointment as Lead Plaintiff, has the largest financial interest in this litigation to his knowledge, and otherwise strongly satisfies the requirements of Rule 23.

The PSLRA requires the plaintiff who files an action governed by its provisions to publish a notice (the "Notice") to the class within 20 days of filing the action, informing putative class members of: (1) the pendency of the action; and (2) their right to file a motion for appointment as lead plaintiff within 60 days after publication of the Notice. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). In addition, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to the Notice and to do so by the later of (1) 90 days after the date of publication, or (2) as soon as practicable after the Court decides any pending motion to consolidate. *See id.* § 78u-4(a)(3)(B).

Pursuant to the PSLRA, the Court "shall appoint" the "most adequate plaintiff" to serve as lead plaintiff. *Id.* § 78u-4(a)(3)(B)(i). The PSLRA provides a "[r]ebuttable presumption" that the "most adequate plaintiff" is the person or group that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id.* § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Dobson satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

8

A.      Dobson Is Willing to Serve as Class Representative

On February 6, 2024, counsel for plaintiff in the first-filed of the Related Actions caused the statutorily required Notice of this litigation to be published via *Business Wire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action had been filed against NYCB and other defendants, and which advised investors in NYCB securities that they had 60 days from the date of the Notice's publication—*i.e.*, until April 8, 2024—to file a motion to be appointed as lead plaintiff.  *See* Lieberman Decl., Ex. B at *2.

Dobson has filed the instant motion pursuant to the Notice, and has attached a sworn Certification attesting that he is willing to serve as a representative for the Class and to provide testimony at deposition and trial, if necessary.  *See id.*, Ex. C at *2-3.  Accordingly, Dobson satisfies the first requirement to serve as Lead Plaintiff of the Class.

B.      Dobson Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  To the best of his knowledge, Dobson has the largest financial interest of any NYCB investor or investor group seeking to serve as Lead Plaintiff.  For claims arising under Section 10(b) of the Exchange Act, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (also referred to as "retained shares"); (3) the total net funds expended during the class period; and (4) the approximate losses suffered.  No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997).

9

In accord with other courts nationwide,[2] these so-called *Lax* factors have been adopted and routinely applied by courts in this District. *See In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-8 (E.D.N.Y. Mar. 2, 2007).

During the Class Period, Dobson: (1) purchased 10,000 shares of NYCB common stock; (2) expended $114,469 on his purchases of NYCB common stock; (3) retained 10,000 of his shares of NYCB common stock; and (4) as a result of the disclosures of Defendants' alleged fraud, incurred losses of approximately $75,528 in connection with his Class Period transactions in NYCB securities. *See* Lieberman Decl., Ex. A at *2. To the extent that Dobson possesses the largest financial interest in the outcome of this litigation, he is the presumptive "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

C.     Dobson Otherwise Satisfies the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

---

[2] *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN), 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004); *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001).

In making its determination that a lead plaintiff movant satisfies Rule 23's requirements, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, "[t]he parties moving for lead plaintiff are only required to make a prima facie showing that they meet [the requirements of] Rule 23." *Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required."). In addition, "[t]ypicality and adequacy of representation are the only provisions [of Rule 23] relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (citing *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997), and *Fischler v. AMSouth Bancorporation*, No. 96-1567-Civ-T-17A, 1997 WL 118429, at *2 (M.D. Fla. Feb. 6, 1997)); *Olsten*, 3 F. Supp. 2d at 296. Moreover, the *Lemm* and *Miskey* Complaints sufficiently plead Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all Class members, including Dobson. *See Lemm Complaint* at 16-17 ¶¶ 34, 37; *Miskey* Complaint at 33 ¶¶ 100, 103.

The typicality requirement of Rule 23(a)(3) "is satisfied if 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 7, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "[T]he claims of the class representative need not be identical [to] those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'" *Janbay v.*

11

*Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (S.D.N.Y. 1992)).

Dobson's claims are typical of those of the Class. Dobson alleges, like other Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning NYCB, or by omitting to state material facts necessary to make the statements they did make not misleading. Dobson, like other Class members, purchased NYCB securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and was damaged upon the disclosure of those misrepresentations and/or omissions that drove NYCB's share price downward. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *see also Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS), 2018 WL 1779348, at *2 (S.D.N.Y. Apr. 12, 2018) (same).

As set forth in greater detail below, in Pomerantz, Dobson has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as these Related Actions, and submits his choice of Pomerantz to the Court for approval as Lead Counsel for the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). There is no evidence of antagonism or conflict between Dobson's interests and those of the Class. Moreover, Dobson has submitted a

12

signed Certification declaring his commitment to protect the interests of the Class (*see* Lieberman Decl., Ex. C at \*2-3), and his significant financial interest demonstrates that he has a sufficient interest in the outcome of this litigation to ensure vigorous advocacy.

Further demonstrating his adequacy, Dobson has submitted a signed Declaration attesting to, *inter alia*, his background, his investing experience, his understanding of the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, his decision to seek appointment as Lead Plaintiff, and the steps that he is prepared to take to prosecute this litigation on behalf of the Class. *See id.*, Ex. D at 1-4 ¶¶ 1-7, 9-11.

> D.   Dobson Will Fairly and Adequately Represent the Interests of the Class and Is Not Subject to Unique Defenses

The presumption in favor of appointing Dobson as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

> (aa)   will not fairly and adequately protect the interests of the class; or

> (bb)   is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Dobson's ability and desire to fairly and adequately represent the Class has been discussed above.  Dobson is not aware of any unique defenses Defendants could raise that would render him inadequate to represent the Class.  Accordingly, Dobson should be appointed Lead Plaintiff for the Class.

## III.   LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval.  *See id.* § 78u-4(a)(3)(B)(v).  The Court should only interfere with a lead plaintiff's choice if necessary to "protect the interests of the class."  *Id.* § 78u-

4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

Here, Dobson has selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in its firm resume submitted herewith. *See* Lieberman Decl., Ex. E at 1-11. In overview, Pomerantz is a premier firm in the area of securities litigation based in New York, with offices in Chicago, Los Angeles, Paris, France, London, the U.K., and Tel Aviv, Israel. *See id.* For more than 85 years, Pomerantz has represented defrauded investors. *See id.* at 1. As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of investors in the securities of Petrobras, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the United States. *See id.* at 2. Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010. *See id.* at 1-11. More recently, as Lead Counsel on behalf of a class of Fiat Chrysler Automobiles N.V. investors, Pomerantz reached a $110 million settlement on behalf of the class. *See id.* at 2-3.

As a result of its extensive experience in litigation involving issues similar to those raised in these Related Actions, Dobson's counsel, Pomerantz, has the skill, knowledge, expertise, and

14

experience that will enable the firm to prosecute these Related Actions effectively and expeditiously.  Thus, the Court may be assured that by approving Dobson's selection of Pomerantz as Lead Counsel, the members of the Class will receive the best legal representation available.

CONCLUSION

For the foregoing reasons, Dobson respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Dobson as Lead Plaintiff for the Class; and (3) approving Dobson's selection of Pomerantz as Lead Counsel for the Class.

Dated:  April 8, 2024                                  Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
James M. LoPiano
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com

*Counsel for Kenneth Dobson and Proposed Lead*
*Counsel for the Class*

15