**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff and Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WALTER EDWARD LEMM, JR., Individually and on Behalf of All Others Similarly Situated,<br><br><br>Plaintiff,<br><br>v.<br><br>NEW YORK COMMUNITY BANCORP, INC., THOMAS ROBERT CANGEMI and JOHN J. PINTO,<br><br>Defendants. | **CASE No.: 1:24-cv-00903-NRM-JRC**<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF RAYMOND YEUNG TO: (1) CONSOLIDATE RELATED ACTIONS; (2) APPOINT LEAD PLAINTIFF; AND (3) APPROVE LEAD PLAINTIFF'S SELECTION OF COUNSEL**<br><br><u>CLASS ACTION</u> |
| DALE MISKEY, Individually and on Behalf of All Others Similarly Situated,<br><br><br>Plaintiff,<br><br>v.<br><br>NEW YORK COMMUNITY BANCORP, INC., THOMAS ROBERT CANGEMI and JOHN J. PINTO,<br><br>Defendants. | **CASE No.: 2:24-cv-01118-NRM-JRC**<br><br><br><u>CLASS ACTION</u> |

## TABLE OF CONTENTS

INTRODUCTION AND BACKGROUND ................................................................................. 4

ARGUMENT ........................................................................................................................... 8

I.       THE RELATED ACTIONS SHOULD BE CONSOLIDATED ................................... 8

II.      MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF ....................................... 8

    A.  Movant Is Willing to Serve as Class Representative ........................................ 9

    B.  Movant Has the Largest Financial Interest in the Action ................................. 9

        C.   Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil

Procedure………………………………………………………………………………10

    D.  Movant Is Presumptively the Most Adequate Plaintiff................................... 11

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Deering v. Galena Biopharma, Inc*., 2014 WL 4954398, at *10 (D. Or. Oct. 3, 2014) ................. 4

*In re Bally Total Fitness*, *Sec. Litig*.,
   2005 WL 627960 (N.D. Ill. Mar. 15, 2005) ................................................................. 10

*In re Cendant Corp. Litigation*,
   264 F.3d. 201 (3d Cir. 2001) ..................................................................................... 11

*In re Fuwei Films Sec. Litig.*,
   247 F.R.D. 432 (S.D.N.Y. 2008) ............................................................................... 10

*In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113- 114 (E.D.N.Y. 2012) ........................................... 4

*In re Livent, Inc. Noteholders Sec. Litig.*,
   210 F.R.D. 512 (S.D.N.Y. 2002) ............................................................................... 11

*In re Olsten Corp. Sec. Litig.*,
   3 F.Supp.2d 286 (E.D.N.Y. 1998)............................................................................... 9

*In re Oxford Health Plans, Inc. Sec. Litig.,*
   182 F.R.D. 42 (S.D.N.Y. 1998).................................................................................. 10

*Lax v. Merch. Acceptance Corp*.,
   1997 WL 461036 (N.D. Ill. Aug. 11, 1997).............................................................. 9

*Takara Trust v. Molex*,
   229 F.R.D. 577 (N.D. Ill. 2005) ................................................................................ 9

**RULES**

Fed. R. Civ. P. 42(a) ..................................................................................................... 8
Rule 23 ...................................................................................................................... 10, 11

Raymond Yeung ("Movant") respectfully submits this memorandum of law in support of his motion for an Order, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(a)      consolidating the related actions as they involve common questions of law and fact and consolidation would promote judicial economy;

(b)      appointing Movant as Lead Plaintiff for the class of all purchasers of the publicly traded securities New York Community Bancorp, Inc. ("NYCB" or the "Company") between March 1, 2023 and February 5, 2024, inclusive (the "Class Period")[1]; and

(c)      approving Movant's selection of The Rosen Law Firm, P.A. as Lead Counsel for the Class.

## INTRODUCTION AND BACKGROUND

This action was commenced on February 6, 2024 against the Company, Thomas R. Cangemi, and John J. Pinto for violations under the Exchange Act. That same day, an early notice pursuant to the PSLRA was published advising class members of, *inter alia*, the allegations and claims in the complaint, the Class Period, and advising class members of their option to seek appointment as Lead Plaintiff. *See* Ex. 1 hereto. On February 13, 2024, the related action filed action, *Miskey v. New York Community Bancorp, Inc. et al*. (Case No. 2:24-cv-01118-NRM-JRC)

---

[1] The first-filed action, *Lemm v. New York Community Bancorp, Inc. et al*., case no. 1:24-cv-00903-NRM-JRC has a class period of March 1, 2023 and January 30, 2024, inclusive. The later-filed action, *Miskey v. New York Community Bancorp, Inc. et al*., case no. 2:24-cv-01118-NRM-JRC, has a class period of March 1, 2023 and February 5, 2024 inclusive. A more inclusive class period is favored at the lead plaintiff stage. *See, e.g., In re Gentiva Sec. Litig*., 281 F.R.D. 108, 113- 114 (E.D.N.Y. 2012) (court favoring a broader class which "encompasses more potential class members" early in the litigation at the lead plaintiff stage); *Deering v. Galena Biopharma, Inc.*, 2014 WL 4954398, at *10 (D. Or. Oct. 3, 2014) (recognizing that courts commonly select "most inclusive class period" at lead plaintiff stage).

was filed, alleging substantially similar claims under the Exchange Act against the same defendants with a class period of March 1, 2023 and February 5, 2024.

Defendant NYCB is the bank holding company for Flagstar Bank, one of the largest regional banks in the United States. The Company is incorporated under the laws of Delaware with its principal executive offices located in Hicksville, New York. NYCB operates approximately 420 branches around the nation, including numerous branches in the Northeast and Midwest. NYCB common stock was listed and traded on the New York Stock Exchange ("NYSE"), an efficient market, throughout the Class Period under the ticker symbol NYCB. As of November 3, 2023, there were more than 722 million shares of NYCB common stock issued and outstanding. NYCB also lists its preferred shares on the NYSE under the ticker symbols NYCB-PU and NYCB-PA.

The complaint alleges that throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors that: (1) that the Signature Bank acquisition would not be immediately accretive to the Company because it caused NYCB to be required to comply with materially enhanced prudential standards, including, among other things, risk-based and leverage capital requirements, and liquidity standards, and required that NYCB build capital, reinforce its balance sheet and strengthen its risk management processes; (2) that NYCB failed to comply with the materially enhanced prudential standards; (3) that NYCB overstated the quality of its commercial office loan assets; (4) that NYCB was experiencing higher net charge-offs and deterioration in its commercial office portfolio than represented; (5) that NYCB was reasonably likely to incur higher loan losses because it was experiencing higher net charge-offs and deterioration in its commercial office portfolio; (6) that NYCB was reasonably likely to be

forced to increase its allowance for credit losses due to its status as Category IV bank; (7) that NYCB's loan loss provisions were understated so it overstated quarterly earnings and/or understated quarterly losses; (8) that NYCB failed to have adequate internal risk or disclosure controls and procedures; and (9) as a result, Defendants' statements about its business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times.

On January 31, 2024, before the opening of trading, NYCB issued a press release and announced its Fourth Quarter of 2023 ("4Q23") and FY23 financial results (the "1/31/24 Press Release"). In the 1/31/24 Press Release, NYCB disclosed that it had recorded a $552 million provision for loan losses, up significantly from the $62 million reported just one quarter earlier, and that as a result, the Company had incurred a 4Q23 loss of $252 million, or $0.36 per share, down significantly from a profit of $0.27 per share Wall Street consensus estimate that the Company had led investors to expect based on its bullish Class Period statements. The Company explained that this larger provision of loan losses was primarily due to "primarily attributable to higher net charge-offs" and "a significant increase in the ACL [allowance for credit losses]" coverage ratio. As to credit losses, the release stated that "[a]t December 31, 2023, the allowance for credit losses was $992 million compared to $619 million at September 30, 2023, up $373 million **reflecting our actions to build reserves during the quarter to address weakness in the office sector, potential repricing risk in the multi-family portfolio and an increase in classified assets, which better aligns the Company with its relevant bank peers, including Category IV banks.**" (emphasis added). The release further stated that there had been an increase in the provision for credit losses, primarily attributable to "higher net charge offs, as well as, to address weakness in the office sector, potential repricing risk in the multi-family portfolio, and an increase in classified assets."

The 1/31/24 Press Release also disclosed that the Company was still adjusting to the demands of being a large bank after its purchase of assts and liabilities from Signature Bank, stating that having assets under management greater than $100 Billion subjected the Company to enhanced prudential standards, including risk-based and leverage capital requirements, liquidity standards, and more.

Finally, NYCB also disclosed it would cut the Company's historically stable quarterly dividend from $0.17 per share to just $0.05 per share.

On this news the price of NYCB common stock fell $3.91 per share, or 38%, to close at $6.47 per share on January 31, 2024, on unusually high trading volume of more than 128.8 million shares traded.

After the close of trading on January 31, 2024, Moody's Investors Service announced that it had placed all of NYCB's ratings, including the bank's long-term issuer rating of Baa3 — the lowest investment-grade level — on review for possible downgrade to junk status, citing the Company's surprise 4Q23 loss and slashing of its dividend.

On this news the price of NYCB common stock closed down another $0.82 per share on February 1, 2024, on unusually heavy trading volume of nearly 126 million shares traded.

On February 5, 2024 *Bloomberg* reported that the decision to cut the dividend "followed behind-the-scenes conversations with officials from the Office of the Comptroller of the Currency [the "OCC"]." Additionally, *Bloomberg* pointed out that Chief Risk Officer Nicholas Munson and Chief Audit Executive Meagan Belfinger had left the Company months before the measures were unveiled but that the Company had not reported their departures at the time.

In response to the announcements on February 5, 2024, the price of NYCB common stock closed down another $1.20 per share, or 22%, to close at $4.20 per share on February 6, 2024, its lowest level since 1997, on unusually high trading volume of more than 147 million shares traded.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's shares, Plaintiff and other Class members have suffered significant losses and damages.

**ARGUMENT**

## I.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Consolidation of related cases is proper where, as here, the actions involve common questions of law and fact such that consolidation would prevent unnecessary cost or delay in adjudication. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay. Fed. R. Civ. P. 42(a).

The PSLRA contemplates consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed." 15 U.S.C. §78u-4(a)(3)(A)(ii). As such, the PSLRA does not displace the traditional legal standards for consolidation under Fed. R. Civ. P. 42(a).

Both of the above-captioned related actions have been filed in this District alleging similar factual and legal grounds to support allegations of violations of the Exchange Act by Defendants arising from the public dissemination of false and misleading information to investors. Accordingly, the above-captioned cases should be consolidated pursuant to Fed. R. Civ. P. 42(a) for all purposes.

## II.   MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of: (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending

8

motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" to serve as lead plaintiff is the person or group that:

> (aa) has either filed the complaint or made a motion in response to a notice…;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

As set forth below, Movant satisfies all three of these criteria, and thus is entitled to the presumption of being the "most adequate plaintiff" for the Class.

**A. Movant Is Willing to Serve as Class Representative**

Movant has filed herewith a PSLRA certification attesting that it is willing to serve as representative of the class and remains willing to provide testimony at deposition and trial, if necessary. *See* Ex. 2 hereto. Accordingly, Movant satisfies the first requirement to serve as Lead Plaintiff for the Class.

**B. Movant Has the Largest Financial Interest in the Action**

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff … is the person or group of persons that … has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). "While the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial interest' in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses." *Takara Trust v. Molex*, 229 F.R.D. 577, 579 (N.D. Ill. 2005). Of the *Lax*/*Olsten*-styled[2] factors in

---

[2] *Lax v. Merch. Acceptance Corp.*, 1997 WL 461036 *5 (N.D. Ill. Aug. 11, 1997); *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998).

determining the largest financial interest, the financial loss is the most significant factor. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008). Indeed, "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period." *In re Bally Total Fitness*, *Sec. Litig.*, 2005 WL 627960 * 4 (N.D. Ill. Mar. 15, 2005).

Movant lost approximately $34,988.03 in connection with purchases of NYCB securities. *See* Ex. 3 hereto. Accordingly, Movant satisfies the largest financial interest requirement to be appointed as Lead Plaintiff for the class.

### C. Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification – a *prima facie* showing that Movant will satisfy the requirements of Rule 23 is sufficient. *Fuwei Films*, 247 F.R.D. at 439 (only a *prima facie* showing is required). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. 42, 49 (S.D.N.Y. 1998).

### 1. Movant's Claims are Typical

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims and plaintiff's claims are based on the same legal theory. *See In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 516 (S.D.N.Y. 2002). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id.*

Here, Movant's claims are typical of the claims asserted by the Class. Movant, like all members of the Class, alleges that Defendants violated the Exchange Act by issuing false and misleading statements about NYCB's business. Movant's interests are closely aligned with the other Class members' and Movant's interests are, therefore, typical of the other members of the Class.

### 2.     Movant Is Adequate

The adequacy of representation of Rule 23 is satisfied where it is established that a representative party has the ability to represent the claims of the class vigorously, has obtained adequate counsel, and there is no conflict between a potential representative's claim and those asserted on behalf of the class. *In re Cendant Corp. Litigation*, 264 F.3d. 201, 265 (3d Cir. 2001).

Here, Movant has communicated with competent, experienced counsel concerning this case, and made this motion to be appointed as Lead Plaintiff. Movant is not aware that any conflict exists between his claims and those asserted on behalf of the Class. Movant also sustained substantial financial losses from investments in NYCB's securities and is therefore, extremely motivated to pursue claims in this action.

Further, Movant has 4 years of investing experience. Movant has a high school diploma and is currently employed as an Autonomous Vehicle Operator.

### D.  Movant Is Presumptively the Most Adequate Plaintiff

The presumption in favor of appointing Movant as Lead Plaintiff may be rebutted only upon proof "by a purported member of the Plaintiffs' class" that the presumptively most adequate plaintiff:

(aa) will not fairly and adequately protect the interests of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The presumption that Movant is the most adequate Lead Plaintiff is not, therefore subject to rebuttal. Accordingly, Movant has suffered financial losses and has the largest financial interest in this case of any timely lead plaintiff.

The ability of Movant to represent the Class fairly and adequately is discussed above. Movant is not aware of any unique defenses Defendants could raise against it that would render Movant inadequate to represent the Class.

## III.   MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected The Rosen Law Firm, P.A. as Lead Counsel. The firm has been actively researching Movant's and Class Plaintiffs' claims, as well as reviewing publicly available financial and other documents while gathering information in support of the claims against Defendants. Furthermore, the firm has an extensive history bringing significant recoveries to investors and is experienced in the area of securities litigation and class actions, having been appointed as lead counsel in securities class actions in this District and in other courts throughout

12

the nation. *See* Ex. 4 hereto. The firm has prosecuted numerous securities fraud class actions and other complex litigation and obtained substantial recoveries on behalf of investors.

As a result of the firm's experience in litigation involving issues similar to those raised in this action, Movant's counsel has the skill and knowledge to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving Movant's selection of Lead Counsel, the members of the class will receive the best legal representation available.

<u>**CONCLUSION**</u>

For the foregoing reasons, Movant respectfully requests the Court issue an Order; (1) consolidating the related actions; (2) appointing Movant as Lead Plaintiff of the Class; (3) approving Movant's selection of The Rosen Law Firm, P.A. as Lead Counsel; and (4) granting such other relief as the Court may deem to be just and proper.

Dated: April 8, 2024     Respectfully submitted,

            **THE ROSEN LAW FIRM, P.A.**

            <u>/s/Phillip Kim</u>
            Phillip Kim, Esq. (PK 9384)
            Laurence M. Rosen, Esq. (LR 5733)
            275 Madison Avenue, 40th Floor
            New York, New York 10016
            Telephone: (212) 686-1060
            Fax: (212) 202-3827
            Email: pkim@rosenlegal.com
            Email: lrosen@rosenlegal.com

            *[Proposed] Lead Counsel for Lead Plaintiff*
            *and Class*

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/Phillip Kim