**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WALTER EDWARD LEMM, JR., Individually and on Behalf of All Others Similarly Situated, | No. 24-cv-00903-NRM-JRC |
| Plaintiff, | Judge Nina R. Morrison |
| vs. | <u>CLASS ACTION</u> |
| NEW YORK COMMUNITY BANCORP, INC., THOMAS R. CANGEMI, and JOHN J. PINTO, | <u>ORAL ARGUMENT REQUESTED</u> |
| Defendants. | |
| DALE MISKEY, Individually and on Behalf of All Others Similarly Situated, | No. 24-cv-01118-NRM-JRC |
| Plaintiff, | Judge Nina R. Morrison |
| vs. | <u>CLASS ACTION</u> |
| NEW YORK COMMUNITY BANCORP, INC., THOMAS ROBERT CANGEMI and JOHN J. PINTO, | <u>ORAL ARGUMENT REQUESTED</u> |
| Defendants. | |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF BOSTON RETIREMENT**
**SYSTEM'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD**
**PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ..................................................................................................................... 4

I.     SAND HOLLOW CANNOT SATISFY THE PSLRA LEAD PLAINTIFF
REQUIREMENTS AND ITS MOTION SHOULD BE DENIED ................................... 5

       A.    Sand Hollow Is Subject to Unique Defenses Concerning the Timing of Its
Class Period Transactions ..................................................................................... 5

       B.    Sand Hollow Is Owned and Operated by an Unknown Individual Who
Failed to Make the Requisite Adequacy Showing in Support of Its Motion ........ 10

II.    BOSTON SATISFIES THE PSLRA LEAD PLAINTIFF REQUIREMENTS
AND SHOULD BE APPOINTED AS LEAD PLAINTIFF ........................................ 13

       A.    Boston Is the Presumptive Lead Plaintiff ............................................................ 13

       B.    As the Only Institutional Investor Seeking Appointment as Lead Plaintiff,
Boston Is the Paradigmatic Lead Plaintiff ........................................................... 14

CONCLUSION ................................................................................................................... 16

`

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
    568 U.S. 455 (2013).................................................................................................7

*Basic, Inc. v. Levinson*,
    485 U.S. 224 (1988).................................................................................................7

*In re Bear Stearns Co., Inc. Sec., Derivative, & ERISA Litig.*,
    No. 08 M.D.L. 1963(RWS), 2009 WL 50132 (S.D.N.Y. Jan. 5, 2009) ...................2

*Bhangal v. Hawaiian Elec. Indus., Inc.*,
    No. 3:23-cv-04332-JSC, 2023 WL 8482871 (N.D. Cal. Dec. 7, 2023)..............9, 10

*In re Boeing Co. Aircraft Sec. Litig.*,
    No. 19 CV 2394, 2019 WL 6052399 (N.D. Ill. Nov. 15, 2019) ............................11

*Bowman v. Legato Sys., Inc.*,
    195 F.R.D. 655 (N.D. Cal. 2000)..........................................................................15

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)...............................................................................2, 4

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*,
    No. 20-cv-2031 (JSR), 2020 WL 2614703 (S.D.N.Y. May 22, 2020)...................3, 10, 11, 12

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
    No. 12 Civ. 0256 (LAK) (AJP), 2017 WL 3608298 (S.D.N.Y. Aug. 22, 2017)...................12

*Clifton v. Willis*,
    No. 22-cv-03161-DDD-JPO, 2024 WL 1508832 (D. Colo. Mar. 5, 2024) ...........................13

*Dura Pharm., Inc. v. Broudo*,
    544 U.S. 336 (2005).................................................................................................7

*Erickson v. Snap, Inc.*
    No. 2:17-cv-03679-SVW-AGR, 2017 WL 11592635 (C.D. Cal. Sept. 18,
    2017) ....................................................................................................................7, 8

*Faris v. Longtop Fin. Techs. Ltd.*,
    No. 11 Civ. 3658(SAS), 2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011) ...................2, 3, 7, 10

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    903 F.2d 176 (2d Cir. 1990)................................................................................2, 5

`

*George v. China Auto. Sys., Inc.*,
    No. 11 Civ. 7553 (KBF), 2013 WL 3357170 (S.D.N.Y. July 3, 2013) .....................................7

*In re Hebron Tech. Co., Ltd. Sec. Litig.*,
    No. 20 Civ. 4420 (PAE), 2020 WL 5548856 (S.D.N.Y. Sept. 16, 2020) ...............................9

*In re IMAX Sec. Litig.*,
    272 F.R.D. 138 (S.D.N.Y. 2010) .........................................................................................5

*Karp v. Diebold Nixdorf, Incorporated*,
    No. 19 Civ. 6180 (LAP), 2019 WL 6619351 (S.D.N.Y. Dec. 5, 2019) ..................................4

*Lundy v. Ideanomics, Inc.*,
    No. 20 Civ. 4944 (GBD), 2020 WL 7389027 (S.D.N.Y. Dec. 16, 2020) ...............................8

*Nayani v. LifeStance Health Grp., Inc.*,
    641 F. Supp. 3d 57 (S.D.N.Y. 2022)....................................................................................12

*Perez v. HEXO Corp.*,
    No. 19 Civ. 10965 (NRB), 2020 WL 905753 (S.D.N.Y. Feb. 25, 2020) ..............................11

*In re Petrobras Sec. Litig.*,
    104 F. Supp. 3d 618 (S.D.N.Y. 2015)....................................................................................7

*In re Pfizer Inc. Sec. Litig.*,
    233 F.R.D. 334 (S.D.N.Y. 2005) ...............................................................................14, 15, 16

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., Inc.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) ......................................................................................4, 12

*Randall v. Fifth St. Fin. Corp.*,
    No. 15-cv-7759(LANK), 2016 WL 462479 (S.D.N.Y. Feb. 1, 2016) ...................................16

*Schaffer v. Horizon Pharma Plc*,
    No. 16-CV-1763 (JMF), 2016 WL 3566238 (S.D.N.Y. June 27, 2016) ..................................4

*Silverberg v. DryShips Inc.*,
    No. 17-CV-4547 (SJF)(ARL), 2018 WL 10669653 (E.D.N.Y. Aug. 21, 2018) ...................13

*Villare v. ABIOMED, Inc.*,
    No. 19 Civ. 7319 (ER), 2020 WL 3497285 (S.D.N.Y. June 29, 2020) ...........................12, 13

## Rules & Statutes

Fed. R. Civ. P. 23 ..........................................................................................................................1

15 U.S.C. § 78u-4 *et seq.* .................................................................................................... .*passim*

## Docketed Cases

`

*In re Fannie Mae 2008 Sec. Litig.*,
  No. 1:08-cv-07831 (S.D.N.Y.) ............................................................................. 15

*In re Novo Nordisk Sec. Litig.,*
  No. 3:17-cv-00209 (D.N.J.) ........................................................................... 15, 16

*In re Nu Skin Enters., Inc., Sec. Litig.,*
  No. 2:14-cv-00033 (D. Utah). .......................................................................... 16

*In Re PTC Therapeutics, Inc. Sec. Litig.*,
  No. 2:16-cv-01224 (D.N.J.) .............................................................................. 16

**Other Authorities**

Ellen M. Ryan & Laura E. Symons, 2012 Cornerstone Rep. on Sec. Class
  Action Settlements 14 (Cornerstone Research 2013) ......................................... 15

Michael A. Perino, *Markets and Monitors: The Impact of Competition and
  Experience on Attorneys' Fees in Securities Class Actions* .................................... 15

*There Are Plaintiffs: An Empirical Analysis of Securities Class Action
  Settlements*, 61 Vand. L. Rev. 355, 378 (2008) ................................................ 15

`

Proposed Lead Plaintiff Boston Retirement System ("Boston") respectfully submits this Memorandum of Law in further support of its Motion for consolidation[1], appointment as Lead Plaintiff, and approval of selection of Labaton as Lead Counsel; and in opposition to all competing movants.[2]

## PRELIMINARY STATEMENT

Boston is entitled to appointment as Lead Plaintiff under the PSLRA because it is ***the only*** movant asserting the largest financial interest in this litigation that ***also*** satisfies the PSLRA's adequacy and typicality requirements. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (requiring the appointment of the movant that "has the largest financial interest" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure"). With losses of approximately $889,177 in connection with its Class Period purchases of NYCB securities and a record of successfully representing investors as a lead plaintiff in securities class actions in district courts across the country, there can be no doubt that Boston has a substantial financial interest in this litigation and is adequate and typical in all respects.

While Sand Hollow Management, LLC ("Sand Hollow"), the only remaining competing movant, may claim larger losses than Boston, a movant's losses are only the starting point of the PSLRA's analysis. Unlike Boston, Sand Hollow's lead plaintiff application is plagued by fatal, unique defenses that undermine its typicality and adequacy and therefore mandate disqualification.

---

[1] None of the movants oppose consolidation of the Related Actions. ECF Nos. 10, 13, 14, 20, 22, and 24. Unless otherwise noted, ECF references are to the docket of the first filed of the Related Actions, *Lemm, Jr. v. New York Community Bancorp, Inc.*, No. 24-cv-00903 (E.D.N.Y.).

[2] Unless otherwise noted, all defined terms and abbreviations remain unchanged from those in Boston's opening motion and supporting papers. *See* ECF No. 13. In addition to Boston, five other investors filed for Lead Plaintiff appointment on April 8, 2024. ECF Nos. 10, 14, 20, 22, and 24. Four of those investors have subsequently withdrawn their motion or filed a notice of non-opposition to the competing motions. *See* ECF Nos. 28-31. Accordingly, only Boston and Sand Hollow Management, LLC continue to vie for appointment.

`

*See In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001) ("If (for any reason) the court determines that the movant with the largest losses cannot make a threshold showing of typicality or adequacy, then the court should . . . disqualify that movant from serving as lead plaintiff."). As detailed below, serious questions about the timing of Sand Hollow's trading pattern and general capacity to adequately oversee the case will undoubtedly expose the Class to "unique defenses which threaten to become the focus of the litigation." *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990). Boston's appointment does not expose the Class to any such risks.

Here, Sand Hollow's superior financial interest rests entirely on a fatal trading quirk which renders it atypical and threatens to overwhelm the focus of the litigation. Specifically, Sand Hollow purchased ***100 percent*** of its NYCB securities ***after*** the Company's fraud was largely disclosed and is therefore subject to unique defenses concerning the timing of its transactions that undermine its typicality and adequacy. As demonstrated in the loss calculations accompanying its motion (*see* ECF No. 23-3), Sand Hollow made ***all*** of its Class Period purchases on January 31, 2024 and February 1, 2024. Thus, all its purchases came ***after*** NYCB's January 31, 2024 disclosures, which were released pre-market, revealing that NYCB "had recorded a $552 million provision for loan losses." Complaint, *Miskey v. New York Community Bancorp, Inc.*, No. 24-cv-01118 (E.D.N.Y.), ECF No. 1 ¶ 7 ("Complaint")[3]. Therefore, Sand Hollow's "post-disclosure purchases suggest that [it] invested in [company] securities notwithstanding notice of defendants'

---

[3] The allegations in the second-filed Complaint are referenced here because this Complaint alleges the longer filed class period of the two Related Actions. *See, e.g.*, *In re Bear Stearns Co., Inc. Sec., Derivative, & ERISA Litig.*, No. 08 M.D.L. 1963(RWS), 2009 WL 50132, at *8 (S.D.N.Y. Jan. 5, 2009) (noting that when initial complaints allege multiple class periods, "the lead plaintiff analysis should utilize the most inclusive class period because 'it encompasses more potential class members'") (citation omitted). In fact, the first filed of the two Related Actions ended its class period on January 30, 2024, ***before*** Sand Hollow purchased ***any*** of its NYCB shares. ECF No. 1 ¶ 1.

`

misstatements and omissions" and "[t]hese unusual trading patterns may well undermine the ability of [Sand Hollow] to assert the fraud-on-the-market presumption of reliance, thereby rendering [it] inadequate." *Faris v. Longtop Fin. Techs. Ltd*., No. 11 Civ. 3658(SAS), 2011 WL 4597553, at \*8 (S.D.N.Y. Oct. 4, 2011).

Further, Sand Hollow has failed to demonstrate that it is a sophisticated investor or that it has ***any*** experience overseeing litigation, and therefore failed to make the requisite showing of adequacy to support its motion for Lead Plaintiff. *City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*, No. 20-cv-2031 (JSR), 2020 WL 2614703, at \*3 (S.D.N.Y. May 22, 2020) (declining to appoint a movant which "lack[ed] meaningful litigation experience"). Based on its submissions to the Court, Sand Hollow is a consulting service owned by a single individual, Jason Stubbs, with no relevant litigation experience. *See* ECF Nos. 20, 21, and 23. Indeed, Sand Hollow seems to be a vehicle entirely owned and operated by Mr. Stubbs. ECF No. 23-4 ¶ 3 (Mr. Stubbs declaring he is the "principal and owner . . . of Sand Hollow Management, LLC"). For all relevant purposes, Sand Hollow is Mr. Stubbs (*id.* ¶ 4 (claiming Mr. Stubs has "been investing in the stock market for approximately 12 years and [manages his] own investments")) and Mr. Stubbs has simply failed to make the requisite showing of sophistication and resources sufficient to adequately protect the interests of the Class as Lead Plaintiff. Critically, Mr. Stubbs' adequacy to serve as Lead Plaintiff is further called into question by his troubling criminal history. *See* Section I.B.

In contrast, Boston is well-versed in the oversight of attorneys, and based on this experience has already taken significant steps in directing Labaton. First, Boston has negotiated a conservative fee agreement with Labaton. Second, Boston has instructed Labaton to continue its investigation into the allegations of the Related Actions and has reviewed several reports concerning updates to that investigation including Labaton's interviews of potential confidential

`

witnesses.  Finally, Boston has instructed Labaton to begin drafting an amended complaint considering the anticipated schedule to file the amended pleading.  Under the sequential PSLRA lead plaintiff process, Boston is the only movant to satisfy the statutory test and should be appointed as Lead Plaintiff.

## **ARGUMENT**

The goal of the PSLRA's lead plaintiff provision "is to locate a person or entity whose sophistication and interest in the litigation are sufficient to permit that person or entity to function as an active agent for the class." *In re Cendant Corp. Litig.*, 264 F.3d at 266.  To effectuate this goal, district courts are given broad discretion to reject lead plaintiff applicants upon a showing they are atypical, inadequate, or subject to unique defenses.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  The dispositive issue is whether there exists a "non-speculative risk that the movant [with the greatest financial loss] will not be adequate." *Schaffer v. Horizon Pharma Plc*, No. 16-CV-1763 (JMF), 2016 WL 3566238, at *3 (S.D.N.Y. June 27, 2016) (listing cases).  As many courts have noted, the standard of review "is a 'predictive and probabilistic' process that requires evaluation of 'potential' risks" that a movant's unique defense could threaten to become the focus of the litigation. *Karp v. Diebold Nixdorf, Incorporated*, No. 19 Civ. 6180 (LAP), 2019 WL 6619351, at *2 (S.D.N.Y. Dec. 5, 2019) (citation omitted).  The breadth of that inquiry underscores that the district court's "ultimate obligation to appoint as lead plaintiff [the candidate] who [is] most capable of representing the interests of the class members." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, Inc., 229 F.R.D. 395, 407 n.19 (S.D.N.Y. 2004) (internal citations and quotations omitted).

Here, Boston is the ***only*** movant that satisfies the financial interest, adequacy, and typicality requirements of the PSLRA and should be appointed as Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).   The appointment of Sand Hollow would severely undermine the

`

prosecution of the Class's claims because such a lead plaintiff may be disqualified or rejected at later stages of litigation—a finding that could force the Court to reopen the lead plaintiff selection process in this litigation a second time.  *See In re IMAX Sec. Litig.*, 272 F.R.D. 138, 155, 160 (S.D.N.Y. 2010) (denying class certification and reopening the lead plaintiff selection process where the previously appointed lead plaintiff was "at a minimum . . . subject to unique defenses"). Boston's appointment does not expose the Class to any such risks.

## I.   SAND HOLLOW CANNOT SATISFY THE PSLRA LEAD PLAINTIFF REQUIREMENTS AND ITS MOTION SHOULD BE DENIED

### A.   Sand Hollow Is Subject to Unique Defenses Concerning the Timing of Its Class Period Transactions

Sand Hollow's superior financial interest rests entirely on its purchases of NYCB securities on and after January 31, 2024, when NYCB disclosed massive problems with its real estate assets and capital levels.  Complaint ¶¶ 7-8.  This was by far the most qualitatively and quantitatively impactful corrective disclosure alleged in the Related Actions.  Many of Sand Hollow's purchases even came after multiple law firms publicly announced they were investigating NYCB for securities fraud.  *See* Securities Class Action Press Releases, attached as Exhibit A to the Declaration of Francis P. McConville which accompanies this memorandum ("McConville Decl.). For these reasons, Sand Hollow's post-disclosure purchases of NYCB securities subject it to unique defenses "that render [Sand Hollow] incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb); *Gary Plastic Packaging Corp.*, 903 F.2d at 179 (concluding that a plaintiff "was an inappropriate class representative since its claim is subject to several unique defenses including its continued purchases . . . despite having notice of, and having investigated, the alleged fraud").

The Complaint alleges that Defendants made materially false and misleading statements "about NYCB's business, financial condition and the impact of," two acquisitions it made in 2022

`

and 2023.  Complaint ¶ 4.  On January 31, 2024, before the opening of the market for trading, NYCB disclosed it had recorded a large provision for loan losses and therefore had incurred a significant loss in the fourth quarter of 2023.  *Id.* ¶ 7.  Further, the Company disclosed that it had "belatedly adjusted to its new capital and regulatory requirements as a result of the Signature Bank acquisition" requiring it to immediately increase its capital.   *Id.* ¶ 8.  These revelations largely disclosed NYCB's financial condition and the impact of its acquisitions.  This announcement was a pled corrective disclosure in the Complaint which alleged NYCB's stock price fell approximately $4 per share, or 39%, to close at $6.47 per share that day.  *Id.* ¶ 9.  The $4 per share stock drop accompanying the January 31, 2024 corrective disclosure dwarfed the two later drops alleged in the Complaint, an $0.82 drop on February 1, 2024 and a $1.20 drop on February 6, 2024.  *See id.* ¶¶ 10-12.

        As set forth in Sand Hollow's loss chart, Sand Hollow did not make ***any*** Class Period purchases of NYCB securities until January 31, 2024, ***after*** NYCB had made its major disclosure before the start of trading.  ECF No. 23-3.  That same day, prominent class action law firms issued press releases announcing that, based on this disclosure, they were investigating the Company for securities fraud.  *See* McConville Decl. Ex. A.  Notwithstanding this troubling revelation, its widespread dissemination, and the substantial decline in the value of NYCB stock, Sand Hollow proceeded to purchase, ***for the first time in the Class Period***, 500,000 shares of NYCB common stock that same day.  ECF No. 23-3.  The next day, Sand Hollow bought another ***200,000 shares*** of NYCB stock.  *Id.*  Thus, ***all*** of Sand Hollow shares were purchased after the fraud alleged in the Related Actions was almost entirely disclosed.[4]

---

[4]  In fact, the first filed of the two Related Actions ended its class period on January 30, 2024, which, if held as the operative class period, would entirely exclude Sand Hollow's purchases altogether.  ECF No. 1 ¶ 1.

`

These post-disclosure purchases make Sand Hollow subject to a disqualifying unique defense. Specifically, because of Sand Hollow's atypical trading history, Defendants will argue that Sand Hollow's post-disclosure purchases "suggest that [it] invested in [NYCB] notwithstanding notice of [D]efendants' misstatements and omission," thus undermining its ability to "assert the fraud-on-the-market presumption of reliance, thereby rendering them inadequate class representatives." *Longtop Fin. Techs. Ltd.*, 2011 WL 4597553, at *8. The fraud-on-the-market presumption of reliance is the bedrock of securities class action certification.[5] Indeed, "without the benefit of the presumption of reliance, requiring proof of individualized reliance from each member of the proposed plaintiff class effectively would [prevent plaintiffs] from proceeding with a class action, since individual issues then would have overwhelmed the common ones." *Erickson v. Snap, Inc.* No. 2:17-cv-03679-SVW-AGR, 2017 WL 11592635, at *3 (C.D. Cal. Sept. 18, 2017) (citation omitted). Thus, "'post-disclosure purchases can defeat the typicality requirement for class certification when plaintiffs made a disproportionally large percentage of their purchases post-disclosure.'" *Id.* (quoting *GAMCO Investors v. Vivendi, S.A.*, 917 F. Supp. 2d 246, 261 (S.D.N.Y. 2013)); *see also Longtop Fin. Techs. Ltd.*, 2011 WL 4597553, at *8 (finding a lead plaintiff movant subject to a unique defense when it had suffered 87% of its losses on securities purchased after a corrective disclosure).[6]

---

[5] Under Section 10(b) of the Exchange Act, reliance must be proven. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005); *Basic, Inc. v. Levinson*, 485 U.S. 224, 243 (1988). Plaintiffs may use the fraud-on-the-market theory, which entitles them to a rebuttable presumption of reliance. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 461 (2013).

[6] *See also, e.g.*, *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 623 (S.D.N.Y. 2015) (rejecting movant because its post-corrective disclosure "transactions raise serious questions regarding [the movant's] reliance on the alleged misrepresentations and omissions"); *George v. China Auto. Sys., Inc.*, No. 11 Civ. 7553 (KBF), 2013 WL 3357170, at *6 (S.D.N.Y. July 3, 2013) (denying class certification where proposed class representatives bought shares post-disclosure, stating that "this will require that each of the named plaintiffs expend considerable time on unique defenses—precisely the situation the case law does not condone").

`

To be clear, Boston does not take the position that any purchases after a partial disclosure are disqualifying.  Rather, Sand Hollow's trading renders it atypical because it purchased its *entire* position *after* the most impactful corrective disclosure in the Related Actions, which, as discussed, largely revealed Defendants' fraud.  Numerous courts have reached similar conclusions when disqualifying lead plaintiff movants with trading patterns even less extreme than Sand Hollow.  For example, the court in *Snap, Inc.* denied one movant's motion for lead plaintiff appointment when it had only purchased *60%* of its shares after news broke regarding the very information the complaint alleged to be fraudulent.  *Snap, Inc.*, 2017 WL 11592635, at *3.  The court noted that there was "no reason to subject the class to these unique defenses when a non-conflicted candidate for Lead Plaintiff is also before the Court."  *Id.* at *4.  The situation here is no different, as Sand Hollow suffers from the same defect as a potential lead plaintiff.  However, Sand Hollow is even more vulnerable to this unique defense than the movant in *Snap, Inc.* because it purchased *100 percent of its position* after a significant disclosure of Defendants' fraud.

Similarly, in *Lundy v. Ideanomics, Inc.*, the court declined to appoint a movant which purchased its entire position after a partial corrective disclosure.  No. 20 Civ. 4944 (GBD), 2020 WL 7389027, at *3 (S.D.N.Y. Dec. 16, 2020) ("While post-disclosure purchases are not a per se bar to an appointment as lead plaintiff, [movant] may be subject to a unique defense because he purchased *all* his class period shares after [a] partial corrective disclosures but before the . . . final corrective disclosure.").  There, the court rejected the movant in part because he made purchases after a partial disclosure which mentioned the fraudulent conduct further revealed in a later disclosure.  *See Id.* at *3 ("In the present case [earlier] disclosures mention the alleged fraudulent conduct.").  Similarly, the January 31, 2024 disclosure in the Related Actions revealed the problems with NYCB's assets, capital position, and its regulatory issues, the very topics of the

`

latter disclosures.  Complaint ¶¶ 7-8 ("NYCB disclosed that it had recorded a $552 million provision for loan losses . . . .  The Company also disclosed that NYCB had belatedly adjusted to its new capital and regulatory requirements.").   The February 1, 2024 decline was an announcement that Moody's Investors Service had "placed all of NYCB's corporate debt ratings. . . on review for possible downgrade to junk status," due to the revelations on January 31, 2024. Complaint ¶ 10.  This was fallout from the January 31, 2024 disclosure.  The February 6, 2024 stock decline was driven by a *Bloomberg* article reporting that NYCB's need to build capital was driven by "behind-the-scenes conversations with officials from the Office of the Comptroller of the Currency," a key banking regulator.  *Id.*  ¶ 11.  The January 31, 2024 disclosure had already revealed NYCB's regulatory issues.  Complaint ¶ 8.  The latter disclosure merely revealed the context of these issues.  Therefore, the key facts regarding Defendants' fraud were largely revealed on January 31, 2024, ***before*** Sand Hallow made any NYCB transactions.

Finally, the court in *In re Hebron Technology Co., Ltd. Securities Litigation* declined to appoint a movant which, like Sand Hollow, bought its entire position in the relevant securities the same day as the disclosure which lowered the price of those securities.  No. 20 Civ. 4420 (PAE), 2020 WL 5548856, at *6 (S.D.N.Y. Sept. 16, 2020) (declining to appoint a movant which "bought all his [relevant securities] . . . at almost precisely the same time that adverse news broke.").  The court in that case found that "there is a real risk that the idiosyncrasies of [the movant's] purchases would become . . .  a distraction at trial, were [the movant] appointed lead plaintiff, with his trading serving as a proxy for the class."  *Id.* at *7.  Similarly, Sand Hollow purchased its ***entire position*** in NYCB ***after*** the Company made the major disclosure which dropped its stock price.  ECF No. 23-3.  Therefore, Sand Hollow is atypical because ***all*** of its Class Period purchases came after a partial disclosure.  *See also Bhangal v. Hawaiian Elec. Indus., Inc.*, No. 3:23-cv-04332-JSC, 2023

`

WL 8482871, at *3 (N.D. Cal. Dec. 7, 2023) (finding a movant atypical because he "allege[d] his purchases occurred," after a partial disclosure of defendants' fraud).

Under these circumstances, appointing Sand Hollow as Lead Plaintiff would place the interests of the entire Class at unreasonable risk.  This risk is entirely unnecessary here, given that Boston, an experienced lead plaintiff, does not suffer from the same debilitating trading issues. *See Longtop Fin. Techs. Ltd.*, 2011 WL 4597553, at *8 (finding "no reason to subject the class to this potential defense where there is another movant" that does not suffer from the same potential unique defenses arising from post-disclosure trading).

### B.  Sand Hollow Is Owned and Operated by an Unknown Individual Who Failed to Make the Requisite Adequacy Showing in Support of Its Motion

Separate and apart from Sand Hollow's atypical trading pattern, Mr. Stubbs, Sand Hollow's owner and principal, has simply failed to show that he meets the PSLRA's requirement that he is capable of "adequately protect[ing] the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Evidence of a lead plaintiff movant's lack of adequacy includes "the 'available resources and experience of the proposed lead plaintiff . . . .'" *City of Warren Police & Fire Ret. Sys.*, 2020 WL 2614703, at *2 (citation omitted).  Examining such evidence "promotes consistency with the PSLRA's aim of ensuring a lead plaintiff can 'act like a 'real' client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation [i]s delivered at a reasonable price.'" *Id.* (citation omitted).  A lead plaintiff movant fails to meet the adequacy requirement if he lacks "meaningful litigation experience." *Id.* at *3.  Further, a lead plaintiff movant having "career experience that appears to have no bearing on the management of securities litigation," will "undermine [the movant's] claim that he can 'meaningfully oversee and control the prosecution of this consolidated class action.'" *Id.* (citation omitted).

`

Here, Mr. Stubbs has failed to show that he meets the PSLRA's adequacy requirement. Mr. Stubbs has submitted a declaration indicating he is "the principal and owner of Sand Hollow Management, LLC, which provides business consulting and management services," and that he has "owned and operated Invert Sports LLC for approximately 20 years. Invert Sports offers wakeboard and water ski and surf boats, watercraft rentals, boat charter, and wake sports." ECF No. 23-4 ¶ 3. Further, Mr. Stubbs claims he has "been investing in the stock market for approximately 12 years and [manages his] own investments." *Id.* ¶ 4. None of this experience makes Mr. Stubbs an adequate Lead Plaintiff.

Similar lead plaintiff movants have been summarily rejected. For example, in *Perez v. HEXO Corp.*, Judge Buchwald declined to appoint as lead plaintiff the movant with the largest financial interest because the court was skeptical that the movant "an individual investor about whom little is known – possesse[d] the requisite sophistication to serve as lead plaintiff . . . ." No. 19 Civ. 10965 (NRB), 2020 WL 905753, at *3 (S.D.N.Y. Feb. 25, 2020). Similar to Mr. Stubbs' case, the lead plaintiff movant in *Perez* had provided information as to his professional career and noted that he had years of investing experience. *Id.* The court found this proffer insufficient to demonstrate his adequacy. *Id.* [7]

Mr. Stubbs does not indicate that he has ***any*** experience overseeing lawyers or litigation. ECF No. 23-4. This is a far cry from demonstrating the "financial and legal sophistication," that courts look for to ensure that a lead plaintiff "will play a meaningful role in limiting the 'lawyer-driven litigation that the PSLRA was designed to curtail . . . .'" *Perez*, 2020 WL 905753, at *2 (citation omitted); *City of Warren Police & Fire Ret. Sys.*, 2020 WL 2614703, at *4 (declining to

---

[7] *See also In re Boeing Co. Aircraft Sec. Litig.*, No. 19 CV 2394, 2019 WL 6052399, at *5-8 (N.D. Ill. Nov. 15, 2019) (appointing an institutional investor lead plaintiff over individuals with larger losses, finding the individuals did not meet the adequacy requirement in part because of their seeming lack of experience).

`

appoint the lead plaintiff movant with the largest losses, in part, because that movant lacked experience with any relevance in litigation or managing securities litigation); *Nayani v. LifeStance Health Grp., Inc.*, 641 F. Supp. 3d 57, 63 (S.D.N.Y. 2022) ("The Court has significant doubts that [movant] will manage and monitor counsel in the way that Congress envisioned when it enacted the PSLRA [because she] does not have any experience managing attorneys in litigation."). Therefore, Mr. Stubbs, however well-intentioned he may be, simply fails to meet the PSLRA's lead plaintiff adequacy standard.

On top of Mr. Stubbs' complete lack of relevant experience, evidence of his criminal history calls into question his adequacy to serve the Class as Lead Plaintiff. Specifically, based on the investigation of Boston's counsel, Mr. Stubbs was placed on felony probation for child abuse in 2005. McConville Decl. Ex. B (results from a search of Mr. Stubbs' criminal history indicating a felony probation sentence in Utah state court for child abuse). Indeed, "'[a] class representative, once designated by the Court, is a fiduciary for the absent class members.'" *See Villare v. ABIOMED, Inc.*, No. 19 Civ. 7319 (ER), 2020 WL 3497285, at *6 (S.D.N.Y. June 29, 2020). Therefore, "honesty and trustworthiness are relevant factors in assessing a candidate's ability to serve as an adequate fiduciary for a class." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr.*, 229 F.R.D. at 416 (citation omitted); *City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, No. 12 Civ. 0256 (LAK) (AJP), 2017 WL 3608298, at *12 (S.D.N.Y. Aug. 22, 2017) ("[T]he Second Circuit has allowed for the consideration of characteristics such as honesty, trustworthiness, and credibility in judging the adequacy of a class representative.") (citation omitted).

Here, Mr. Stubbs' criminal history should disqualify his application for lead plaintiff in the Related Actions. Courts have found similar criminal histories and other forms of prior misconduct

`

immediately disqualifying during the PSLRA lead plaintiff analysis. *See ABIOMED, Inc.*, 2020 WL 3497285, at *7 (finding that a "criminal fraud conviction ten years ago remains extremely concerning for an individual seeking to serve as a fiduciary for absent class members"); *Silverberg v. DryShips Inc.*, No. 17-CV-4547 (SJF)(ARL), 2018 WL 10669653, at *10 (E.D.N.Y. Aug. 21, 2018) ("[C]ourts have found that an individual is an inadequate lead plaintiff due to unrelated misconduct which implicates the individual's ability to serve as a fiduciary."). Moreover, Mr. Stubbs' affirmative failure to disclose this history further weighs against a finding of adequacy. *See Clifton v. Willis*, No. 22-cv-03161-DDD-JPO, 2024 WL 1508832, at *11 (D. Colo. Mar. 5, 2024) (disqualifying lead plaintiff movant ***both*** because of past criminal convictions ***and*** the movant's failure to disclose this history in his initial motion papers).

Accordingly, Mr. Stubbs' criminal history renders him inadequate for the role of Lead Plaintiff, a fiduciary for the Class, and is disqualifying. The motion of Sand Hollow should be denied.

## II.    BOSTON SATISFIES THE PSLRA LEAD PLAINTIFF REQUIREMENTS AND SHOULD BE APPOINTED AS LEAD PLAINTIFF

### A.    Boston Is the Presumptive Lead Plaintiff

Boston is the only movant able to satisfy the PSLRA's statutory criteria for appointment as Lead Plaintiff. As indicated in its moving papers, Boston incurred $889,177 in losses as calculated on a LIFO basis as a result of its transactions in NYCB securities during the Class Period. *See* ECF No. 13-4 (Boston's Loss Analysis). Thus, Boston incurred a larger loss than any movant besides Sand Hollow. *See* ECF Nos. 12-2, 16-3, 22-4, 26-3. Boston is typical because its claims are premised on the same facts and legal theories as those the Class. *See* ECF No. 13-1 at 7-8. Finally, Boston is adequate because it is highly incentivized to vigorously prosecute this

`

litigation and oversee its qualified choice of counsel, and because it lacks any antagonism towards the Class.  *See id.* at 8-9.

Boston is a governmental defined benefit plan that provides retirement benefits to employees of the City of Boston, Massachusetts (and their beneficiaries).  Established in 1923, Boston has over $8 billion in total assets overseen for the benefit of more than 49,000 members. Thus, as a public pension system, Boston has nearly one hundred years of fiduciary experience, including the oversight of outside counsel, and undoubtedly possesses the sophistication and resources to effectively monitor counsel in complex litigation.

Moreover, Boston has already been effectively monitoring and directing counsel.  First, it determined to seek appointment as Lead Plaintiff only after several discussions with counsel and reviewing the progress of Labaton's investigation into the allegations in the Related Actions. Second, Boston negotiated a conservative fee agreement with proposed Lead Counsel in order to best protect the Class should counsel seek fee approval at the conclusion of the Action.  Third, Boston has instructed Labaton to continue investigating the Related Actions, and to begin drafting an amended consolidated complaint in anticipation of Lead Plaintiff and Lead Counsel appointment.

Accordingly, Boston, as a sophisticated institutional investor and fiduciary, is the most adequate plaintiff under the PSLRA and best suited to vigorously represent the Class.

> **B.      As the Only Institutional Investor Seeking Appointment as Lead Plaintiff, Boston Is the Paradigmatic Lead Plaintiff**

Understanding the value of institutional investor leadership, many courts have recognized that the PSLRA reflects a clear preference for institutional investors to be appointed as lead plaintiff in securities class actions.  *See In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005) (noting the PSLRA "was intended to ensure that institutional plaintiffs with expertise in the

`

securities market and real financial interests in the integrity of the market would control the litigation") (citation omitted).

Capital markets experts agree that class members benefit when institutional investors such as Boston serve as lead plaintiff, resulting in substantially larger settlements, and lower agency costs. *See* Ellen M. Ryan & Laura E. Symons, 2012 CORNERSTONE REP. ON SEC. CLASS ACTION SETTLEMENTS 14 (Cornerstone Research 2013) ("In our analysis of institutional investors, we continued to find that the presence of public pensions as lead plaintiffs is associated with significantly higher settlement amounts."); Michael A. Perino, *Markets and Monitors: The Impact of Competition and Experience on Attorneys' Fees in Securities Class Actions*, 15 ST. JOHN'S UNIV. SCH. OF LAW L. STUD. RES., Working Paper No. 06-0034, 2006 ("Because public pension funds appear *ex ante* to be the most capable and best positioned institutional lead plaintiffs on average all other things being equal, the participation of a public pension fund as lead plaintiff should be correlated with lower fee requests by class counsel and lower fee awards"); James D. Cox, Randall S. Thomas & Lynn Bai, *There Are Plaintiffs and ... There Are Plaintiffs: An Empirical Analysis of Securities Class Action Settlements*, 61 VAND. L. REV. 355, 378 (2008) ("We find that the presence of an institutional lead plaintiff increases settlement size overall.").

In this case, Boston's motion is the paradigm envisioned by the PSLRA: one "strong lead plaintiff" with one counsel to "actively manage the litigation on behalf of the class." *Bowman v. Legato Sys., Inc.*, 195 F.R.D. 655, 658 (N.D. Cal. 2000). Boston is familiar with the PSLRA's requirements given its long-standing involvement as a lead plaintiff in numerous landmark securities class actions across the Country, which have successfully recovered more than $500 million dollars for injured investors, including *In re Fannie Mae 2008 Securities Litigation*, No. 1:08-cv-07831 (S.D.N.Y.) (recovering $170 million for investors); *In re Novo Nordisk Securities*

`

*Litigation*, No. 3:17-cv-00209 (D.N.J.) (recovering $100 million for investors); *In re Nu Skin Enterprises, Inc., Securities Litigation*, No. 2:14-cv-00033 (D. Utah) (recovering $47 million for investors); and *In Re PTC Therapeutics, Inc. Securities Litigation*, No. 2:16-cv-01224 (D.N.J.) (recovering $14.75 million for investors), among others.  Consistent with its successful track record, Boston is precisely the kind of lead plaintiff envisioned by the PSLRA.  *See In re Pfizer Inc. Sec. Litig.*, 233 F.R.D at 338 (institutional investor with "extensive litigation experience, [that] has served as lead plaintiff in multiple securities class actions, and has overseen sizeable recoveries in several of these . . . is precisely the type of plaintiff envisioned under the PSLRA").

It is no surprise, therefore, that courts frequently appoint institutional investors over individuals, even in cases where the individual has a larger loss.  For example, in *Randall v. Fifth Street Finance Corp.*, Judge Kaplan appointed an institutional investor lead plaintiff over individual movants.  No. 15-cv-7759(LANK), 2016 WL 462479, at *3 (S.D.N.Y. Feb. 1, 2016). In making this decision, the court relied on "the Congressional preference for institutional lead plaintiffs in private securities class actions."  *Id.*

Here, Sand Hollow is essentially a single unknown individual with no relevant experience.  *See* Section I.B.  Therefore, Boston should be appointed in recognition of the PSLRA's preference for institutional investors, among other reasons discussed above.

<u>**CONCLUSION**</u>

For the reasons set forth above and in its opening brief, Boston respectfully requests that the Court consolidate the Related Actions, appoint Boston as Lead Plaintiff, approve Boston's selection of Labaton as Lead Counsel for the Class, and deny the competing motions.

DATED:  April 22, 2024                          Respectfully submitted,

                                                */s/ Francis P. McConville*
                                                **LABATON KELLER SUCHAROW LLP**

`

Eric J. Belfi
Francis P. McConville
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
ebelfi@labaton.com
fmcconville@labaton.com

*Counsel for Proposed Lead Plaintiff Boston
Retirement System and Proposed Lead
Counsel for the Class*