UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| WALTER EDWARD LEMM, JR., Individually and on Behalf of All Others Similarly Situated,<br><br>   Plaintiff,<br><br>   v.<br><br>NEW YORK COMMINUTY BANCORP, INC., THOMAS R. CANGEMI and JOHN J. PINTO,<br><br>   Defendants. | Case No. 1:24-cv-00903-NRM-JRC<br><br>Served on April 29, 2024 |
| DALE MISKEY, Individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>   v.<br><br>NEW YORK COMMINUTY BANCORP, INC., THOMAS ROBERT CANGEMI and JOHN J. PINTO,<br><br>   Defendants. | Case No. 2:24-cv-01118-NRM-JRC<br><br>Served on April 29, 2024 |

**SAND HOLLOW MANAGEMENT, LLC'S MEMORANDUM OF LAW IN REPLY TO COMPETING MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .................................................................................................................................. 3

    I.     SAND HOLLOW'S CLAIMS ARE TYPICAL OF THE CLASS ......................... 3

    II.    BRS FAILED TO OFFER ANY PROOF THAT SAND HOLLOW CANNOT ADEQUATELY REPRESENT THE INTERESTS OF THE CLASS ................... 7

          A.     Mr. Stubbs Provided More Than Sufficient Information About His Ability to be Lead Plaintiff ................................................................... 7

          B.     BRS's Spurious Mud Slinging Fails ............................................................. 8

    III.   SAND HOLLOW SHOULD BE APPOINTED LEAD PLAINTIFF AND ITS COUNSEL LEAD COUNSEL ................................................................................. 9

    IV.   SAND HOLLOW'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL SHOULD BE APPROVED ............................................................... 10

CONCLUSION ............................................................................................................................ 11

## TABLE OF AUTHORITIES

**Cases**                                                                                                       **Page(s)**

*In re AIG, Inc. Sec. Litig.*,
    265 F.R.D. 157 (S.D.N.Y. 2010) .................................................................................................6

*In re Allergan Plc Sec. Litig.*,
    No. 18 Civ. 12089 (CM), 2020 WL 5796763 (S.D.N.Y. Sept. 29, 2020) ...........................2, 3

*Bhangal v. Hawaiian Elec. Indus., Inc.*,
    No. 3:23-CV-04332-JSC, 2023 WL 8482871 (N.D. Cal. Dec. 7, 2023) .............................. 5-6

*Blackmoss Invs. Inc. v. ACA Capital Holdings, Inc.*,
    252 F.R.D. 188 (S.D.N.Y. 2008) .................................................................................................9

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Entm't, Inc.*,
    No. 20-cv-02031, 2020 WL 2614703 (S.D.N.Y. May 22, 2020) ...............................................7

*Clifton v. Willis*,
    No. 22-cv-03161-DDD-JPO, 2024 WL 1508832 (D. Colo. Mar. 5 2024) ...............................9

*In re Computer Sci. Corp. Sec. Litig.*,
    288 F.R.D. 112 (E.D. Va. 2012) ............................................................................................. 6-7

*In re Comverse Tech., Inc. Sec. Litig.*,
    No. 06-CV-1825 (NGG)(RER), 2008 WL 820015 (E.D.N.Y. Mar. 25, 2008) .........................6

*Constance Sczesny Trust v. KPMG LLP*,
    223 F.R.D. 319 (S.D.N.Y. 2004) .................................................................................................7

*Erickson v. Snap, Inc.*,
    No. 2:17-cv-03679-SVW-AGR,
    2017 WL 11592635 (C.D. Cal. Sept. 18, 2017) .........................................................................5

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    288 F.R.D. 26 (S.D.N.Y. 2012) ...................................................................................................6

*Faris v. Longtop Fin. Techs. Ltd.*,
    No. 11 CIV. 3658 SAS, 2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011) ........................................5

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    903 F.2d 176 (2d Cir. 1990 ..........................................................................................................5

*In re GE Sec. Litig.*,
    No. 09 Civ. 1951(DC), 2009 WL 2259502 (S.D.N.Y. July 29, 209) .......................................10

*In re Hebron Tech. Co., Ltd. Sec. Litig.*,
    No. 20 CIV. 4420 (PAE), 2020 WL 5548856 (S.D.N.Y. Sept. 16, 2020) ..................................5

*Lundy v. Ideanomics, Inc.*,
   No. 20 CIV. 4944 (GBD), 2020 WL 7389027 (S.D.N.Y. Dec. 16, 2020) ...........4, 5

*McCall v. Drive Fin. Servs., L.P.*,
   236 F.R.D. 246 (E.D. Pa. 2006) .................................................................................9

*Nevarez v. Forty Niners Football Co.*,
   326 F.R.D. 562 (N.D. Cal. 2018) ...............................................................................9

*Perez v. HEXO Corp.*,
   No. 19-cv-10965 (NRB), 2020 WL 905753 (S.D.N.Y Feb. 25, 2020) ......................8

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
   275 F.R.D. 187 (S.D.N.Y. 2011) .............................................................................10

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) ...............................................................................8

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ...............................................................................5

*Reitan v. China Mobile Games & Entm't Grp., Ltd.*,
   68 F. Supp. 3d 390 (S.D.N.Y. 2014) ........................................................................10

*Scuderi v. Mammoth Energy Serv., Inc.*,
   No. CIV-19-522-SLP, 2019 WL 4397340 (W.D. Okla. Sept. 13, 2019) ...............8, 9

*Silverberg v. DryShips Inc.*,
   No. 17-CV-4547S (SJF)(ARL),
   2018 WL 10669653 (E.D.N.Y. Aug. 21, 2018) .........................................................8

*Stemple v. QC Holdings, Inc.*,
   No. 12-CV-1997-CAB (WVG), 2013 WL 10870906 (S.D. Cal. June 17, 2013) ......9

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) ................................................................................9

**Other Authorities**

Rule 23(a)(4) .....................................................................................................................10

Anne Cullen, *More Judges Are Demanding Diversity Among Class Counsel*,
   Law360 (July 16, 2020) ...........................................................................................11

Ralph Chapoco, *Calls for Lawyer Diversity Spread to Complex Class Litigation*,
   Bloomberg Law (July 30, 2020) ..............................................................................11

Lead Plaintiff movant Sand Hollow Management, LLC ("Sand Hollow") respectfully submits this reply to the competing motion for Lead Plaintiff filed by Boston Retirement System ("BRS") (ECF No. 33, hereafter the "BRS Opp.") and in further support of its motion[1] (1) appointing Sand Hollow as Lead Plaintiff; (2) approving Sand Hollow's selection of the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel; and (3) granting such further relief as the Court may deem just and proper.[2]

**PRELIMINARY STATEMENT**

Of the five NYCB shareholders who originally moved to be appointed Lead Plaintiff in these Actions, only BRS continues to contest Sand Hollow's motion, even though BRS does not come close to the undisputed higher LIFO losses suffered by Sand Hollow – **$1,446,642.62** (ECF Nos. 23-2 (Sand Hollow PSLRA Certification), 23-3 (Sand Hollow Loss Calculation).[3]

Instead, BRS has concocted unsound arguments and resorted to mudslinging in a desperate attempt to knock out the presumptive Lead Plaintiff Sand Hollow. BRS claims that Sand Hollow cannot be Lead Plaintiff because its purchases, although indisputably made during the Class Period, raise a unique defense because they were made after the Company released some negative information in a quarterly report on January 31, 2024 (before the end of the Class Period), that caused the stock to drop. BRS Opp. at 3. However, even BRS concedes that

---

[1] All movants agree that consolidation of *Lemm v. New York Community Bancorp, Inc., et al.*, No. 1:24-cv-00903-NRM-JRC ("*Lemm* Action") and *Miskey v. New York Community Bancorp, Inc., et al.*, No. 2:24-cv-01118-NRM-JRC ("*Miskey* Action") is appropriate. Therefore, consolidation is not addressed herein.

[2] Unless stated otherwise, the following conventions apply: (1) all citations, internal quotation marks and footnotes are omitted; (2) all emphases are added; and (3) all "Ex. __" references are to the exhibits attached to the Declaration of James M. Wilson, Jr. in Support of Sand Hollow Management, LLC's Motion for (1) Consolidation of the Related Actions; (2) Appointment as a Lead Plaintiff; and (3) Approval of Lead Counsel (ECF No. 23). Also, all capitalized terms not defined herein have the meaning given to them in Sand Hollow Management's opening Lead Plaintiff papers at ECF No. 20, 21 and 23.

[3] References to "ECF No. __" are to the filings in the *Lemm* Action, which was the first-filed case.

1

purchases after a potential partial disclosure are not disqualifying. BRS Opp. at 8. Moreover, the negative information in the January 31 release may not make its way into the operative amended complaint that is yet to be filed and stands in sharp contrast to the type of corrective disclosures in the cases cited BRS that addressed prior fraud. *See* Section I. In those cases where a movant bought stock knowing about the fraud, there may have been genuine issues going to reliance. Here, there is no proof that Sand Hollow was not simply taking advantage of a drop in the stock price in an investment that it still considered to be sound in the long term based on the publicly available information.

BRS also has resorted to irrelevant claims and to slinging mud against the good reputation of Sand Hollow's owner with spurious accusations based on unreliable background check from a private third-party source. BRS Opp. at 10-13. BRS first claims that Sand Hollow's owner Jason Stubbs, failed to provide sufficient information about himself. It further claims that what information he did disclose reveals that he is inadequate because has does not have experience overseeing lawyers. *Id*. at 11. This argument should be rejected. Mr. Stubbs set forth more than sufficient information about himself to satisfy the Court that he can fulfill his duties to the class, including that he has operated his own sports store for nearly 20 years and has been investing in the stock market on his own behalf for nearly 12 years. Stubbs Decl., ECF No. 23-4.

The argument that Mr. Stubbs is disqualified because he has no experience supervising lawyers (BRS Opp. at 11-12) strains credulity. It was BRS after all that was disqualified from continuing to serve as a class representative for its failure to manage its lawyers. After being appointed lead plaintiff, BRS allowed its lawyers to defy an order from Judge McMahon in the *Allergan* case in the Southern District of New York by engaging multiple law firms to litigate a case when Judge McMahon had expressly forbidden BRS from doing so. *See In re Allergan Plc*

2

*Sec. Litig.,* No. 18 Civ. 12089 (CM)(GWG), 2020 WL 5796763 (S.D.N.Y. Sept. 29, 2020). This court need look no further than the *Allergan* decision to conclude that BRS is the movant that cannot supervise its lawyer and is inadequate to represent the class in this case. The law firm that Mr. Stubbs has chosen was ordered to be the new Lead Counsel in *Allergan* and BRS was replaced by a new Lead Plaintiff. *Id.*

Finally, BRS's false accusation that Mr. Stubbs was charged with child abuse is offensive and wrong. BRS Opp. at 12. Mr. Stubbs is herewith submitting a sworn declaration that the background report BRS has submitted could not be referring to him. Mr. Stubbs has never been charged with the crime reflected in the BRS submission and has no idea how his name came to be associated with such a crime, other than the fact that he has a fairly common name. *See* Reply Declaration of James M. Wilson, Jr. ("Wilson Reply Decl."), Ex. A (Declaration of Jason Stubbs). Had BRS reached out to Sand Hollow's counsel to inquire about this matter before publicly smearing Mr. Stubbs, he could have cleared this up in advance of BRS's filing. BRS chose not to communicate with Sand Hollow's counsel and instead opted for an unprofessional "gotcha" attempt, which has failed, and should be discouraged.

Sand Hollow clearly meets the PSLRA's stringent requirements to serve as Lead Plaintiff on behalf of NYCB shareholders in this case. Sand Hollow respectfully asks this Court to grant its motion to be appointed Lead Plaintiff and approve its selection of the Faruqi Firm as Lead Counsel.

## ARGUMENT

**I.      SAND HOLLOW'S CLAIMS ARE TYPICAL OF THE CLASS**

BRS argues that Sand Hollow's purchases were atypical because they were made after NYCB made "its major disclosure . . ." on January 31, 2024. BRS Opp. at 6. This argument fails.

BRS concedes that the information disclosed on January 31, 2024 would be partial disclosure and BRS does not take the position that any purchases after a partial disclosure are disqualifying. BRS Opp. at 8. That concession alone should put this argument to rest.

Indeed, BRS focuses on the timing of the purchases to deflect from the more critical question of what information was disclosed at the time of the purchase. The January 31, 2024 disclosure was the Company's quarterly report that contained disappointing operational metrics. There was no *mea culpa* of unlawful conduct in that release and there is no clear indication of fraud or allegation that those statements were not factually accurate – this is an omissions case and no doubt Defendants will contest that the January 31 disclosure should not be treated a partial corrective disclosure if it is alleged to be such in the amended complaint. *Miskey* Cmplt. ¶ 78. Sand Hollow, of course, does not concede this, but that is not the point. The point is that the allegations in this case stand in stark contrast to those of other cases where there was clear corrective information leaked to the market and the lead plaintiff movant in those cases chose to make market purchases despite indisputably having some knowledge of fraud. That is not clearly the case here and there is no evidence that Sand Hollow did not make its purchases during the Class Period based on reliance of an efficient market.

For example, in *Lundy v. Ideanomics, Inc.*, No. 20 CIV. 4944 (GBD), 2020 WL 7389027, at *3 (S.D.N.Y. Dec. 16, 2020), the court held that a lead plaintiff movant's purchases rendered him atypical because his purchases were made after some of the fraud was disclosed in a partial corrective disclosure, *i.e.,* after an article came out alleging various misrepresentations that the Defendant-company had made. As BRS acknowledges, the partial disclosure mentioned the fraud. BRS Opp. at 8. Here BRS does not claim that the January 31, 2024 disclosure contained a *mea culpa* disclosing the fraud or any accusation that the Defendants had engaged in fraud. *Id.*

4

BRS concedes that the January 31 disclosure revealed problems with NYCB's assets, capital position, and its regulatory issues. *Id.* That is a far cry from the fraud that was alleged in the *Ideanomics* case. The same goes with the other cases cited by BRS in which the tainted purchases were made on the day of or after the corrective disclosure revealing the fraud was made. *See In re Hebron Tech. Co., Ltd. Sec. Litig.*, No. 20 CIV. 4420 (PAE), 2020 WL 5548856, at *7 (S.D.N.Y. Sept. 16, 2020) and *Erickson v. Snap, Inc.,* No. 2:17-cv-03679-SVW-AGR, 2017 WL 11592635 (C.D. Cal. Sept. 18, 2017). Furthermore, it is questionable that Defendants would raise this a defense – Defendants are unlikely to take the position that the January 31 earnings release should be treated as a partial disclosure of a fraud in order to advance a typicality argument regarding purchases made after that disclosure.

Moreover, "[t]he typicality requirement of Rule 23(a)(3) is liberally construed; and 'typical' does not mean 'identical.'" *In re Prudential Sec. Inc. Ltd. P'ships Litig.,* 163 F.R.D. 200, 208 (S.D.N.Y. 1995). "The possibility of factual distinctions between [] claims of the named plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory may control even in the face of differences of fact." *Id.* Now that Sand Hollow has shown itself to be the movant with the considerably greater financial interest, BRS asserts that Sand Hollow is subject to unique defenses for purchasing shares after a disclosure that led to a stock drop.[4] *See* ECF No. 32 at 6-10. Courts in the Second Circuit have "consistently rejected the

---

[4] The authorities with which BRS principally rely upon present uniquely different circumstances to the case at bar. *See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 178 (2d Cir. 1990), *abrogated by Microsoft Corp. v. Baker*, 582 U.S. 23 (2017) (affirming denial of class certification where plaintiff "discovered that the CDs which [plaintiff] had bought through Merrill paid less interest than CDs which could be bought directly from the banks which issued them[,]" but "continued investing in Merrill's CD program" anyway); *Faris v. Longtop Fin. Techs. Ltd.*, No. 11 CIV. 3658 SAS, 2011 WL 4597553, at *4 (S.D.N.Y. Oct. 4, 2011) (finding the lead plaintiff movant with the second greatest losses who purchased their shares a week after Defendant's fraud was made public to be neither the plaintiff with the greatest financial interest and subject to unique defenses); *Bhangal v.*

5

argument that post-disclosure purchases preclude a proposed class representative from meeting Rule 23(a) requirements." *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 288 F.R.D. 26, 38 (S.D.N.Y. 2012) (quoting *In re K–V Pharm. Co. Sec. Litig.,* No. 11–1816, 2012 WL 1570118, at *6 (E.D. Mo. May 3, 2012)); *see also In re AIG, Inc. Sec. Litig.,* 265 F.R.D. 157, 169 (S.D.N.Y. 2010) (rejecting argument that proposed class representative was atypical based on post-disclosure purchases of defendant's stock.

It was only on February 5, 2024, after Sand Hollow purchased the bulk of its shares, that the market became fully aware of the scope of NYCB's fraud and their knowledge thereof, making clear that their "$552 million provision for loan losses" and the slashing of its otherwise "historically stable quarterly dividend" was a direct result of "mounting pressure from a top US watchdog" leading to a further revelation, on February 6, 2024, that NYCB's executive chairman was being replaced to "right the ship." ECF No. 1 at 3-4.

Moreover, Sand Hollow's purchase of NYCB stock after various firms published a press release announcing its investigation of NYCB does not render them atypical. Courts have concluded that stock purchases even "after [a] lawsuit was filed" does not destroy a plaintiff's typicality. *Facebook*, 288 F.R.D. 26 at 31 (finding purchases on day lawsuit was filed did not render plaintiff atypical); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2008 WL 820015, at *3 (E.D.N.Y. Mar. 25, 2008) (explaining that "the fact that [lead plaintiff] purchased shares of Comverse stock only after Comverse's March 14, 2006 press release does not suggest that it will not vigorously represent the interests of plaintiffs who purchased Comverse shares only before that press release."); *In re Computer Sci. Corp. Sec. Litig.*, 288

---

*Hawaiian Elec. Indus., Inc.*, No. 3:23-CV-04332-JSC, 2023 WL 8482871, at *3 (N.D. Cal. Dec. 7, 2023) (finding that lead plaintiff movant failed to meet the typicality requirement because he purchased his shares after the major corrective disclosure but before report downgrading defendant-company's stock based solely on press reports issued prior to movant's purchase of its shares).

6

F.R.D. 112, 123-24 (E.D. Va. 2012) (concluding that purchases after corrective disclosure and filing of lawsuit did not render lead plaintiff atypical).

BRS's argument that Sand Hollow is atypical based on the timing of its purchases should be rejected out of hand.

## II. BRS FAILED TO OFFER ANY PROOF THAT SAND HOLLOW CANNOT ADEQUATELY REPRESENT THE INTERESTS OF THE CLASS

### A. Mr. Stubbs Provided More Than Sufficient Information About His Ability to be Lead Plaintiff

In addition to possessing the indisputably largest financial interest in the outcome of the litigation, BRS has offered no proof – as required by the PSLRA – that Sand Hollow will not fairly and adequately protect the interests of the class. *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324-25 (S.D.N.Y. 2004) ("[C]onclusory assertions of inadequacy are, however, insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence of the existence of an actual or potential conflict of interest or a defense to which [the potential lead plaintiff] would be uniquely subject.").

First, the owner of Sand Hollow, Jason Stubbs, put in more than sufficient information in his declaration regarding his individual background and that he has been operating his own business for nearly 20 years. He also has been investing on his own account for approximately 12 years. *See* Declaration of Jason Stubbs in Support of Motion for Lead Plaintiff. ECF No. 23-4. Mr. Stubbs's background, his operations of his own business for 20 years (which undoubtedly has involved business disputes that he has had to supervise and resolve), stands in stark contrast to the facts of the cases cited by BRS where a court appointed a smaller institutional investor over a larger individual investor whose apparent only experience was as a wrestler which was the industry in the underly class action. *See City of Warren Police & Fire Ret. Sys. v. World Wrestling Entm't, Inc.*, No. 20-cv-02031, 2020 WL 2614703 (S.D.N.Y. May 22, 2020). Further,

7

contrary to the movant in *Perez v. HEXO Corp.*, No. 19-cv-10965 (NRB), 2020 WL 905753 (S.D.N.Y Feb. 25, 2020), where the movant failed initially to provide any information about himself and then only provide limited information when he had too, Mr. Stubbs offered his background declaration with his opening Lead Plaintiff motion papers.

### B. BRS's Spurious Mud Slinging Fails

BRS's claim that Mr. Stubbs was charged with child abuse is offensive and wrong. BRS Opp. at 12. Mr. Stubbs has now submitted a sworn declaration that he has never been charged with the crime reflected in the BRS submission (or any such felony for that matter) and has no idea how his name came to be associated with such a crime, other than that his name appears to be common. *See* Wilson Reply Decl., Ex. A, Decl. of Jason Stubbs. As mentioned above, had BRS reached out to Sand Hollow's counsel to inquire about this matter, Mr. Stubbs could have cleared this up in advance of BRS's filing. Instead, BRS chose to try to sling the mud without warning; the resulting attempt has failed.

Beyond that, those types of old criminal charges that do not concern issues of fraud or dishonesty are generally not relevant to lead plaintiff determination. *See, e.g., Silverberg v. DryShips Inc.*, No. 17-CV-4547S (SJF)(ARL), 2018 WL 10669653, at *10 (E.D.N.Y. Aug. 21, 2018) (quoting *In re Groupon, Inc. Sec. Litig.*, No. 12-C-2450, 2012 WL 3779311, at *4 (N.D. Ill. Aug. 28, 2012)). Courts generally reject the most adequate plaintiff presumption ***only where*** the proposed lead plaintiff is suspected of violating the precise laws he wishes to invoke. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 417 (S.D.N.Y. 2004); *see also Scuderi v. Mammoth Energy Serv., Inc.*, No. CIV-19-522-SLP, 2019 WL 4397340, at *5 (W.D. Okla. Sept. 13, 2019). Indeed, there is a "fairly high threshold" for

8

finding a proposed lead plaintiff inadequate because of criminal history.[5] *Scuderi*, 2019 WL 4397340, at *5. Specifically, courts disqualify movants on adequacy grounds where the crimes require proof of dishonesty such as fraud. *See, e.g. Stemple v. QC Holdings, Inc.*, No. 12-CV-1997-CAB (WVG), 2013 WL 10870906 (S.D. Cal. June 17, 2013) (finding class representative adequate despite 14-year-old conviction for sex with a minor); *McCall v. Drive Fin. Servs., L.P.*, 236 F.R.D. 246, 252 (E.D. Pa. 2006) (fifteen-year-old conviction for robbery did not give rise to a conflict between the proposed class representative and class members); *Nevarez v. Forty Niners Football Co.*, 326 F.R.D. 562, 583-84 (N.D. Cal. 2018) (finding that convictions for assault with a deadly weapon and DUI, occurring more than 20 years ago, did not render class representative inadequate).

### III. SAND HOLLOW SHOULD BE APPOINTED LEAD PLAINTIFF AND ITS COUNSEL LEAD COUNSEL

BRS does not dispute that Sand Hollow has the largest losses that may be recoverable in this Action. Sand Hollow also expended the most funds in connection with purchases of NYCB securities and purchased and retained the largest number of shares.

Sand Hollow also has shown that it meets the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Its claims "arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Blackmoss Invs. Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 191 (S.D.N.Y. 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

---

[5] *See also Clifton v. Willis*, No. 22-cv-03161-DDD-JPO, 2024 WL 1508832, at *11 (D. Colo. Mar. 5 2024), cited by BRS (BRS Opp. at 13) where the lead plaintiff movant was disqualified due to his prior serious criminal conviction, his apparent continued use of an alias and his failure to be forthright with counsel and the court regarding these issues during the lead plaintiff process. There are no such concerns for Mr. Stubbs.

Sand Hollow also will "fairly and adequately protect the interests of the class." and therefore meets Rule 23(a)(4)'s adequacy requirements. Adequate representation will be found if able and experienced counsel represent the proposed representative, and the proposed representative has no fundamental conflicts of interest with the interests of the class as a whole. *See Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 190 (S.D.N.Y. 2011) ("In considering the adequacy of a proposed lead plaintiff, a court must consider: (1) whether the lead plaintiff's claims conflict with those of the class; and (2) whether class counsel is qualified, experienced, and generally able to conduct the litigation."); *In re GE Sec. Litig.*, No. 09 Civ. 1951(DC), 2009 WL 2259502, at *5 (S.D.N.Y. July 29, 209) (Plaintiff "satisfies the adequacy requirement because its interests are aligned with those of the putative class, and it has retained competent and experienced counsel.").

In light of the foregoing, Sand Hollow respectfully submits that it is the presumptive Lead Plaintiff and should be appointed Lead Plaintiff for the Action.

### IV.  SAND HOLLOW'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL SHOULD BE APPROVED

As thoroughly briefed in Sand Hollow's prior lead plaintiff filings in this case, the Faruqi Firm – Sand Hollow's chosen counsel – is a minority-owned and woman-owned law firm[6], and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. *See* Ex. E, Firm Resume of Faruqi & Faruqi, L.L.P.; *see also Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F. Supp. 3d 390, 401 (S.D.N.Y. 2014) (appointing the Faruqi Firm as sole lead counsel and noting: "Faruqi & Faruqi has extensive experience in the area of securities litigation and class actions.

---

[6] *See* Ex. F (certificate from Women's Business Enterprise National Council certifying the Faruqi Firm as a woman-owned business) (renewal pending).

10

The firm's resume indicates that it has litigated more than ten prominent securities class actions since its founding in 1995. Faruqi & Faruqi achieved successful outcomes in many of these cases.").

The Faruqi Firm, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. The Faruqi Firm has a proven track record of successfully representing its clients in these matters and is nationally recognized for its excellence. Not only does the firm have the experience and expertise necessary to obtain significant successes for its clients, it has a demonstrated commitment to diversity and inclusion that clients and judges increasingly seek from the bar.[7] Class members in securities class actions have diverse backgrounds, and that diversity should be reflected in class counsel. Currently, over 40% of the firm's partnership positions are held by women and minorities, and the firm is committed to growing this figure in the coming years. *See* https://www.faruqilaw.com/our-attorneys. The Faruqi Firm is proud to be made up of such a diverse group of legal professionals and strongly believes that its clients are better served because of it.

## CONCLUSION

For the foregoing reasons, Sand Hollow respectfully requests that the Court: (1) consolidate the above-captioned, related actions; (2) appoint it as Lead Plaintiff; (3) approve its selection of the Faruqi Firm as Lead Counsel for the putative Class; and (4) grant such other relief as the Court may deem just and proper.

---

[7] *See* Anne Cullen, More Judges Are Demanding Diversity Among Class Counsel, Law360 (July 16, 2020), https://www.law360.com/articles/1292926/more-judges-are-demanding-diversity-among-class-counsel; Ralph Chapoco, Calls for Lawyer Diversity Spread to Complex Class Litigation, Bloomberg Law (July 30, 2020), https://www.bloomberglaw.com/document/XA1TPNEG000000?bna_news_filter=social-justice&jcsearch=BNA.

Dated: April 29, 2024

Respectfully submitted,

**FARUQI & FARUQI, LLP**

By: /s/ *James M. Wilson, Jr.*
James M. Wilson, Jr.

James M. Wilson, Jr.
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: jwilson@faruqilaw.com

Robert W. Killorin (*pro hac vice* forthcoming)
**FARUQI & FARUQI, LLP**
3565 Piedmont Road NE Building Four
Suite 380
Atlanta, GA 30305
Telephone: 404-847-0617
Facsimile: 404-506-9534
Email: rkillorin@faruqilaw.com

*Attorneys for [Proposed] Lead Plaintiff Sand Hollow Management, LLC and [Proposed] Lead Counsel for the putative Class*