**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WALTER EDWARD LEMM, JR., Individually and on Behalf of All Others Similarly Situated, | No. 24-cv-00903-NRM-JRC |
| Plaintiff, | Judge Nina R. Morrison |
| vs. | Magistrate Judge James R. Cho |
| NEW YORK COMMUNITY BANCORP, INC., THOMAS R. CANGEMI, and JOHN J. PINTO, | CLASS ACTION |
| Defendants. | ORAL ARGUMENT REQUESTED |
| DALE MISKEY, Individually and on Behalf of All Others Similarly Situated, | No. 24-cv-01118-NRM-JRC |
| Plaintiff, | Judge Nina R. Morrison |
| vs. | Magistrate Judge James R. Cho |
| NEW YORK COMMUNITY BANCORP, INC., THOMAS ROBERT CANGEMI and JOHN J. PINTO, | CLASS ACTION |
| Defendants. | ORAL ARGUMENT REQUESTED |

**BOSTON RETIREMENT SYSTEM'S OPPOSITION TO THE MOTION OF SAND HOLLOW MANAGEMENT, LLC FOR RECONSIDERATION OF THE COURT'S MAY 7, 2024 MEMORANDUM AND ORDER APPOINTING LEAD PLAINTIFF**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ......................................................................................................................... 2

I.    SAND HOLLOW HAS PRESENTED NO BASIS FOR RECONSIDERATION
      OF THE MAY 7 ORDER........................................................................................... 2

      A.    Standards For Reconsideration .................................................................... 2

      B.    The Court Correctly Determined That Sand Hollow Is Subject To A
            Unique Defense............................................................................................. 3

II.   SAND HOLLOW'S RECYCLED ARGUMENTS DO NOT WARRANT A
      DIFFERENT RESULT................................................................................................ 5

      A.    The Court Properly Weighed The Strength Of The January 31 Disclosure
            In The May 7 Order ....................................................................................... 6

      B.    Sand Hollow's Repeated Attacks On The January 31 Disclosure Fall Short
            And Were Properly Rejected In The May 7 Order ........................................ 7

      C.    The Court Properly Noted The Congressional Preference For Institutional
            Investor Lead Plaintiffs................................................................................ 12

CONCLUSION..................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Batter v. Hecla Mining Co.*,
  No. 19-CV-4883, 2021 WL 516546 (S.D.N.Y. Feb. 11, 2021)...................................1, 3, 11, 12

*In re Bear Stearns*,
  No. 08 M.D.L. 1963, 2009 WL 2168767 (S.D.N.Y. July 16, 2009) ........................................7

*Bhangal v. Hawaiian Elec. Indus., Inc.*,
  No. 23-cv-04332, 2023 WL 8482871 (N.D. Cal. Dec. 7, 2023)...............................................7

*In re Comverse Tech., Inc. Sec. Litig.*,
  No. 06-CV-1825, 2008 WL 820015 (E.D.N.Y. Mar. 25, 2008).............................................10

*In re Delphi Corp. Sec. Derivative & ERISA Litig.*,
  No. 05-cv-1725, 2007 WL 171330 (E.D. Mich. Jan. 18, 2007) .............................................5

*Dietrich v. Bauer*,
  192 F.R.D. 119 (S.D.N.Y. 2000) ..........................................................................................11

*Erickson v. Snap, Inc.*
  No. 17-cv-03679, 2017 WL 11592635 (C.D. Cal. Sept. 18, 2017) ........................................7

*Faris v. Longtop Fin. Techs. Ltd.*,
  No. 11-cv-3658, 2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011).................................................7

*In re: Gen. Motors LLC Ignition Switch Litig.*,
  No. 14-MD-2543, 2016 WL 1441804 (S.D.N.Y. Apr. 12, 2016)..........................................12

*Gross v. AT&T Inc.*,
  No. 19-CV-2892, 2019 WL 3500496 (S.D.N.Y. July 31, 2019).............................................4

*In re Hebron Tech. Co., Ltd. Sec. Litig.*,
  No. 20-cv-4420, 2020 WL 5548856 (S.D.N.Y. Sept. 16, 2020) ...............................4, 6, 7, 11

*Karp v. Diebold Nixdorf, Inc.*,
  No. 19-cv-6180, 2019 WL 6619351 (S.D.N.Y. Dec. 5, 2019).................................................4

*Lawrence v. Phillip Morris Cos., Inc.*,
  No. 94-CV-1494, 1999 WL 51845 (E.D.N.Y. Jan. 9, 1997)..................................................11

*In re LightInTheBox Holding Co., Ltd. Sec. Litig.*,
  No. 13-cv-6016, 2014 WL 129043 (S.D.N.Y. Jan. 14, 2014)..................................................2

*LM Ins. Corp. v. Safety Nat'l Cas. Corp.*,
   No. 21-cv-1802, 2023 WL 8440864 (E.D.N.Y. Dec. 6, 2023) ..................................................3

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
   328 F.R.D. 86 (S.D.N.Y. 2018) ...........................................................................................11

*Peters v. Jinkosolar Holding Co.*,
   No. 11-cv-7133, 2012 WL 946875 (S.D.N.Y. Mar. 19, 2012) ................................................5

*In re Petrobras Sec. Litig.*,
   104 F. Supp. 3d 618 (S.D.N.Y. 2015) ....................................................................................4

*In re Pfizer Inc. Sec. Litig.*,
   233 F.R.D. 334 (S.D.N.Y. 2005) .........................................................................................12

*Pirnik v. Fiat Chrysler Autos., N.V.*,
   327 F.R.D. 38 (S.D.N.Y. 2018) ...........................................................................................11

*Randall v. Fifth St. Fin. Corp.*,
   No. 15-cv-7759, 2016 WL 462479 (S.D.N.Y. Feb. 1, 2016) ................................................12

*Schaffer v. Horizon Pharma Plc*,
   No. 16-CV-1763, 2016 WL 3566238 (S.D.N.Y. June 27, 2016) ......................................2, 3, 4

*In re Sesen Bio, Inc. Sec. Litig.*,
   No. 21-cv-7025, 2022 WL 3996712 (S.D.N.Y. Sept. 1, 2022) .......................................1, 3, 5

*Shapiro v. TG Therapeutics, Inc.*,
   No. 22-cv-6106, 2022 WL 16555585 (S.D.N.Y. Oct. 31, 2022) ...........................................12

*In re Tronox, Inc. Sec. Litig.*,
   262 F.R.D. 338 (S.D.N.Y. 2009) .......................................................................................9, 10

*In re Weatherford Int'l Sec. Litig.*,
   No. 11-cv-1646, 2011 WL 2652443 (S.D.N.Y. July 6, 2011) ..........................................7, 12

**Rules and Statutes**

Local Civil Rule 6.3 .................................................................................................................2

Fed. R. Civ. P. 59(e) ...............................................................................................................2

15 U.S.C. § 78u-4 *et seq.* ...............................................................................................4, 5, 6, 12

Court appointed Lead Plaintiff Boston Retirement System ("Boston") respectfully submits this memorandum of law in opposition to the motion by Sand Hollow Management, LLC ("Sand Hollow") for reconsideration of the Court's May 7, 2024 Memorandum and Order appointing Boston Lead Plaintiff and approving Boston's selection of Labaton Keller Sucharow LLP ("Labaton") as Lead Counsel (ECF No. 44) (the "May 7 Order").[1]  The motion is without merit and should be denied.

## PRELIMINARY STATEMENT

Sand Hollow's motion fails to meet the standard for reconsideration and highlights why reconsideration motions are disfavored in this Circuit.  *See, e.g. In re Sesen Bio, Inc. Sec. Litig.*, No. 21-cv-7025, 2022 WL 3996712, at *1 (S.D.N.Y. Sept. 1, 2022) ("A motion for reconsideration is 'an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'") (citation omitted); *Batter v. Hecla Mining Co.*, No. 19-CV-4883, 2021 WL 516546, at *3 (S.D.N.Y. Feb. 11, 2021) ("A motion for reconsideration is an extraordinary remedy.").  In the May 7 Order, the Court correctly held that Boston successfully established "proof of a *risk* of unique defenses to rebut the presumption of Sand Hollow's adequacy." ECF No. 44 at 14 (emphasis in original).  Further, the Court appointed Boston as Lead Plaintiff and approved its selection of Labaton as Lead Counsel.  Since that time, Boston has conferred with Defendants regarding a schedule as directed in the Stipulation and Order entered on March 12, 2024 (ECF No. 9), filed the corresponding stipulation with Defendants regarding

---

[1] Unless otherwise noted, all references to ECF Nos. are to the docket in *Lemm, Jr. v. New York Community Bancorp, Inc.*, No. 24-cv-00903 (E.D.N.Y.).  All defined terms and abbreviations remain unchanged from those in Boston's opening motion and supporting papers.  *See* ECF No. 13.

1

scheduling on May 28, 2024 (ECF No. 51), and has been diligently preparing a consolidated amended complaint.

Disappointed with the Court's ruling, Sand Hollow now seeks reconsideration of the Court's decision to appoint Boston as Lead Plaintiff.  However, Sand Hollow's reconsideration motion amounts to nothing more than a rehash of the same facts and arguments this Court carefully considered and rejected in the May 7 Order.  Sand Hollow has simply failed to identify any intervening change in the law, new facts, clear error, or manifest injustice, necessary to trigger reconsideration.  Accordingly, Sand Hollow's motion serves as an impermissible effort to re-litigate issues already decided by the Court.  The extreme remedy of reconsideration is not warranted under these circumstances and the motion should be denied.

**ARGUMENT**

**I.    SAND HOLLOW HAS PRESENTED NO BASIS FOR RECONSIDERATION OF THE MAY 7 ORDER**

**A.    Standards For Reconsideration**

"Motions for reconsideration are governed by Federal Rule of Civil Procedure 59(e) and Local Civil Rule 6.3, which are meant to 'ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters.'" *Schaffer v. Horizon Pharma Plc*, No. 16-CV-1763, 2016 WL 3566238, at *1 (S.D.N.Y. June 27, 2016) (citation omitted).  Motions for reconsideration are "generally not favored and [are] properly granted only upon a showing of exceptional circumstances."  *In re LightInTheBox Holding Co., Ltd. Sec. Litig.*, No. 13-cv-6016, 2014 WL 129043, at *1 (S.D.N.Y. Jan. 14, 2014) (citing *Marrero Pichardo v. Ashcroft*, 374 F.3d 46, 55 (2d Cir.2004)).  A motion for reconsideration may only be granted upon a finding of at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence; or (3) the need

2

to correct a clear error or to prevent manifest injustice. *See In re Sesen Bio, Inc.*, 2022 WL 3996712, at *1 (citation omitted). "Courts narrowly construe and strictly apply these principles in order to avoid 'repetitive arguments on issues that have already been considered fully by the court.'" *Hecla Mining Co.*, 2021 WL 516546, at *2 (citation omitted); *LM Ins. Corp. v. Safety Nat'l Cas. Corp.*, No. 21-cv-1802, 2023 WL 8440864, at *1 (E.D.N.Y. Dec. 6, 2023) ("The standard for reconsideration is 'strict' to 'dissuade repetitive arguments on issues' that the court already has 'considered fully.'") (citation omitted).

Applying that standard, Sand Hollow presents no valid grounds for reconsideration and its motion must be denied. Sand Hollow does not argue that reconsideration is warranted based on an intervening change in the law or new facts. Rather, it claims that the Court "overlooked the statute, the case law, and the complaints' allegations," in making its determination. ECF No. 47 at 4. As discussed below, the Court's determination that Boston had successfully rebutted Sand Hollow's presumptive lead plaintiff status was based upon an analysis of record evidence, well within the Court's discretion, and not "plain error." Sand Hollow should not be permitted a "second bite at the apple" simply because it regrets the Court's decision. *Hecla Mining Co.*, 2021 WL 516546, at *1 ("[A] motion for reconsideration is 'not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple.'") (citation omitted).

**B.    The Court Correctly Determined That Sand Hollow Is Subject To A Unique Defense**

The May 7 Order correctly determined that Boston provided the requisite proof to rebut the presumption of Sand Hollow's adequacy. ECF No. 44 at 14. At the lead plaintiff stage, courts fulfill a "gatekeeping function in class action litigation" and "the Court may have some discretion as gatekeeper in securities class actions." *Horizon Pharma Plc*, 2016 WL 3566238, at *1 (citation

3

omitted).   The dispositive issue here is whether the Court properly found, in exercising its discretion as gatekeeper, that Sand Hollow is subject to ***potential*** attacks on its typicality.  *Id.* at *3 (discussing burden of proof necessary to rebut PSLRA presumption and noting that "[m]any courts have rejected appointments of lead plaintiffs based on *potential* risks") (emphasis in original); *Gross v. AT&T Inc.*, No. 19-CV-2892, 2019 WL 3500496, at *2 (S.D.N.Y. July 31, 2019) (the Court must ask whether Sand Hollow is "subject to" a "non-speculative" unique defense from defendants that "may" be successful); *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 623-24 (S.D.N.Y. 2015) (rejecting movant with largest individual financial interest where movant's prior "statements would provide fodder" for class certification challenge).

In the May 7 Order, the Court appropriately analyzed whether Boston had provided the requisite proof demonstrating that Sand Hollow is inadequate or subject to a unique defense.  ECF No. 44 at 10-14; *Horizon Pharma Plc*, 2016 WL 3566238, at *3 ("[T]o rebut the presumption in favor of the movant with the greatest financial loss, there must be 'proof' of a non-speculative risk that the movant will not be adequate.").  Specifically, the Court analyzed whether Boston had shown "proof of a *risk* of unique defenses to rebut the presumption of Sand Hollow's adequacy." ECF No. 44 at 14 (emphasis in original); *Karp v. Diebold Nixdorf, Inc.*, No. 19-cv-6180, 2019 WL 6619351, at *2 (S.D.N.Y. Dec. 5, 2019) ("[D]etermining whether the presumption has been rebutted is a 'predictive and probabilistic' process that requires evaluation of 'potential' risks.") (citation omitted).  Courts frequently treat the required "'proof' as synonymous with 'evidence.'" *Horizon Pharma Plc*, 2016 WL 3566238, at *2 (citation omitted); *In re Hebron Tech. Co., Ltd. Sec. Litig.*, No. 20-cv-4420, 2020 WL 5548856, at *8 (S.D.N.Y. Sept. 16, 2020) (equating proof with "non-speculative evidence").

As a result of this analysis, the May 7 Order properly found, in line with the majority of cases analyzing the same issue at the lead plaintiff stage, that "the argument that Sand Hollow relied on NYCB's misstatements may be questionable and, therefore, subject the class to unnecessary additional litigation and threaten class certification." ECF No. 44 at 13-14.  This risk stems from the fact that **all** of Sand Hollow's trades occurred after the strongest and most impactful corrective disclosure of Defendants' fraud on January 31, 2024 (the "January 31 Disclosure"). This determination fits squarely within the discretion awarded District Courts at the lead plaintiff stage under bedrock PSLRA jurisprudence and does not come close to the type of "plain error" needed to trigger the extraordinary reconsideration remedy.  *See, e.g.*, *Peters v. Jinkosolar Holding Co.*, No. 11-cv-7133, 2012 WL 946875, at *11 (S.D.N.Y. Mar. 19, 2012) (rejecting motion to reconsider a decision which was "consistent with the PSLRA, as it has been interpreted"); *In re Delphi Corp. Sec. Derivative & ERISA Litig.*, No. 05-cv-1725, 2007 WL 171330, at *2 (E.D. Mich. Jan. 18, 2007) (denying motion to reconsider lead plaintiff appointment where decision was "wholly consistent with the statute and its underlying policies").

Based on this record, the Court need not even consider the arguments raised in Sand Hollow's reconsideration motion as "sufficient cause exists to deny [Sand Hollow's] motion for reconsideration . . . without reaching the merits of the arguments." *In re Sesen Bio, Inc.,* 2022 WL 3996712, at *2.

## II.    SAND HOLLOW'S RECYCLED ARGUMENTS DO NOT WARRANT A DIFFERENT RESULT

Even if the Court were to consider Sand Hollow's arguments, the outcome would be the same.  Sand Hollow's argument is premised on two primary contentions relating to the Court's treatment of the January 31 Disclosure: (1) the May 7 Order failed to consider the strength of the January 31 Disclosure in Sand Hollow's unique trading analysis (*see* ECF No. 47 at 1 and 5); and

(2) had the Court properly assessed the January 31 Disclosure, it would have found no unique defense sufficient to rebut the PSLRA presumption because the disclosure "d[id] not actually reveal fraud." *Id.* at 2. These arguments stem from a blatant misreading of the May 7 Order, basic misunderstanding of the underlying theory and allegations in the Related Actions, and, in any event, improperly repeat the very same arguments briefed extensively during the lead plaintiff process, discussed at length during the May 3, 2024 hearing on the lead plaintiff motions (the "May 3 Hearing"), and rejected by the Court in the May 7 Order. Sand Hollow's final point regarding Boston's status as an institutional investor is similarly misplaced and does nothing to alter the ultimate outcome in the May 7 Order.

> **A.    The Court Properly Weighed The Strength Of The January 31 Disclosure In The May 7 Order**

Even with comprehensive briefing and submissions from both movants on the subject (*see, e.g.,* ECF No. 32 at 5-6; ECF No. 36 at 4-5), and extensive colloquy between the Court and counsel during the May 3 Hearing (*see* May 3 Hearing Transcript, attached as Exhibit A to the Declaration of Francis P. McConville, at 5:10 – 14:5 and 16:14 – 23:2) ("Transcript"), Sand Hollow contends that the Court "accepted [Boston's] argument . . . without weighing the strength of the January 31 [D]isclosure." *See* ECF No. 47 at 1. Sand Hollow's contention is plainly belied by this record and fundamentally disregards the Court's findings in the May 7 Order, wherein the Court specifically referenced the strength of the January 31 Disclosure (ECF No. 44 at 12 ("[T]he January 31 [Disclosure] is highly germane to the allegations of fraud in the present case.")) and thereafter found Sand Hollow inadequate and subject to a potential unique defense. *See* ECF No. 44 at 14.

This is precisely the type of analysis courts undertake in finding lead plaintiff movants atypical or inadequate and sits squarely within analytical framework employed by courts at the lead plaintiff stage. *See, e.g. In re Hebron Tech. Co*, 2020 WL 5548856, at *7 ("[T]here is a real

6

risk that the idiosyncrasies of [movant's] purchases would become . . . a distraction at trial."); *Faris v. Longtop Fin. Techs. Ltd.*, No. 11-cv-3658, 2011 WL 4597553, at *8 (S.D.N.Y. Oct. 4, 2011) (finding that "post-disclosure purchases . . . may well undermine the ability of [movant] to assert the fraud-on-the-market presumption of reliance, thereby rendering them inadequate class representatives); *Bhangal v. Hawaiian Elec. Indus., Inc.*, No. 23-cv-04332, 2023 WL 8482871, at *3 (N.D. Cal. Dec. 7, 2023) (finding a movant atypical because he "allege[d] his purchases occurred," after a partial disclosure of defendants' fraud); *Erickson v. Snap, Inc.* No. 17-cv-03679, 2017 WL 11592635, at *4 (C.D. Cal. Sept. 18, 2017) (same).

Sand Hollow's disagreement with the Court's process in the May 7 Order fails to demonstrate the type of "clear error" that should be corrected on a motion for reconsideration. *See In re Bear Stearns*, No. 08 M.D.L. 1963, 2009 WL 2168767, at *2 (S.D.N.Y. July 16, 2009) (rejecting reconsideration of lead plaintiff order where movant failed to "point to any controlling decisions or pertinent facts that the Court overlooked"); *In re Weatherford Int'l Sec. Litig.*, No. 11-cv-1646, 2011 WL 2652443, at *1-2 (S.D.N.Y. July 6, 2011) (denying motions for reconsideration of lead plaintiff order where "the Movants have utterly failed to meet the burden that pertains to motions for reconsideration").

### B.    Sand Hollow's Repeated Attacks On The January 31 Disclosure Fall Short And Were Properly Rejected In The May 7 Order

Sand Hollow's recycled argument minimizing the importance of the January 31 Disclosure is equally unpersuasive.  Contrary to Sand Hollow's assertion that the January 31 Disclosure does not render Sand Hollow atypical because it "does not mention fraud or sufficiently correct prior false and misleading statements," the January 31 Disclosure is clearly the strongest and most impactful disclosure of Defendants' fraud alleged in the Related Actions.  This issue was previously briefed before this Court (*see, e.g.,* ECF Nos. 32 and 36), discussed at length during the

7

May 3 Hearing (*see* Transcript at 5:10 – 14:5 and 16:14 – 23:2), considered by the Court in the May 7 Order (ECF No. 44 at 12), and ultimately rejected. *Id.* at 13-14.

As Boston has previously argued (ECF No. 32 at 5-6), the complaints in the Related Actions allege that Defendants made materially false and misleading statements "about NYCB's business, financial condition and the impact of," two acquisitions it made in 2022 and 2023. *Miskey v. New York Community Bancorp, Inc.*, No. 24-cv-01118 (E.D.N.Y.), ECF No. 1 ¶ 4 (the "Complaint."). The January 31 Disclosure revealed that NYCB had recorded a large provision for loan losses and a large loss in the fourth quarter of 2023. *Id.* ¶ 7. The January 31 Disclosure also revealed that NYCB had failed to timely adjust to new regulatory and capital standards which resulted from the acquisitions, requiring it to immediately increase its capital. *Id.* ¶ 8. Based on the foregoing, the January 31 Disclosure indisputably ***revealed*** that Defendants' Class Period representations about NYCB's business, financial condition, and regulatory compliance were ***false and misleading***. *See* ECF No. 44 at 13 n. 6-7 (citing what Defendants are alleged to have concealed in the Related Actions). In response, NYCB's stock price fell approximately $4 per share, or 39%, to close at $6.47 per share that day. Complaint ¶ 9. Any rational reading of these allegations would conclude that the January 31 Disclosure amounted to the most qualitatively and quantitatively impactful corrective disclosure alleged in the Related Actions.[2]

Sand Hollow's additional argument that the January 31 Disclosure only revealed information known to investors (ECF No. 47 at 9-11) is inaccurate and premised on a mischaracterization of the allegations in the complaints in the Related Actions. Sand Hollow now

---

[2] The critical importance of the January 31 Disclosure is further underscored by the multiple press releases issued the same day announcing securities fraud investigations into NYCB (*see* ECF No. 32-2), along with the fact that the first-filed Related Action ended the Class Period prior to this disclosure. *See* ECF No. 1 ¶ 1.

argues that no new information was revealed on that day because investors already knew NYCB was a Category IV bank prior to that date and subject to a new regulatory status. ECF No. 47 at 9. This point completely misstates the nature and substance of the January 31 Disclosure. Boston has never argued, nor do the allegations in the Related Actions support, Sand Hollow's contention that the January 31 Disclosure merely revealed NYCB's "new regulatory status." Rather, the January 31 Disclosure revealed that NYCB *failed to comply* with its new regulatory status, along with its deteriorating financial condition, poor asset quality, and need to improve its capital position. Complaint ¶¶ 78-80. Indeed, the May 7 Order properly noted these revelations in the January 31 Disclosure. *See* ECF No. 44 at 13.

None of the cases cited by Sand Hollow indicate the Court erred in issuing the May 7, Order, as they all involve movants that purchased after relatively weak partial disclosures which failed to effectively correct prior misrepresentations. In *Tronox*, the movant purchased securities after a partial disclosure which revealed the defendant company had concealed *several million* dollars in environmental liabilities. *See In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 341-42 (S.D.N.Y. 2009). Unlike the January 31 Disclosure, this partial disclosure was itself a continuation of the fraud at issue, as further disclosures revealed that defendants actually faced *hundreds of millions* of dollars in environmental liability. *Id.* at 342. In contrast, and as the Court noted in the May 7 Order, the January 31 Disclosure fully revealed that NYCB had overstated its financial position throughout the Class Period. *See* ECF No. 44 at 12-13. Unlike *Tronox*, no subsequent disclosure revealed larger liabilities as the market firmly understood the financial issues at NYCB after the January 31 Disclosure.[3]

---

[3] In fact, the *Tronox* case *actually supports* the May 7 Order, as the court there recognizes that partial disclosures that "sufficiently correct [defendants'] prior false and misleading statements",

Sand Hollow's other citations fare no better. In *Ciccarello v. Alibaba Grp. Holding Ltd.*, the partial disclosure at issue revealed that defendants attended a meeting with regulators, while the later disclosure revealed a regulatory investigation. No. 20-cv-9568, 2022 WL 409087, at *1, 3 (S.D.N.Y. Feb. 10, 2022). In contrast, the January 31 Disclosure **revealed** that Defendants' Class Period statements claiming regulatory compliance (*see, e.g.* Complaint ¶ 55) were **false**. *Id.* ¶ 79 ("The Company also disclosed that NYCB was just then adjusting to the demands of being a large bank after its purchase of assets and liabilities from Signature Bank."). Similarly, the partial disclosure at issue in the *Comverse* case revealed that the defendant company had established "a special committee" to review certain issues related to the company's stock option grants. *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825, 2008 WL 820015, at *2 (E.D.N.Y. Mar. 25, 2008). This disclosure did not actually reveal the options-backdating scheme that was the focus of the case. *Id.* at *2-3. In contrast, the January 31 Disclosure revealed that NYCB's claims about its financial position were false by exposing the financial impact of the new regulatory regime on NYCB. Lastly, the court in *In re VEON Ltd. Securities Litigation*, also cited by Sand Hollow, did not even evaluate the strength of the partial disclosures at issue and therefore cannot support Sand Hollow's claims. No. 15-cv-8672, 2022 WL 1284547, at *6 (S.D.N.Y. Apr. 29, 2022). Simply put, the **strength** and **extent** of the January 31 Disclosure separates this case from any authority cited by Sand Hollow and plainly supports the conclusion that Sand Hollow is subject to a unique trading defense.

Sand Hollow's additional argument that atypical trading patterns do not uniformly prevent courts from finding an investor to be an adequate class representative (*see* ECF No. 47 at 7-8),

---

as here, would "render [movant] atypical or subject it to unique defenses." *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. at 346.

10

similarly fails to diminish the risk that Sand Hollow is subject to a unique trading defense. Although not every lead plaintiff movant that purchased securities after a partial disclosure has been found inadequate, the May 7 Order properly disqualified Sand Hollow from appointment due to the "***risk***" its unusual trading pattern posed the Class.  ECF No. 44 at 14 (emphasis added).  As the court in *In re Hebron Technology Co.,* noted "that there is conflicting authority on this point does not show that [movant] is not subject to an *arguable* or *potential* unique defense.  If anything, the conflicting authority on this point may enhance the risk that, were [movant] to lead the class, this issue would divert attention from the merits of the core claims in this case or saddle the class with a representative whose claims carried a unique infirmity."  2020 WL 5548856, at *7 n.7. Sand Hollow's trading is particularly atypical because it "made *all* of its purchases in NYCB securities on or after the date of first alleged corrective disclosure."  ECF No. 44 at 11 (emphasis in original).[4]

At bottom, Sand Hollow's repeated efforts to dimmish the strength of the January 31 Disclosure are not only wrong on the merits, but illustrate precisely why reconsideration motions are so disfavored in this Circuit.  *See Hecla Mining Co.*, 2021 WL 516546, at *1 ("[A] motion for reconsideration is 'not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple.'") (citation

---

[4] Regardless, Sand Hollow failed to cite a single case which appointed a sole class representative that, like Sand Hollow, bought ***all*** of its relevant securities ***after*** the strongest partial disclosure. *See Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 328 F.R.D. 86, 92 (S.D.N.Y. 2018) (appointing as class representative an investor that "bought stock before the first corrective disclosure"); *Pirnik v. Fiat Chrysler Autos., N.V.*, 327 F.R.D. 38, 43 n.2 (S.D.N.Y. 2018) (appointing as class representative an investor that "purchased additional shares" of the relevant securities after a partial disclosure); *Dietrich v. Bauer*, 192 F.R.D. 119, 122 (S.D.N.Y. 2000) (appointing as class representative an investor that purchased relevant securities both before and after a partial disclosure); *Lawrence v. Phillip Morris Cos., Inc.*, No. 94-CV-1494, 1999 WL 51845, at *6 (E.D.N.Y. Jan. 9, 1997) (allowing an investor to intervene as an additional class representative).

omitted); *In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MD-2543, 2016 WL 1441804, at *5 (S.D.N.Y. Apr. 12, 2016) (denying reconsideration where movant "suggest[ed] no law or facts that the Court overlooked in issuing its prior orders"); *In re Weatherford*, 2011 WL 2652443, at *1-2 ("First and foremost, these motions for reconsideration do not present any issues that were unavailable for the parties to discuss [previously] or that were overlooked by the Court."). Therefore, Sand Hollow's motion should be denied.

### C. The Court Properly Noted The Congressional Preference For Institutional Investor Lead Plaintiffs

Finally, the May 7 Order appropriately acknowledged the Congressional preference for institutional investors like Boston.  Indeed, many courts have recognized that the PSLRA reflects a clear preference for institutional investors to be appointed as lead plaintiff in securities class actions.  *See In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005) (noting the PSLRA "was intended to ensure that institutional plaintiffs with expertise in the securities market and real financial interests in the integrity of the market would control the litigation") (citation omitted); *Randall v. Fifth St. Fin. Corp.*, No. 15-cv-7759, 2016 WL 462479, at *3 (S.D.N.Y. Feb. 1, 2016); *Shapiro v. TG Therapeutics, Inc.*, No. 22-cv-6106, 2022 WL 16555585, at *6 (S.D.N.Y. Oct. 31, 2022).

Sand Hollow attempts to characterize the May 7 Order as having appointed Boston merely because it is an institutional investor.  ECF No. 47 at 12 ("[Boston's] status as an institutional investor should not have affected the Court's determination to appoint [Boston.]").  This is incorrect.  The May 7 Order first finds Sand Hollow atypical and subject to a unique defense (ECF No. 44 at 14) and only then notes the "Congressional preference for institutional investors like [Boston]." *Id*.  Thus, the May 7 Order is not premised on the preference for institutional investors, but instead merely points out that Boston's appointment aligns with that preference.

**CONCLUSION**

For the foregoing reasons, the Court should reject Sand Hollow's motion for reconsideration of the Court's appointment of Boston as Lead Plaintiff.  Sand Hollow has not met any of the requirements for reconsideration and may not properly ask the Court to reconsider its decision simply because Sand Hollow does not like the result.

DATED:  June 3, 2024                              Respectfully submitted,

                                                          */s/ Francis P. McConville*
                                                          **LABATON KELLER SUCHAROW LLP**
                                                          Eric J. Belfi
                                                          Francis P. McConville
                                                          140 Broadway
                                                          New York, New York 10005
                                                          Telephone: (212) 907-0700
                                                          Facsimile: (212) 818-0477
                                                          ebelfi@labaton.com
                                                          fmcconville@labaton.com

                                                          *Counsel for Lead Plaintiff Boston*
                                                          *Retirement System and Lead Counsel for the*
                                                          *Class*

13