**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WALTER EDWARD LEMM, JR., Individually and on Behalf of All Others Similarly Situated, | Case No. 1:24-cv-00903-NRM-JRC |
| Plaintiff, | |
| v. | |
| NEW YORK COMMINUTY BANCORP, INC., THOMAS R. CANGEMI and JOHN J. PINTO, | |
| Defendants. | |
| DALE MISKEY, Individually and on behalf of all others similarly situated, | Case No. 1:24-cv-01118-NRM-JRC |
| Plaintiff, | |
| v. | |
| NEW YORK COMMINUTY BANCORP, INC., THOMAS ROBERT CANGEMI and JOHN J. PINTO, | |
| Defendants. | |

**SAND HOLLOW MANAGEMENT, LLC'S**
**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION**
**FOR RECONSIDERATION OF THE COURT'S MAY 7, 2024, MEMORANDUM AND**
**ORDER APPOINTING LEAD PLAINTIFF**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ........................................................................................................................... 2

    I.      RECONSIDERATION IS NECESSARY BECAUSE THE COURT ERRED
           IN APPLYING THE PSLRA REBUTTAL TEST ................................................... 2

    II.     THE DEFENSE MUST BE UNIQUE TO THE PRESUMPTIVE LEAD
           PLAINTIFF AND THREATEN TO BECOME THE FOCUS OF THE
           LITIGATION .......................................................................................................... 4

    III.    THE MARKET KNEW PRIOR TO JANUARY 31, 2024 THAT NYCB WAS
           SUBJECT TO HEIGHTENED REGULATIONS .................................................... 7

    IV.    THERE IS NO CONGRESSIONAL PREFERENCE FOR INSTITUTIONAL
           INVESTORS ........................................................................................................... 9

CONCLUSION ....................................................................................................................... 10

i

## TABLE OF AUTHORITIES

**Cases**                                                                       **Page(s)**

*Atanasio v. Tenaris S.A.*,
331 F.R.D. 21 (E.D.N.Y. 2019) ................................................................................9

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000) .....................................................................................5

*Chauhan v. Intercept Pharmaceuticals*,
No. 21-cv-00036 (LJL), 2021 WL 235890 (S.D.N.Y. Jan. 25, 2021) .......................6

*Ciccarello v. Alibaba Grp. Holding Ltd.*,
No. 20 Civ. 9568 (GBD), 2022 WL 409087 (S.D.N.Y. Feb. 10, 2022) ....................3

*City of Livonia Employees' Retirement System v. Wyeth*,
284 F.R.D. 173 (S.D.N.Y. 2012) .........................................................................5, 6

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-CV-1825 (NGG)(RER), 2008 WL 820015 (E.D.N.Y. Mar. 25, 2008) ....................3, 8

*In re Gentiva Sec. Litig.*,
281 F.R.D. 108 (E.D.N.Y. 2012) ............................................................................9

*Gross v. AT&T Inc.*,
No. 19-CV-2892 (VEC), 2019 WL 3500496 (S.D.N.Y. July 31, 2019) ...................5

*In re Pfizer Inc. Sec. Litig.*,
282 F.R.D. 38 (S.D.N.Y. 2012) ..............................................................................5

*In re Sequans Commc's S.A. Sec. Litig.*,
289 F. Supp. 3d 416 (E.D.N.Y. 2018) ....................................................................9

*Shrader v. CSX Transp., Inc.*,
70 F.3d 255 (2d Cir. 1995) .....................................................................................2

*In re Symbol Technologies, Inc. Securities Litigation*,
No. 05-3923 (DRH)(AKT), 2015 WL 3915477 (E.D.N.Y. June 25, 2015) ..............6

*In re Tronox, Inc. Sec. Litig.*,
262 F.R.D. 338 (S.D.N.Y. 2009) ............................................................................3

*Van Buskirk v. United Grp. of Cos., Inc.*,
935 F.3d 49 (2d Cir. 2019) .....................................................................................2

*In re VEON Ltd Sec. Litig.*,
No. 15 Civ. 8672 (ALC) (OTW), 2022 WL 1284547 (S.D.N.Y. Apr. 29, 2022) .....................3

**Statutes**

15 U.S.C. § 78u–4(a)(3)(B)(iii)(II) ...............................................................................................3

## PRELIMINARY STATEMENT

Sand Hollow Management, LLC ("Sand Hollow") respectfully submits this reply memorandum of law in response to BRS's Opposition ("BRS Opposition" or "BRS Opp.") to Sand Hollow's Motion for Reconsideration of the Court's May 7 Order appointing BRS lead plaintiff ("Sand Hollow's Motion").[1]

BRS opposes reconsideration by attempting to ignore critical errors in the May 7 Order and continuing to mischaracterize the statutory test to rebut the presumption in favor of Sand Hollow.  BRS also mischaracterized the complaint's allegations in order to avoid reversal:

- BRS ignores the plain error made by the Court in declining to weigh the strength and extent of the January 31, 2024, disclosure ("January 31 Disclosure") and its improper preference for BRS as an institutional investor, which are grounds for reconsideration;

- BRS continues to incorrectly argue – and the Court appears to have accepted – that the mere risk of any unique defense is disqualifying, when the correct PSLRA test as applied by courts in this circuit requires proof of a unique defense that is so serious it will become the focus of the litigation that renders a movant incapable of adequately representing the class, which is not present in this case when the supposed defense goes to the presumption of reliance;

- Had the Court properly weighed the strength and extent of the January 31 Disclosure, it would have concluded that the risk of a unique defense dissipates entirely because

---

[1]      Unless otherwise noted, all references to ECF Nos. are to the docket in *Lemm, Jr. v. New York Community Bancorp, Inc.*, No. 24-cv-00903 (E.D.N.Y.). All defined terms and abbreviations are the same as those from Sand Hollow's Lead Plaintiff motion papers and Motion for Reconsideration. *See* ECF Nos. 21, 34, 36, 47.

the market was aware, well before the January 31 Disclosure, that NYCB's total assets had exceeded the $100 billion threshold subjecting it to the heightened Category IV regulatory requirements, which disclosure BRS does not dispute; and

- The Court incorrectly noted "a countervailing *Congressional* preference for institutional investors" (emphasis added) like BRS, when in fact it is the courts, not Congress, that have leaned in favor of institutional investors and have done so only when the institutional investor had a slightly lower loss, which is obviously not the case here.

At bottom, Sand Hollow has clearly demonstrated grounds for this Court to reconsider and reverse its May 7 Order and BRS's arguments to the contrary are not well founded.

## ARGUMENT

## I.    RECONSIDERATION IS NECESSARY BECAUSE THE COURT ERRED IN APPLYING THE PSLRA REBUTTAL TEST

BRS argues that the Court appropriately analyzed the requisite proof that Sand Hollow is subject to a unique defense and therefore Sand Hollow has not met the test for granting reconsideration. BRS Opp. 3-4, 6. **Not so.**

Reconsideration is proper where "the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *See Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 54, 56 (2d Cir. 2019) (district court should have considered evidence going to jurisdiction); *see also Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) ("[i]n light of CSXT's introduction of additional relevant case law and substantial legislative history, we cannot say that the district court's decision to reconsider its earlier ruling was an abuse of discretion.").

2

Because of its larger losses, Sand Hollow is the presumptive Lead Plaintiff and the PSLRA required BRS to present **proof** that Sand Hollow was subject to a unique defense that renders it incapable of adequately representing the class. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). Here, while the Court recognized that the parties dispute the strength of the January 31 Disclosure and whether Sand Hollow will be entitled to the presumption of reliance, the Court nevertheless did not analyze the strength and extent of the January 31 Disclosure.

Noting that the current complaint's allegations "largely center on NYCB's **failure to disclose** that its acquisition of Signature required it to **comply with heightened regulatory standards**, causing NYCB to overstate its financials during the class period" (May 7 Order 12) (emphasis added), and noting in passing the distinction between this case and the *Lundy* and *Hebron* cases (which had partial disclosures containing accusations of fraud), the Court merely pointed out that the January 31 Disclosure was "highly germane." May 7 Order 6. Contrary to BRS's claim (BRS Opp. 6), the Court's reference to the January 31 Disclosure as "germane" is not an analysis of its strength and the extent of the information that was disclosed and comes nowhere near the in-depth analysis conducted by other courts in this Circuit when weighing the strength and extent of a partial disclosure to determine if there is proof of inadequacy. *See In re Tronox, Inc. Sec. Litig.,* 262 F.R.D. 338 (S.D.N.Y. 2009); *Ciccarello v. Alibaba Grp. Holding Ltd.*, No. 20 Civ. 9568 (GBD), 2022 WL 409087, at *3 (S.D.N.Y. Feb. 10, 2022); *In re VEON Ltd Sec. Litig.*, No. 15 Civ. 8672 (ALC) (OTW), 2022 WL 1284547, at *6 (S.D.N.Y. Apr. 29, 2022); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2008 WL 820015, at *3 (E.D.N.Y. Mar. 25, 2008).

Moreover, the Court left little doubt that it did not weigh the strength and extent of the January 31 Disclosure when it went on to state: "In any event, the importance of the various

3

disclosures will not be adjudicated at this stage of the litigation." May 7 Order 14. However, the importance of the various disclosures is critical to determine if those statements qualify as corrective disclosures at all. If not, no defense based on them would stand that do not constitute *proof* that Sand Hollow cannot adequately represent the class – indeed, although BRS claims that the January 31 Disclosure "is clearly the strongest and most impactful disclosure of Defendants' fraud alleged," this assertion is premature and appears to be based solely on the amount of the stock drop rather than an analysis of whether that drop was actually caused by the disclosure of fraud, as opposed to other reasons. BRS Opp. 7-8.

In order to determine if there was proof that Sand Hollow is subject to a unique defense such that it is incapable of adequately representing the class, the Court should have analyzed the strength and extent of the January 31 Disclosure as courts in this circuit regularly do. The Court did not engage in this analysis and BRS's boilerplate arguments and cherry-picked quotes from a litany of inapposite caselaw cannot salvage this clear error. BRS Opp. 3-5.

## II. THE DEFENSE MUST BE UNIQUE TO THE PRESUMPTIVE LEAD PLAINTIFF AND THREATEN TO BECOME THE FOCUS OF THE LITIGATION

BRS concedes that "not every lead plaintiff movant that purchased securities after a partial disclosure has been found inadequate", but nevertheless incorrectly argues that Sand Hollow was properly disqualified due to the risk that it is subject to a unique trading defense based on its purchases after the weak partial disclosure on January 31, 2024. BRS Opp. 10-11. BRS's argument is disingenuous, reflects the incorrect PSLRA test, is not supported by evidence, and should be rejected.

Defendants raise numerous defenses against shareholders at the class certification stage. Therefore, it is inaccurate to argue that the potential for a unique defense is disqualifying. The

4

correct PSLRA test as applied by courts in this circuit requires proof of a unique defense that is so serious it will become the focus of the litigation.

> where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation," certification for the class is improper because he or she can no longer act in the best interest of the class.

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 59 (2d Cir. 2000). For example, in *Gross v. AT&T Inc.*, No. 19-CV-2892 (VEC), 2019 WL 3500496, at *2 (S.D.N.Y. July 31, 2019), the court held that the presumptive lead plaintiff was disqualified because "[t]he risk that [the movant] may lack standing to pursue this action under controlling precedent is serious." *See also In re Pfizer Inc. Sec. Litig.,* 282 F.R.D. 38, 45 (S.D.N.Y. 2012) ("[a] court will deny class certification where a class representative may be subject to a unique defense that would 'pose an unacceptable risk of drawing attention away from the central issues in [the] litigation.'" (quoting *In re Omnicom Grp., Inc. Sec. Litig.,* No. 02 Civ. 4483(RCC), 2007 WL 1280640, at *5 (S.D.N.Y. Apr. 30, 2007))).

Moreover, courts in this Circuit generally do not consider the post-disclosure purchase of shares to be a threat to typicality that will be the focus of the litigation as long as the shareholder relied on the integrity of the market, as is the case here. In *City of Livonia Employees' Retirement System v. Wyeth,* 284 F.R.D. 173, 178 (S.D.N.Y. 2012), the court rejected the argument made by defendants that the proposed class representative should be disqualified based on purchases made after a partial disclosure:

> the fact that a putative class representative purchased additional shares in reliance on the integrity of the market after the disclosure of corrective information has no bearing on whether or not [the representative] relied on the integrity of the market during the class period . . . . [Thus, t]he post-disclosure purchase of the additional shares . . . will not necessarily present individual issues of reliance that render the investor atypical or inadequate to represent the class members who did not purchase such additional shares. Citing *In re Monster Worldwide, Inc. Sec. Litig.,* 251 F.R.D. 132, 135 (S.D.N.Y. 2008) (first alteration in original) (quoting *In re Salomon Analyst Metromedia,* 236 F.R.D. 208,

5

216 (S.D.N.Y. 2006), *vacated and remanded sub nom. In re Salomon [Analyst Metromedia Litig.],* 544 F.3d 474 [(2d Cir. 2008)]).

*Id.*

As recognized by this Court, BRS argued – and the Court accepted – the premise that Sand Hollow suffers from a unique defense that its trades will undermine the ability of the class as a whole to assert the fraud-on-the-market theory of reliance. May 7 Order 11. There is no support for this conclusion. In *In re Symbol Technologies, Inc. Securities Litigation*, No. 05-3923 (DRH)(AKT), 2015 WL 3915477, at *4 (E.D.N.Y. June 25, 2015), the court expressly rejected a similar argument and in doing so pointed out that there were many class members who like the plaintiff in that case, purchased stock in the defendant corporation after the partial disclosure:

> The Court finds that Plaintiff here is not subject to such unique defenses concerning reliance that would disqualify it from acting as lead plaintiff. Although Defendants "are correct in observing that certification is properly denied where class representatives are subject to unique defenses **which threaten to become the focus of the litigation**, . . . as Judge McKenna observed in *In re Avon* [*Sec. Litig.,* 1998 WL 834366 (S.D.N.Y. Nov. 30, 1998),] this rule has not been rigidly applied in this Circuit." *Dietrich v. Bauer,* 192 F.R.D. 119, 125 (S.D.N.Y.2000) (internal quotation marks and citations omitted). "**Moreover, the existence of individual questions concerning reliance is generally insufficient to defeat certification**." *Id.* Furthermore, the Court finds that Plaintiff's claims are typical of the rest of the class where, as here, it intends to argue that its "claims of fraud arise out of the same . . . schemes as the rest of the putative class," *id.,* namely Defendants' alleged inaccurate revenue and inventory reporting. *See Yang v. Odom,* 2005 WL 2000156, at *5 (D.N.J. 2005) (noting that class action is appropriate where "class representative's interests in proving a continuous scheme to defraud were properly aligned with the other class members"). Additionally, like in *In re Comverse Technology, Inc. Securities Litigation,* a case cited by Plaintiff, **"[t]here are undoubtedly many members of the class of plaintiffs who, like [Plaintiff], purchased shares of [stock] only after" the November 8th disclosure.** 2008 WL 820015, at *3 (E.D.N.Y. Mar. 25, 2008). Accordingly, the Court is not convinced that Defendants' advancement of the defense that Plaintiff cannot prove reliance on the pre-November 8 misrepresentations would "distract [Plaintiff] from the work of representing the class as a whole." *In re Comverse,* 2008 WL 820015, at *3. (emphasis added).

BRS offered no evidence that Sand Hollow did not rely on the integrity of the market price for NYCB stock after the January 31 Disclosure in acquiring NYCB stock. *See Chauhan v.*

6

*Intercept Pharmaceuticals,* No. 21-cv-00036 (LJL), 2021 WL 235890 (S.D.N.Y. Jan. 25, 2021). This supposed defense is neither unique nor does it threaten to become the focus of the litigation and the Court should not have relied on it to disqualify Sand Hollow.

## III.    THE MARKET KNEW PRIOR TO JANUARY 31, 2024 THAT NYCB WAS SUBJECT TO HEIGHTENED REGULATIONS

BRS tries to shift focus away from the Court's holding in the May 7 Order and allegations in the current complaint regarding the information contained in the January 31 Disclosure to incorrectly claim that Sand Hollow "now argues that no new information was revealed on that day [January 31, 2024] because investors already knew NYCB was a Category IV bank prior to that date and subject to a new regulatory status . . . This point completely misstates the nature and the substance of the January 31 Disclosure." BRS has misstated Sand Hollow's position to once again try to shift the focus away from the errors in the May 7 Order.

Sand Hollow has never argued that no new information was disclosed in the January 31 Disclosure. Rather, Sand Hollow has argued that the risk of a unique defense based on its post-January 31 purchases dissipates entirely because the critical information that NYCB had become a Category IV bank subject to new heightened regulatory requirements had been disclosed to the market earlier than the January 31 Disclosure at the beginning of the Class Period.

Although, BRS does not dispute that NYCB's status as a Category IV bank had been previously disclosed, it ignores the factual errors in the May 7 Order identified by Sand Hollow regarding the timing of disclosure of this critical information. As discussed in its Motion for Reconsideration, this Court incorrectly held in its May 7 Order that "Plaintiff's allegations largely center on NYCB's **failure to disclose** that its acquisition of Signature **required it to comply with heightened regulatory standards**, causing NYCB to overstate its financials during the class period. *See Lemm* Compl. ¶28, *Miskey* Cmpl. ¶77." *May* 7 Order 12-13

7

(footnotes omitted) (emphasis added).

The *Miskey* complaint also incorrectly alleges the following regarding the information that was disclosed to the market on January 31, 2024:

> The Company **also disclosed** that NYCB was just then adjusting to the demands of being a large bank after its purchase of assets and liabilities from Signature Bank, **stating that with the deal, the Company's assets under management had surpassed $100 billion, thereby "subjecting [it] to enhanced prudential standards, including risk-based and leverage capital requirements, liquidity standards" and more,** and that as a result, it had "[taken] decisive actions to build capital, reinforce our balance sheet, strengthen [its] risk management processes, and better align [itself] with the relevant bank peers."

*Miskey* Compl. ¶79 (emphasis added).

Yet, even after Sand Hollow unveiled this critical error, BRS continues its mantra that the January 31 Disclosure is the "most impactful corrective disclosure of the Defendants' fraud" and is "strongest partial disclosure" (BRS Opp. 11 n.4) even though the Company's critical Category IV status has already been disclosed and there is otherwise no disclosure of the fraud as currently alleged. Thus, contrary to BRS arguments (BRS Opp. 9-10), this case is fully in line with the case law Sand Hollow cited in its Motion for Reconsideration that hold that purchases after a weak partial disclosure are not proof of a unique defense that will be the focus of the litigation that prevents the lead plaintiff from adequately representing the class. *See* Sand Hollow Motion for Reconsideration, 5-6; *see In re Comverse Tech.*, 2008 WL 820015, at *3 (district court affirmed its order to vacate magistrate judge's report and recommendation to disqualify the movant with the largest losses because it had purchased all of its shares after a partial disclosure made in March 2006, and compared the March 2006 disclosure to an April 2006 disclosure holding "Comverse's April 17, 2006 corrective disclosure, which was significantly stronger than the March 14, 2006 disclosure relied upon here by P & P, was not as a matter of law necessarily sufficient to 'counter-balance effectively' its previous misleading statements. [citation omitted]

The weaker disclosure in Comverse's March 14, 2006 press release therefore will not likely be a significant barrier to Menorah Group's recovery." The court further noted that the defense was not "unique" because there were undoubtedly many members of the class who purchased after the March 2006 partial disclosure and the argument was not being made to exclude those purchasers from the class based on these post-March 2006 purchases. *Id.*).

Had the Court properly weighed the strength and extent of the January 31 Disclosure, it would have concluded that the risk of a unique defense dissipates to less than de minimis because the market already knew well before the January 31 Disclosure that NYCB's total assets had exceeded the $100 billion threshold subjecting it to the heightened Category IV regulatory requirements.

## IV.  THERE IS NO CONGRESSIONAL PREFERENCE FOR INSTITUTIONAL INVESTORS

This Court incorrectly held that there was "a countervailing *Congressional* preference for institutional investors" like BRS. May 7 Order 14. (emphasis added). There is no such preference in the controlling statutes. At most, some courts may lean in favor of an institutional movant over an individual only if the losses are extremely close. That is not the case here. *In re Sequans Commc's S.A. Sec. Litig.*, 289 F. Supp. 3d 416, 421-22 (E.D.N.Y. 2018); *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012); *Atanasio v. Tenaris S.A.*, 331 F.R.D. 21, 29 (E.D.N.Y. 2019). This Court appeared to improperly give weight to BRS's status as an institutional investor in its discussion of whether BRS had rebutted the presumption in favor of Sand Hollow. May 7 Order 14.

In this case, it is undisputed that Sand Hollow's losses are significantly higher that BRS's losses and therefore BRS's status as an institutional investor should have played no role in the Court's determination to appoint BRS over Sand Hollow.

9

**CONCLUSION**

For the foregoing reasons, Sand Hollow respectfully requests that the Court: (1) reconsider and reverse the part of the May 7 Order appointing BRS Lead Plaintiff and its counsel Labaton Keller Sucharow LLP as Lead Counsel; and (2) appoint Sand Hollow as Lead Plaintiff and Faruqi & Faruqi, LLP as Lead Counsel for the Class.

Dated: June 10, 2024

Respectfully submitted,

**FARUQI & FARUQI, LLP**

By:    /s/ James M. Wilson, Jr.
      James M. Wilson, Jr.

James M. Wilson, Jr.
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email:  jwilson@faruqilaw.com

Robert W. Killorin (*pro hac vice* forthcoming)
**FARUQI & FARUQI, LLP**
3565 Piedmont Road NE Building Four
Suite 380
Atlanta, GA 30305
Telephone: 404-847-0617
Facsimile: 404-506-9534
Email:  rkillorin@faruqilaw.com

*Attorneys for [Proposed] Lead Plaintiff Sand Hollow Management, LLC and [Proposed] Lead Counsel for the putative Class*

10