**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WALTER EDWARD LEMM, JR., Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> NEW YORK COMMUNITY BANCORP, INC., THOMAS R. CANGEMI and JOHN J. PINTO, <br><br> Defendants. | Case No. 1:24-cv-00903-NRM-JRC |

**SAND HOLLOW MANAGEMENT, LLC'S**
**REPLY MEMORANDUM OF LAW IN**
**FURTHER SUPPORT OF ITS MOTION TO STAY**

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT .......................................................................................... 1

II.   BRS'S PREMATURE AMENDED COMPLAINT CONFIRMS THAT THE
      COURT SHOULD STAY THE CASE UNTIL IT RECONSIDERS THE LEAD
      PLAINTIFF ORDER ....................................................................................................... 3

III.  BRS'S ACTIONS RISK DELAY AND A WASTE OF RESOURCES IF THE
      LEAD PLAINTIFF PROCESS IS REOPENED AND THERE IS UNECESSARY
      MOTION PRACTICE INVOLVING THE STATE COURT CASE................................. 7

IV.   CONCLUSION................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*In re Bank of Am. Corp. Sec., Deriv. & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
  No. 09 MDL 2058(DC), 2010 WL 1438980 (S.D.N.Y. Apr. 9, 2010).....................................3

*In re Cloudera, Inc. Sec. Litig.*,
  No. 19-CV-03221-LHK, 2020 WL 1288362 (N.D. Cal. Mar. 18, 2020)..................................9

*Kaplan v. S.A.C. Cap. Advisors, L.P.*,
  947 F. Supp. 2d 366 (S.D.N.Y. 2013)..............................................................................2, 8, 9

*Kipling v. Flex Ltd.*,
  No. 18-CV-02706-LHK, 2019 WL 1472358 (N.D. Cal. Apr. 3, 2019) ...................................8

*In re Leapfrog Enters., Inc. Sec. Litig.*,
  No. C 03 05421 RMW, 2005 WL 5327775 (N.D. Cal. July 5, 2005) ......................................8

*Softview Comput. Prods. Corp. v. Haworth, Inc.*,
  No. 97 CIV. 8815 KMW HBP, 2000 WL 1134471 (S.D.N.Y. Aug. 10, 2000) ......................10

*Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*,
  No. 05 Civ. 1898(SAS), 2005 WL 1322721 (S.D.N.Y. Jun. 1, 2005) .....................................8

Sand Hollow Management, LLC ("Sand Hollow") respectfully submits this reply in further support of its motion to stay this case ("Motion to Stay," ECF No. 70)[1] pending a decision by the Court of its motion for reconsideration of the Court's May 7, 2024, lead plaintiff order and for such additional relief as the Court may deem just and proper ("Motion for Reconsideration,"[2] ECF No. 46).

## I.   PRELIMINARY STATEMENT

Sand Hollow sought to stay this case after BRS prematurely and presumptuously filed an amended complaint (ECF No. 69) ("BRS AC" or the "BRS Amended Complaint") pursuant to a proposed schedule that was *not approved by the Court* (ECF No. 66) and *before* the Court has resolved the important question of which of the competing movants should serve as Lead Plaintiff. ECF No. 46. The amended complaint on behalf of the entire class should only be filed by the court-appointed Lead Plaintiff. That determination is critical and Sand Hollow – if appointed lead plaintiff – and the entire class should not be bound by a complaint prepared by BRS that Sand Hollow considers to be problematic in a number of ways.

The BRS Amended Complaint is also extremely telling regarding the unresolved issue of who should be appointed Lead Plaintiff. It absolutely confirms Sand Hollow's primary argument for reconsideration, to wit: the January 31, 2024 partial disclosure regarding NYCB's status and impact of being a Category IV bank *is not*, as BRS asserted during the lead plaintiff process, "…by far the most qualitatively and quantitatively impactful corrective disclosure alleged in the Related Actions." *See* Mem. of Law in Further Supp. of BRS's Mot. for Consolidation,

---

[1]   Unless stated otherwise, the following conventions apply: (1) all citations, internal quotation marks and footnotes are omitted; (2) all emphases are added; (3) all capitalized terms shall have the same meaning as defined in the Motion to Stay.

[2]   The term "Motion for Reconsideration" includes Sand Hollow Management, LLC's Memorandum of Law in Support of Its Motion for Reconsideration of the Court's May 7, 2024, Memorandum and Order Appointing Lead Plaintiff. ECF No. 47.

1

Appointment as Lead Pl., & Approval of Selection of Lead Counsel ("BRS Opp."), ECF No. 32. Rather, BRS now confirms that Defendants had disclosed well before January 31, 2024, that NYCB was impacted by the Signature Bank acquisition, making NYCB a Category IV bank subject to heightened regulations in early 2023. BRS AC ¶ 2. BRS now concedes that the January 31, 2024 partial disclosure continued to mislead the market and was eclipsed by a *newly alleged* fully corrective disclosure of the fraud on February 29, 2024, which caused a massive collective 49% stock price drop between February 29 to March 4, 2024. *Id.* at ¶¶484-86. The BRS Amended Complaint supports Sand Hollow's argument that its post-January 31, 2024 stock purchases do not give rise to a disqualifying unique defense and that Sand Hollow should be appointed lead plaintiff.

Moreover, BRS seeks to take, if its Amended Complaint stands, an extreme gamble with the case. BRS's Amended Complaint is materially different than the original case that was reported to absent class members in the PSLRA lead plaintiff notice. BRS's Amended Complaint significantly expands the Class Period by approximately 8 months, asserts new claims under the Securities Act of 1933 ("Securities Act") for a new class of NYCB shareholders and has added a new *de facto* lead plaintiff for the new class without following the PSLRA's mandatory notice procedures. *Compare* BRS AC 1 *with* Compl. for Violation of the Fed. Sec. Laws ¶ 1, *Miskey v. New York Community Bancorp.*, No. 1:24-cv-01118-NRM-JRC (E.D.N.Y. Feb. 13, 2024), ECF No. 1 (the "*Miskey* Complaint"). BRS's actions have now created the risk that the lead plaintiff process must be restarted so that absent class members be made aware of their rights under the PSLRA with the respect to the new claims. *See e.g., Kaplan v. S.A.C. Cap. Advisors, L.P.,* 947 F. Supp. 2d 366, 367 (S.D.N.Y. 2013) (in reopening the lead plaintiff process, the court found that "[t]hese additions [to the amended complaint] make it likely that individuals who could now be

considered potential lead plaintiffs would have disregarded the earlier notice, and that '[a]llowing plaintiffs in this case to proceed without publishing a new notice reflecting their additional claims would potentially exclude qualified movants from the lead plaintiff selection process.'").

To make matters worse, since April 2024 another shareholder has been pursuing the same new Securities Act claims that BRS now asserts in a case filed in New York State Supreme Court in New York County. *See* Decl. of James M. Wilson, Jr. in Supp. of Sand Hollow Management, LLC's Reply Mem. of Law in Further Supp. of Its Mot. to Stay ("Wilson Decl."), Ex. A filed herewith. Such overlapping and duplicative claims in separate courts will doubtless cause needless complications for both courts and risk, at a minimum, delay for the Class.

At bottom, Sand Hollow should be appointed lead plaintiff and until that happens, this Action should be stayed. Further, once appointed lead plaintiff, Sand Hollow should not be bound by the premature BRS Amended Complaint, which should be stricken, and should be allowed to finalize its own investigation and file its own amended complaint. *See, e.g., In re Bank of Am. Corp. Sec., Deriv. & Emp. Ret. Income Sec. Act (ERISA) Litig.*, No. 09 MDL 2058(DC), 2010 WL 1438980, at *2 (S.D.N.Y. Apr. 9, 2010) ("a [PSLRA] lead plaintiff is empowered to control the management of the litigation as a whole, and it is within the lead plaintiff's authority to decide what claims to assert on behalf of the class") (citing *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 n.13 (2d Cir. 2004)).

## II.    BRS'S PREMATURE AMENDED COMPLAINT CONFIRMS THAT THE COURT SHOULD STAY THE CASE UNTIL IT RECONSIDERS THE LEAD PLAINTIFF ORDER

BRS's premature Amended Complaint confirms the arguments made by Sand Hollow in its lead plaintiff motion papers and its Motion for Reconsideration that its purchases of NYCB stock after the January 31, 2024 partial disclosure do not raise a unique disqualifying defense

3

against Sand Hollow's appointment as lead plaintiff.

BRS emphatically argued in the initial lead plaintiff briefing that Sand Hollow's purchases were atypical because they were made after NYCB made "its major disclosure . . ." on January 31, 2024. BRS Opp. 6.  BRS argued, citing to the *Miskey* Complaint:

> On January 31, 2024, before the opening of the market for trading, NYCB disclosed it had recorded a large provision for loan losses and therefore had incurred a significant loss in the fourth quarter of 2023.  *Id.* ¶ 7.  Further, the Company disclosed that it had "belatedly adjusted to its new capital and regulatory requirements as a result of the Signature Bank acquisition" requiring it to immediately increase its capital.  *Id.* ¶ 8.  These revelations *largely disclosed* NYCB's financial condition and the *impact of its acquisitions*.  This announcement was a pled corrective disclosure in the Complaint which alleged NYCB's stock price fell approximately $4 per share, or 39%, to close at $6.47 per share that day. *Id.* ¶ 9.  The $4 per share stock drop accompanying the January 31, 2024 corrective disclosure *dwarfed the two later drops* alleged in the Complaint, an $0.82 drop on February 1, 2024 and a $1.20 drop on February 6, 2024.  *See id.* ¶¶ 10-12.

BRS Opp. 6. The Court agreed in its Lead Plaintiff Order that the supposedly critical new information - that NYCB was subject to a "new regulatory status" (May 7 Order 12) as a Category IV bank under the Dodd-Frank Act due to the acquisition of Signature Bank's assets - partially revealed the fraud on January 31, 2024.

Sand Hollow argued that that the supposedly new information was not new at all. NYCB had disclosed in SEC filings since 2022 that the Company's total assets were approaching the $100 billion threshold that would make it a Category IV bank under the Dodd-Frank (12 C.F.R. Part 252) and subject it to the heightened stress testing requirements and that its total assets exceeded the $100 billion threshold in early 2023 as a result of the Signature Bank acquisition. *See* Motion for Reconsideration 9-11. Thus, the January 31, 2024 disclosure was not the "major disclosure" revealing the fraud to the market that BRS claimed and on which it relied to argue that Sand Hollow's purchases after January 31, 2024 disqualified it from being lead plaintiff.

BRS now belatedly confirms in its Amended Complaint Sand Hollow's admonitions that

4

the January 31, 2024 disclosure did not contain the sort of *mea culpa* corrective disclosure of fraud that NYCB was subject to a new regulatory status. Indeed, BRS now alleges that Defendants had previously disclosed that NYCB's total assets had exceeded the $100 billion threshold subjecting it to the heightened regulations as a Category IV bank, as Sand Hollow had argued. *See* BRS AC ¶¶ 2, 68, 76, 83. In particular, the BRS Amended Complaint alleges the following:

> On March 20, 2023, Defendants Cangemi and Pinto hosted a conference call to discuss NYCB's deal to acquire certain assets and liabilities from Signature. During the call, Defendant Cangemi was asked by a UBS analyst, "what are the things that . . . you think enables you to execute on this transaction?" In response, Cangemi *explicitly acknowledged that the Signature Transaction catapulted NYCB into a Category IV bank designation that carried with it enhanced risk management expectations*, and affirmatively represented that NYCB was ready to meet the challenge:
>
>> I would just say . . . **there's no question that['s] my priority as CEO, I'm very confident that we've built a very strong risk management team and we strengthened it every day, and we're up for the challenge and we're open to the regulatory landscape changing. That's our job[,] to be risk managers**.
>> *****
>> **So, we're pleased and proud about the investment made on the risk management [and] regulatory oversight. But that's my priority.** This is important. **We're now a $100 billion bank. We're going to ensure that we have all of the appropriate risk management tools to be a $100 billion bank. We've made sizable investments. . . . We know what our obligations are as a large institution, and we convey it with confidence and professionalism with our regulatory constituents.**

BRS AC ¶ 241.

Moreover, BRS has extended the end of the Class Period to February 29, 2024, when BRS alleges that the full fraud was actually disclosed to the market (in contrast to the information disclosed on January 31, 2024), which new corrective disclosure caused a massive 49% stock price drop between February 29 to March 4, 2024. BRS AC ¶¶ 153-59. Indeed, BRS

5

has done a near "180" on its original position regarding the corrective weight of the January 31, 2024 disclosure and effectively alleges now that the January 31, 2024 disclosure contained false information that continued to fool the market:

> On February 29, 2024, Piper Sandler analyst Mark Fitzgibbon downgraded NYCB from "Overweight to Neutral," and stated that "[t]he whack-a-mole at New York Community continues[]." Fitzgibbon was interviewed in the March 1 *American Banker* article, where he noted that NYCB's problems are "very opaque," making it hard for investors to predict whether there's more pain to come, and noting that: "Everybody thought they had ripped the Band-Aid off three or four weeks ago, . . . . "Now it appears that's not the case, and that there's more to come." In his report, Fitzgibbon explained that he had "been wrong" in not downgrading NYCB earlier, noting that he had *incorrectly relied on the Exchange Act Defendants' January 31, 2024 statements* that they were "taking several meaningful strategic actions, including building liquidity, cutting the dividend and boosting reserves," under the *false assumption* that the company had "ripped the band-aid off." "Most worrisome" to Fitzgibbons was the fact that "***the company announced that it identified a material weakness in its internal controls related to internal loan review***."

*See* BRS AC ¶157. Sand Hollow argued all along that the January 31, 2024 disclosure was weak as a corrective disclosure and BRS now effectively concedes Sand Hollow's point.

At bottom, as Sand Hollow argued all along, Defendants had disclosed earlier in the Class Period, well before the January 31, 2024 earnings release, that its total assets had crossed the $100 billion threshold subjecting it to heightened regulatory requirements as a Category IV bank, and that the January 31, 2024 disclosure was far from a *mea culpa* of fraud and more of a routine reporting of bad operating results. Sand Hollow Management, LLC's Mem. of Law in Reply to Competing Mot. for Appointment as Lead Pl. and Approval of Lead Counsel 4-5, ECF No. 36.  Therefore, Sand Hollow's purchases after the January 31, 2024 disclosure do not constitute proof that that it is subject to a significant unique defense that would consume the litigation of class claims. Through its ill-gotten and self-declared Lead Plaintiff position, BRS now effectively concedes Sand Hollow was correct all along and therefore is the rightful Lead

6

Plaintiff in this case.  This Court should not let this manipulation stand.  This Court should now

stay this case, grant Sand Hollow's Motion for Reconsideration and appoint Sand Hollow Lead

Plaintiff.

**III.     BRS'S ACTIONS RISK DELAY AND A WASTE OF RESOURCES IF THE LEAD PLAINTIFF PROCESS IS REOPENED AND THERE IS UNECESSARY MOTION PRACTICE INVOLVING THE STATE COURT CASE**

The BRS Amended Complaint risks delaying and complicating this case meriting a stay

for the Court to determine Sand Hollow's Motion for Reconsideration.  The allegations in

BRS's Amended Complaint are significantly different from the allegations in the original case

that was filed and reported to absent class members in the PSLRA lead plaintiff notice.  The new

BRS Amended Complaint contains the same allegations found in the previously filed case

arising from the Flagstar Bancorp, Inc. ("Flagstar") merger that is being litigated in New York

State Supreme Court.  Wilson Decl., Ex. A.

The BRS Amended Complaint significantly expands the Class Period by approximately 8

months. The original *Miskey* Complaint alleged a Class Period of March 1, 2023 to February 5,

2024. The BRS Amended Complaint alleges a Class Period that starts 7 months earlier on July

27, 2022 and ends approximately one month later on February 29, 2024 and also alleges that

NYCB stock price drops through March 4, 2024 are recoverable. BRS AC v (Glossary of

Terms), 1, ¶¶ 56, 81, 124, 153-60.  Therefore, shareholders with potentially much larger losses

than the present movants were never given notice of the operative class period and not afforded

the opportunity to come forward with their losses to seek the Lead Plaintiff position.

BRS also asserts entirely new claims under the Securities Act, Sections 11, 12(a)(2) and

15 arising from the December 2022 merger with Flagstar for a new class of NYCB shareholders

that were not asserted in the original complaints. BRS AC ¶¶413-519.  In order to assert those

new claims for an entirely different class of shareholders, BRS has brought in a new shareholder

7

– the Indiana Public Retirement System ("Indiana") - to serve as the *de facto* lead plaintiff for the Securities Act claims.  BRS AC 1, ¶ 22, 419. No shareholder was notified of these claims and given the opportunity to be appointed lead plaintiff for those claims. Again, BRS presumptuously listed Indiana in as a new lead plaintiff for the newly asserted claims without notice, without vetting by the Court, and without informing the Court beforehand of its intentions in its opposition to the Motion to Stay.  ECF No. 73.

Where changes to a securities class action complaint "make it likely that individuals who could now be considered potential lead plaintiffs would have disregarded the earlier notice," courts in the Second Circuit have ordered lead plaintiffs to republish notice under the PSLRA. *See, e.g.*, *Kaplan*, 947 F. Supp. 2d at 367. Although "courts typically disfavor republication when a complaint is amended," an amended complaint with "substantial alteration of the claims can tilt the balance" in favor of republication. *Id.* at 367 (quoting *Waldman v. Wachovia Corp.*, No. 08 Civ. 2913, 2009 WL 2950362, at *1 (S.D.N.Y. Sept. 14, 2009) & citing *Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, No. 05 Civ. 1898(SAS), 2005 WL 1322721, at *2 (S.D.N.Y. Jun. 1, 2005)). Such an approach accords with the PSLRA's purpose of ensuring that absent class members and potential lead plaintiffs are aware of their rights.  *Bombardier*, 2005 WL 1322721, at *2–3; *see also In re Leapfrog Enters., Inc. Sec. Litig.*, No. C 03 05421 RMW, 2005 WL 5327775, at *3 (N.D. Cal. July 5, 2005).

Courts also have reopened the lead plaintiff process where an amended complaint so significantly expanded the class that the Court could not assure itself that the initial publication was adequate. *Kipling v. Flex Ltd.*, No. 18-CV-02706-LHK, 2019 WL 1472358, at *2 (N.D. Cal. Apr. 3, 2019).

8

The court in *In re Cloudera, Inc. Securities Litigation* discussed the serious problem with a lead plaintiff making such significant changes in an amended complaint:

> [I]n *In re Leapfrog, Inc. Securities Litigation*, the 21-page initial complaint "alleged that defendants made rosy statements about [the defendant's] financial outlook." 2005 WL 5327775, at *3 (N.D. Cal. July 5, 2005). Then, the 135-page amended complaint "include[d] new allegations about [the defendant's] distribution and supply chain," which the district court concluded "dramatically alter[ed] the contours of the lawsuit." *Id.* More importantly, the court noted that the plaintiffs substantially expanded the class period from six months to fifteen months. *Id.* Under the considerably longer class period, at least one other investor had claimed losses of over $10 million, which were nearly three hundred times more than the initial lead plaintiff's losses of approximately $36,000. *Id.* The court concluded that such circumstances necessitated republication "to ensure that the best plaintiff for the ... new class period and new allegations represented the class." *Id.*

*In re Cloudera, Inc. Sec. Litig.*, No. 19-CV-03221-LHK, 2020 WL 1288362, *2 (N.D. Cal. Mar. 18, 2020).

The court in *Kaplan*, after weighing the numerous significant changes made to the amended complaint ultimately ruled:

> The Court finds that these differences warrant republication of notice in this matter. While Courts have held that alteration of the class period, without more, does not require republication, *see, e.g., Turner v. ShengdaTech, Inc.,* No. 11 Civ. 1918, 2011 WL 6110438, at *3 (S.D.N.Y. Dec. 6, 2011), more substantial alteration of the claims can tilt the balance, *see Teamsters Local 445 Freight Division Pension Fund v. Bombardier Inc.,* No. 05 Civ. 1898, 2005 WL 1322721, at *2 (S.D.N.Y. June 1, 2005). There is no debate that the consolidated class action complaint adds new claims: the Kaplan Plaintiffs acknowledge as much in their submission to the Court. (*See* Dkt. No. 59 at 3 ("At the same time, the facts underlying the newly-asserted claims have received extensive press coverage over the past six months ...").)

947 F. Supp. 2d at 367.

Here, the BRS Amended Complaint has expanded the class period so significantly, has added entirely new claims than were originally asserted and even adds a new *de facto* lead plaintiff for the new class without giving other NYCB shareholders the opportunity to seek to be

9

appointed lead plaintiff, that the Court must consider whether to reopen the entire lead plaintiff process if the BRS Amended Complaint proceeds as the operative complaint. This alone merits a stay of this case so that the Court can rule on Sand Hollow's Motion for Reconsideration.

Further, there already is a state court case alleging the same claims based on the same facts and disclosure in the registration statement issued for the Flagstar merger. Compare the two complaint allegations from BRS AC ¶ 413 and *with Kujawa v. N.Y. Cmty. Bancorp, Inc.*, No. 153581/2024, Complaint for Violations of the Sec. Act of 1933 ¶ 1 (N.Y. Sup., N.Y. Cty. Apr. 16, 2024) (Wilson Decl., Ex. A). Such a dual track of litigation forcing Defendants to defend the same claims in federal and state court is inefficient and poses a risk of waisting Defendants' finite resources.  As argued in its opening papers, every dollar spent by the parties in litigation with respect to the BRS Amended Complaint may be a wasted dollar. Motion to Stay 3.  In addition to being a waste, litigation of the BRS Amended Complaint may prejudice the putative Class that BRS purports to represent because Defendants have may have a finite pool of insurance and other resources available to satisfy a judgment that may range into the hundreds of millions of dollars. All members of the Class, including Sand Hollow, have an interest in preserving these resources until the correct lead plaintiff is designated. Indeed, avoidance of waste is a common ground for a stay. *See Softview Comput. Prods. Corp. v. Haworth, Inc.*, No. 97 CIV. 8815 KMW HBP, 2000 WL 1134471, at *3 (S.D.N.Y. Aug. 10, 2000) ("stay will maximize the likelihood that neither the Court nor the parties expend their assets").

## IV.    CONCLUSION

The bold and presumptuous actions by BRS should not stand. Sand Hollow's Motion for Reconsideration should be decided.  A lead plaintiff should be properly appointed by the Court, and the amended complaint should be filed pursuant to a scheduling order signed by the Court.

For the foregoing reasons, Sand Hollow respectfully requests that the Court stay this case pending decision on the Sand Hollow's Motion for Reconsideration.

Dated: October 17, 2024

Respectfully submitted,

**FARUQI & FARUQI, LLP**

By:    */s/ James M. Wilson, Jr.*
        James M. Wilson, Jr.

James M. Wilson, Jr.
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email:  jwilson@faruqilaw.com

Robert W. Killorin (*pro hac vice* forthcoming)
**FARUQI & FARUQI, LLP**
3565 Piedmont Road NE Building Four Suite 380
Atlanta, GA 30305
Telephone: 404-847-0617
Facsimile: 404-506-9534
Email:  rkillorin@faruqilaw.com

*Attorneys for [Proposed] Lead Plaintiff Sand Hollow Management, LLC and [Proposed] Lead Counsel for the putative Class*

11