# EXHIBIT A

Case 1:24-cv-00903-NRM-JRC    Document 75-1    Filed 10/17/24    Page 2 of 35 PageID #: 1194

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| LEO C. KUJAWA, individually and on behalf of all others similarly situated, | ) INDEX NO. |
| | ) |
| Plaintiff, | ) **SUMMONS** |
| vs. | ) |
| | ) |
| NEW YORK COMMUNITY BANCORP, INC., THOMAS R. CANGEMI, JOHN J. PINTO, ROBERT WANN, ALESSANDRO P. DINELLO, DOMINICK CIAMPA, HANIF W. DAHYA, LESLIE D. DUNN, MARSHALL J. LUX, JAMES J. O'DONOVAN, LAWRENCE ROSANO, JR., RONALD A. ROSENFELD, DAVID TREADWELL, and LAWRENCE J. SAVARESE, | ) ) ) ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

TO THE ABOVE-NAMED DEFENDANTS:

You are hereby summoned and required to serve upon Plaintiff's attorneys an answer to the Complaint in this action within twenty (20) days after the service of this Summons, exclusive of the day of service, or within thirty (30) days after service is complete if this Summons is not personally delivered to you within the State of New York. In the case of your failure to answer or appear, judgment will be taken against you by default for the relief demanded in the Complaint.

The basis of the venue designated is New York County because: (i) a substantial portion of the transactions and wrongs complained of occurred in this County; (ii) Defendants reside, conduct business in, or have employees based in this County; (iii) Defendants and their agents prepared, at least in part, the Offering Documents in this County, and affirmatively solicited and sold the subject securities and offered the Registration Statement to investors in this County; (iv) Defendants have received substantial compensation in this County by engaging in numerous activities and conducting business, which had an effect in this County; and/or (v) the securities at

Case 1:24-cv-00903-NRM-JRC    Document 75-1    Filed 10/17/24    Page 3 of 35 PageID #: 1195

issue in this Action are listed and traded on the New York Stock Exchange, which is located in this county.

DATED: April 16, 2024

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**

*s/ Thomas L. Laughlin, IV*
Thomas L. Laughlin, IV (Bar #4471975)
Jonathan M. Zimmerman (*pro hac vice* forthcoming)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
tlaughlin@scott-scott.com
jzimmerman@scott-scott.com

Adam E. Polk (SBN 273000)
Sean Greene (SBN 328718)
Patrick Johnson (SBN 329580)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
apolk@girardsharp.com
sgreene@girardsharp.com
pjohnson@girardsharp.com

David W. Hall (SBN 274921)
Armen Zohrabian (SBN 230492)
**THE HALL FIRM, LTD.**
Four Embarcadero Center, Suite 1400
San Francisco, CA 94104
Telephone: (415) 766-3534
Facsimile: (415) 402-0058
dhall@hallfirmltd.com
azohrabian@hallfirmltd.com

*Attorneys for Plaintiff and the Proposed Class*

2

Case 1:24-cv-00903-NRM-JRC    Document 75-1    Filed 10/17/24    Page 4 of 35 PageID #: 1196

TO:

NEW YORK COMMUNITY BANCORP, INC.
102 Duffy Avenue
Hicksville, NY 11801

THOMAS R. CANGEMI
964 Seaview Dr.
Oyster Bay, NY  11771-1126

JOHN J. PINTO
77 Bay Avenue
Halesite, NY  11743

ROBERT WANN
2801 S Ridgewood Avenue, Unit 1112, South Daytona, FL  32119-3511

ALESSANDRO P. DINELLO
c/o New York Community Bancorp, Inc.
102 Duffy Avenue
Hicksville, NY 11801

DOMINICK CIAMPA
261 Sundial CT
Indian River Shores, FL  32963-3470

HANIF W. DAHYA
5 Beechwood Rd.
Allendale, NJ  07401-1801

LESLIE D. DUNN
13901 Shaker Blvd Apt 2A
Cleveland, OH 44120-1502

MARSHALL J. LUX
c/o New York Community Bancorp, Inc.
102 Duffy Avenue
Hicksville, NY 11801

JAMES J. O'DONOVAN
196 Pond View Dr.
Port Washington, NY 11050-2460

LAWRENCE ROSANO, JR.
339 Rushmore Ave.
Carle Place, NY 11514-1430

3

Case 1:24-cv-00903-NRM-JRC     Document 75-1     Filed 10/17/24     Page 5 of 35 PageID #: 1197

RONALD A. ROSENFELD
110 Sunset Ave Apt 3A
Palm Beach, FL 33480-3947

DAVID TREADWELL
4350 Sanctuary Way
Bonita Springs, FL 34134-8722

LAWRENCE J. SAVARESE
1 Scarsdale Rd Apt 400
Tuckahoe, NY 10707-3217

Case 1:24-cv-00903-NRM-JRC    Document 75-1    Filed 10/17/24    Page 6 of 35 PageID #: 1198

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

| | |
|---|---|
| LEO C. KUJAWA, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| NEW YORK COMMUNITY BANCORP, INC., THOMAS R. CANGEMI, JOHN J. PINTO, ROBERT WANN, ALESSANDRO P. DINELLO, DOMINICK CIAMPA, HANIF W. DAHYA, LESLIE D. DUNN, MARSHALL J. LUX, JAMES J. O'DONOVAN, LAWRENCE ROSANO, JR., RONALD A. ROSENFELD, DAVID TREADWELL, and LAWRENCE J. SAVARESE, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

INDEX NO.

<u>CLASS ACTION</u>

**COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933**

<u>DEMAND FOR JURY TRIAL</u>

Plaintiff, individually and on behalf of a class of all other similarly situated investors, alleges the following based upon personal knowledge as to Plaintiff and his own acts, and otherwise based upon the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by New York Community Bancorp, Inc. (the "Company" or "NYCB") and Flagstar Bank N.A. f/k/a Flagstar Bancorp, Inc. ("Flagstar"), as well as press releases, analyst reports, and other media concerning the Company and its public statements. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein.

<u>SUMMARY OF ACTION</u>

1.     This is a securities class action on behalf of all persons who acquired NYCB common stock in exchange for Flagstar securities pursuant to the S-4 registration statement, 424B3 prospectus, and materials incorporated therein (collectively, the "Registration Statement" or

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

Case 1:24-cv-00903-NRM-JRC Document 75-1 Filed 10/17/24 Page 7 of 35 PageID #: 1199

"Offering Materials") issued in connection with the December 2022 transaction through which NYCB acquired and merged with Flagstar (the "Merger"). Plaintiff asserts non-fraud strict liability claims for relief under §§11, 12(a)(2), and 15 of the Securities Act of 1933 ("1933 Act" or "Securities Act") against NYCB, and certain current and former directors and officers of NYCB and Flagstar.

2. Before the Merger, Flagstar was the holding company for Flagstar Bank, a federally chartered stock savings bank founded in 1987, with consolidated total assets of $29.4 billion. Flagstar's common stock was traded on the NYSE under the symbol "FBC."

3. Defendant NYCB was the bank holding company for regional bank, New York Community Bank, which operated as one of the largest regional banks in the nation. NYCB's common stock trades on the New York Stock Exchange ("NYSE") under the symbol "NYCB."

4. Pursuant to the Merger, Defendants solicited and sold directly to Plaintiff and other former Flagstar stockholders approximately 214 million newly issued shares of NYCB common stock pursuant to a uniform stock-for-stock exchange (the "Merger Exchange"), as follows: As of the December 2022 Merger close, each outstanding share of common stock of Flagstar was converted into the right to receive 4.0151 shares of newly issued NYCB common stock (plus cash in lieu of fractional shares). All of these newly issued shares of NYCB common stock were registered, solicited, and sold to Plaintiff and other former Flagstar shareholders directly in the Merger Exchange pursuant to the Offering Materials.

5. The Offering Materials issued to pitch the merger were materially false and misleading and omitted material facts both required by governing SEC regulations and necessary to make the statements made not misleading. Foremost, the Offering Materials misrepresented and omitted material facts undermining the effectiveness of NYCB's internal controls over

Case 1:24-cv-00903-NRM-JRC    Document 75-1    Filed 10/17/24    Page 8 of 35 PageID #: 1200

financial reporting.  In truth, at the time of the Merger, NCYB already lacked effective internal controls over financial reporting, and already suffered material weaknesses in its internal controls for, *inter alia*, tracking loan risks as well as ineffective oversight, risk assessment, and monitoring.

6.      As NYCB would later admit: NYCB's Board had failed to exercise oversight responsibilities; NYCB lacked an effective control environment due to a lack of resources and qualified employees to assess and monitor risks; NYCB had ineffective processes for timely identifying and responding to financial reporting risks, including risks arising from changes in the business, regulatory, and economic environments, such as internal loan reviews; and NYCB had ineffective monitoring activities, including for internal loan reviews.

7.      Indeed, as Defendants would later admit, NYCB already lacked effective controls over internal loan review processes because the Company lacked an appropriate framework to ensure that ratings were accurate, timely, and appropriately challenged.  NYCB's admittedly ineffective internal controls not only undercut its ability to, among other matters, identify problem loans, it ultimately crippled the Company's timely recognition of the allowance for credit losses on loans and leases.

8.      The Offering Materials also falsely attested that NYCB financial statements were prepared in accordance with Generally Accepted Accounting Principles ("GAAP").  In truth, the financial statements incorporated into the Offering Materials violated GAAP in myriad respects. For example, Defendants had failed to properly account for goodwill from NYCB's historical transactions (2007 and prior), which was already materially impaired ahead of the Merger.  Instead of properly testing and timely accounting for the already existing and internally apparent impairment of goodwill as required by GAAP, Defendants materially understated NYCB's

3

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

expenses and losses and materially overstated NYCB's income from operations, goodwill, and total assets in contravention of GAAP.

9. Defendants further violated GAAP by failing to timely conduct reasonable goodwill impairment testing that adequately incorporated all events and changes in circumstances. Defendants also made false and misleading representations in NYCB's Offering Materials regarding goodwill impairment testing policies, procedures, and practices. Had Defendants reasonably conducted goodwill impairment testing as required by GAAP, the financial statements incorporated into the Offering Materials would have accounted for and disclosed NYCB's already existing and internally apparent material impairment of goodwill and related assets.

10. Furthermore, as a result of Defendants' unreasonable failure to properly conduct goodwill impairment testing and timely account for already internally apparent goodwill impairment, the Offering Materials materially overstated goodwill and total assets on its balance sheet, understated operating expenses, overstated income from operations, and understated net loss. Accordingly, Defendants' false and misleading representations and omissions in the Offering Materials that goodwill was not impaired, as well as with respect to other financial metrics, were materially false and misleading and did not fairly align with the information in Defendants' possession.

11. The Offering Materials were rife with additional misrepresentations and omissions. For example, Defendants misrepresented the effectiveness of NYCB's underwriting and risk management systems – characterizing them as "rigorous," "stringent," and "conservative." In truth, NYCB's underwriting and risk management systems were not rigorous, stringent, or conservative, but were ineffective and suffered from material weaknesses. The Offering Materials' representations about NYCB's underwriting and risk management systems and

4

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

Case 1:24-cv-00903-NRM-JRC    Document 75-1    Filed 10/17/24    Page 10 of 35 PageID #: 1202

protocols were false and misleading because, *inter alia*, NYCB lacked "conservative lending policies" and "rigorous underwriting standards." NYCB's loan portfolio was already rife with vulnerable assets, including poor quality commercial real estate ("CRE") and multifamily loans, and NYCB did not "originate CRE loans in adherence with conservative underwriting standards."

12. As of the Merger, NYCB's CRE portfolio already faced severe and compounding risks from interest rate hikes and vacancies, including in post-pandemic Manhattan where approximately half of NYCB's office portfolio is located. Similarly, NYCB's multifamily loans faced risks from rising interest rates and a 2019 law in New York that capped the amounts that landlords could raise rents at the rent-stabilized properties. As was later gradually revealed, NYCB's prospective loan losses ballooned and, as a consequence, it needed to take a $552 million provision for credit losses in connection with its CRE and multi-family portfolio. Indeed, NYCB had material weaknesses in its underwriting systems and risk management protocols.

13. In addition to rendering the Offering Materials affirmatively false and misleading, Defendants' omission of these and related material facts violated several mandatory duties to disclose. First, SEC Regulation S-K, 17 C.F.R. §229.303, Management's Discussion and Analysis of Financial Condition and Results of Operations, ("Item 303"), required disclosure of any known events, trends, or uncertainties that at the time of the Merger had caused or were reasonably likely to cause NYCB's financial reporting to not be indicative of future operating results. In violation of Item 303, the Offering Materials failed to disclose, *inter alia*, that NYCB's internal controls over financial reporting were already ineffective and suffering from an array of material weaknesses, including, but not limited to: ineffective tracking of loan risks; ineffective oversight, risk assessment, and monitoring activities; ineffective and materially deficient underwriting and risk management systems; vulnerable loan portfolio assets, including poor quality commercial real

5

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

Case 1:24-cv-00903-NRM-JRC    Document 75-1    Filed 10/17/24    Page 11 of 35 PageID #: 1203

estate and multifamily loans; already impaired goodwill from NYCB's historical transactions (2007 and prior) as of the Merger; and that NYCB violated GAAP in numerous respects. At the time of the Merger, these undisclosed materially adverse events, trends, and uncertainties were known by Defendants and were already likely to (and in fact did) materially and adversely affect NYCB's results and prospects and rendered the disclosed results and trends in the Offering Materials misleading and not indicative of NYCB's future operating results.

14. Second, SEC Regulation S-K, 17 C.F.R. §229.105, Risk Factors, ("Item 105"), required, in the "Risk Factor" section of the Registration Statement, a discussion of the most significant factors that made the offering risky or speculative, and that each risk factor adequately describe the risk. NYCB's risk factors did not even mention, much less adequately describe, the severe risks posed by NYCB's admittedly ineffective internal controls over financial reporting, nor did they discuss NYCB's already ineffective tracking of loan risks, NYCB's already ineffective oversight, risk assessment, and monitoring activities, NYCB's already ineffective and materially deficient underwriting and risk management systems, NYCB's already vulnerable loan portfolio assets including poor quality commercial real estate and multifamily loans, NYCB's already impaired goodwill from NYCB's historical transactions (2007 and prior) as of the Merger, or that NYCB's financial statements violated GAAP in numerous respects. To the extent the Offering Materials made any passing reference to these risks whatsoever, it did so only in vague, generic, and non-specific terms that did not disclose the true scope and severity of material risks posed, much less adequately describe those risks as required by Item 105.

15. Third, Defendants' failure to disclose the material information described above, much less the materially adverse effects of the undisclosed information on the Company's future results, share price, and prospects, rendered false and misleading the Offering Materials' many

references to known risks that *"if"* occurring *"might"* or *"could"* affect the Company. These "risks" were not mere future possibilities; they were already materializing at the time of the Merger.

16. With these and other material misrepresentations and omissions in the Offering Materials, Defendants were able to complete the Merger. But after the Merger, the consequences from Defendants' materially false and misleading statements and omissions gradually materialized.

17. For example, on January 31, 2024, NYCB announced a provision for credit losses totaling $552 million for the fourth quarter of 2023. NYCB disclosed that it had "significantly built our reserve levels by recording a $552 million provision for loan losses . . . ." NYCB further reported a 2023 net loss of $252 million, and that it was reducing its quarterly dividend from $0.17 a share to $0.05 per share.

18. Following this news, shares of NYCB plunged. As the Wall Street Journal reported on January 31, 2024:

> Shares of New York Community Bancorp NYCB plummeted 38% Wednesday after the company swung to a fourth-quarter loss and slashed its dividend to shore up capital following its purchase of the assets of the collapsed Signature Bank.
>
> *        *        *
>
> Loan losses surged, and the bank set aside millions of dollars more to prepare for future potential losses.
>
> The stock fell 38% Wednesday, closing at $6.47, its worst day on record.

19. Then, on February 29, 2024, NYCB admitted in SEC filings that the Company was required to take a goodwill impairment charge of *$2.4 billion* – belatedly recognizing that the entirety of its goodwill from historical transactions (2007 and prior) was fully impaired. Further, NYCB admitted that it had material weaknesses in its internal controls from ineffective oversight, risk assessment, and monitoring activities. Further, NYCB disclosed that it would be unable to

7

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

file its 2023 Form 10-K on time because of the time it needed to evaluate and plan for remediating the Company's now admitted material weaknesses.

20. With these further admissions, the price of NYCB common stock declined even further, falling to a close of $3.55 per share on March 1, 2024, and $2.73 per share on March 4, 2024. On March 6, 2024, trading halted as NYCB shares further plunged and traded as low as $1.70.

21. The full scope of Defendants' misrepresentations and omissions has continued to gradually emerge across a series of disclosures, executive departures, dividend cuts, other materialization of risks, and related stock price declines.

22. Plaintiff and other former Flagstar investors have suffered severe losses as a result of Defendants' misconduct.

## JURISDICTION AND VENUE

23. This Court has original subject matter jurisdiction under the New York Constitution, Article VI, §7 (a). Removal is barred by §22 of the Securities Act.

24. This Court has personal jurisdiction, and venue is proper under the New York Civil Practice Laws and Rules ("CPLR"), because Defendants reside, conduct day to day operations from, or are headquartered in New York; Defendants prepared the Offering Materials in New York and this county; Defendants and their agents affirmatively solicited and sold the subject securities and offered the Registration Statement to investors in New York and this county; those contacts have a substantial connection to the claims alleged herein; and the securities at issue are listed and traded on the New York Stock Exchange, which is located in this county.

8
COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

## PARTIES

25.     Plaintiff Leo C. Kujawa is a citizen and resident of Macomb, Michigan.  Mr. Kujawa directly acquired newly issued NYCB common stock via the Merger, in exchange for Flagstar shares, pursuant to the Offering Materials and was damaged thereby.

26.     Defendant NYCB is a bank holding company incorporated under Delaware Law and headquartered in New York.  In December 2022, NYCB acquired Flagstar pursuant to the Merger.  NYCB is the issuer and a direct seller of all shares sold to Plaintiff and other former Flagstar shareholders in the Merger Exchange, and Defendants NYCB and the other Defendants orchestrated, negotiated, and controlled the Merger.

27.     Defendant Thomas R. Cangemi was Chairman, President, CEO, and a Director of NYCB.  Defendant Cangemi reviewed, contributed to, and signed the Offering Materials.

28.     Defendant John J. Pinto was, at all relevant times, Senior Executive Vice President and Chief Financial Officer ("CFO") of NYCB.  Defendant Pinto reviewed, contributed to, and signed the Offering Materials.

29.     Defendant Robert Wann was, at all relevant times Senior Executive Vice President, Chief Operating Officer ("COO"), and a Director at NYCB.  Defendant Wann reviewed, contributed to, and signed the Offering Materials.

30.     Defendant Alessandro P. DiNello was, at all relevant times, President and CEO of Flagstar Bancorp, Inc.  He reviewed, contributed to, and signed the Offering Materials, and he was named in the Registration Statement as an incoming Non-Executive Chairmen of the NYCB Board of Directors.

31.     Defendant David Treadwell was a director of Flagstar.  He reviewed and contributed to the Offering Materials and was named in the Registration Statement as an incoming

9

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

Case 1:24-cv-00903-NRM-JRC Document 75-1 Filed 10/17/24 Page 15 of 35 PageID #: 1207

Director at NYCB and incoming chairman of the risk assessment committee of the NYCB Board of Directors.

32. Defendant Dominick Ciampa was, at all relevant times, a Director of NYCB. Defendant Ciampa reviewed, contributed to, and signed the Offering Materials.

33. Defendant Hanif W. Dahya was, at all relevant times, a Director of NYCB. Defendant Dahya reviewed, contributed to, and signed the Offering Materials.

34. Defendant Leslie D. Dunn was, at all relevant times, a Director of NYCB. Defendant Dunn reviewed, contributed to, and signed the Offering Materials.

35. Defendant Marshall J. Lux was, at all relevant times, a Director of NYCB. Defendant Lux reviewed, contributed to, and signed the Offering Materials.

36. Defendant James J. O'Donovan was, at all relevant times, a Director of NYCB. Defendant O'Donovan reviewed, contributed to, and signed the Offering Materials.

37. Defendant Lawrence Rosano, Jr. was, at all relevant times, a Director of NYCB. Defendant Rosano reviewed, contributed to, and signed the Offering Materials.

38. Defendant Ronald A. Rosenfeld was, at all relevant times, a Director of NYCB. Defendant Rosenfeld reviewed, contributed to, and signed the Offering Materials.

39. Defendant Lawrence J. Savarese was, at all relevant times, a Director of NYCB. Defendant Savarese reviewed, contributed to, and signed the Offering Materials.

40. The individuals named in ¶¶27-39 are referred to as the "Individual Defendants." NYCB and the Individual Defendants are collectively referred to as "Defendants." Each of the Individual Defendants signed or was identified as current or incoming director (or person performing similar functions) in the Registration Statement, solicited the purchase of securities issued pursuant thereto, planned and contributed to the Merger and Offering Materials, and

10
COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

Case 1:24-cv-00903-NRM-JRC    Document 75-1    Filed 10/17/24    Page 16 of 35 PageID #: 1208

attended promotional events to meet with and present favorable information to NYCB and Flagstar investors.

## DEFENDANTS' FALSE AND MISLEADING OFFERING MATERIALS

41. On April 26, 2021, NYCB and Flagstar jointly announced that they had entered into a definitive merger agreement under which the two companies would combine in an all-stock merger. Under the terms of the merger agreement, Flagstar stockholders would receive 4.0151 shares of NYCB common stock in exchange for each Flagstar share they own.

42. On June 11, 2021, NYCB filed with the SEC a preliminary registration statement on Form S-4.

43. On June 17, 2021, the SEC filed a letter that advised Defendants that the SEC had not reviewed and would not review the registration statement.

44. On June 24, 2021, NYCB filed an amendment to the registration statement on Form S-4/A with the SEC. The amended registration statement incorporated by reference, among other documents, NYCB's annual report on Form 10-K for the year ended December 31, 2021; NYCB's proxy statement on Schedule 14A filed with the SEC on April 16, 2021; NYCB's quarterly report on Form 10-Q for the quarter ended March 31, 2021; and NYCB's current reports on Form 8-K and 8-K/A, filed with the SEC on January 6, 2021, January 27, 2021 (only with respect to Item 8.01), March 26, 2021, March 31, 2021, April 26, 2021, April 26, 2021, and May 7, 2021.

45. On June 25, 2021, NYCB filed a joint proxy statement and prospectus on Form 424B3. Subsequently, NYCB filed several prospectus supplements, including on November 3, 2021, November 4, 2021, February 2, 2022, and March 4, 2022.

46. The SEC declared the registration statement effective on June 25, 2021.

11

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

Case 1:24-cv-00903-NRM-JRC Document 75-1 Filed 10/17/24 Page 17 of 35 PageID #: 1209

47. On August 3, 2022, NYCB filed a post-effective amendment to the registration statement on Form S-4 as originally declared effective by the SEC on June 25, 2021: (i) to update the pro forma condensed combined financial information that was originally included in the Joint Proxy Statement/Prospectus, (ii) to incorporate by reference the information contained in NYCB's and Flagstar's 2021 Form 10-K, and (iii) to update the Joint Proxy Statement/Prospectus to incorporate by reference the information contained in certain other documents regarding NYCB and Flagstar that NYCB and Flagstar, respectively, have filed and will from time to time file with the SEC.

48. On September 28, 2022, NYCB filed another post-effective amendment to the registration statement on Form S-4 as originally declared effective by the SEC on June 25, 2021, to also update certain information in the Registration Statement and include certain information required to be included in a registration statement on Form S-4 in response to SEC comments that NYCB include all disclosures required by Form S-4.

49. On October 11, 2022, the SEC declared the amended registration statement effective.

50. On October 12, 2022, NYCB filed an amended prospectus on Form 424B3 (which forms part of the Registration Statement or Offering Materials) for the NYCB shares issued and exchanged for Flagstar shares in the Merger.

51. On December 1, 2022, Defendants completed the Merger, issuing approximately 214 million new shares of NYCB common stock directly to former shareholders of Flagstar. On that date, Flagstar shareholders became irrevocably committed to the purchase of new NYCB shares and received NYCB common stock in exchange for their Flagstar shares pursuant to the

12
COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

terms of the Merger Exchange.  The final closing price of Flagstar stock, on November 30, 2022, was $37.54.

52.   The Offering Materials issued to pitch the merger were materially false and misleading and omitted material facts both required by governing SEC regulations and necessary to make the statements made not misleading.

53.   Foremost, the Offering Materials misrepresented and omitted material facts undermining the effectiveness of NYCB's internal controls over financial reporting.  In truth, at the time of the Merger, NCYB already lacked effective internal controls over financial reporting, and already suffered material weaknesses in its internal controls for, *inter alia*, tracking loan risks as well as ineffective oversight, risk assessment, and monitoring.

54.   As NYCB would later admit: NYCB's Board had failed to exercise oversight responsibilities; NYCB lacked an effective control environment due to a lack of resources and qualified employees to assess and monitor risks; NYCB had ineffective processes for timely identifying and responding to financial reporting risks, including risks arising from changes in the business, regulatory and economic environments, such as internal loan reviews; and NYCB had ineffective monitoring activities, including for internal loan reviews.

55.   Indeed, as Defendants would later admit, NYCB already lacked effective controls over internal loan review processes because the Company lacked an appropriate framework to ensure that ratings were accurate, timely, and appropriately challenged.  NYCB's admittedly ineffective internal controls not only undercut its ability to, among other matters, identify problem loans, it ultimately crippled the Company's timely recognition of the allowance for credit losses on loans and leases.

56. The Offering Materials also falsely attested that NYCB financial statements were prepared in accordance with Generally Accepted Accounting Principles ("GAAP"). In truth, the financial statements incorporated into the Offering Materials violated GAAP in myriad respects. For example, Defendants had failed to properly account for goodwill from NYCB's historical transactions (2007 and prior), which was already materially impaired ahead of the Merger. Instead of properly testing and timely accounting for the already existing and internally apparent impairment of goodwill as required by GAAP, Defendants materially understated NYCB's expenses and losses and materially overstated NYCB's income from operations, goodwill, and total assets in contravention of GAAP.

57. Defendants further violated GAAP by failing to timely conduct reasonable goodwill impairment testing that adequately incorporated all events and changes in circumstances. Defendants also made false and misleading representations in NYCB's Offering Materials regarding goodwill impairment testing policies, procedures, and practices. Had Defendants reasonably conducted goodwill impairment testing as required by GAAP, the financial statements incorporated into the Offering Materials would have accounted for and disclosed NYCB's already existing and internally apparent material impairment of goodwill and related assets.

58. Furthermore, as a result of Defendants' unreasonable failure to properly conduct goodwill impairment testing and timely account for already internally apparent goodwill impairment, the Offering Materials materially overstated goodwill and total assets on its balance sheet, understated operating expenses, overstated income from operations, and understated net loss. Accordingly, Defendants' false and misleading representations and omissions in the Offering Materials that goodwill was not impaired, as well as with respect to other financial metrics, were

14
COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

materially false and misleading and did not fairly align with the information in Defendants' possession.

59. The Offering Materials were rife with additional misrepresentations and omissions. For example, Defendants misrepresented the effectiveness of NYCB's underwriting and risk management systems – characterizing them as "rigorous," "stringent," and "conservative." In truth, NYCB's underwriting and risk management systems were not rigorous, stringent, or conservative, but were ineffective and suffered from material weaknesses. The Offering Materials' representations about NYCB's underwriting and risk management systems and protocols were false and misleading because, *inter alia*, NYCB lacked "conservative lending policies" and "rigorous underwriting standards." NYCB's loan portfolio was already rife with vulnerable assets, including poor quality commercial real estate ("CRE") and multifamily loans, and NYCB did not "originate CRE loans in adherence with conservative underwriting standards."

60. As of the Merger, NYCB's CRE portfolio already faced severe and compounding risks from interest rate hikes and vacancies, including in post-pandemic Manhattan where approximately half of NYCB's office portfolio is located. Similarly, NYCB's multifamily loans faced risks from rising interest rates and a 2019 law in New York that capped the amounts that landlords could raise rents at the rent-stabilized properties. As was later gradually revealed, NYCB's prospective loan losses ballooned and, as a consequence, it needed to take a $552 million provision for credit losses in connection with its CRE and multi-family portfolio. Indeed, NYCB had material weaknesses in its underwriting systems and risk management protocols.

61. In addition to rendering the Offering Materials affirmatively false and misleading, Defendants' omission of these and related material facts violated several mandatory duties to disclose. First, SEC Regulation S-K, 17 C.F.R. §229.303, Management's Discussion and Analysis

of Financial Condition and Results of Operations, ("Item 303"), required disclosure of any known events, trends, or uncertainties that, at the time of the Merger, had caused or were reasonably likely to cause NYCB's financial reporting to not be indicative of future operating results. In violation of Item 303, the Offering Materials failed to disclose, inter alia, that NYCB's internal controls over financial reporting were already ineffective and suffering from an array of material weaknesses, including, but not limited to: ineffective tracking of loan risks; ineffective oversight, risk assessment, and monitoring activities; ineffective and materially deficient underwriting and risk management systems; vulnerable loan portfolio assets, including poor quality commercial real estate and multifamily loans; already impaired goodwill from NYCB's historical transactions (2007 and prior) as of the Merger; and that NYCB violated GAAP in numerous respects. At the time of the Merger, these undisclosed materially adverse events, trends, and uncertainties were known by Defendants and were already likely to (and in fact did) materially and adversely affect NYCB's results and prospects and rendered the disclosed results and trends in the Offering Materials misleading and not indicative of NYCB's future operating results.

62. Second, SEC Regulation S-K, 17 C.F.R. §229.105, Risk Factors, ("Item 105"), required, in the "Risk Factor" section of the Registration Statement, a discussion of the most significant factors that made the offering risky or speculative, and that each risk factor adequately describe the risk. NYCB's risk factors did not even mention, much less adequately describe, the severe risks posed by NYCB's admittedly ineffective internal controls over financial reporting, nor did they discuss NYCB's already ineffective tracking of loan risks, NYCB's already ineffective oversight, risk assessment, and monitoring activities, NYCB's already ineffective and materially deficient underwriting and risk management systems, NYCB's already vulnerable loan portfolio assets including poor quality commercial real estate and multifamily loans, NYCB's

Case 1:24-cv-00903-NRM-JRC   Document 75-1   Filed 10/17/24   Page 22 of 35 PageID #: 1214

already impaired goodwill from NYCB's historical transactions (2007 and prior) as of the Merger, or that NYCB's financial statements violated GAAP in numerous respects. To the extent the Offering Materials made any passing reference to these risks whatsoever, it did so only in vague, generic, and non-specific terms that did not disclose the true scope and severity of material risks posed, much less adequately describe those risks as required by Item 105.

63.     Third, Defendants' failure to disclose the material information described above, much less the materially adverse effects of the undisclosed information on the Company's future results, share price, and prospects, rendered false and misleading the Offering Materials' many references to known risks that *"if"* occurring *"might"* or *"could"* affect the Company. These "risks" were not mere future possibilities; they were already materializing at the time of the Merger.

## DEFENDANTS' MISSTATEMENTS AND OMISSIONS WERE MATERIAL

64.     On January 31, 2024, NYCB issued a press release announcing financial results admitting it had recorded a $552 million provision for loan losses and reporting a 4Q23 net loss of $252 million. NYCB attributed this loss "primarily" to "higher net charge-offs, as well as, to address weaknesses in the office sector, potential repricing risk in the multi-family portfolio, and an increase in classified assets." The release also stated that NYCB was cutting its quarterly dividends by 70% from $0.17 per share to $0.05 per share.

65.     On this news, shares of NYCB plunged by 38% to close at $6.47. As the Wall Street Journal reported on January 31, 2024:

> Shares of New York Community Bancorp plummeted 38% Wednesday after the company swung to a fourth-quarter loss and slashed its dividend to shore up capital following its purchase of the assets of the collapsed Signature Bank.

\*     \*     \*

17
COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

Case 1:24-cv-00903-NRM-JRC Document 75-1 Filed 10/17/24 Page 23 of 35 PageID #: 1215

Loan losses surged, and the bank set aside millions of dollars more to prepare for future potential losses.

The stock fell 38% Wednesday, closing at $6.47, its worst day on record.

66. On January 31, 2024, Moody's placed NYCB on notice of a ratings review reflecting "NYCB's unanticipated loss content in its New York office and multifamily properties, weak earnings, material decline in its capitalization and high and growing reliance on wholesale funding." Further, Moody's stated:

> The bank is highly concentrated in rent regulated multi-family, a segment which has historically performed well for them. However, this cycle may be different. While vacancy rates are low for this commercial real estate (CRE) segment, properties may face different challenges this cycle due to higher interest expense when refinanced and already higher maintenance costs due to inflationary pressures. These higher costs may prove more challenging for owners of rent regulated properties to pass along through rent increases to tenants.

67. On February 6, 2024, rating agency Moody's downgraded NYCB's long-term and short-term issuer ratings to junk and cautioned of further downgrades.

68. That day, in a press release, Defendant Cangemi told investors that NYCB was taking steps to enhance its risk management processes, including by replacing the Company's chief risk officer and chief audit executive with those who have large bank experience:

> We took decisive actions to fortify our balance sheet and strengthen our risk management processes during the fourth quarter. Our actions are an investment in enhancing a risk management framework commensurate with the size and complexity of our bank and providing a solid foundation going forward. Despite the Moody's ratings downgrade, our deposit ratings from Moody's, Fitch and DBRS remain investment grade. The Moody's downgrade is not expected to have a material impact on our contractual arrangements.

> Finally, as part of the bank's *enhancements to its risk management processes* we have been engaged in an orderly process of *bringing in a new chief risk officer and chief audit executive with large bank experience* and we currently have qualified personnel filling those positions on an interim basis."

[Emphasis added.]

18
COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

Case 1:24-cv-00903-NRM-JRC    Document 75-1    Filed 10/17/24    Page 24 of 35 PageID #: 1216

69. On February 29, 2024, NYCB disclosed in SEC filings a goodwill impairment of $2.4 billion, material weaknesses in its internal controls from ineffective oversight, risk assessment, and monitoring activities, and that it would be unable to file its 2023 Form 10-K on time:

> The Company completed its goodwill impairment assessment on February 23, 2024 and ***management determined that Generally Accepted Accounting Principles required a "goodwill impairment" charge on the Company's "Consolidated Statements of Income and Comprehensive Income" for the quarter and fiscal year ended December 31, 2023, resulting in a $2.4 billion decrease to the fourth quarter and annual net (loss) income available to common stockholders. The Company also adjusted the balances of "goodwill" on the "Consolidated Statements of Condition" as of December 31, 2023 for that same amount.*** …

> The Company utilized a market approach to estimate the fair value of its sole reporting unit as of December 31, 2023, related to identified triggering events. ***The Company's assessment concluded that goodwill from historical transactions (2007 and prior) was fully impaired*** as of December 31, 2023, as confirmed by the Company's current market capitalization.

> \*      \*      \*

> Separately, as part of management's assessment of the Company's internal controls, ***management identified material weaknesses in the Company's internal controls related to internal loan review, resulting from ineffective oversight, risk assessment and monitoring activities.*** Although assessment of the Company's internal controls is not yet complete, the Company expects to disclose in the 2023 Form 10-K that its disclosure controls and procedures and internal control over financial reporting were not effective as of December 31, 2023. The Company's remediation plan with respect to such material weaknesses is expected to be described in the 2023 Form 10-K.

> \*      \*      \*

> ***The Company will note that it has determined that it will be unable to file the 2023 Form 10-K with the SEC*** within the prescribed time period without unreasonable effort or expense. The Company expects to file its 2023 Form 10-K within the fifteen calendar day grace period provided by Form 12b-25.

[Emphasis added.]

70. The trading price of NYCB common stock suffered sharp declines following this news, falling to a close of $3.55 per share on March 1, 2024, and $2.73 per share on March 4,

Case 1:24-cv-00903-NRM-JRC   Document 75-1   Filed 10/17/24   Page 25 of 35 PageID #: 1217

2024. On March 6, 2024, trading halted as NYCB shares further plunged and traded as low as $1.70.

71.     On March 14, 2024, NYCB belatedly filed its 2023 Form 10-K. Among other matters, the 2023 Form 10-K represented that NYCB's CEO and CFO had concluded that NYCB disclosure controls and procedures were not effective because of the material weaknesses in the Company's internal control over financial reporting:

> As of December 31, 2023, management assessed the effectiveness of the Company's internal control over financial reporting based upon the framework established in Internal Control—Integrated Framework (2013) issued by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO"). A material weakness (as defined in Rule 12b-2 under the Exchange Act) is a deficiency or combination of deficiencies, in internal control over financial reporting such that there is a reasonable possibility that a material misstatement in our annual or interim financial statements will not be prevented or detected on a timely basis.
>
> ***Based on this assessment, because of the following material weaknesses, management concluded that the Company did not maintain effective internal control over financial reporting*** as of December 31, 2023.
>
> *Control environment –* ***Our Board of Directors did not exercise sufficient oversight responsibilities, which led to us lacking a sufficient complement of qualified leadership resources to conduct effective risk assessment and monitoring activities***.
>
> *Risk assessment –* ***We lacked effective periodic risk assessment processes to identify and timely respond to emerging risks in certain financial reporting processes and related internal controls, including internal loan review, that were responsive to changes in the business operations and regulatory and economic environments in which the Company operates***.
>
> *Monitoring –* ***Our recurring monitoring activities*** over process level control activities, ***including internal loan review, were not operating effectively***.
>
> *Control activities –* ***We did not sufficiently maintain effective control activities related to internal loan review.*** Specifically, our internal loan review processes lacked an appropriate framework to ensure that ratings were consistently accurate, timely, and appropriately challenged. ***These ineffective controls impact the Company's ability to accurately disclose loan rating classifications, identify***

20

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

*problem loans, and ultimately the recognition of the allowance for credit losses on loans and leases*.

These control deficiencies create a reasonable possibility that a material misstatement to the consolidated financial statements will not be prevented or detected on a timely basis, and therefore we concluded that the deficiencies represent material weaknesses in our internal control over financial reporting and our internal control over financial reporting was not effective as of December 31, 2023.

The Company's independent registered public accounting firm, ***KPMG*** LLP, which audited the 2023 consolidated financial statements included in this Form 10-K, ***has expressed an adverse opinion on the effectiveness of the Company's internal control over financial reporting***. …

[Emphasis added.]

72. The 2023 Form 10-K also set forth the following regarding the steps taken to

remediate NYCB's ineffective internal controls and material weaknesses:

The Company is currently working to remediate the material weaknesses described above, including assessing the need for additional remediation steps and implementing additional measures to remediate the underlying causes that gave rise to the material weaknesses. The Company is committed to maintaining a strong internal control environment and to ensuring that proper oversight and a consistent tone is communicated throughout the organization. The Company expects that existing deficiencies will be remediated through implementation of processes and controls designed to ensure strict compliance with U.S. GAAP.

Specifically, we are in the process of strengthening our internal control over financial reporting as follows:

- Appointed several new members to the Board of Directors with extensive experience as financial experts in our industry and backgrounds in risk management. Additionally, several members of the Board of Directors resigned.

- Appointed a new Chief Risk Officer and Chief Audit Executive, both of whom have large bank experience. We are in the process of identifying and appointing a new Director of Loan Review who has prior large bank commercial loan experience.

- Increasing the frequency and nature of reporting from our internal loan review team and first line business units to the Board Risk Committee to support the Board's risk oversight role.

21
COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

Case 1:24-cv-00903-NRM-JRC   Document 75-1   Filed 10/17/24   Page 27 of 35 PageID #: 1219

- Expanding the use of independent credit analysis and reducing the Company's reliance on tools and analysis prepared by our lines of business.

- Improving the internal loan review team's ability to independently challenge risk rating scorecard model methodologies and results.

- Assessing the adequacy of staffing levels and expertise within the internal loan review program, taking into account, among other things, the size, complexity, and risk profile of the Company's loan portfolio.

- Providing additional risk rating process training for all internal loan review employees.

We have enhanced our control environment, risk assessment and monitoring activities by addressing our Board composition and key members of executive management, including the Chief Risk Officer and Chief Audit Executive. Progress has been made on our remedial actions, but we are still in the process of developing and implementing enhanced processes, procedures and controls related to internal loan review. We believe our actions will be effective in remediating the material weaknesses, and we continue to devote significant time and attention to these efforts. In addition, the material weaknesses will not be considered remediated until the applicable remedial processes, procedures and controls have been in place for a sufficient period of time and management has concluded, through testing, that these controls are effective.

73.    The full scope of Defendants' misrepresentations and omissions has continued to gradually emerge across a series of disclosures, executive departures, dividend cuts, and other materialization of risks, and related stock price declines.  Plaintiff and other former Flagstar investors have suffered severe losses as a result of Defendants' misconduct.

74.    As of the commencement of this action, NYCB shares have plummeted *approximately 80%* from the amount paid pursuant to the Merger Exchange.

## CLASS ACTION ALLEGATIONS

75.    Plaintiff brings this action as a class action on behalf of all persons who acquired NYCB common stock directly in the Merger Exchange pursuant to the Offering Materials (the "Class").  Excluded from the Class are Defendants and their families, the officers and directors

and affiliates of Defendants, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which defendants have or had controlling interest.

76.     The members of the Class are so numerous that joinder of all members is impracticable.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Class.  Members of the Class may be identified from records maintained by Defendants or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

77.     Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of law that is complained of herein.

78.     Plaintiff will fairly and adequately protect the interest of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

79.     Common questions of law and fact exist as to all members of the Class and predominance over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether Defendants violated the Securities Act;

(b)     whether the Offering Materials were negligently prepared and contained inaccurate statements of material fact and omitted material information required to be stated therein; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

23
COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

80. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all members is impracticable, and the damages suffered by individual Class members are relatively small as compared with Defendants' combined resources. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. Class treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender.

**FIRST CAUSE OF ACTION**

**For Violation of §11 of the Securities Act**
**Against All Defendants**

81. Plaintiff incorporates all the foregoing by reference.

82. This Cause of Action is brought pursuant to §11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against all Defendants.

83. This Cause of Action alleges and sounds in strict liability. This Cause of Action expressly excludes and disclaims any allegation that could be construed as alleging fraudulent intent, as this Cause of Action is solely based on claims of strict liability and/or negligence under the Securities Act. This Cause of Action does not sound in fraud and Plaintiff expressly disavows and disclaims any allegation that Defendants acted with scienter or fraudulent intent, which, along with reliance, are not elements of a claim under §11 of the Securities Act.

84. The Offering Materials contained untrue statements of material facts, omitted to state other facts necessary to make the statements not misleading, and omitted to state material facts required to be stated therein.

24
COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

Case 1:24-cv-00903-NRM-JRC    Document 75-1    Filed 10/17/24    Page 30 of 35 PageID #: 1222

85.    Defendants are strictly liable to Plaintiff and the Class for the misstatements and omissions in the Offering Materials.

86.    Defendant NYCB is the issuer of the stock sold in the Merger Exchange.  As the issuer, NYCB is strictly liable to Plaintiff and the Class under §11 for the material misrepresentations and omissions in the Registration Statement and the failure of the Registration Statement to be complete and accurate.

87.    The Individual Defendants each signed or were named as Directors or incoming Directors in the Offering Materials.  As such, each is strictly liable for the material misrepresentations in the Offering Materials and the failure of the Offering Materials to be complete and accurate.  Each Individual Defendant had a duty to make a reasonable and diligent investigation of the truthfulness and accuracy of the statements contained in the Offering Materials and ensure that the representations in the Offering Materials were true and accurate, that there were no omissions of material facts that would render the Offering Materials misleading, and that the Offering Materials contained all facts required to be stated therein.  In the exercise of reasonable care, the Individual Defendants should have known of the material misrepresentations and omissions contained in the Offering Materials and should have known of the omissions of material facts necessary to make the statements made therein not misleading or otherwise required to be stated therein.  Accordingly, the Individual Defendants are liable to Plaintiff and the Class under §11 for the material misrepresentations and omissions in the Offering Materials, and the failure of the Offering Materials to be complete and accurate.

88.    None of the Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Materials were true and without omissions of any material facts and were not misleading.

25
COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

Case 1:24-cv-00903-NRM-JRC Document 75-1 Filed 10/17/24 Page 31 of 35 PageID #: 1223

89. By reason of the conduct herein alleged, each Defendant violated, or controlled an employee, agent, or other person who violated, §11 of the Securities Act.

90. Plaintiff acquired NYCB shares directly in the Merger pursuant to the Offering Materials and without knowledge of the untruths and omissions contained therein.

91. Plaintiff and the Class have sustained damages. The value of NYCB common stock has declined substantially subsequent to, and due to, Defendants' violations.

92. This Cause of Action is brought within one year after the discovery of the untrue and misleading statements and omissions at issue and within three years of the date of the offering.

93. By virtue of the foregoing, Plaintiff and Class members are entitled to damages under §11, as measured by the provisions of §11(e), as well as any and all remedies that may exist in equity or at law.

## SECOND CAUSE OF ACTION

**For Violation of §12(a)(2) of the Securities Act**
**Against All Defendants**

94. Plaintiff incorporates all the foregoing by reference.

95. This Cause of Action is brought pursuant to §12(a)(2) of the Securities Act, 15 U.S.C. §77l(a)(2), on behalf of the Class against all Defendants.

This Cause of Action alleges and sounds in strict liability. This Cause of Action expressly excludes and disclaims any allegation that could be construed as alleging fraudulent intent, as this Count is solely based on claims of strict liability and/or negligence under the Securities Act. This Cause of Action does not sound in fraud and Plaintiff expressly disavows and disclaims any allegation that Defendants acted with scienter or fraudulent intent, which, along with reliance, are not elements of a claim under §12(a)(2) of the Securities Act.

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

Case 1:24-cv-00903-NRM-JRC    Document 75-1    Filed 10/17/24    Page 32 of 35 PageID #: 1224

96.    By means of the prospectus and related oral communications, Defendants promoted, solicited, and sold NYCB shares to Plaintiff and Class members. Defendants were sellers to, and direct solicitors of, purchasers of the Company's securities offered pursuant to the offering. Defendants issued, caused to be issued, or signed or authorized the signing of the prospectus and related oral communications in connection with the offering, and used it to directly induce investors, including Plaintiff and the other Class members, to purchase the Company's shares.

97.    The prospectus and related oral communications contained untrue statements of material fact, and concealed and failed to disclose material facts, as detailed above. Defendants' acts of solicitation included participating in the preparation, dissemination, and promotion of the false and misleading prospectus and related oral communications directly to Plaintiff and Class members.

98.    Defendants owed Plaintiff and the other members of the Class the duty to make a reasonable and diligent investigation of the statements contained in the prospectus to ensure that such statements were true, that there was no failure to state a material fact required to be stated in order to make the statements contained therein not misleading, and that statements required to be made were not omitted. Defendants, in the exercise of reasonable care, should have known of the misstatements and omissions contained in the prospectus and related oral communications as set forth above.

99.    Plaintiff did not know, nor in the exercise of reasonable diligence could he have known, of the untruths and omissions contained in the prospectus and related oral communications at the time Plaintiff acquired NYCB shares.

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

Case 1:24-cv-00903-NRM-JRC Document 75-1 Filed 10/17/24 Page 33 of 35 PageID #: 1225

100. By reason of the conduct of the conduct alleged herein, Defendants violated, or controlled an employee, agent, or other person who violated, §12(a)(2) of the Securities Act.

101. As a direct and proximate result of such violations, Plaintiff and the other members of the Class received NYCB shares pursuant to the prospectus and sustained substantial damages in connection with their purchases of the stock. Accordingly, Plaintiff and the other members of the Class who hold the common stock issued directly pursuant to the Offering Materials have the right to rescind and recover the consideration paid for their shares, and hereby tender their NYCB common stock to Defendants sued herein. Class members who have sold their common stock seek damages. All class members further seek equitable and other remedies to the extent permitted in equity or at law.

102. This claim is brought within one year after the discovery of the untrue and misleading statements and omissions at issue and within three years of the date of sale to Plaintiff and Class members.

## THIRD CAUSE OF ACTION

### For Violation of §15 of the Securities Act
### Against All Defendants

103. Plaintiff incorporates all the foregoing by reference.

104. This Cause of Action is brought pursuant to §15 of the Securities Act, Act, 15 U.S.C. §77o, against all Defendants.

105. This Cause of Action avers and sounds in strict liability. This Cause of Action expressly excludes and disclaims any allegation that could be construed as alleging fraud or scienter, as this cause of action is solely based on claims of strict liability and/or negligence under the Securities Act. This Cause of Action does not sound in fraud and Plaintiff expressly disavows

28
COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

and disclaims any allegation that Defendants acted with scienter or fraudulent intent, which, along with reliance, are not elements of a claim under §15 of the Securities Act.

106.    NYCB controlled the Individual Defendants and all of NYCB's employees.  NYCB orchestrated and negotiated the Merger.

107.    The Individual Defendants were controlling persons of NYCB and/or Flagstar, or NYCB or Flagstar employees or agents, by virtue of their positions as directors or senior officers of NYCB or Flagstar.  The Individual Defendants each had a series of direct or indirect business or personal relationships with other directors or officers or major shareholders of NYCB or Flagstar.

108.    By reason of the wrongful conduct set forth above, each Defendant was a culpable participant in the violations of §§11 and 12(a)(2) of the Securities Act alleged above, and also liable pursuant to §15 of the Securities Act.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

1.    Certifying this class action, appointing Plaintiff as Class representative, and appointing Plaintiff's counsel as Class Counsel;

2.    Awarding damages in favor of Plaintiff and the Class against all Defendants, jointly and severally, in an amount to be proven at trial, including interest thereon;

3.    Awarding Plaintiff and the Class their reasonable cost and expenses incurred in this action, including counsel fees and expert fees;

4.    Awarding rescission, disgorgement, or such other equitable or injunctive relief as deemed appropriate by the Court.

Case 1:24-cv-00903-NRM-JRC Document 75-1 Filed 10/17/24 Page 35 of 35 PageID #: 1227

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED: April 16, 2024

Respectfully submitted,

*s/ Thomas L. Laughlin, IV*
Thomas L. Laughlin, IV (Bar #4471975)
Jonathan M. Zimmerman (*pro hac vice* forthcoming)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
tlaughlin@scott-scott.com
jzimmerman@scott-scott.com

Adam E. Polk (SBN 273000)
Sean Greene (SBN 328718)
Patrick Johnson (SBN 329580)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846
apolk@girardsharp.com
sgreene@girardsharp.com
pjohnson@girardsharp.com

David W. Hall (SBN 274921)
Armen Zohrabian (SBN 230492)
**THE HALL FIRM, LTD.**
Four Embarcadero Center, Suite 1400
San Francisco, CA 94104
Telephone: (415) 766-3534
Facsimile: (415) 402-0058
dhall@hallfirmltd.com
azohrabian@hallfirmltd.com

*Attorneys for Plaintiff and the Proposed Class*

30
COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933