**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WALTER EDWARD LEMM, JR.,<br><br>                 Plaintiff,<br><br>        vs.<br><br>NEW YORK COMMUNITY BANCORP, INC., THOMAS R. CANGEMI, and JOHN J. PINTO,<br><br>                 Defendants. | No.: 24-cv-00903-NRM-JRC<br><br><u>CLASS ACTION</u><br><br><u>JURY TRIAL DEMANDED</u> |
| ROBERT GARFIELD, individually and on behalf of all others similarly situated,<br><br>                 Plaintiff,<br><br>        vs.<br><br>FLAGSTAR FINANCIAL, INC., f/k/a NEW YORK COMMUNITY BANCORP, INC., THOMAS R. CANGEMI, JOHN J. PINTO, ROBERT WANN, ALESSANDRO P. DINELLO, DOMINICK CIAMPA, HANIF W. DAHYA, LESLIE D. DUNN, JAMES J. O'DONOVAN, LAWRENCE ROSANO, JR., RONALD A. ROSENFELD, DAVID TREADWELL, and LAWRENCE J. SAVARESE,<br><br>                 Defendants. | No.: 24-cv-08655<br><br><u>CLASS ACTION</u><br><br><u>JURY TRIAL DEMANDED</u> |

**MOTION TO CONSOLIDATE, VACATE PRIOR LEAD PLAINTIFF AND LEAD COUNSEL APPROVAL ORDER AND ORDER REOPENING OF THE PSLRA LEAD PLAINTIFF AND LEAD COUNSEL APPROVAL PROCESS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES…………………………………………………………………………..ii

I. INTRODUCTION ................................................................................................ 1

II. BACKGROUND FACTS.................................................................................... 3

III. PRIOR PROCEEDINGS .................................................................................... 5

IV. ARGUMENT....................................................................................................... 6

    A. CONSOLIDATION OF THIS CASE WITH *LEMM* IS APPROPRIATE ................................. 6

    B. THE MAY 7, 2024 LEAD PLAINTIFF ORDER SHOULD BE VACATED AS REPUBLICATION OF THE PSLRA NOTICE IS NECESSARY ........................................ 6

    C. THE IPRS "APPOINTMENT" BY BRS REQUIRES COURT SCRUTINY ......................... 9

        1. The IPRS Certification............................................................... 9

        2. It is Unclear Whether IPRS Has Section 11 Damages ............................ 11

    D. BRS REQUIRES FURTHER SCRUTINY BASED ON THE ACC ................................... 11

        1. BRS Has Submitted No Certification Relating to the New Class Period ..................................................................................... 11

        2. BRS Now May Be Subject to "Unique Defenses" ................................. 12

        3. BRS Cannot Rely on *Hevesi* to Support the ACC ................................. 12

    E. A NEW PSLRA PROCESS WILL ENABLE THE COURT TO PROTECT THE SECURITIES ACT CLASS ........................................................................... 13

V. CONCLUSION.................................................................................................. 14

i

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*In re Block, Inc. Sec. Litig.*,
   No. 22-cv-8636 (RA), 2024 U.S. Dist. LEXIS 26849 (S.D.N.Y. Feb. 15,
   2024) ...............................................................................................................3, 13

*Capital LLC v. Credit Suisse Grp. AG*,
   996 F.3d 64 (2d Cir. 2021).............................................................................................4

*In re Cloudera Sec. Litig.*,
   No. 19-CV-03221-LHK, 2020 U.S. Dist. LEXIS 47102 (N.D. Cal. Mar. 18,
   2020) .............................................................................................................................6

*Dube v. Signet Jewelers Ltd.*,
   No. 16-CV-6728 (JMF), 2017 U.S. Dist. LEXIS 57624 (S.D.N.Y. Apr. 14,
   2017) .............................................................................................................................7

*Fresno County. Emples. Ret. Ass'n v. comScore, Inc.*,
   268 F. Supp. 3d 526 (S.D.N.Y. 2017)...........................................................................3

*Gru v. Axsome Therapeutics, Inc.*,
   Case No. 1:22-cv-03925-LGS, Order at ECF No. 66 (S.D.N.Y. Nov. 15, 2023).................. 6-7

*Hachem v. GE Inc., No. 17-CV-8457 (JMF)*,
   2018 U.S. Dist. LEXIS 62278 (S.D.N.Y. Apr. 11, 2018)..........................................7

*Herman & MacLean v. Huddleston*,
   459 U.S. 375 (1983).....................................................................................................4

*Hevesi v. Citigroup Inc.*,
   366 F.3d 70 (2d Cir. 2004).....................................................................................12, 13

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
   947 F. Supp. 2d 366 (S.D.N.Y. 2013)...........................................................................7

*Lemm v. N.Y. Cmty. Bancorp, Inc.*,
   No. 24-CV-903-NRM-JRC, 2024 U.S. Dist. LEXIS 83218 (E.D.N.Y. May 7,
   2024) .............................................................................................................................2

*Lemm v. New York Community Bancorp, Inc. et al*,
   No. 1:24-cv-00903-NRM-JRC ............................................................................1, 5, 6, 8

*Plumber & Steamfitters Local 773 Pension Fund, Bos. Ret. Sys. v. Danske Bank
   A/S*,
   11 F.4th 90 (2d Cir. 2021) ...........................................................................................12

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
　2005 U.S. Dist. LEXIS 10780 (S.D.N.Y. June 1, 2005) ...........................................................7

*Waldman v. Wachovia Corp.*,
　2009 U.S. Dist. LEXIS 83597 (S.D.N.Y. Sep. 14, 2009).......................................................7, 8

*Wang v. Athira Pharma, Inc.*,
　No. C21-861 TSZ, 2021 U.S. Dist. LEXIS 192248 (W.D. Wash. Oct. 5, 2021) ....................13

**Statutes**

Securities Exchange Act of 1933 ......................................................................................... *passim*

Private Securities Litigation Act of 1995 .............................................................................. *passim*

**Other Authorities**

https://in.accessgov.com/inprs-apra/Home/Directory........................................................................10

## I.    **INTRODUCTION**

Robert Garfield ("Movant") respectfully submits this memorandum of law in support of his Motion to consolidate his above-captioned action filed on December 19, 2024, with *Lemm v. New York Community Bancorp, Inc. et al,* No. 1:24-cv-00903-NRM-JRC ("*Lemm*"), and in support of other relief.

In conjunction with the consolidation, Movant respectfully also requests that the Court reopen the process provided by Congress under the Private Securities Litigation Act of 1995 (the "PSLRA") to select the Lead Plaintiff and Lead Counsel for several related cases involving New York Community Bancorp, Inc., now known as Flagstar Financial, Inc.  He requests this because the pre-existing putative Lead Plaintiff, Boston Retirement System ("BRS"), on September 25, 2024 (without Court approval to do so) filed an "Amended Consolidated Class Action Complaint For Violations of the Federal Securities Laws" (the "ACC") which significantly altered the scope of the pre-existing action.  The ACC dramatically expands the pre-existing Class Period, and adds many new defendants, all without ever providing notice to putative class members that it was doing so. Most importantly, BRS unilaterally added entirely new claims relating to a 2022 merger that had never previously been asserted (or even mentioned) in any prior pleading or PSLRA notice, affecting an enormous number of investors who never received publication notice that such claims would be asserted on their behalf.  In addition, without notice or permission, BRS self-appointed a new "Named Plaintiff," Indiana Public Retirement System ("IPRS") to represent what amounts to a new and different Class (again, pled in the ACC for the first time) without ever subjecting IPRS to Court review and approval. Thus, the Court has never had an opportunity to evaluate whether this "new Class" (which concerns entirely new claims and new statutes never previously invoked - Section 11 of the 1933 Securities Act and other Securities Act provisions) requires its

1

own unconflicted Lead Plaintiff. Nor have the affected stockholders been accorded an opportunity to weigh in on these developments.

The ACC's addition of what will be referred to herein as the "New Securities Act Class" violates the PSLRA, as hundreds of thousands of potential New Securities Act Class members were deprived of their statutory right to be heard as to the selection of Lead Plaintiff and Lead Counsel, and make their own leadership applications, if they so desired.[1] In the PSLRA, Congress mandated that potential class members be notified shortly after new claims are asserted on their behalf, and be accorded an opportunity to be heard, and to participate in the action. As putative Lead Plaintiff, BRS has no power to almost entirely re-make this action without following the carefully crafted PSLRA procedures. Nor does it have the power to deprive the Court of its crucial role in deciding who should lead this reconfigured class action, which now bears little resemblance to the class action BRS was actually appointed to lead.[2]

---

[1] The New Securities Class may claim very significant damages, perhaps more than the Section 10(b) class. Under the Section 11 damages formula (which subtracts the price at the time of suit from the price at the time of the Merger), damages could reach into the hundreds of millions.

[2] Prior to the filing of the ACC, the Class Period (the "Pre-Existing Class Period") extended only from March 1, 2023 to February 5, 2024 (11 months long). The "New Class Period" extends much longer--from July 27, 2022 through February 29, 2024 (now 19 months long). The ACC, as noted, now contains new Securities Act claims under Section 11 brought on behalf of former stockholders of a bank acquired by NYCB in December 2022. The pre-existing complaint does not even hint at such claims; it contained only Section 10(b) claims, and had nothing to do with this 2022 Merger. The Order appointing BGS by Magistrate Judge Cho appointed it only to pursue Section 10(b) claims. *See Lemm v. N.Y. Cmty. Bancorp, Inc.,* No. 24-CV-903-NRM-JRC, 2024 U.S. Dist. LEXIS 83218 (E.D.N.Y. May 7, 2024). In addition, lead plaintiff contestant Sand Hollow Management LLC, is seeking reconsideration of the appointment of BRS (ECF No. 47). In a prior Order, this Court provided that no consolidated complaint was to be filed except pursuant to its approval. (ECF No. 9, ¶ 4, March 12, 2024). BRS has repeatedly sought approval to file a consolidated amended complaint (ECF Nos. 51, 59 and 66). Although no such approval was ever granted, BRS nonetheless filed the ACC.

In similar circumstances, Courts have not hesitated to reopen the PSLRA process, to order a new notice to be published, and to entertain new submissions for case leadership. *See* discussion and case citations *infra*, at pp. 6-13. The same should be done here.[3]

## II.    BACKGROUND FACTS

Movant's complaint asserts class action claims on behalf of stockholders of former FlagstarBank N.A., f/k/a Flagstar Bancorp, Inc. ("Old Flagstar"), which merged with New York Community Bancorp, Inc. ("NYCB"),[4] pursuant to a stockholder-approved deal in which each share of Flagstar common stock was converted into the right to receive 4.0151 shares of NYCB common stock, with fractional shares converted into cash (the "Merger"). Upon the December 1, 2022 Merger, approximately *215 million* NYCB shares were exchanged for Old Flagstar shares. Movant's complaint is the only complaint filed in this District which *solely* alleges liability as to this Merger under Section 11 of the Securities Act of 1933 (the "Securities Act"), and related Securities Act provisions that do not require fraud or scienter.[5] Movant's complaint avers that Old

---

[3] This new process will enable the Court to consider whether the New Securities Act Class merits its own Lead or Co-Lead Plaintiff to protect its unique interests. One court recently ordered such relief, providing for separate representation by a discrete Securities Act Lead Plaintiff. *In re Block, Inc. Sec. Litig.*, No. 22-cv-8636 (RA), 2024 U.S. Dist. LEXIS 26849, at *26-27 (S.D.N.Y. Feb. 15, 2024). In addition, should BRS re-apply, it should submit its transactions in NYCB stock during the New Class Period, something it has not done. Should IPRS apply for a position, it should explain certain trading issues raised by its PSLRA Certification (ECF No. 69-1), which issues are discussed herein at pp. 9-11.

[4] On October 8, 2024 NYCB changed its named to Flagstar Financial, Inc. ("New Flagstar"), effective October 24, 2024.  It currently trades under the ticker symbol "FLG".  For purposes of clarity, when discussing actions taken prior to the name change, Movant will refer to New Flagstar as "NYCB" and the actions of the bank it acquired by merger as "Old Flagstar."

[5] Section 11(a) of the Securities Act of 1933, 15 U.S.C. § 77k(a), creates a private cause of action for those injured pursuant to any untrue or omissive statement relating to the securities to be issued in the Merger. *See Fresno County. Emples. Ret. Ass'n v. comScore, Inc.,* 268 F. Supp. 3d 526, 556-57 (S.D.N.Y. 2017). Neither Section 11 nor Securities Act Section12(a)(2) require that plaintiffs

Flagstar stockholders were injured by NYCB and its executives' false and misleading statements. As the Old Flagstar-NYCB Merger closed on December 1, 2022, Movant's allegations pertain— as they must—only to omissions and misrepresentations made prior to December 1, 2022.

Liability under Section 11 is more easily proved than under other securities statutes such as Section 10(b). As the Court in *Fresno Cty., supra*, observed at 557:

> Section 11 imposes a stringent standard of liability on the parties who play a direct role in a registered offering. To establish a prima facie claim under Section 11, a plaintiff need only plead a material misstatement or omission in the registration statement. Liability against the issuer of a security is virtually absolute, even for innocent misstatements, while other defendants bear the burden of demonstrating due diligence. (Citations omitted).

In addition, a Section 11 Plaintiff need not prove reliance, nor loss causation. *See Capital LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 84 (2d Cir. 2021). Section 11 thus stands in stark contrast to clams often brought for "open market" purchasers, which are ordinarily asserted under Section 10(b) of the Securities Exchange Act, 15 USC § 78j(b), and require Plaintiff to establish reliance, loss causation, scienter and intentional fraud, under the heightened pleading standards required by the PSLRA.  The PSLRA contains provisions reflecting a keen interest by Congress in the process by which a Lead Plaintiff and a Lead Counsel for securities class actions of all types are appointed. In sum, once a securities class action is filed in federal court: (1) the first filer must publish a public notice informing prospective "class members" of the action and its core allegations; and (2) those investors must be given 60 days to apply to the Court for permission to serve as a Lead Plaintiff, or otherwise weigh in on the process. Potential lead plaintiffs must submit a sworn certification (the "PSLRA Certification") listing their Class Period trades, confirming their interest in the action, and provide other details. It is up to the Court thereafter to select, after

---

allege the scienter or reliance elements of a fraud cause of action. *Herman & MacLean v. Huddleston,* 459 U.S. 375, 382 (1983).

4

considering motions, the "most adequate" Lead Plaintiff and Lead Counsel. The presumptive Lead Plaintiff is the applicant claiming the largest loss, but that presumption can be overcome if that applicant exhibits characteristics that concern the Court, such as an unusual trading pattern, a conflict of interest, or anything that may subject the applicant to a "unique defense" at a later stage.

Other securities class actions against banking corporation NYCB were filed in this Court in early 2024, following NYCB's surprise January 31, 2024 announcement of unexpectedly large loan loss provisions and a sharp dividend cut. These developments caused the Company's stock price to plummet. Several lawsuits were filed, potential class members were notified, and the PSLRA process was invoked. Importantly, the notice published in the first class action filed, *Lemm*, and the second action filed, *Miskey,* only described Section 10(b) claims, and counsel only notified NYCB investors who acquired stock during the much shorter Pre-Existing Class Period (*See* ECF Nos. 13-5 and 13-6).

### III.    PRIOR PROCEEDINGS

On April 8, 2024, multiple motions for lead plaintiff and lead counsel were filed. *See, generally,* ECF Nos. 10-26. Ultimately, the applicants with the greatest losses were BRS and Sand Hollow Management, LLC ("Sand Hollow"). On May 7, 2024, Magistrate Judge James R. Cho selected BRS and its counsel Labaton Keller Sucharow LLP ("Labaton") to serve as Lead Plaintiff and Lead Counsel. (ECF No. 44). Sand Hollow was not selected, as it was viewed as subject to "unique defenses" based on its trading history. Sand Hollow filed a Motion for Reconsideration of that Order on May 20, 2024, which is *sub judice*. (ECF Nos. 46, 47). Subsequently, Sand Hollow filed a Motion to Stay Proceedings pending a decision on the Motion for Reconsideration. (ECF Nos. 70, 71).

BRS then entered into three scheduling stipulations with counsel for defendants which were never approved by the Court. (ECF Nos. 51, 59 and 66). The May 24, 2024 Stipulation, although never "so ordered" by the Court, set August 7, 2024 as the day BRS would file an amended complaint. ECF No. 51. The July 19, 2024 Stipulation, also never "so ordered" by the Court, set September 11, 2024 as the day BRS would file an amended complaint. ECF No. 59. Finally, a September 9, 2024 Stipulation, likewise never "so ordered" by the Court, set September 25, 2024 as the day BRS would file an amended complaint. ECF No. 66. Despite lack of Court permission, the ACC was filed on September 25, 2024. As noted, it bore scant resemblance to the actions BRS was appointed to lead. Thereafter, BRS and its counsel advised the Court by letter that Defendants will file their letters requesting a pre-motion conference as to anticipated motions to dismiss within 30 days *after* the Court's decision on the Motion for Reconsideration. (ECF No. 72).

On December 19, 2024, Movant filed his Securities Act complaint in this Court.

## IV.    **ARGUMENT**

### A.    **CONSOLIDATION OF THIS CASE WITH *LEMM* IS APPROPRIATE**

Both this action and the *Lemm* action allege class claims against NYCB and certain of its corporate officers and directors arising under the securities laws. As such, consolidation would be appropriate. *See Lemm, supra.*

### B.    **THE MAY 7, 2024 LEAD PLAINTIFF ORDER SHOULD BE VACATED AS REPUBLICATION OF THE PSLRA NOTICE IS NECESSARY**

Courts are in accord that the lead plaintiff process can be reopened if there is a new complaint, amended complaint or proposed complaint. *See In re Cloudera Sec. Litig.*, No. 19-CV-03221-LHK, 2020 U.S. Dist. LEXIS 47102, at *5 (N.D. Cal. Mar. 18, 2020). When an amended complaint substantially alters the claims or class members, republication is warranted. *See Gru v.*

6

*Axsome Therapeutics, Inc*., Case No. 1:22-cv-03925-LGS , Order at ECF No. 66 (S.D.N.Y. Nov. 15, 2023)(reopening PSLRA process where Class Period was altered); *Hachem v. GE Inc., No. 17-CV-8457 (JMF),* 2018 U.S. Dist. LEXIS 62278, at *4-9 (S.D.N.Y. Apr. 11, 2018) (court concluded that republication was warranted when a class period was expanded by almost 4.5 years and included new claims with respect to GE's business segments, leading court to vacate the original lead plaintiff order); *Dube v. Signet Jewelers Ltd.,* No. 16-CV-6728 (JMF), 2017 U.S. Dist. LEXIS 57624, at *2-6 (S.D.N.Y. Apr. 14, 2017); *Waldman v. Wachovia Corp.,* 2009 U.S. Dist. LEXIS 83597, at *5 (S.D.N.Y. Sep. 14, 2009) (after lead plaintiffs sought to withdraw and substitute in new plaintiffs, court ordered republication of notice in light of the expanded class period and new claims asserted so that new class members could have a "reasonable opportunity to identify themselves and present themselves for the Court's consideration."); *Kaplan v. S.A.C. Capital Advisors, L.P*., 947 F. Supp. 2d 366, 367 (S.D.N.Y. 2013) (given the addition of two years to the class period and the new claims in the complaint, it was likely that potential lead plaintiffs would have disregarded the earlier notice and without republication, these new claims would potentially exclude qualified movants from the lead plaintiff selection process); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.,* 2005 U.S. Dist. LEXIS 10780, at *6-9 (S.D.N.Y. June 1, 2005) (when membership of a class is substantially expanded by an amended complaint that adds new claims and new classes of securities, republication is required in the spirit of the PSLRA to notify potential movants of their rights).

In this case, there are many factors that support vacating the lead plaintiff order and ordering a new PSLRA notice to be issued on behalf of potential class members of the Section 11 and other Securities Act claims, and the many other investors who never received notice of the expanded Section 10(b) claims. First, as in *Waldman*, the class period has been substantially

7

increased. The original *Lemm* notice issued on February 6, 2024 notified potential lead plaintiffs who were purchasers of NYCB stock between March 1, 2023 through January 30, 2024. It asserted claims only under Sections 10(b) and 20(a) of the Exchange Act for false and misleading statements about NYCB's financial results and business. (ECF No. 13-5).

Likewise, a second notice issued a week later on February 13, 2024 in the related *Miskey* action notified purchasers of NYCB stock between March 1, 2023 through February 5, 2024. It also described claims only under Sections 10(b) and 20(a) of the Exchange Act for false and misleading statements about NYCB's financial results and business. (ECF No. 13-6). Both the *Lemm* and *Miskey* complaints named as defendants NYCB and only two executives of the Company, Messrs. Cangemi and Pinto.

By contrast, the ACC names approximately 12 additional defendants. In addition, the Class Period is greatly expanded, and spans from July 27, 2022 through February 29, 2024, with a new and separate Section 11 and other Securities Act class of "all persons and entities that owned Flagstar Bancorp, Inc. ("Flagstar") common stock and acquired NYCB common stock in exchange for their shares of Flagstar through NYCB's acquisition of and merger with Flagstar, which closed on or about December 1, 2022 (the "Flagstar Merger"), and were damaged thereby." ECF No. 69 at 1. These Merger-related Securities Act Claims, involving former Flagstar stockholders, were never the subject of the prior PSLRA notices. As such, an enormous swath of potential lead plaintiffs who may be eligible have not been alerted to the pendency of a case involving the securities they received. The ACC filed by BRS did unilaterally add a new "named plaintiff" IPRS, who is likely to function as a *de facto,* yet unappointed Lead Plaintiff for the new Securities Act claims. But this selection of IPRS has not been overseen or approved by the Court. Moreover,

8

IPRS has submitted a Certification that is puzzling and needs further clarification, as discussed below.

None of this is in accord with the PSLRA. Thus, republication must be ordered.[6]

### C.   THE IPRS "APPOINTMENT" BY BRS REQUIRES COURT SCRUTINY

#### 1.   The IPRS Certification

By unilateral declaration, BRS is attempting to place the fate of the Old Flagstar holders, and the *215 million* NYCB shares they acquired, in the hands of IPRS. But what qualifications does IPRS have to serve in this role? The IPRS Certification raises more questions than it answers and, as such, merits Court inquiry.

The Merger was completed on December 1, 2022. On that day, each share of Old Flagstar common stock was converted into NYCB common shares based upon a fixed exchange ratio of 4.0151 shares of New York Community Bancorp stock for each share of Old Flagstar stock. Old Flagstar shareholders received cash in lieu of fractional shares as per the Merger Agreement and approximately 215 million shares were issued in the Merger.

Strangely, the IPRS Certification indicates that IPRS received fractional shares of NYCB stock in multiple transactions on that day. (ECF No. 69-1). That was simply not possible under the Merger terms. No fractional shares were issued.  This raises the question of whether these fractional shares reflect open market purchases of NYCB stock by IPRS purchased on the day of the Merger and not shares acquired via the exchange of securities pursuant to the terms of the Merger. IPRS may have a good explanation for this, but it is not apparent.

---

[6] In addition to the Section 11 and other Securities Act class claims never being noticed, no notice ever went out to potential Section 10(b) claimants who purchased from July 27, 2022 to March 1, 2023. NYCB had total trading volume of hundreds of millions of shares during that period.

Moreover, the transactions in the Certification listed do not appear to match with those listed in IPRS' quarterly reports, which are available for public inspection.[7] For example, IPRS alleges in the ACC it acquired 44,435 NYCB shares in the December 1, 2022 Merger. (ACC, ¶ 22). Its Certification (ECF No. 69-1), however, states that it bought 4,460 shares of NYCB stock just prior to the Merger, and then goes on to state that it sold 15,503 shares on December 6, 2022. Adding 44,435 Merger-acquired shares to the previously purchased 4,460 shares totals 48,895 NYCB shares. Subtracting a sale of 15,503 shares, leaves what should be 33,392 shares. The IPRS Certification next states that it purchased 7,850 NYCB shares on December 16, 2022. This number should be added to the aforementioned 33,392 shares.

Thus, IPRS' holdings as of December 31, 2022 should have been 41,242 shares of NYCB common stock. Yet the math does not match, as the total reflected on IPRS' quarterly report for December 31, 2022 states that IPRS held *18,420* NYCB shares in one account and 0.30 of an NYCB share in another. *See,* Declaration of Laurence D. Paskowitz ("Paskowitz Dec."), submitted herewith, Exh. A. Were more shares sold than are listed? If so, were these the shares acquired in the Merger?

In addition, on March 22, 2023, the Certification logs the sales of two fractions of an NYCB share. This makes no sense, as fractional shares were not offered in the Merger and IPRS notes only .30 of a share. It is uncertain what the provenance is of the fractional share that was sold that day.[8] Did IPRS have purchases or sales it hasn't listed? The IPRS Certification is mystifying and warrants further clarification. These apparent contradictions plainly support re-opening the process

---

[7] *See* https://in.accessgov.com/inprs-apra/Home/Directory.

[8] In 2022 and 2023, NYCB paid a quarterly dividend of $0.51.

to protect the "New Securities Act Class" which, as noted, may have enormous damages claims at stake.

### 2.    It is Unclear Whether IPRS Has Section 11 Damages

The IPRS Certification does not include any explanation as to why IPRS claims Section 11 damages. Even assuming it is fully accurate, IPRS was an "in and out" trader who sold as many or more shares Post-Merger as it claims it received in the Merger. IPRS has the option, for tax purposes, to designate the Merger shares as the shares it sold. If it did so, it would have no damages under Section 11's damages formula, as the sale proceeds listed in the IPRS Certification were higher than the price at the time of the Merger. Under the unique Section 11 damages formula, the price at which the shares were sold must be lower than the price at which they were acquired. This, too (along with the shares totals that do not match public records), shows that IPRS is deserving of the scrutiny a renewed PSLRA process will bring.

### D.    BRS REQUIRES FURTHER SCRUTINY BASED ON THE ACC

### 1.    BRS Has Submitted No Certification Relating to the New Class Period

In connection with its Lead Plaintiff application, BRS submitted a Certification listing its trades during the Pre-Existing Class Period. (ECF No. 13-3). But it has not done the same as to the New Class Period. Like IPRS, BRS is an "in and out" trader. For all anyone can ascertain, a Certification by BRS pertaining to the New Class Period may show it has no damages, or a far lesser number than it claimed in connection with its prior application. The stockholders and this Court are entitled to the evidence required by the PSLRA as to whether BRS can claim New Class Period damages.

11

**2.      BRS Now May Be Subject to "Unique Defenses"**

BRS asserts in the ACC that it can represent the New Class Period purchasers (including the new Securities Act purchasers) because it, too, relied upon the 2022 Offering Materials pertaining to the Merger of Old Flagstar and NYCB. (*See* ACC ¶ 520). But how can this be? The BRS "Loss Analysis" (ECF No 13-4) shows that the bulk of the shares as to which BRS might claim damages were purchased in December 2023, over one year after the Merger's close. The ACC lists at least 15 supervening NYCB statements during 2023 that led to BRS allegedly being defrauded.  *See* ACC, pp. 104-11, 121-44.

Given this, BRS has apparently pled itself into a "unique defense" potentially precluding its service as a Lead Plaintiff.  *See Plumber & Steamfitters Local 773 Pension Fund, Bos. Ret. Sys. v. Danske Bank A/S,* 11 F.4th 90, 101-02 (2d Cir. 2021)(affirming motion to dismiss securities fraud claim where plaintiff allegedly relied on information that was outdated), *citing, Rand v. Cullinet Software, Inc.*, 847  F. Supp. 200, 210 (D. Mass. 1994) (reasoning that allegedly misleading statements had "lost any possible materiality" by the time the plaintiff purchased stock seven months later given the "intervening time" and new "information . . . enter[ing] the market.").

Defendants may well devote considerable resources to attacking BRS' credibility on its claimed reliance on potentially outdated statements, damaging all Class members in the process. Thus, due to its new and highly attenuated reliance claims, BRS warrants its service as Lead Plaintiff being subjected to the further scrutiny a new PSLRA process will bring.

**3.      BRS Cannot Rely on *Hevesi* to Support the ACC**

BRS may be expected to cite to *Hevesi v. Citigroup Inc.,* 366 F.3d 70 (2d Cir. 2004) for the proposition that a Lead Plaintiff may add named plaintiffs to help it prosecute claims it has no standing to bring, including Securities Act claims. But *Hevesi* is inapposite. There, an institutional

12

plaintiff, NYSCEF, was deemed adequate to represent all claims during a Class Period that was *ab initio fully disclosed* to investors who were harmed by a massive fraud perpetrated by Worldcom, Inc. The damaged investors included bondholders who purchased their securities in offerings dated May 24, 2000 and May 14, 2001, and had Securities Act claims. *Id*. at 74. Two named plaintiffs were added by NYSCEF to help prosecute these claims. No suggestion was made in *Hevesi* that the PSLRA process had not been scrupulously followed, as indeed it had. Contemporaneous PSLRA notices show that, before Lead Plaintiff NYSCEF was appointed, the holders of all Worldcom securities (*including bond purchasers*) received at least *five* public notices informing them of both the relevant Class Period (which included the dates of the bond offerings) and the right of any securities purchaser to apply for Lead Plaintiff, or be heard on the issue of who should serve in that capacity.[9]  Thus, *Hevesi* did not address or even remotely involve the serious issues that have been raised here. In *Hevesi*, all potential Class members were notified (including Securities Act claimants), all had a prior opportunity to be heard, and NYSCEF was fully scrutinized. This is quite different from what has transpired here.  Nothing in *Hevesi* was done by stealth.

### E.    A NEW PSLRA PROCESS WILL ENABLE THE COURT TO PROTECT THE SECURITIES ACT CLASS

As we have noted, the connection between BRS and the Securities Act Class appears fanciful and artificial. In these circumstances, courts have previously ordered a disparate group suing under Section 11 to be protected by its own Lead Plaintiff. *See e.g., Block, supra* n.3; *Wang v. Athira Pharma, Inc.,* No. C21-861 TSZ, 2021 U.S. Dist. LEXIS 192248 (W.D. Wash. Oct. 5, 2021). While no final decision need be made now, the Court should at least have an opportunity to

---

[9] *See* Paskowitz Dec., Exh. B (attaching five Worldcom-related PSLRA Notices from 2002).

consider this possibility, and the affected stockholders should at least be accorded an opportunity to propose it.

## V.   **CONCLUSION**

For the foregoing reasons, Movant respectfully requests that the Court grant the relief requested herein.

Dated: New York, New York          Respectfully submitted,
  December 19, 2024

**THE PASKOWITZ LAW FIRM P.C.**

/s/ *Laurence D. Paskowitz*
Laurence D. Paskowitz
The Contour
97-45 Queens Boulevard, Ste. 1202
Rego Park, NY 11374
T: 212-685-0969
lpaskowitz@pasklaw.com

**KOMLOSSY LAW P.A.**
Emily Komlossy
3440 Hollywood Boulevard, Ste. 415
Hollywood, FL 33021
T: (954) 842-2021
F: (954) 416-6223
eck@komlossylaw.com

*Counsel for Plaintiff*