# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| WALTER EDWARD LEMM, JR., Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>   vs.<br><br>NEW YORK COMMUNITY BANCORP, INC., THOMAS R. CANGEMI, and JOHN J. PINTO,<br><br>        Defendants. | Master File No. 24-cv-00903-NRM-JRC<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |
| ROBERT GARFIELD, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>   vs.<br><br>FLAGSTAR FINANCIAL, INC. f/k/a NEW YORK COMMUNITY BANCORP, INC., THOMAS R. CANGEMI, JOHN J. PINTO, ROBERT WANN, ALESSANDRO P. DINELLO, DOMINICK CIAMPA, HANIF W. DAHYA, LESLIE D. DUNN, JAMES J. O'DONOVAN, LAWRENCE ROSANO, JR., RONALD A. ROSENFELD, DAVID TREADWELL, and LAWRENCE J. SAVARESE,<br><br>        Defendants. | No. 24-cv-08655-JAM<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN RESPONSE TO ROBERT GARFIELD'S MOTION TO CONSOLIDATE, VACATE PRIOR LEAD PLAINTIFF AND LEAD COUNSEL APPROVAL ORDER AND ORDER REOPENING OF THE PSLRA LEAD PLAINTIFF AND LEAD COUNSEL APPROVAL PROCESS**

# TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ........................................................................... 1

II.  RELEVANT PROCEDURAL BACKGROUND................................................. 1

    A.   Overview Of This Consolidated Federal Securities Class Action .......................... 1

        1.   The Initial Complaints Are Filed ................................................... 1

        2.   Boston Is Appointed Lead Plaintiff, Labaton Is Appointed Lead Counsel, And The Initial Complaints Are Consolidated ........................... 2

        3.   Sand Hollow Files A Motion To Reconsider The Lead Plaintiff Order, Which Should Be Denied ................................................... 3

        4.   Boston Files An Amended Consolidated Complaint In Accordance With Its Obligations As A Lead Plaintiff ...................................... 4

    B.   Movant Robert Garfield Has Tried To Impose Himself On Ongoing Actions Against NYCB Since April 2024, Prior To The Lead Plaintiff Deadline ............. 6

III. ARGUMENT ................................................................................................... 8

    A.   Garfield's Motion To Vacate The May 7 Order And Reopen The Lead Plaintiff And Lead Counsel Process Is Untimely And Procedurally Improper.................................................................................................. 8

    B.   The May 7 Order Should Not Be Vacated And PSLRA Notice Does Not Need To Be Republished ......................................................................... 12

        1.   Expansion Of The Class Period Does Not Warrant New Notice.............. 14

        2.   The Addition Of The Securities Act Claim And New Defendants Does Not Warrant New Notice ................................................... 16

    C.   Garfield's Scattershot Attacks On Boston And Indiana Are Factually Wrong And Lack Any Merit...................................................................... 18

        1.   Indiana's Trading Is Accurately Reflected In Its Certification and Garfield's Arguments To The Contrary Lack Any Merit ..................... 18

        2.   Boston Is Clearly Adequate To Represent The Class............................. 21

        3.   As Court-Appointed Lead Plaintiff, Boston Was Empowered, And In Fact Obligated, To File The Expanded Amended Complaint And Add Indiana As A Named Plaintiff........................................... 23

IV.  CONCLUSION.............................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
2011 WL 4538428 (S.D.N.Y. Sept. 29, 2011)........................................................23

*Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.*,
127 F. Supp. 2d 572 (D.N.J. 2001) ......................................................................13

*In re Cassava Scis., Inc. Sec. Litig.*,
342 F.R.D. 413 (W.D. Tex. 2022) ........................................................................21

*Cheng v. Activision Blizzard, Inc.*,
2022 WL 304672 (C.D. Cal. Jan. 30, 2022) ........................................................10

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*,
450 F. Supp. 3d 379 (S.D.N.Y. 2020)...................................................................20

*In re Cloudera, Inc. Sec. Litig.*,
2020 WL 1288362 (N.D. Cal. Mar. 18, 2020) ......................................................17

*Dube v. Signet Jewelers Ltd.*,
2017 WL 1379385 (S.D.N.Y. Apr. 14, 2017).......................................11, 12, 16, 18

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
2013 WL 4399215 (S.D.N.Y. Aug. 13, 2013) ................................................14, 23

*Fishbury, Ltd. v. Connectics Corp.*,
2006 WL 3711566 (S.D.N.Y. Dec. 14, 2006) ................................................23, 24

*Hachem v. Gen. Elec. Inc.*,
2018 WL 1779345 (S.D.N.Y. Apr. 12, 2018)........................................12, 16, 18

*Hevesi v. Citigroup Inc.*,
366 F.3d 70 (2d Cir. 2004).....................................................................................24

*Hom v. Vale, S.A.*,
2016 WL 880201 (S.D.N.Y. Mar. 7, 2016) .....................................................13, 16

*In re Initial Public Offering Sec. Litig.*,
214 F.R.D. 117 (S.D.N.Y 2002) ...........................................................................24

*Ito-Stone v. DBV Techs. S.A.*,
2020 WL 6580776 (D.N.J. Nov. 10, 2020) ..................................................*passim*

*Kaplan v. S.A.C. Cap. Advisors, L.P.*,
   947 F. Supp. 2d 366 (S.D.N.Y. 2013) ...................................................................16

*Lax v. First Merchs. Acceptance Corp.*,
   1997 WL 461036 (N.D. Ill. Aug. 11, 1997) .....................................................13, 14

*In re Meta Platforms, Inc., Sec. Litig.*,
   2022 WL 3571995 (N.D. Cal. July 26, 2022) .......................................................19

*Montoya v. Mamma.com Inc.*,
   2005 WL 1278097 (S.D.N.Y. May 31, 2005) ......................................................22

*Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*,
   2020 WL 1181366 (D. Conn. Mar. 10, 2020) ......................................................17

*Parot v. Clarivate Plc*,
   2022 WL 1568735 (E.D.N.Y. May 18, 2022) ...................................................20, 24

*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,
   11 F.4th 90 (2d Cir. 2021) .....................................................................................22

*Rand v. Cullinet Software, Inc.*,
   847 F. Supp. 200 (D. Mass. 1994) .......................................................................22

*In re Ribozyme Pharms., Inc. Sec. Litig.*,
   192 F.R.D. 656 (D.Colo. 2000) ...........................................................................20

*In re Star Gas Sec. Litig.*,
   2005 WL 818617 (D. Conn. Apr. 8, 2005) ..........................................................23

*Tatintsian v. Vorotyntsev*,
   2018 WL 2324998 (S.D.N.Y. May 22, 2018) .....................................................11

*Teamsters Loc. 445 Freight Division Pension Fund v. Bombardier Inc.*,
   2005 WL 1322721 (S.D.N.Y. June 1, 2005) ...................................................15, 18

*Thomas v. Magnachip Semiconductor Corp.*,
   2015 WL 3749784 (N.D. Cal. June 15, 2015) ................................................13, 17

*In re Thornburg Mortg., Inc. Sec. Litig.*,
   629 F. Supp. 2d 1233 (D.N.M. 2009) .............................................................13, 15

*Turner v. ShengdaTech, Inc.*,
   2011 WL 6110438 (S.D.N.Y. Dec. 6, 2011) .......................................................15

*Waldman v. Wachovia Corp.*,
   2009 WL 2950362 (S.D.N.Y. Sept. 14, 2009) ................................................17, 18

**Statutes**

15 U.S.C. § 78u-4(a)(3)(A).............................................................................................13

## I.      PRELIMINARY STATEMENT

On December 19, 2024, eight months following the April 8, 2024 deadline for motions for appointment of lead plaintiff, seven months after this Court's May 7, 2024 order appointing Boston Retirement System ("Boston") as Lead Plaintiff and consolidating two related class actions into this Action (ECF No. 44, the "May 7 Order"), and three months after Boston filed a September 25, 2024 amended consolidated complaint, Robert Garfield ("Garfield" or the "Movant"), an individual who acquired a sum total of 40 shares of NYCB common stock during the alleged class period, seeks to intervene in this Action, vacate the May 7 Order, and reopen the entire lead plaintiff process. Garfield's Motion should be denied, except to the extent that it seeks consolidation of Garfield's December 19, 2024 complaint with this already-consolidated Action, in which there is an existing amended consolidated complaint that completely encompasses his redundant allegations. As described fully below, Garfield's motion is not only untimely and procedurally improper, but his arguments for vacatur and reopening of the lead plaintiff process and republication of notice are both legally unsupported and factually incorrect.

## II.      RELEVANT PROCEDURAL BACKGROUND

### A.      Overview Of This Consolidated Federal Securities Class Action

#### 1.      The Initial Complaints Are Filed

This securities class action is brought on behalf of investors in New York Community Bancorp, Inc. ("NYCB" or the "Bank," now d/b/a Flagstar Financial, Inc.) who suffered losses as a result of NYCB's and the individual defendants' false and misleading statements regarding the Bank's financial statements, including its deteriorating loan quality, increased net-charge offs and increased allowance for credit losses. The initial complaint filed in this Action on February 6, 2024 by Walter Edward Lemm, Jr. asserted claims under Section 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") on behalf of investors that purchased or otherwise

acquired NYCB securities during a proposed class period of March 1, 2023 and January 30, 2024, inclusive (ECF No. 1) (the "*Lemm* Complaint"). The *Lemm* Complaint alleged that concealed issues surrounding NYCB's loan quality and its impact on the Company's financial condition began to come to light in a partial corrective disclosure on January 31, 2024, when NYCB reported a devastating fourth quarter net loss attributable to, among other disclosures, a $552 million provision for loan losses—an 800% increase from the prior quarter. *See Lemm* Complaint ¶¶29-32. On February 13, 2024, another NYCB investor filed a second complaint captioned *Miskey v. New York Community Bancorp, Inc.*, No. 24-cv-01118-NRM-RC (E.D.N.Y.) that alleged similar claims and extended the proposed class period to end on February 5, 2024.[1]

### 2.    Boston Is Appointed Lead Plaintiff, Labaton Is Appointed Lead Counsel, And The Initial Complaints Are Consolidated

In accordance with the provisions of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4 ("PSLRA"), on February 6, 2024, notice of the *Lemm* Action was published on *Business Wire*. ECF No. 13-5. The notice notified investors that they had sixty days (or until April 8, 2024) to move for appointment to serve as lead plaintiff. Notice of the *Miskey* Action was similarly published on *Business Wire* on February 13, 2024, with the same deadlines. ECF No. 13-6. As the *Miskey* notice made clear, "a lead plaintiff acts on behalf of all other class members in directing the *New York Community Bank* class action lawsuit." *Id*. By April 8, 2024, several entities, including Boston Retirement System ("Boston"), filed motions to consolidate the two actions as well as "each case that is subsequently filed in this Court that relates to the same subject matter" as in the Initial Complaints, and appoint lead plaintiff and lead counsel. *See, e.g.*, ECF No. 13-8. Ultimately, the two movants with the largest financial interest—Boston and Sand

---

[1] The *Lemm* and *Miskey* complaints are collectively referred to herein as the "Initial Complaints."

Hollow Management, LLC ("Sand Hollow"), an LLC controlled solely by an individual retail investor named Jason Stubbs—pursued lead plaintiff appointment.

On May 7, 2024, following briefing and a May 3, 2024 hearing, Magistrate Judge Cho issued a well-reasoned, sixteen-page opinion finding that Boston had "successfully rebut[ted] the presumption of Sand Hollow's adequacy" by demonstrating "proof of a risk of unique defenses" posed by Sand Hollow. ECF No. 44 at 14 (the "May 7 Order"). Specifically, the risk of unique defense attributable to Sand Hollow was the fact that it made ***all*** of its purchases in NYCB securities ***after*** January 31, 2024—the date upon which information "highly germane" to the allegations of fraud present in this case was first publicly disclosed. *Id.* at 11-14.

The Court's opinion also correctly found that there is "a countervailing Congressional preference for institutional investors like Boston Retirement" and further concluded that Boston "readily satisfies the preliminary Rule 23 analysis" demonstrating its adequacy and typicality. *Id.* at 14-15. Therefore, the Court granted Boston's motion to consolidate the action and appointed Boston as Lead Plaintiff and Labaton Keller Sucharow as Lead Counsel. *Id.* at 15.

### 3. Sand Hollow Files A Motion To Reconsider The Lead Plaintiff Order, Which Should Be Denied

On May 20, 2024, Sand Hollow filed a motion for reconsideration of the May 7 Order (ECF Nos. 46-47, the "Reconsideration Motion"). On June 3, 2024, Boston opposed the Reconsideration Motion on the grounds that it "amounts to nothing more than a rehash of the same facts and arguments this Court carefully considered and rejected in the May 7 Order." ECF No. 52 at 2. On October 23, 2024, Boston supplemented the record by alerting the Court that Jason Stubbs, the principal and sole representative of Sand Hollow, had, in addition to other potentially illegal activities of which the Court was already informed (*see* ECF No. 32), recently been found by a Florida state court judge to have provided "***false testimony . . . under oath***" and that "***such***

*statements constitute perjury*." *See* ECF No. 79-1 at 4, Ex. A at 2.  The Reconsideration Motion remains pending before this Court and is ripe for resolution.

### 4.    Boston Files An Amended Consolidated Complaint In Accordance With Its Obligations As A Lead Plaintiff

Consistent with the Court's March 12, 2024 Order (ECF No. 9), Boston and Defendants conferred and agreed to a proposed stipulated schedule setting forth dates for the filing of an amended consolidated complaint and Defendants' responses thereto, which was later amended to ultimately provide that Boston's amended consolidated complaint be filed on September 25, 2024. *See* ECF Nos. 51, 66.  The parties further agreed that Defendants' motion to dismiss the complaint would be stayed pending resolution of the Reconsideration Motion.  *Id.*  Absent further direction from the Court regarding the parties' agreed-to schedule, and absent any objection from Sand Hollow, Boston, through its counsel, undertook a months-long investigation of the alleged fraud and filed an amended complaint on September 25, 2024 that expands and elaborates on the nature of Defendants' fraudulent conduct (ECF No. 69, the "Amended Consolidated Complaint" or "ACC").  The ACC alleges that Defendants made false and misleading statements and omissions during a Class Period of July 27, 2022 through February 29, 2024, inclusive (the "Class Period"); asserts additional claims and defendants for violations of the Securities Act of 1933 (the "Securities Act") stemming from an offering of shares in connection with the merger of NYCB and Flagstar Bancorp, Inc. ("Flagstar") that occurred during the Class Period (the "Offering") based on similar misconduct; and adds an additional named plaintiff, Indiana Public Retirement System ("Indiana"), an institutional investor that acquired NYCB shares in the Offering as well as during the Class Period.[2]  Similar Securities Act claims were previously filed in a New York state

---

[2] Indiana submitted a Certification with the ACC demonstrating that Indiana purchased or otherwise acquired over 145,000 shares of NYCB common stock during the Class Period,

Footnote continued on next page

court action on April 16, 2024.[3]  The State Action was subsequently stayed on December 9, 2024, because this Action was first filed, there is "a substantial identity of the parties," and "both actions arose out of the 'same subject matter or series of alleged wrongs.'"  *See Kujawa*, Index No. 153581/2024, NYCEF Doc. No. 52, attached as Exhibit A to the accompanying Declaration of Lauren A. Ormsbee ("Ormsbee Declaration" or "Ormsbee Decl.").

None of the ACC's detailed allegations alter the core theory of the case as reflected in the original PSLRA notice.  Both the Initial and Amended Complaints allege that false and misleading statements regarding NYCB's asset quality, risk management, and preparedness for Category IV Bank status misled investors as to the Company's financial condition and concealed the true nature of NYCB's asset quality.  As set forth in both complaints, the critically important corrective information disclosed on January 31, 2024 first revealed to investors information that partially corrected misrepresentations and omissions made by Defendants during the alleged class period.  *See, e.g.*, ACC ¶¶6, 80, 125-28, 135.  These disclosures revealed that NYCB was not—as it had previously told investors—"prepared to be a $100 billion bank," and caused the Company to slash its quarterly dividend.  *See* ACC ¶¶125-26; IC ¶¶29-32.  The Amended Complaint also details subsequent disclosures that provided additional corrective information that occurred after the filing of the Initial Complaints.  *See* ACC ¶¶137-60 377.

---

including 44,435 shares of NYCB traceable to the Offering that settled on December 1, 2022, the date of the Offering.  *See* ECF No. 69-1.

[3] *Kujawa v. N.Y. Cmty. Bancorp, Inc.*, Index No. 153581/2024 (N.Y. Sup. Ct., N.Y. Cnty. Apr. 16, 2024), NYSCEF Doc. No. 1.  On May 1, 2024, a second a securities class action complaint asserting nearly identical Securities Act claims was filed in the same court against the same defendants.  *Dindoffer v. N.Y. Cmty. Bancorp, Inc.*, Index No. 154076/2024 (N.Y. Sup. Ct., N.Y. Cnty. May 1, 2024), NYSCEF Doc. No. 1.  Both cases were subsequently assigned to the New York County Supreme Court Commercial Division and consolidated (the "State Action").

The Amended Complaint additionally alleges that, based on information developed during Lead Plaintiff's investigation, NYCB's acquisition of Flagstar (the source of the Securities Act claims)—which, together with NYCB's acquisition of Signature Bank propelled NYCB to its status as a $100 billion plus "Category IV" bank—exacerbated NYCB's deteriorating asset quality. ACC ¶¶53-59.  The core theory in both the Initial Complaints and Amended Complaint is that Defendants misrepresented NYCB's asset quality and risk management processes as it now faced heightened regulatory scrutiny through this Category IV bank status.  *Compare* ACC ¶¶256-61, 292-93, 310-22; IC ¶¶19-28.  Boston, in fulfillment of its duties and obligations as the court-appointed Lead Plaintiff, included particularized allegations of Defendants' alleged violations of the federal securities laws, supported by facts and information developed during its investigation into the facts and in response to subsequent disclosures, announcements and events that occurred after the filing of the Initial Complaints.  This is what is expected of a sophisticated institutional investor Lead Plaintiff appointed under the guidance provided by the PSLRA.  Both the Initial and Amended Complaints allege that NYCB's stock price plummeted as a result of the alleged fraud, and that Lead Plaintiff, Indiana, and other Class members were damaged as a result.

**B.    Movant Robert Garfield Has Tried To Impose Himself On Ongoing Actions Against NYCB Since April 2024, Prior To The Lead Plaintiff Deadline**

Beginning on February 15, 2024, a series of plaintiffs filed derivative complaints against NYCB and certain current and former directors and officers of NYCB stemming from similar facts and allegations as those alleged in this Action, citing specifically to the Initial Complaints.[4]  On

---

[4] These derivative actions contain similar factual and legal contentions and allege violations of Sections 10(b) and 20(a) of the Exchange Act, contribution under Sections 10(b) and 21D of the Exchange Act, breach of fiduciary duties, and unjust enrichment on behalf of NYCB, captioned *Hauser v. Cangemi*, No. 24-cv-01207-NRM-JRC (E.D.N.Y.), *Wang v. Cangemi*, No. 24-cv-01422-NRM-JRC (E.D.N.Y.), *Pierce v. Cangemi*, No. 24-cv-01408-NRM-JRC (E.D.N.Y.), and

Footnote continued on next page

April 2, 2024, counsel for NYCB filed a letter with the Court, with the consent of the Derivative Action plaintiffs, along with a stipulation and proposed order requesting that the Court consolidate and stay the Derivative Actions pending the resolution of Defendants' motion to dismiss the amended consolidated complaint to be filed in this direct securities class action by the ultimate court-appointed lead plaintiff. *Hauser*, No. 24-cv-01207, ECF No. 10. Two days later, on April 4, 2024 (four days before lead plaintiff motions were filed in this Action), Robert Garfield (the movant here) filed a letter on the docket of the Derivative Actions opposing the stipulation, despite not having filed a complaint in any court, based on his assertion that he had sent a "220 demand" to NYCB. *Hauser*, No. 24-cv-01207, ECF No. 11.

After burdening this Court with what the Derivative Action plaintiffs referred to as an "ill-suited and premature letter-writing campaign," Garfield subsequently moved to permissively intervene in the Derivative Actions. *Hauser*, No. 24-cv-01207, ECF No. 21. This resulted in another round of briefing in which both the Derivative Action plaintiffs and Defendant NYCB requested that the Court grant the April 4, 2024 stipulation to consolidate the Derivative Actions and stay the case. *See, e.g.*, *Hauser*, No. 24-cv-01207, ECF Nos. 23-24, 33. As the Derivative Action plaintiffs' opposition explained, Garfield needed to "rebut the presumption of adequate representation by the party in the action" in order to successfully intervene. *See Hauser*, No. 24-cv-01207, ECF No. 24 at 2 (citing *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179-80 (2d Cir. 2001)). On December 3, 2024, Garfield withdrew his motion to intervene in the Derivative Actions. *Hauser*, No. 24-cv-01207, ECF No. 43.[5]

---

*Karp v. Cangemi*, No. 24-cv-01421-NRM-JRC (E.D.N.Y.) (collectively, the "Derivative Actions").

[5] In addition to his efforts in this Action and the Derivative Action, Garfield has a history of filing actions in this Court and voluntarily dismissing those same actions shortly thereafter. *See, e.g.*,

Footnote continued on next page

On October 21, 2024, Garfield's counsel in the Derivative Actions and here filed a separate derivative complaint against NYCB's current board of directors that is pending before this Court. *See Siegel v. Otting*, No. 24-cv-07352 (E.D.N.Y. Oct. 21, 2024), ECF No. 1 (the "*Siegel* Complaint"). In the *Siegel* Complaint, Garfield is referred to anonymously as the "Initial Stockholder" who filed a 220 demand with NYCB on February 20, 2024 (*id.*, ¶40), and the Amended Complaint in this Action is directly referenced and quoted as a "source" for the *Siegel* Complaint's allegations (*id.*, ¶¶1, 2, 5, 11).

On December 19, 2024, Garfield, through the exact same counsel that moved to intervene in the Derivative Actions and who filed the *Siegel* Complaint, filed a securities class action complaint alleging Securities Act claims against NYCB and its current and former officers and directors, which contains facts and allegations that are substantially similar to those pled in the Amended Complaint. *See Garfield v. Flagstar Fin., Inc.*, No. 24-cv-08655 (E.D.N.Y. Dec. 19, 2024), ECF No. 1 ("*Garfield* Complaint"). Garfield filed the Motion both in the *Garfield* action and this Action the same day.

## III.    ARGUMENT

### A.    Garfield's Motion To Vacate The May 7 Order And Reopen The Lead Plaintiff And Lead Counsel Process Is Untimely And Procedurally Improper

Garfield's motion, to the extent it seeks to vacate the May 7 Order and reopen the lead plaintiff notice, should be denied because it is untimely, pointless, and a clear attempt to circumvent the bedrock lead plaintiff procedure codified by the PSLRA and followed by this

---

*Garfield v. Lantheus Holdings, Inc.*, No. 19-cv-01966 (E.D.N.Y. Apr. 11, 2019), ECF No. 6; *see also Garfield v. Preferred Apartment Cmtys., Inc.*, No. 19-cv-01985 (E.D.N.Y. May 21, 2019), ECF No. 11; *Garfield v. Steel Dynamics, Inc.*, No. 19-cv-02143 (E.D.N.Y. Apr. 25, 2019), ECF No. 11; *Garfield v. Nathan's Famous, Inc.*, No. 19-cv-04411 (E.D.N.Y. Oct. 15, 2020), ECF No. 20.

Court.  To the extent Garfield does not withdraw the *Garfield* Complaint, it should be consolidated into this Action under the leadership of court-appointed Lead Plaintiff Boston.

As an initial matter, Garfield's motion is over eight months too late.  The appropriate time to seek lead plaintiff appointment in this Action was by the April 8, 2024 PSLRA deadline.  ECF No. 13-1 at 6.  Garfield had every opportunity to file a complaint or seek timely appointment prior to that date.  He failed to do so.  Further, Garfield cannot and does not contend that he was unaware of the nature of Defendant's misconduct or the PSLRA-mandated lead plaintiff deadline.  As described above, Garfield represents that he sent a "220 demand" to NYCB on February 20, 2024, and has attempted to intervene in the Derivative Actions since April 4, 2024, four days before the lead plaintiff movant deadline here.  *See, e.g.*, *Hauser v. Cangemi*, No. 24-cv-01207 (E.D.N.Y. Apr. 4, 2024), ECF No. 11.  The allegations in the Derivative Actions center around the liability NYCB is exposed to from defendants' fraudulent activity that harmed NYCB, including specifically through the filing of this Action.  *E.g., Hauser v. Cangemi*, No. 24-cv-01207 (E.D.N.Y. Apr. 11, 2024), ECF No. 20 at 37 (*Hauser* complaint citing this Action and related damages to NYCB).  In addition, Securities Act claims against NYCB and its officers and directors in the State Action, which is now stayed until resolution of Defendants' forthcoming motion to dismiss the ACC, have been pending since April 2024.  *See supra* at 5.  Therefore, both Garfield and his counsel clearly knew about both this Action and the Securities Act claims since at least April 2024, long before the lead plaintiff movant deadline and issuance of the May 7 Order.

The ACC was filed on September 25, 2024, nearly three months before Garfield decided to file the *Garfield* Complaint and this motion.  ECF No. 69.  All the while, Garfield declined to involve himself in this Action in any way.  Moreover, Garfield's counsel filed the *Siegel* Complaint, a derivative complaint against NYCB and its directors, in October 2024, citing the

Amended Complaint affirmatively as a factual source and naming Garfield as an anonymous "Initial Stockholder." *See supra* at 8. Garfield cannot now attempt to step into this Action after sleeping on his rights for over eight months while more diligent investors, such as Boston, have been vigorously protecting the interests of the Class. *See Cheng v. Activision Blizzard, Inc.*, 2022 WL 304672, at *3 (C.D. Cal. Jan. 30, 2022) (rejecting an attempt to reopen a lead plaintiff appointment process where the movant did not timely move for appointment and noting that the "attempt to turn back the clock is nothing more than a thinly veiled motion for reconsideration").

Moreover, Garfield's *de minimis* financial interest renders this motion pointless and raises serious questions as to why this motion was filed in the first place. In his PSLRA certification filed with the *Garfield* Complaint, Garfield disclosed that he acquired a **total** of 40 NYCB shares in the Offering for a price of $9.19, for a total investment value of approximately $368. *Garfield* Complaint, No. 24-cv-08655, ECF No. 1, PageID#: 39. Garfield's financial interest pales in comparison to the investors that moved for lead plaintiff appointment in this Action, including Boston. ECF No. 13-3 (disclosing that Boston purchased or otherwise acquired 371,279 NYCB shares during the relevant period). Further, Boston was already found otherwise typical and adequate to serve as Lead Plaintiff. ECF No. 44. Moreover, Indiana purchased or otherwise acquired over 145,000 shares of NYCB common stock during the Class Period, including 44,435 shares of NYCB traceable to the Offering that settled on the Offering date of December 1, 2022 for a price of $9.19. *See* ECF No. 69-1. Therefore, Garfield cannot reasonably believe that he would be selected as a lead plaintiff even if the PSLRA appointment process were to be reopened.

This pointless motion to reopen the PSLRA appointment process must be categorically denied. Where courts do reopen the PSLRA appointment process, it is typically because the moving party is an investor with a far larger financial interest than the lead plaintiff. *See, e.g.*,

*Dube v. Signet Jewelers Ltd*., 2017 WL 1379385, at *2 (S.D.N.Y. Apr. 14, 2017) (noting lead plaintiffs had "far smaller losses" than intervening institutional investors in expanded class periods, asserting distinct, divisible claims). On the other hand, courts frequently deny requests to reopen the PSLRA process if an investor with a larger financial interest than the court-appointed lead plaintiff has not come forward. *See Ito-Stone v. DBV Techs. S.A.*, 2020 WL 6580776, at *4 (D.N.J. Nov. 10, 2020) ("[I]t bears noting that while it is theoretically possible that a prospective lead plaintiff with a larger financial interest in the relief sought by the class may exist under the expanded class period and may come forward if the notice were republished, none has yet sought to intervene."). Here, Garfield's position as a retail investor with a nominal financial interest makes it virtually impossible for him to be appointed over the movants that have already come forward.

The fact that Garfield and his counsel chose to bring this motion despite knowing full well he has zero chance of being appointed lead plaintiff strongly suggests that Garfield is acting on behalf of an undisclosed third party. After all, if Garfield himself cannot be appointed, why would he have bothered to file this motion? More troubling, in addition to representing Garfield in his failed intervention in the Derivative Actions described above, Garfield's counsel is simultaneously representing another NYCB shareholder in the derivative *Siegel* action before this Court, and specifically refers to Garfield's involvement in that matter by referring to him as the "Initial Stockholder" who filed a 220 demand with NYCB in February 2024. *See supra* at 8. Garfield's counsel cannot serve as Lead Counsel in this Action based on their involvement in the *Siegel* derivative case. *See Tatintsian v. Vorotyntsev*, 2018 WL 2324998, at *1 (S.D.N.Y. May 22, 2018) ("[P]ursuing direct and derivative claims simultaneously . . . presents an impermissible conflict of

interest.").[6]  Given this dynamic, this motion should be seen for what it is—a self-interested, counsel-driven attempt to sidestep the PSLRA's mandated appointment process intentionally brought during the holiday season to harass Lead Plaintiff all to the detriment of the Class.  *See Hachem v. Gen. Elec. Inc.*, 2018 WL 1779345, at *2 (S.D.N.Y. Apr. 12, 2018) (noting the difficulties of coordinating with institutional investors during the holiday season).  This Court should not endorse such gamesmanship.

> **B.    The May 7 Order Should Not Be Vacated And PSLRA Notice Does Not Need To Be Republished**

Garfield's Motion fares no better when assessed on its merits because the filing of the ACC does not support vacating the May 7 Order or reopening of the PSLRA lead plaintiff and counsel process.  Courts in this Circuit and elsewhere have consistently held that new notice publication and the reopening of the lead plaintiff process is required only when later-filed amended complaints "***dramatically alter*[ ] *the contours of the lawsuit*.***"  *Signet Jewelers Ltd.*, 2017 WL 1379385, at *2 (citation omitted).  An expanded class period, additional claim, or additional defendants are not the type of changes that merit new PSLRA notice.  Instead, courts look to whether the amended complaint "still centers on the same factual scenario that was presented in the initial Complaint."  *DBV Techs. S.A.*, 2020 WL 6580776, at *5.  Republication is only warranted if the new complaint "alter[s] dramatically the gravamen of the claims alleged."  *Gen. Elec. Inc.*, 2018 WL 1779345, at *1-2 (citation omitted) (internal quotation marks omitted).

Here, the ACC did not drastically change the core allegations of the case.  The Initial Complaints allege that Defendants failed to disclose major known risks to NYCB's portfolio and

---

[6] Additionally, neither of the two law firms listed on Garfield's pleading have ever been appointed as Lead Counsel in a PSLRA securities class action.

business.  This core theory is unchanged in the ACC.  *See supra*, Section II.A.4.  Therefore, republication of notice is not appropriate.

"Courts typically 'disfavor republication of notice under PSLRA.'"  *Hom v. Vale, S.A.*, 2016 WL 880201, at *4 (S.D.N.Y. Mar. 7, 2016) (citation omitted).  The PSLRA details the form and timing of notice for securities class actions.  15 U.S.C. § 78u-4(a)(3)(A).  This statutory scheme contemplates a single notice period.  *See In re Thornburg Mortg., Inc. Sec. Litig.*, 629 F. Supp. 2d 1233, 1239 (D.N.M. 2009) (finding that "the PSLRA seems to view the notice as being a threshold issue that comes up at the beginning of the filing of a lawsuit").  The goal of the PSLRA's notice requirement is to provide class members with sufficient information about the suit "so they can make an informed and reasoned judgment about whether they should seek lead plaintiff status."  *Cal. Pub. Emps. Ret. Sys. v. Chubb Corp.*, 127 F. Supp. 2d 572, 576 (D.N.J. 2001).  "This provision is 'intended to encourage the most capable representatives of the plaintiff class to participate in class action litigation[,] parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders.'"  *Thomas v. Magnachip Semiconductor Corp.*, 2015 WL 3749784, at *3 (N.D. Cal. June 15, 2015) (citation omitted) (quoting H.R. Conf. Rep. No. 104–369, at 32 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 731).

The PSLRA notice provision is a general "published-notice requirement," but was not designed as "an individual-notice" mechanism.  *Lax v. First Merchs. Acceptance Corp.*, 1997 WL 461036, at *4 n.7 (N.D. Ill. Aug. 11, 1997).  Courts recognize that the purpose of the PSLRA notice provision must be balanced against the broad intent of the PSLRA "to have the 'most adequate lead plaintiffs' appointed as soon as practicable in the litigation."  *In re Thornburg Mortg., Inc. Sec. Litig.*, 629 F. Supp. 2d at 1240 (citation omitted).  As a result, courts routinely allow court-appointed lead plaintiffs to expand class periods or add claims, even though certain

13

investors will be effectively "left out" of the lead plaintiff process, an unavoidable byproduct of efficient lead plaintiff appointment under the PSLRA. *See Lax*, 1997 WL 461036, at *4 n.7 (concluding that "[t]he PSLRA does not envisage that ***all potential class members*** will receive notice of the right to be lead plaintiff") (emphasis added). Allowing investors to restart the lead plaintiff process each time a complaint is altered would invite the type of "lawyer-driven litigation that the PSLRA seeks to avoid . . . and [ ] promote near-endless skirmishes" analogous to the instant disruption. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 2013 WL 4399215, at *4 (S.D.N.Y. Aug. 13, 2013) (citation omitted). Many courts have questioned whether new notice is ever appropriate under the PSLRA. *DBV Techs. S.A.*, 2020 WL 6580776, at *3 ("[T]he Court is skeptical of the existence of a duty to issue a new notice under the PLSRA.").

Here, the PSLRA's twin goals of informed investor participation and expedient lead plaintiff appointment were achieved. From the date the *Lemm* Action was filed through the April 8, 2024 lead plaintiff deadline, widely circulated notices detailed the essential securities fraud claim against NYCB. *See, e.g.* ECF Nos. 5-6. Boston, an experienced lead plaintiff and capable fiduciary, was appointed after a contested application process as designed by the PSLRA. ECF No. 44. Once appointed, Boston was well within its rights to craft the Class Period and claims in this Action, including expanding the Class Period and adding the Securities Act claims and relevant defendants. As explained below, these changes simply do not trigger new notice under the PSLRA.

### 1.    Expansion Of The Class Period Does Not Warrant New Notice

The ACC's assertion of an extended class period does not require republication. The ACC asserts a Class period July 27, 2022 to February 29, 2024 (ECF No. 69 at 1), an approximately eight-month expansion over the March 1, 2023 to February 5, 2024 class period that controlled Lead Plaintiff appointment. ECF No. 44 at 8 n.3. Here the Amended Complaint expanded the

initial class period to include, *inter alia*, additional allegations and corrective disclosures that further revealed Defendants' misrepresentations and fraud.  For example, the Amended Complaint expanded the Class Period to include Defendants' admission that management had identified material weaknesses in the Company's internal controls related to internal loan review and the abrupt resignation of NYCB CEO Thomas Cangemi.  *See, e.g.*, ACC ¶153.

Courts have consistently held that such an amendment is not expansive enough to warrant filing of a new notice.  *See Turner v. ShengdaTech, Inc.,* 2011 WL 6110438, at *3 (S.D.N.Y. Dec. 6, 2011) ("Courts . . . disfavor republication of notice under PSLRA when a class period is extended beyond the period contained in the first-filed securities class action."); *Teamsters Loc. 445 Freight Div. Pension Fund v. Bombardier Inc.*, 2005 WL 1322721, at *2 (S.D.N.Y. June 1, 2005) ("Courts have generally disfavored republication of notice when a complaint is amended, even where the amendment alters the class period.").

In *In re Thornburg Mortgage, Inc. Securities Litigation*, the court refused to require new PSLRA notice where an amended complaint expanded the class period seven months, concluding that "[l]itigation is an ongoing process, and it is not surprising that new time periods might come under the umbrella of a particular case as time passes."  629 F. Supp. 2d at 1240.  Similarly, in *DBV Technologies S.A.*, notice was not republished despite an expansion of the class period from ten months to fifteen months.  2020 WL 6580776, at *2.  The court there held that "[a]lteration of the class period . . . does not compel republication and re-litigation of an appropriate lead plaintiff." *Id.* at *4.

Movant's cited cases do not change this conclusion.  *Gru v. Axsome Therapeutics, Inc.*, is completely inapposite because, in that case, the court-appointed lead plaintiffs had withdrawn from the case, necessitating that a new adequate lead plaintiff be identified and appointed.  No. 22-cv-

15

03925-LGS, (S.D.N.Y. Nov. 3, 2023), ECF No. 64 at 1 (attached as Exhibit B to the Ormsbee Declaration).  In the other cases Garfield cites, the relevant expansions were far larger than the eight-month expansion at issue here and involved a meaningful change to the theory of the fraud at issue.  For instance, in *General Electric, Inc.*, a new complaint expanded the class period from three months to almost five years and alleged misstatements concerning an entirely different business division at General Electric.  2018 WL 1779345, at *1-2.  In *Signet Jewelers Ltd.*, an amended complaint added more than three years to the relevant class period, which was only five months and "alter[ed] dramatically the gravamen of the claims alleged against Defendants."  2017 WL 1379385, at *1.  Similarly, in *Kaplan v. S.A.C. Capital Advisors, L.P.*, the amended complaint expanded the class period from nine days to two years.  947 F. Supp. 2d 366, 367 (S.D.N.Y. 2013).[7] The class period expansion in this case, supported by facts developed by Lead Counsel and NYCB's own disclosures and admissions following the filing of the Initial Complaints, does not warrant vacating the May 7 Order and reopening the lead plaintiff process, further delaying this Action and harming the Class.

### 2.    The Addition Of The Securities Act Claim And New Defendants Does Not Warrant New Notice

Similarly, new notice is not warranted by the fact that the ACC adds Securities Act claims and new statutory defendants.  Similar to an expanded Class Period, courts have consistently held that adding Securities Act claims and new defendants do not warrant a new PSLRA notice.  For

---

[7] The *S.A.C. Capital Advisors, L.P.*, case is also inapposite because, in that case, the court, in response to lead plaintiffs' request for guidance, held that the plaintiffs republish notice because their amended complaint significantly changed the case theory and asserted claims on behalf of **both** purchasers **and** sellers of the securities at issue based on allegations of insider trading in the two years prior to the initial noticed class period, while the prior complaint only asserted claims on behalf of purchasers.  947 F. Supp. 2d at 367-68.  Here, the ACC and original complaint each only assert claims on behalf of purchasers of NYCB securities.  *Compare* ECF No. 1 ¶1 *with* ECF No. 69 ¶1; *see also Vale*, 2016 WL 880201, at *4 (distinguishing *Kaplan*).

instance, in *Magnachip Semiconductor Corp.*, a new complaint added Securities Act claims and additional defendants. 2015 WL 3749784, at *4. The court found that these additions related to "the same misrepresentations," as the original allegations and therefore declined to require new notice. *Id.* The same is true here, where, as described above, the core allegations are the same in the original complaint and the ACC. Garfield has not argued otherwise. Therefore, new notice is not required due to the Securities Act claims and additional defendants. *See Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, 2020 WL 1181366, at *11 (D. Conn. Mar. 10, 2020) (refusing to require new notice even though an amended complaint added new defendants because the conduct alleged was "a clear continuation of the conduct alleged" in the previous complaint); *see also DBV Techs. S.A.*, 2020 WL 6580776, at *2 (declining to require new notice where the amended complaint asserted a class period capturing "three new public offerings").

Each of the cases relied upon by Garfield is inapplicable. In *In re Cloudera, Inc. Securities Litigation*, the court specifically noted that adding "Securities Act claims to the existing Exchange Act claims," did not necessitate republishing notice. 2020 WL 1288362, at *3 (N.D. Cal. Mar. 18, 2020). Instead, the court in *Cloudera* was concerned that the relevant amended complaint changed the class definition from "*purchasers*" of the relevant securities to those who "all persons who purchased *and/or otherwise* acquired," the security. *Id.* (emphasis in original). Here, both the first-filed complaint and the ACC assert class definitions including investors that "purchased or otherwise acquired," the relevant securities. ECF Nos. 1, ¶1 & 69 at 1. Therefore, the concern that necessitated new notice in *Cloudera* is not present here.

*Waldman v. Wachovia Corp.*, is similarly inapposite because in that case the court-appointed lead plaintiffs had withdrawn, necessitating that a new adequate lead plaintiff be identified and appointed. 2009 WL 2950362, at *1 (S.D.N.Y. Sept. 14, 2009). Here, Boston, the

17

court appointed Lead Plaintiff, is vigorously prosecuting the Action and is willing and able to continue to do so.

Garfield also cites several examples where, unlike here, a new complaint added completely new allegations to the case. In the *Wachovia* case, the amended complaint changed the theory of the case from being about defendants' sales practices to being about market manipulation. *Wachovia Corp.*, 2009 WL 2950362, at *1. In *General Electric Inc.*, as noted above, new notice was only warranted because a newly filed complaint added allegations relating to a completely different business segment of the relevant company. 2018 WL 1779345, at *2. Similarly, in *Signet Jewelers Ltd.*, also as noted above, an amended complaint changed "the gravamen of the claims." 2017 WL 1379385, at *1. Originally, the case had been about competition, consumer confidence, and the theft of customer goods, while the new complaint asserted claims about harassment of female employees and the quality of the company's credit portfolio. In *Teamsters Local 445 Freight Division Pension Fund v. Bombardier Inc.*, an amended complaint added entirely new classes of securities to the action. 2005 WL 1322721, at *2 (S.D.N.Y. June 1, 2005). As discussed above, here, the ACC does not change the core factual allegations of the case. It also does not add new securities to the case. Therefore, there is no reason to issue new notice in this Action on those grounds.

## C. Garfield's Scattershot Attacks On Boston And Indiana Are Factually Wrong And Lack Any Merit

### 1. Indiana's Trading Is Accurately Reflected In Its Certification and Garfield's Arguments To The Contrary Lack Any Merit

As an additional named plaintiff in the Amended Complaint, Indiana submitted a sworn certification identifying its Class Period purchases and sales, including those shares acquired in connection with the Securities Act Offering. *See* ECF No. 69-1 (Indiana Certification and Exhibit A). Garfield, in a misguided attempt to divert the Court's attention away from Indiana's sizeable

trading losses, raises three baseless arguments to question Indiana's trading, each of which can be summarily rejected.

*First*, Garfield calls into question the veracity of Indiana's Certification by arguing that Indiana could not have received "fractional" shares in connection with the Offering. Motion at 9-10. This argument ignores that NYCB did in fact issue fractional shares pursuant to the Merger. Pursuant to the terms of the Merger, Flagstar shares were converted into NYCB shares on a fractional basis, such that each Flagstar share was entitled to receive 4.0151 newly issued NYCB shares. ACC ¶¶438, 447. These fractional shares were ultimately set to settle on a later date when they are sold off. Indiana's certification demonstrates that any fractional NYCB shares obtained in the Merger were settled for cash on March 22, 2023. *See* ECF No. 69-1 at 3 (March 22, 2023 sale of 0.30 and 0.81 shares for proceeds of $2.65 and $7.10, respectively).

*Second*, Garfield cites to an excerpt from a publicly available report on Indiana's website that contains certain of its end-of-year holdings, titled the Public Equity Access to Public Records Act ("APRA") Report (the "APRA Report"). Motion at 10-11. Citing the APRA Report, Garfield challenges the veracity of Indiana's Certification by claiming that Indiana held only 18,420.30 NYCB shares as of December 31, 2022, and not the 41,243.11 shares reflected in the Certification. *Id.* This argument fails because Indiana traded NYCB shares in additional accounts not reflected in this APRA Report. The simple reason for the difference between the NYCB shares reflected in the Indiana Certification and the NYCB shares reflected in the APRA Report is that not all of Indiana's investments are reflected in the APRA Report, but are, irrefutably, Indiana holdings properly reflected in the Certification. *See* Ormsbee Decl. Ex. C (Declaration of Jeffrey M. Gill (the "Gill Decl."), ¶¶ 4-6). Indiana's Certification is correct and Garfield's challenge to its accuracy is simply without merit. *Id.*; *see also In re Meta Platforms, Inc., Sec. Litig.*, 2022 WL

3571995, at *2 (N.D. Cal. July 26, 2022) (crediting sworn declaration attesting to accuracy of pension fund's trades listed in a lead plaintiff certification and rejecting argument raised by competing lead plaintiff movant that pension fund misrepresented trades by citing to a publicly available report reflecting different transactions).

*Finally*, Garfield argues that Indiana's certification does not sufficiently explain how it has Section 11 damages.  Motion at 11.  As an initial matter, Garfield's motion conflates the relevant inquiries at this stage and attempts to delve into a technical analysis reserved for later in the litigation.  *See In re Ribozyme Pharms., Inc. Sec. Litig.,* 192 F.R.D. 656, 661–62 (D.Colo. 2000) (recognizing that at the lead plaintiff stage, "the determination of financial interest does not equate to damages" and that "[d]amages is a term of art and a technical matter to be established by experts.").  In any event, Indiana's certification shows that it purchased or otherwise acquired 44,435 shares of NYCB traceable to the Offering when Indiana's shares of Flagstar common stock were converted into NYCB shares pursuant to and traceable to the Offering Documents on December 1, 2022 priced at $9.19 per share.  *See* ECF No. 69-1 at 3; *see also* ACC ¶22.  Indiana incurred hundreds of thousands of dollars of losses on those shares. *See* Ormsbee Decl. Ex. D.  That showing is more than sufficient to demonstrate Indiana's standing—all that is required of an additional named plaintiff at this stage—and any further scrutiny is reserved for the class certification stage. *See Parot v. Clarivate Plc*, 2022 WL 1568735, at *6 (E.D.N.Y. May 18, 2022) (citation omitted) ("At this initial stage of the litigation, 'a wide-ranging analysis under Rule 23 is not appropriate . . . and should be left for consideration of a motion for class certification.").  Garfield's curiosity as to Indiana's damages as an additional named plaintiff does not undermine the relevant inquiry here.  *See, e.g.*, *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 403 (S.D.N.Y. 2020) ("To establish standing under § 11 at the motion-

to-dismiss stage, therefore, Plaintiffs need only assert that they purchased shares issued pursuant to, or traceable to the public offerings.") (citation omitted) (internal quotations omitted).[8]

At bottom, Garfield's scrutiny of the Indiana Certification is baseless and merely an attempted distraction from the indisputable reality that Garfield's purported Section 11 losses for his 40 shares are dwarfed by the 44,435 shares of NYCB that Indiana received pursuant to and traceable to the Offering.  Garfield has not raised any credible questions as to Indiana's trading.

### 2.    Boston Is Clearly Adequate To Represent The Class

This Court has already found that Boston satisfies the preliminary Rule 23 analysis and has "no discernible conflicts of interest with the purported class."  May 7 Order at 15.  Garfield, after losing his bid to intervene in the Derivative Actions, now belatedly seeks to call into question Boston's credibility and ability to represent the class of investors in this Action.  Motion at 11-12.  However, these arguments lack any merit and have already been rejected by this Court in appointing Boston Lead Plaintiff.

*First*, Garfield contends that Boston should have filed a renewed certification for its trading in connection with the Amended Complaint.  Motion at 11.  Boston does not have any additional trades in NYCB shares for the Class Period pled in the Amended Complaint in addition to those reflected in its filed certification.  As a result, the certification and loss analysis previously

---

[8] Garfield's conjecture that Indiana is an "in and out" trader without cognizable Section 11 losses (Motion at 11) lacks any basis. As set forth in its Certification and confirmed in the Gill Declaration and Loss Chart, Indiana purchased over 145,000 shares of NYCB stock throughout the class period, retained the majority of those shares, and incurred losses under both Section 10(b) and Section 11.  *See* ECF No. 69-1; Gill Decl. ¶¶4-6; Ormsbee Decl., Ex. D. *See also In re Cassava Scis., Inc. Sec. Litig.*, 342 F.R.D. 413, 418–19 (W.D. Tex. 2022) (denying argument that investor was an "in and out" trader where shares were consistently held during the class period and the number of trades did not show that the stock was purchased for reasons other than the integrity of the market prices). The fact that Indiana sold a minority portion of its NYCB shares throughout the Class Period does not mean that Indiana is an "in and out" trader. Unsurprisingly, Garfield does not cite any authority to support this argument.

submitted remain accurate and complete, and the filing of an additional certification would be duplicative and unnecessary.  ECF Nos. 13-3 & 13-4.[9]

*Second*, Garfield lodges another hypothetical argument that Boston "may" be subject to new "unique defenses" because it purchased NYCB stock in December 2023, over a year after the first alleged misstatement on July 27, 2022.  Motion at 12.  In support of this argument, Garfield contends that information relied upon in connection with misstatements made during the beginning of the Class Period was outdated and thus immaterial.  *Id.*  Notably, the authority cited in support of this argument are readily distinguishable, and neither are in the lead plaintiff context. *See Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 101 (2d Cir. 2021) (dismissing misstatements at the motion to dismiss stage because they were made 39 months prior to plaintiff's purchases and already corrected by several revelations, including defendant admissions); *see also Rand v. Cullinet Software, Inc.*, 847 F. Supp. 200, 210 (D. Mass. 1994) (finding at summary judgment that misstatements regarding a pipeline of sales prospects "became stale" after "information from many sources … entered the market reflecting the outcome of sales prospects" prior to plaintiff's purchases).  This argument is also facially incorrect.  As demonstrated in Boston's certification, its first purchase of NYCB stock was on April 6, 2023.  ECF No. 13-3.  Setting aside that this argument is a wildly premature factual issue, as explained in the ACC, there were no corrective disclosures or revelations until January 31, 2024.  *See, e.g.*,

---

[9] Garfield also unpersuasively argues that Boston is an "in-and-out" trader.  Motion at 11.  As clearly set forth in Boston's motion to be appointed lead plaintiff, Boston purchased a substantial portion of its NYCB shares after the alleged misstatements and subsequently sold shares after the first partial corrective disclosure. ECF Nos. 13-3 & 13.  This Court properly held that Boston is capable of adequately representing the Class. May 7 Order at 14-15. In any event, courts have found that "in-and-out purchasers" are capable of representing a class of investors.  *See, e.g.*, *Montoya v. Mamma.com Inc.*, 2005 WL 1278097, at *2 (S.D.N.Y. May 31, 2005) (finding that in-and-out trades did not "render such plaintiff incapable of adequately representing the class").

ACC ¶¶123-28. Garfield's severely belated attempt to impose intensely factual and hypothetical challenges to Boston's adequacy as Lead Plaintiff ring hollow.

> **3.    As Court-Appointed Lead Plaintiff, Boston Was Empowered, And In Fact Obligated, To File The Expanded Amended Complaint And Add Indiana As A Named Plaintiff**

Boston is the Court-appointed Lead Plaintiff in this Action and has been acting as such since its appointment.  Indeed, as reflected in the notice published in this Action (*supra* at 2), the PSLRA gives the court-appointed lead plaintiff sole authority to direct the action and make strategic decisions on behalf of the class, including determining what claims to bring, the appropriate length of the class period, and the defendants to name.  *See, e.g., In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 2011 WL 4538428, at *2 (S.D.N.Y. Sept. 29, 2011); *see also*; *In re Star Gas Sec. Litig.*, 2005 WL 818617, at *7 (D. Conn. Apr. 8, 2005) (concluding lead plaintiffs have discretion to dictate scope of case through subsequent filing of amended complaint); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 2013 WL 4399215, at *3 ("[C]ourts in this Circuit have consistently held that a lead plaintiff has the sole authority to determine what claims to pursue on behalf of the class.").  In this case, the Court's May 7, 2024 Lead Plaintiff Order (ECF No. 44) gave Boston sole authority to craft the claims against Defendants.  Filing the ACC was well within that authority. *See DBV Techs. S.A.*, 2020 WL 6580776, at *3 ([T]he amendment of plaintiff class action complaints after the initial pleading is commonplace.").

Further, as a fiduciary to the putative class under the PSLRA, the "lead plaintiff in a securities class action has a responsibility to identify and include named plaintiffs who have standing" to represent additional claims or subclasses of claims.  *Fishbury, Ltd. v. Connectics Corp.*, 2006 WL 3711566, at *4 (S.D.N.Y. Dec. 14, 2006) (citation omitted) (internal quotation marks omitted).  In fact, it is well settled law in this circuit that "[i]f certain class claims cannot be

advanced because of standing or class-certification issues, this deficiency can be corrected by the designation of other members of the purposed class as named plaintiffs or class representatives." *Id*. Moreover, the PSLRA does not in any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class. *Id*.; *accord In re Initial Public Offering Sec. Litig.*, 214 F.R.D. 117, 123 (S.D.N.Y 2002) ("It stands to reason that in many cases, the instant cases included, the plaintiff with the largest financial interest may not have standing to sue on all causes of action."). That is precisely what Boston has done here. Indiana was added to the Amended Complaint as a named plaintiff with standing to assert the Securities Act claims alleged therein, and class members with those claims will now reap the benefits of their claims being represented in an action led by an institutional investor, as is preferred under the PSLRA. *See* May 7 Order at 14 ("[T]he Court takes note of a countervailing Congressional preference for institutional investors like Boston Retirement").

The Second Circuit's decision in *Hevesi v. Citigroup Inc.* is instructive. 366 F.3d 70, 83 (2d Cir. 2004). There, as here, the lead plaintiff added additional named plaintiffs in its consolidated amended complaint who, unlike the lead plaintiff, purchased bonds in WorldCom bond offerings. *Id*. at 74. The complaint asserted both Section 10(b) and 20(a) Securities Exchange Act claims as well as Section 11, 12(a)(2), and 15 Securities Act claims for the bond offerings at issue. In its opinion, the Second Circuit recognized that "the PSLRA does not in any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class" and affirmed the district court's decision that the addition of named plaintiffs and additional claims merely ensures "that there are representatives of the Class with claims typical of purchases of both types of securities." *Id*. at 83. The ACC does exactly that here, and courts in this district have endorsed this approach following *Hevesi*. *See Parot*, 2022 WL 1568735, at *7 ("The Second

Circuit has expressly endorsed a lead plaintiff's bringing in additional named plaintiffs to assist in representing the class"). Garfield's attempt to distinguish *Hevesi* because the Initial Complaint and the PSLRA notice did not explicitly include the Securities Act claims at issue misses the mark. Motion at 12-13. First, this Court's May 7 Order expressly finds "the PSLRA's notice requirement has been satisfied." *See* May 7 Order at 6. Further, as explained above, the addition of new claims does not necessitate re-publication of notice, and Garfield has not cited a single case suggesting otherwise. *See supra*, Section III.B.2. Moreover, when Securities Act claims for the Offering were brought in the State Action ***nine months ago***, Garfield took no action there. And—even if he had—the 40 shares Garfield acquired in the Merger would not have secured him a leadership position in either the State Action or present Action. Garfield's attempt to impose fictious PSLRA requirements based solely on his failure to act falls short.

## IV.     CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court deny Garfield's Motion to the extent it seeks to vacate the May 7 Order and reopen the lead plaintiff process, and otherwise agrees that the *Garfield* action should be consolidated into this Action.

DATED: January 2, 2025

Respectfully submitted,

*/s/ Lauren A. Ormsbee*
**LABATON KELLER SUCHAROW LLP**
Lauren A. Ormsbee
Francis P. McConville
Lisa M. Strejlau
Charles J. Stiene
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
lormsbee@labaton.com
fmcconville@labaton.com
lstrejlau@labaton.com
cstiene@labaton.com

*Counsel for Lead Plaintiff and Lead
Counsel for the Proposed Class*