UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| WALTER EDWARD LEMM, JR.,<br><br>                 Plaintiff,<br><br>   vs.<br><br>NEW YORK COMMUNITY BANCORP, INC., THOMAS R. CANGEMI, and JOHN J. PINTO,<br><br>                Defendants. | No.: 24-cv-00903-NRM-JRC<br><br><u>CLASS ACTION</u><br><br><u>JURY TRIAL DEMANDED</u> |
| ROBERT GARFIELD, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>   vs.<br><br>FLAGSTAR FINANCIAL, INC. f/k/a NEW YORK COMMUNITY BANCORP, INC., THOMAS R. CANGEMI, JOHN J. PINTO, ROBERT WANN, ALESSANDRO P. DINELLO, DOMINICK CIAMPA, HANIF W. DAHYA, LESLIE D. DUNN, JAMES J. O'DONOVAN, LAWRENCE ROSANO, JR., RONALD A. ROSENFELD, DAVID TREADWELL, and LAWRENCE J. SAVARESE,<br><br>                Defendants. | No.: 1:24-cv-08655-JAM<br><br><u>CLASS ACTION</u><br><br><u>JURY TRIAL DEMANDED</u> |

**PLAINTIFF ROBERT GARFIELD'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION TO CONSOLIDATE, VACATE PRIOR LEAD PLAINTIFF AND LEAD COUNSEL APPROVAL ORDER AND TO ORDER THE REOPENING OF THE <u>PSLRA LEAD PLAINTIFF AND LEAD COUNSEL APPROVAL PROCESS</u>**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

I.   PRELIMINARY STATEMENT ................................................................................. 1

II.  ARGUMENT ............................................................................................................... 5

    A.   Mr. Garfield's Motion is Both Timely and Proper ......................................... 5

    B.   The May 7 Order Should be Vacated and Notice Republished ................... 7

    C.   Movant's Concerns About BRS and IPRS Have Not Been Assuaged ....... 10

        1.   BRS Incorrectly Insists Fractional Shares Were Issued ........................... 10

        2.   The Troubling Inconsistencies in the IPRS Certification ......................... 11

        3.   The ACC Was Unauthorized and It May Be Deemed a Nullity ............... 13

III. CONCLUSION .......................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**            **Page(s)**

*In re Allergan PLC Sec. Litig.*,
   2020 U.S. Dist. LEXIS 179371 (S.D.N.Y. Sep. 29, 2020) ........................................................5

*Bank of Am. Corp. Secs v. Bank of Am. Corp.*,
   No. 09 MD 2058 (PKC), 2011 U.S. Dist. LEXIS 113672 (S.D.N.Y. Sep. 29, 2011) ...............................................................................................................................14

*In re Block, Inc. Sec. Litig.*,
   No. 22-cv-8636 (RA), 2024 U.S. Dist. LEXIS 26849 (S.D.N.Y. Feb. 15, 2024) ..............................................................................................................................9, 10

*In re BP, PLC Securities Litig.*,
   758 F. Supp. 2d 428 (S.D. Tx. Dec. 28, 2010) .......................................................................10

*Cambridge Ret. Sys. v. Mednax, Inc.*,
   No. 18-61572-CIV-DIMITROULEAS/S, 2018 U.S. Dist. LEXIS 207064 (S.D. Fla. Dec. 6, 2018) ..........................................................................................................6

*Cont'l Indus. Grp. v. Altunkilic*,
   No. 14-CV-790 (AT) (JLC), 2020 U.S. Dist. LEXIS 66980 (S.D.N.Y. Apr. 16, 2020) ....................................................................................................................................12

*Dube v. Signet Jewelers Ltd.*,
   No. 16-CV-6728 (JMF), 2017 U.S. Dist. LEXIS 57624 (S.D.N.Y. Apr. 14, 2017) .................................................................................................................................7, 8

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
   MDL No. 12-2389, 2013 U.S. Dist. LEXIS 115647 (S.D.N.Y. Aug. 10, 2013) ....................14

*Firefighters Pension & Relief Fund v. Bulmahn*,
   No. 13-3935, 2013 U.S. Dist. LEXIS 172737 (E.D. La. Dec. 6, 2013) ...................................9

*Friedman v. Quest Energy Partners LP*,
   261 F.R.D. 607 (W.D. Okla. 2009) ..........................................................................................9

*Garfield v. BlackRock Mortgage Ventures, LLC*,
   C.A. No. 2018-0917-KSJM (Del. Ch. Feb. 26, 2021) .............................................................4

*Garfield v. Lantheus Holdings, Inc.*,
   No. 19-cv-01966 (E.D.N.Y. Apr. 11, 2019) ............................................................................4

*Garfield v. Searchlight Capital Partners LP, et al.*,
   C.A. No. 2023-0555-JTL (Del. Ch. Dec. 13, 2024) ................................................................4

*Governale v. Soler*,
   No. 14-CV-4386 (ADS)(ARL), 2016 U.S. Dist. LEXIS 79826 (E.D.N.Y. June
   20, 2016) ...................................................................................................................13

*Hevesi v. Citigroup Inc.*,
   366 F. 3d 70 (2d Cir. 2004) ........................................................................................15

*Ito-Stone v. DBV Techs. S.A.*,
   Civil Action No. 19-525 (MCA) (LDW), 2020 U.S. Dist. LEXIS 210086
   (D.N.J. Nov. 9, 2020) .................................................................................................14

*Jun Kong v. Wing Keung Enters., Inc.*,
   No. 15-CV-6228 (RJD) (LB), 2017 U.S. Dist. LEXIS 205331 (E.D.N.Y. Aug.
   9, 2017) .......................................................................................................................14

*Kujawa v. New York Community Bancorp, Inc. et al.*,
   Index No. 153581/2024 (NY Sup. NY Co.) ..............................................................6, 7

*Mayo v. Apropos Tech., Inc.*,
   No. 01 C 8406, 2002 U.S. Dist. LEXIS 1924 (N.D. Ill. Feb. 6, 2002) .........................5

*MCG Capital Corp. v. Maginn*,
   Civil Action No. 4521-CC, 2010 Del. Ch. LEXIS 87 (Del. Ch. May 5, 2010) ...........4

*Miles v. City of N.Y.*,
   No. 14-CV-9302 (VSB), 2018 U.S. Dist. LEXIS 130914 (S.D.N.Y. Aug. 3,
   2018) ...........................................................................................................................13

*In re Peregrine Sys. Sec. Litig.*,
   No. 02cv870-J (RBB), 2002 U.S. Dist. LEXIS 27690 (S.D. Cal. Oct. 9, 2002)
   (S.D. Cal. Oct. 11, 2002) .............................................................................................9

*Plaut v. The Goldman Sachs Grp., Inc.*,
   No. 18-CV-12084 (VSB), 2019 U.S. Dist. LEXIS 160255 (S.D.N.Y. Sep. 19,
   2019) .............................................................................................................................2

*Pub. Emps. Ret. Sys. v. Meta Platforms, Inc.*,
   No. 21-cv-08812-JST, 2022 U.S. Dist. LEXIS 150740 (N.D. Cal. July 26,
   2022) ....................................................................................................................12, 13

*Repex Ventures v. Madoff*,
   2009 U.S. Dist. LEXIS 141393 (S.D.N.Y. Oct. 5, 2009) .............................................5

*Set Capital LLC v. Credit Suisse Grp. AG*,
   2023 U.S. Dist. LEXIS 44762 (S.D.N.Y. Mar. 16, 2023) ............................................9

*Set Capital LLC v. Credit Suisse Grp. AG*,
   2024 U.S. Dist. LEXIS 37546 (S.D.N.Y. Mar. 1, 2024) ..............................................9

*Siegel v. Otting*,
  No. 24-cv-07352 (E.D.N.Y Oct 21, 2024).................................................................................7

*In re Star Gas Sec. Litig.*,
  No. 3:04cv1766 (JBA), 2005 U.S. Dist. LEXIS 5827 (D. Conn. Apr. 8, 2005) ......................14

*Torrel v. City of N.Y.*,
  114 F. App'x 14 (2d Cir. 2004) ...............................................................................................12

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
  549 F. 3d 100 (2d Cir. 2008).....................................................................................................11

*Wang v. Athira Pharma, Inc.*,
  No. C21-861 TSZ, 2021 U.S. Dist. LEXIS 192248 (W.D. Wash. Oct. 5, 2021)
  (W.D. Wa. Oct. 5, 2021) .....................................................................................................9, 10

*In re WorldCom, Inc. Sec. Litig.*,
  *303 F. Supp. 2d 385* (S.D.N.Y. 2004)........................................................................................5

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(ii) ...........................................................................................................5

15 U.S.C. § 78u-4(a)(3)(B)(iii) and (iv) ...........................................................................................1

PSLRA ................................................................................................................................ *passim*

**Other Authorities**

Federal Rule of Evidence 602........................................................................................................12

Federal Rule of Evidence 1002......................................................................................................12

https://contracts.justia.com/companies/flagstar-bancorp-inc-
  1666/contract/174364/ ..........................................................................................................10

https://www.sec.gov/Archives/edgar/data/1521036/000119312519098148/d67858
  1ddefa14a.htm..........................................................................................................................5

IPRS FAQ, Question 5, available at: https://www.in.gov/inprs/about-
  us/overview/inprs-
  faqs/#:~:text=The%20official%20name%20will%20be,Public%20Retirement
  %20System%20(INPRS):........................................................................................................12

Rule 21F-17 .....................................................................................................................................7

I.       **PRELIMINARY STATEMENT**

There is no doubt that *tentative* Lead Plaintiff BRS: (1) impermissibly filed the ACC in violation of an unambiguous Court Order,[1] (2) dramatically expanded the action beyond all recognition by asserting a sweeping new Class Period with new claims, new causes of action, new statutes, new Class members, and multiple new defendants; (3) deprived tens of thousands of proposed new Class members of their statutory and due process rights to receive notice and to apply to serve as Lead Plaintiff for this drastically altered class action (or to challenge any applicant who seeks to serve in that role, a right the PSLRA provides to *every potential Class member*);[2] and (4) having been tentatively appointed to represent a *fraud* Class, which had nothing to do with the 2022 Flagstar-NYCB Merger and did not reach back to 2022, appointed "named plaintiff" IPRS to serve as a *de facto* Lead Plaintiff for tens of thousands of former Flagstar holders. The 2022 Merger-related Securities Act Claims (unlike the claims BRS was actually appointed to assert) may rest on strict liability and disclaim fraud.

New Securities Act Class damages for Old Flagstar stockholders may well range in the hundreds of millions of dollars, but putative New Securities Act Class members who held Old Flagstar stock have never received notice such claims would or could be asserted in this Court.[3]

---

[1] *See* ECF No. 9, ¶ 4, March 12, 2024)(requiring that the designated Lead Plaintiff seek Court permission to file any consolidated pleading pursuant to a proposed schedule).

[2] *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii) and (iv). We employ the same terms herein as in our Opening Brief, including the "ACC", the "New Securities Act Class", the "New Class Period", the "Merger", the "Merger-related Securities Act Claims", and "Old Flagstar" (to describe the entity acquired by NYCB in December 2022).

[3] When BRS filed the ACC, lead plaintiff contestant Sand Hollow filed a brief correctly observing that the ACC has been filed without Court approval "prematurely and presumptuously"; is "materially different than the original case that was reported to absent class members in the PSLRA lead plaintiff notice"; that the filing might lead to "the lead plaintiff process [being] restarted so that absent class members [could] be made aware of their rights under the PSLRA with the respect to the new claims"; and that "shareholders with potentially much larger losses than the present movants were never given notice of the operative class period

1

To add insult to injury, as previously observed, IPRS has submitted a Certification detailing its purported stock transactions that cannot be accurate, as it contains 11 entries claiming it received fractional shares in the Merger, where public documents repeatedly state no fractional shares were ever issued. (*See infra*, at pp. 10-11). The BRS opposition brief does not rehabilitate the IPRS Certification, and instead wrongly and inexplicably insists that fractional shares were issued (confusing the Merger Ratio, which did contain a fractional number, with the issue of whether fractional shares would be provided to former Flagstar stockholders).[4] No fractional shares were issued, which renders the IPRS Certification incomprehensible.[5]

BRS fails to offer any explanation as to why the limited 2023-2024 fraud action it was tentatively appointed to lead has been expanded to include the 2022 Flagstar Merger. The original cases, notices and motions did not describe any claims extending back to 2022. Prior to the filing of the ACC, the asserted Class Period extended only from *March 1, 2023* to February

---

and not afforded the opportunity to come forward with their losses to seek the Lead Plaintiff position." (Sand Hollow Stay Motion Reply, ECF No. 74, Oct. 17, 2024, at pp. 1, 2 and 7). Sand Hollow was correct on all points. In its most recent brief, Sand Hollow opines that the prior fraud cases and the newly asserted Old Flagstar Merger-related Securities Act claims are so different they should not even be consolidated, but instead should be kept distinct and pursued "separately by a court-appointed lead plaintiff." (Sand Hollow Response, ECF No. 86, Jan. 2, 2025 at p.2).

[4] It is not even clear that IPRS held title to the Flagstar shares it claims it owned prior to the Merger. A new Declaration by an IPRS executive does not assert it did, but rather states that many of the shares listed were purchased by an external manager through an "externally managed account" presided over by an unidentified entity. (ECF No. 86-4, ¶ 6, Declaration of Jeffrey M. Gill dated Jan. 2, 2025; "Gill Declaration"). This assertion does nothing to explain why the number of Old Flagstar shares claimed to be owned by IPRS in the IPRS Certification differs so radically from the number of Old Flagstar shares claimed to be owned in contemporaneous IPRS public reports. (*See* Opening Brief, at 9-10). Moreover, as discussed *infra* at pp. 11-13 the Gill Declaration has no evidentiary value and must be struck as Declarant Gill never states he personally reviewed the underlying records (which were not attached) and never details the basis for his asserted personal knowledge, both of which are required by the law of this Circuit if a Declaration is to be deemed valid.

[5] In similar circumstances, proposed lead plaintiffs and class representatives who cannot get their facts straight have been disqualified from service. *See Plaut v. The Goldman Sachs Grp., Inc.*, No. 18-CV-12084 (VSB), 2019 U.S. Dist. LEXIS 160255, at *13-14 (S.D.N.Y. Sep. 19, 2019)(certification errors barred applicant from serving as lead plaintiff)(collecting cases).

2

5, 2024. The Flagstar Merger occurred on December 1, 2022 and BRS has no legitimate interest in it. It exchanged no shares in the Merger. Its Certification shows plainly that its damages, if any, stemmed from investments it made in December 2023, over one year later. (*See* Opening Br. at 12).[6] The ACC claims no fewer than 15 false and allegedly fraudulent statements made in *2023* that BRS claims caused its injury. (*See Id*.; ACC, pp. 104-11, 121-44). The attempt by BRS to reach back in time, and meld together the open market Section 10(b) fraud claims (originally alleged to be perpetrated only in 2023 to 2024) and the 2022 *non-fraud* Merger-related Securities Act Claims appears artificial, and provides a strong reason for this Court to reopen the process and determine whether the New Securities Act Class requires the protection of its own Lead Plaintiff and Lead Counsel. Plainly, it does. It is difficult to imagine how BRS could not irreparably damage the New Securities Act Class before a jury when it argues on behalf of its Section 10(b) fraud Class that the Merger was tainted by fraud, *and simultaneously on behalf of the New Securities Act Class that it was not tainted by fraud, and that there was no fraud*. These are not two sides of the same coin - these are two different coins.

Likewise, how can BRS disentangle its claim that the damages suffered here by the New Securities Act Class were caused by the 2022 Merger "offering materials", when it also claims that the stock's inflation was caused by the 15 discrete post-Merger *2023* representations detailed in the ACC? This, too, would require quite a bit of linguistic sleight of hand, and raises the specter of trotting out damages experts who would then contradict each other. It is clear that the New Securities Act Class would be best served by an advocate *who consistently disclaims fraud*.

---

[6] Its early 2023 investments had been sold off well before December 2023, as measured by the LIFO method (stocks are deemed sold on a "last in, first out" basis). *See Lemm*, ECF 13-4.

3

By reopening the PSLRA process, the Court will be able hear and decide arguments by affected New Securities Act Class members as to why BRS cannot and should not be their champion.[7]

Instead of cogently defending its actions, BRS devotes much of its brief to denigrating Movant Robert Garfield ("Movant" or "Mr. Garfield"). But much like its defense of the IPRS Certification, the assertions made by BRS (suggesting that Mr. Garfield is a serial frivolous litigant) are belied by the facts. In actuality, Mr. Garfield is a respected shareholder advocate who has achieved considerable success serving as class representative and lead or co-lead plaintiff in a number of complex shareholder class and derivative actions. In three recent settlements, he recovered or soon will recover a combined sum of over $50 million.[8] In footnote 5 of its Brief, BRS maintains that "Garfield has a history of filing actions in this Court and voluntarily dismissing those same actions shortly thereafter", citing four cases from 2019. However, three of those four cases, as noted on docket entries (notably not the entries cited by BRS), were either settled or mooted, as Mr. Garfield quickly obtained the relief sought in the complaint.[9]

---

[7] The chaotic situation created by the improper filing of the ACC is unfair to the putative New Securities Act class members, to Sand Hollow, to Movant Garfield, and to the Court. It is reminiscent of an observation made by former Delaware Chancellor Chandler in somewhat similar circumstances: "Confusion now hath made his masterpiece." *MCG Capital Corp. v. Maginn,* Civil Action No. 4521-CC, 2010 Del. Ch. LEXIS 87, at *13 (Del. Ch. May 5, 2010), quoting William Shakespeare, *Macbeth*, Act 2, Sc. 3.

[8] In 2021, as plaintiff challenging a complex transaction, Mr. Garfield and his counsel secured a settlement of $6.85 million on behalf of stockholders of PennyMac Inc. *Garfield v. BlackRock Mortgage Ventures, LLC,* C.A. No. 2018-0917-KSJM (Del. Ch. Feb. 26, 2021). More recently, in December 2024, three class representatives, including Mr. Garfield, achieved a $15 million settlement following a "going private" transaction. *Garfield v. Searchlight Capital Partners LP, et al.,* C.A. No. 2023-0555-JTL (Del. Ch. Dec. 13, 2024; Final Order and Judgment Approving Class Action Settlement). Also in December 2024, it was announced a $29.75 million settlement had been reached in a matter in which Mr. Garfield is a co-lead plaintiff. *See TS Innovation Acquisitions Sponsor LLC Stockholder Litigation,* C.A. No. 2023-0509-LWW (Del. Ch.)(pending Court approval).

[9] The one case which does not clearly indicate on the docket that it was settled or favorably mooted, *Garfield v. Lantheus Holdings, Inc.*, No. 19-cv-01966 (E.D.N.Y. Apr. 11, 2019), was resolved the day after the complaint was filed when the defendant submitted a document to the

4

These mischaracterizations do not reflect well on BRS who, unlike Mr. Garfield, has had a checkered litigation history, having been deemed an inadequate class representative and to have engaged in "unacceptable" conduct in *In re Allergan PLC Sec. Litig.,* 2020 U.S. Dist. LEXIS 179371, at *16-25 (S.D.N.Y. Sep. 29, 2020) due its failure to follow a Court order. Its behavior here seems similar.

Finally, in seeking consolidation, Movant Garfield did not intend to imply that such consolidation be for all purposes, as he does not believe it should be for trial purposes, as discussed above. The drafters of the PSLRA provided that consolidation could be "for pretrial purposes or for trial." 15 U.S.C. § 78u-4(a)(3)(B)(ii). Movant Garfield urges that, if the Court grants consolidation, it be for pre-trial purposes only.[10]

## II. ARGUMENT

### A. MR. GARFIELD'S MOTION IS BOTH TIMELY AND PROPER

BRS asserts that the Motion seeking to vacate the May 7 Order and reopen the PSLRA process including notice, is untimely, pointless and an attempt to circumvent the PSLRA. That argument is fatuous. To the extent that it is not obvious from the Motion, Mr. Garfield is *not* at

---

SEC providing the missing disclosure. *See* April 4, 2019, Lantheus Holdings Proxy Supplement, available at:
https://www.sec.gov/Archives/edgar/data/1521036/000119312519098148/d678581ddefa14a.htm

[10] Many courts have so confined consolidation where disparate investor actions have been filed but would benefit from coordination as to common issues. *See In re WorldCom, Inc. Sec. Litig.,* 303 F. Supp. 2d 385, 387 (S.D.N.Y. 2004)(discrete Section 11 claims consolidated with other securities claims only for pretrial purposes*); Repex Ventures v. Madoff,* 2009 U.S. Dist. LEXIS 141393, at *16-17 (S.D.N.Y. Oct. 5, 2009)(three PSLRA class actions with different lead plaintiffs consolidated for pre-trial purposes only); *Mayo v. Apropos Tech., Inc.,* No. 01 C 8406, 2002 U.S. Dist. LEXIS 1924, at *6 (N.D. Ill. Feb. 6, 2002)( "The question of whether [related PSLRA cases] should be consolidated for trial will be reserved until later.").

5

this juncture seeking appointment as Lead Plaintiff, nor his counsel as Lead Counsel.[11] Nor is Mr. Garfield acting on behalf of anyone but himself, contrary to BRS' reckless and unsupported suppositions. *See,* BRS Opp. at 9, 11 [ECF No. 85]. As a member of the putative class and now a class plaintiff himself, Mr. Garfield is entitled to ensure that the Lead Plaintiff is adequate. As noted in *Cambridge Ret. Sys. v. Mednax, Inc.,* No. 18-61572-CIV-DIMITROULEAS/S, 2018 U.S. Dist. LEXIS 207064, at *5 n.3 (S.D. Fla. Dec. 6, 2018):

> It is the Court's obligation, noted above, to determine that a proposed lead plaintiff satisfies the requirements of Rule 23. The effect of the additional statutory provision allowing a member of the class to offer proof to rebut the presumption that the lead plaintiff is "incapable of adequately representing the class" effectively grants to any member of the class an opportunity to challenge, or "knock-out," as described by the court in *Burke v. Ruttenberg,* 102 F. Supp. 2d 1280, 1341 (N.D. Ala. 2000), the Court's selection of the lead plaintiff. This challenge can be raised at a later time, *e.g.*, after the limited discovery allowed under the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iv).

At the time that ACC was filed, there was a pending state complaint that *solely* alleged New Securities Act Claims on a class basis against NYCB and its officers and directors. *See, Kujawa v. New York Community Bancorp, Inc. et al.,* Index No. 153581/2024 (NY Sup. NY Co.).[12] Mr. Garfield had no reason to take action here until *Kujawa* was unexpectedly stayed in favor of the BRS action at Defendants' behest. Until then, there was a separate and independent class case for the New Securities Act Claims, with separate plaintiffs and unconflicted counsel, the well-known firm of Girard Sharpe, LLP. When *Kujawa* was stayed on December 9, 2024 by the Hon. Andrew Borrok in favor of the federal forum, the landscape dramatically changed. To protect the New Securities Act Class, a mere 10 days later Mr. Garfield filed his complaint

---

[11] If the PSLRA process is reopened, and Mr. Garfield does apply for that position, there is no reason he should not be seriously considered, given his extensive record of success. But we are not yet at that stage of these proceedings.

[12] Notice of the claims alleged in *Kujawa* was never provided to class members, as the PSLRA only applies to claims in federal court.

alleging Securities Act Claims and made this Motion.[13] There was not, as BRS contends, an eight-month delay.[14] There was not even a two-week delay.

### B. THE MAY 7 ORDER SHOULD BE VACATED AND NOTICE REPUBLISHED

The issue of whether republication is warranted turns on a comparison of the original complaint and the ACC and "an assessment of whether, in light of the amendments, "entire classes of potential lead plaintiffs [were] left out of the notice procedure." *Dube v. Signet Jewelers Ltd.*, No. 16-CV-6728 (JMF), 2017 U.S. Dist. LEXIS 57624, at *3 (S.D.N.Y. Apr. 14, 2017), *quoting Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 2005 U.S. Dist. LEXIS 10780, at *7 (S.D.N.Y. June 1, 2005*)*. Here, while BRS attempts to characterize the New Securities Act Claims as consistent with the original Section 10(b) open market fraud claims, they are not. The two claims have different class periods, different defendants, a different pool of injured stockholders - those that were former Old Flagstar stockholders - and the standard of proof for these claims is an entirely different standard from the heightened standard of proof applied to fraud on the market claims. So much so that BRS brought in a new institutional stockholder with a questionable Certification to attempt to do an end-run around the PSLRA requirements. While BRS pretends to ponder Movant's reasons for filing this Motion, the Court should query why BRS filed a complaint without Court approval and sought to impose

---

[13] The timing of the filing of Mr. Garfield's complaint and this Motion was thus a reaction to the unexpected December 9, 2024 stay in *Kujawa* and not a tactic to "harass" BRS or its counsel, contrary to BRS' assertion. *See,* BRS Opp. at 12. Had BRS sought a briefing extension to accommodate the holidays, Movant would have readily agreed to one.

[14] To the extent that BRS implies that there is a conflict between Mr. Garfield's action and a derivative action currently pending and filed by *another shareholder*, that is incorrect. (BRS Opp. at 8.) The referenced derivative action, *Siegel v. Otting,* No. 24-cv-07352 (E.D.N.Y Oct 21, 2024), alleges that NYCB and/or its Board violated SEC Rule 21F-17, a provision designed to encourage whistleblowers to come forward, which is not the subject of any other pending action against NYCB and seeks only equitable relief to force the Board to comply with "positive" law - it presently seeks no damages. There is no conflict, as Mr. Garfield and Mr. Siegel are two different people who do not even know each other. That Mr. Garfield was once interested in this same topic is irrelevant.

7

its new plaintiff on stockholders who never had notice of these new claims involving new defendants and a new Class Period in an entirely different year.

Mr. Garfield's Opening Brief explains in detail why republication is necessary and Plaintiff need not repeat these arguments. *See,* Opening Brief, ECF 84-2 at 6-9. BRS can protest as much as it wants, but there is no doubt that an entire class of Old Flagstar stockholders had no idea that the NYCB Section 10(b) Claims would ultimately be expanded to include New Securities Act Claims that belong strictly to them. As BRS acknowledges, the goal of the PSLRA's notice requirement is to provide class members with sufficient information so that these class members can make an informed and reasoned judgment about whether to seek lead plaintiff status. BRS Opp. at 13. Old Flagstar stockholders did not get that understanding from the two notices published, which referred to a much shorter class period, with a handful of defendants and alleging only Section 10(b) Claims. As it stands now, the Court has made no assessment about whether IPRS is, in fact, the most adequate plaintiff to serve as a *de facto* lead plaintiff for the New Securities Act Claims. While expansion of the Class Period in the ACC alone might not trigger a need for republication if confined to Section 10(b) Claims, the fact remains that the ACC asserts new allegations that "dramatically altered the contours of the lawsuit". *Dube,* 2017 U.S. Dist. LEXIS 57624, at *5 (citation omitted).[15] Whether this is permissible under the PSLRA is a determination that only the Court can make, not BRS.

When BRS was tentatively appointed, this Court held that "Boston has no discernible conflict of interest with the purported class" but that is not true now. ECF 44 at 15. The Section 10(b) Claims and the New Securities Act Claims will not only focus on different legal claims and new potential defenses, but also are in conflict as they seek recovery from the same "pot". They

---

[15] BRS asserts that the core allegations of the original complaint and the ACC are the same and that "Garfield has not argued otherwise." BRS Opp. at 17. That is absolutely incorrect. *See,* Opening Brief at 2, n. 2 and 6-9.

8

are best prosecuted by different lead plaintiffs and lead counsel, as has been done in numerous other cases.[16] *See, In re Block, Inc. Sec. Litig.*, No. 22-cv-8636 (RA), 2024 U.S. Dist. LEXIS 26849, at *20-21 (S.D.N.Y. Feb. 15, 2024) ( in light of "significant questions" as to whether the court-appointed lead plaintiff who had alleged Exchange Act claims had adequately preserved Securities Act claims, including his dependence on allegations that conflicted with a PSLRA certification, the court appointed a separate lead plaintiff and counsel for the Securities Act claims); *Wang v. Athira Pharma, Inc.,* No. C21-861 TSZ, 2021 U.S. Dist. LEXIS 192248, at *9 (W.D. Wash. Oct. 5, 2021) (W.D. Wa. Oct. 5, 2021)(noting that "Exchange Act and Securities Act claims have different elements, and the former requires a showing of scienter, while the latter does not", the court appointed discrete co-lead plaintiffs and two firms as co-lead counsel); *In re Peregrine Sys. Sec. Litig.*, No. 02cv870-J (RBB), 2002 U.S. Dist. LEXIS 27690, at *8 (S.D. Cal. Oct. 9, 2002) (S.D. Cal. Oct. 11, 2002)(court appointed co-lead plaintiffs and co-lead counsel of choice, one to lead the Section 11 plaintiffs and another to lead Section 10(b) litigation after noting the differences between the standard of proof on each claim); *Firefighters Pension & Relief Fund v. Bulmahn,* No. 13-3935, 2013 U.S. Dist. LEXIS 172737, at *11-12 (E.D. La. Dec. 6, 2013) (court appointed separate lead plaintiffs and counsel for Section 11 and Section 10(b) claims, finding that there was a risk of conflict given the two distinct theories of the case and its class periods); *Friedman v. Quest Energy Partners LP,* 261 F.R.D. 607, 610 615

---

[16] The conflict between disparate types of claims can arise not only at the PSLRA lead plaintiff stage, but at later stages as well. Recently, Judge Torres of the Southern District of New York refused to certify a class of two differing Section 10(b) claims without "alternative class representatives" because the theories of liability they presented were "in direct conflict with each other." *Set Capital LLC v. Credit Suisse Grp. AG*, 2023 U.S. Dist. LEXIS 44762, at *33-38 (S.D.N.Y. Mar. 16, 2023). Judge Torres next denied a reconsideration motion and a renewed motion made without presenting differing class representatives and separate counsel, *Set Capital LLC v. Credit Suisse Grp. AG*, 2024 U.S. Dist. LEXIS 37546 (S.D.N.Y. Mar. 1, 2024). By the time these types of issues are surfaced by the Court at a later stage, considerable damage may already have been done. Thus, it is highly appropriate and beneficial for Movant to raise these issues now.

(W.D. Okla. 2009) (due to a conflict between the claims of the Section 10(b) class and the Section 11 class as they were competing for monetary recovery from the same set of defendants, separate lead plaintiffs and separate counsel were appointed); *In re BP, PLC Securities Litig.,* 758 F. Supp. 2d 428, (S.D. Tx. Dec. 28, 2010) (expressing its "foremost concern is to preserve the claims of all potential class members", court appointed two co-lead plaintiffs and a subclass represented by a different plaintiff group, with their respective counsel).[17]

### C.  MOVANT'S CONCERNS ABOUT BRS AND IPRS HAVE NOT BEEN ASSUAGED

#### 1.  BRS Incorrectly Insists Fractional Shares Were Issued

BRS claims, without any supporting evidence, that fractional shares were issued in the Merger to IPRS. BRS Opp. at 19. The public record shows otherwise. No fractional shares were issued to any Old Flagstar stockholder.

For example, in the Merger Agreement dated April 24, 2021, in Article II, Sections 2.1 and 2.2, it is explicit that no fractional shares would be issued in the Merger.[18] Thereafter, on June 25, 2021, Old Flagstar and NYCB issued a joint proxy statement/prospectus on Form 424B3 ("Proxy"), which stated at p. 114:

> **Fractional Shares**
>
> ***NYCB will not issue any fractional shares of NYCB common stock in the merger***. Instead, a former holder of Flagstar common stock who otherwise would have received a fraction of a share of NYCB common stock will receive an amount in cash rounded to the nearest cent. [Emphasis added].

Neither the Merger Agreement nor the Proxy states that that fractional shares were to ever be issued to Old Flagstar holders - in fact, each plainly states the opposite--that cash would be issued in lieu of fractional shares. BRS offers no support for its bald assertion that "fractional

---

[17] BRS' attempts to distinguish Mr. Garfield's authorities fail, as the ACC does change the "gravamen" of the claims. BRS Opp. at 18. Moreover, although cited in the Motion, BRS does not address or attempt to distinguish *Block* or *Wang*, which support granting the Motion.

[18] https://contracts.justia.com/companies/flagstar-bancorp-inc-1666/contract/174364/

10

shares were ultimately set to settle on a later date." It is extremely troubling that the Lead Plaintiff in this case cannot explain the discrepancies in the records of the institution it unilaterally chose to add to the ACC to represent the New Securities Act Class. Nor can IPRS explain these discrepancies. Its Declarant, Mr. Gill, conspicuously *never mentions fractional shares.*

### 2. The Troubling Inconsistencies in the IPRS Certification

BRS has opted to "testify" on behalf of IPRS on the issues of both the mysterious fractional shares and of the correct number of shares held by IPRS, stating that not all of IPRS' shares are reflected in the APRA Report submitted by Mr. Garfield. *See* BRS Opp. at 19; Motion at 10-11. BRS maintains that shares not reflected in the APRA Report are "irrefutably, Indiana holdings properly reflected in the Certification", citing to the Declaration of Jeffrey M. Gill. ECF 85-4 at paragraph 6. Mr. Gill, who is the General Counsel of IPRS, contends that the Certification is true and accurate purportedly because "[a] significant portion of Indiana's trades in NYCB common stock during the Class Period and in the Offering were made in an ***externally-managed account that are not reflected in the APRA report but are properly listed"*** in the Certification. But this vague explanation raises more questions than it answers. Is the information provided by IPRS to the public incorrect? Who holds title to the shares in this "externally-managed account"? The answers to these questions may preclude IPRS from including the shares from this "externally-managed account" if the investment manager, rather than IPRS, holds title to the shares. *See, e.g., W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP,* 549 F. 3d 100, 109 (2d Cir. 2008) (an investment advisor who did not hold title to

11

shares could not file litigation as it did not have Article III standing to pursue its clients' claims).[19]

The Gill Declaration does not state that Mr. Gill reviewed any documents in connection with his assertions, or indeed, in accordance with Federal Rule of Evidence 1002 ("best evidence rule"), attach copies of the relevant documents; does not state definitively that IPRS actually holds title to the shares in the externally-managed account; and does not state that he reviewed the documents underlying the Certification and personally determined that the information is true and accurate. All of this makes the Gill Declaration inadmissible and incompetent. *See, e.g., Torrel v. City of N.Y.*, 114 F. App'x 14, 16 (2d Cir. 2004) (concluding that affidavit was insufficient because it "did not provide any basis for [affiant's] personal knowledge of the facts and circumstances"); *Cont'l Indus. Grp. v. Altunkilic,* No. 14-CV-790 (AT) (JLC), 2020 U.S. Dist. LEXIS 66980, at *10-11 (S.D.N.Y. Apr. 16, 2020)(Declaration improper where declarant "does not even state that he reviewed the records from which the data was gathered."); Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."). As such, this is entirely distinguishable from the situation the court faced in *Pub. Emps. Ret. Sys. v. Meta Platforms, Inc.,* No. 21-cv-08812-JST, 2022 U.S. Dist. LEXIS 150740, at *7-8 (N.D. Cal. July 26, 2022), relied upon by BRS. BRS Opp. at 19-20. In *Meta,* the certification provided sound

---

[19] It is unclear whether IPRS itself, which is a retirement "system" that administers multiple funds, owns any legal title to the funds' securities itself. Its constituent funds assert that they have remained "separate" but under IPRS "oversight." This is not an unimportant issue - if IPRS has no legal title, then it also has no Article III case or controversy to bring before this Court.

*See* IPRS FAQ, Question 5, available at: https://www.in.gov/inprs/about-us/overview/inprs-faqs/#:~:text=The%20official%20name%20will%20be,Public%20Retirement%20System%20(I NPRS): "Will the assets of both funds be combined? No. Each retirement fund will continue as a separate fund under the oversight of INPRS' nine-member board of trustees."

documentation, including transaction statements to support its position, directly addressed legal title issues regarding the shares, and more.[20]

### 3. The ACC Was Unauthorized and It May Be Deemed a Nullity

BRS was not authorized by the Court to file the ACC. Indeed, none of the stipulations submitted to the Court setting forth schedules for the submission of documents, including the ACC, were "so ordered." ECF Nos. 51, 59, and 66. As such, the ACC may be viewed as a nullity and should certainly not be treated as either the operative complaint or the final consolidated amended complaint. As expressed in *Governale v. Soler*, No. 14-CV-4386 (ADS)(ARL), 2016 U.S. Dist. LEXIS 79826, at *2-3 (E.D.N.Y. June 20, 2016), as to a similarly unauthorized amended complaint:

> [O]n its own motion, the Court finds that the purported amended complaint is a nullity, without legal effect, and will be stricken. *See Chevron Corp. v. Salazar*, No. 11-cv-0691, 2011 U.S. Dist. LEXIS 92091, at *9-*10 (S.D.N.Y. Aug. 17, 2011) (striking purported amended pleading which was filed without leave of court and did not otherwise satisfy Rule 15); *Lyddy v. Bridgeport Bd. of Educ.*, No. 06-cv-1420, 2008 U.S. Dist. LEXIS 45035, at *6-*7 (D. Conn. June 10, 2008) (noting that an amended complaint which is filed without obtaining the required leave of court "is generally considered a nullity and without legal effect" (citing 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1484, at 601 (1990));…Moore's Federal Rules Pamphlet § 15.3 (noting that "if leave of court to amend is required, an amended pleading filed without obtaining leave is a nullity and the original pleading stands." (citations omitted)).

At best, the ACC should be viewed as an additional complaint filed by class members who never previously filed a complaint. If the Court takes this lenient approach, the ACC would not be entirely struck from the docket, but its presence as an "ordinary complaint" containing new claims would be deemed to trigger a new PSLRA notice and briefing process. *Cf. Miles v.*

---

[20] Specifically, the court noted: "PFA Pension has submitted proof, in the form of transaction statements from J.P. Morgan..." *Id.* at *7. It is relevant to note that, after inquiries were made, PFA Pension clarified that it *did not* hold legal title to the shares purchased by related entities also bearing the name PFA. *Id.* Further inquiries may show the same is true here as to IPRS. The claims of tens of thousands of Old Flagstar stockholders should not rest on such shaky shoulders, especially where irregularities and inconsistencies are undoubtedly present.

13

*City of N.Y.,* No. 14-CV-9302 (VSB), 2018 U.S. Dist. LEXIS 130914, at *12 (S.D.N.Y. Aug. 3, 2018) (striking newly-asserted causes of action that fell outside of the scope of leave to amend); *Jun Kong v. Wing Keung Enters., Inc.*, No. 15-CV-6228 (RJD) (LB), 2017 U.S. Dist. LEXIS 205331 (E.D.N.Y. Aug. 9, 2017) (striking unauthorized allegations from amended complaint). Under this approach, the Court would strike any reference in the ACC to its status as either a "consolidated" complaint or an "amended" complaint. This may be a more practical approach than fully striking the ACC because, if BRS is reaffirmed as Lead Plaintiff for the original claims, it likely will simply re-file the ACC, leading us right back to where we are now.

Ignoring the ACC's *ultra vires* nature, BRS cites to inapposite authority which they maintain gives them sole discretion to take action, none of which resemble the situation here[21] - a lead plaintiff gone rogue, materially changing the claims, the class period, adding the New Securities Act Claims and adding an unvetted representative party for those claims. The PSLRA required notice provided to NYCB stockholders never mentioned the Merger and recipients of *215 million* NYCB shares had no idea they could seek to serve as a representative party in this action.

BRS' further assertion that it had the right to add IPRS to the ACC as a plaintiff might be correct as a general proposition **IF** class members covered by the New Securities Act Claims had

---

[21] In *Bank of Am. Corp. Secs v. Bank of Am. Corp.*, No. 09 MD 2058 (PKC), 2011 U.S. Dist. LEXIS 113672, at *3-5 (S.D.N.Y. Sep. 29, 2011), **the court** prohibited a class member from commencing a separate options class action after an options claim was dismissed on standing grounds). *See also*, In re Star Gas Sec. Litig., In re Star Gas Sec. Litig., No. 3:04cv1766 (JBA), 2005 U.S. Dist. LEXIS 5827, at *15-20 (D. Conn. Apr. 8, 2005) (noting generally that once lead plaintiffs were properly appointed it would be up to them how to frame an amended complaint, but notably appointing two co-lead plaintiffs to represent two discrete class claims covering different periods); *In re Facebook, Inc. IPO Sec. & Derivative Litig.,* MDL No. 12-2389, 2013 U.S. Dist. LEXIS 115647, at *6-8 (S.D.N.Y. Aug. 10, 2013) (citing same general proposition); *Ito-Stone v. DBV Techs. S.A.,* Civil Action No. 19-525 (MCA) (LDW), 2020 U.S. Dist. LEXIS 210086, at *14 (D.N.J. Nov. 9, 2020)(no republication warranted where amended complaint asserted "the same legal claims, against the same defendants, regarding the same securities, and with a substantially similar theory…").

14

received the proper notification, which *was* done in *Hevesi v. Citigroup Inc.*, 366 F. 3d 70, 83 (2d Cir. 2004). *See,* Motion and Exhibit B to the Declaration of Laurence D. Paskowitz. BRS is not supported by *Hevesi,* where all of the claims asserted were authorized and properly noticed. The *Hevesi* decision also does not concern any conflict of interest among the class members. Nor does this Court's Order of May 7 support BRS' argument. Although the Court found that the PSLRA's notice requirement had been satisfied at that time, as explained above, the contours of this litigation have greatly changed.

### III.   CONCLUSION

For the foregoing reasons and those set forth in the Motion, Movant respectfully requests that the Court grant the relief requested herein.[22]

Dated: New York, New York  
 January 9, 2025

Respectfully submitted,

**THE PASKOWITZ LAW FIRM P.C.**

*/s/ Laurence D. Paskowitz*  
Laurence Paskowitz  
The Contour  
97-45 Queens Boulevard, Ste. 1202  
Rego Park, NY 11374  
T: 212-685-0969  
lpaskowitz@pasklaw.com

**KOMLOSSY LAW P.A.**  
Emily Komlossy  
3440 Hollywood Boulevard, Ste. 415  
Hollywood, FL 33021  
T: (954) 842-2021  
F: (954) 416-6223  
eck@komlossylaw.com

*Counsel for Plaintiff*

---

[22] In conjunction with this filing, Movant is submitting an [Amended Proposed] Order, which reflects, *inter alia,* that the requested consolidation be limited to pre-trial proceedings and suggests a modified notice procedure.