UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
WALTER EDWARD LEMM, JR., individually and : 
on behalf of all others similarly situated, :
:
                       Plaintiff, :
:
  -against- :   MEMORANDUM AND ORDER
:
NEW YORK COMMUNITY BANCORP, :   No. 24-CV-903-NRM-JRC
INC., THOMAS ROBERT CANGEMI and :
JOHN J. PINTO, :
:
                     Defendants. :
------------------------------------------------------------------ x

JAMES R. CHO, United States Magistrate Judge:

## INTRODUCTION

Walter Edward Lemm, Jr. ("Lemm"), individually and on behalf of all others similarly situated, brought this action against New York Community Bancorp, Inc. ("NYCB"[1]) and individual defendants Thomas R. Cangemi and John J. Pinto alleging violations of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *See* Dkt. 1 ("*Lemm* Compl."). On May 7, 2024, this Court granted the motion filed on behalf of Boston Retirement System ("Boston Retirement") for appointment of lead plaintiff and lead counsel. *See* Mem. and Order dated May 7, 2024 (the "May 7 Order"), Dkt. 44. Accordingly, the Court denied the motion of competing movant, Sand Hollow Management, LLC ("Sand Hollow"), despite Sand Hollow's presumptive lead plaintiff status. Before this Court is Sand Hollow's motion for reconsideration concerning the Court's May 7 Order. *See* Dkt. 46 ("Mot. for Reconsideration"). For the reasons set forth below, the

---

[1] NYCB is now legally known as Flagstar Financial, Inc. *See* Dkt. 83. For purposes of this decision, the undersigned refers to the corporate defendant by the name identified in the *Lemm* complaint.

Court denies Sand Hollow's motion for reconsideration.

## BACKGROUND[2]

On February 6, 2024, Lemm filed the instant action against NYCB and two of its officers. *See Lemm* Compl. ¶¶ 13–16.[3] On April 8, 2024, Boston Retirement and Sand Hollow both moved for appointment as lead plaintiff and to appoint lead counsel. *See* Dkts. 13, 20. This Court granted Boston Retirement's motion and appointed Boston Retirement as lead plaintiff and Labaton Keller Sucharow LLP as lead counsel. *See generally* May 7 Order.

On May 20, 2024, Sand Hollow filed the instant motion for reconsideration. *See* Mot. for Reconsideration, Dkt. 46; Mem. in Supp. of Mot. for Reconsideration ("Sand Hollow Mem."), Dkt. 47. Boston Retirement opposed Sand Hollow's motion, Dkt. 52, and Sand Hollow filed a reply in support of its motion, Dkt. 53.[4]

## LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) enables parties to timely file motions to alter or amend a judgment to "correct a clear error of law or prevent manifest injustice." *Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 153 (2d Cir. 2008) (quoting *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004)). To prevail on a motion for reconsideration, the moving party must show "an intervening change of controlling law, the availability of new evidence, or the

---

[2] The Court assumes familiarity with the facts contained in its Memorandum and Order dated May 7, 2024. *See generally* May 7 Order.

[3] On February 13, 2024, Dale Miskey commenced a similar action. *See Miskey v. New York Community Bancorp, Inc.*, No. 24-CV-1118, Dkt. 1 ("*Miskey* Compl."). The *Miskey* action was consolidated with the present action. *See* May 7 Order.

[4] On September 26, 2024, Sand Hollow moved to stay this action pending a decision on the motion for reconsideration. Dkts. 70, 71. Boston Retirement opposed Sand Hollow's motion, Dkt. 73, and Sand Hollow thereafter filed a reply in support of its stay motion, Dkts. 74, 75. Boston Retirement moved for leave to file a sur-reply in opposition to Sand Hollow's motion, Dkt. 79.

need to correct a clear error or prevent manifest injustice." *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000) (quoting *Doe v. N.Y.C. Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983)). "A motion for reconsideration is 'not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple.'" *Henry v. Cty. of Nassau*, No. 17-CV-6545, 2022 WL 16965006, at *4 (E.D.N.Y. Nov. 16, 2022) (quoting *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)). Courts will generally deny a motion for reconsideration "unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id.* (quoting *Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001)).[5]

## DISCUSSION

Sand Hollow first contends that this Court failed to weigh the strength of the January 31, 2024 disclosure statement (the "January 31 Release") as required by this Circuit's case law. *See* Sand Hollow Mem. at 1. Sand Hollow particularly faults the Court for failing to "consider the distinction found in the *Tronox* case," Sand Hollow Mem. at 5, which found that a partial disclosure was not strong enough to disqualify a lead plaintiff movant that had purchased all of its *Tronox* shares after its release. *See In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 345–46 (S.D.N.Y. 2009). However, the considerations in *Tronox*—a case that was cited in prior briefing

---

[5] The Court notes that, as a general matter, "an order appointing lead plaintiff and approving lead counsel qualifies as a non-dispositive matter," *Targgart v. Next Bridge Hydrocarbons, Inc.*, No. 24-CV-1927, 2024 WL 3640853, at *1 n.1 (E.D.N.Y. Aug. 3, 2024) (citation omitted), and "district courts in this Circuit have repeatedly held that a motion for reconsideration of a magistrate judge's ruling on a non-dispositive matter is not permitted," *Mestecky v. N.Y.C. Dep't of Educ.*, No. 13-CV-4302, 2016 WL 7217637, at *2 (E.D.N.Y. Dec. 12, 2016). Nevertheless, the Court will address the merits of the motion before it. *See In re IMAX Sec. Litig.*, No. 06-CV-6128, 2009 WL 1905033, at *1 (S.D.N.Y. June 29, 2009) (considering a motion for reconsideration regarding the appointment of lead plaintiff); *In re VEON Ltd. Sec. Litig.*, No. 15-CV-8672, 2023 WL 2118079, at *1 (S.D.N.Y. Feb. 17, 2023) (same).

and discussed frequently at oral argument—were the very considerations underlying this Court's conclusion that the January 31 Release was strong enough to potentially disqualify Sand Hollow's leadership.

In *Tronox*, plaintiffs' fraud allegations surrounded Tronox's failure to reveal "the extent of [its] environmental and tort liabilities and the sufficiency of its reserves for those liabilities." *Id.* at 341. The initial partial disclosure came in the form of a press release announcing earnings losses caused in part by costs from an environmental assessment at one of its sites. *Id.* at 341–42. A much stronger corrective disclosure arrived when Tronox later filed for bankruptcy, and the bankruptcy petition revealed the "true extent of Tronox's environmental liabilities" as well as the existence of undisclosed sites requiring environmental remediation. *Id.* at 342. The court held that the initial partial disclosure did not "sufficiently correct Tronox's prior false and misleading statements or make . . . any [] class member[] actually aware of the fraud." *Id.* at 346; *see also In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825, 2008 WL 820015, at *3 (E.D.N.Y. Mar. 25, 2008) (rejecting argument that purchases after alleged partial disclosures created a unique defense where the partial disclosures were too "weak" to "counter-balance effectively" the company's previous false and misleading statements).

As discussed in the May 7 Order, the fraud allegations concern NYCB's supposedly false and misleading statements during the Class Period about its financial condition and the impact of the Flagstar and Signature Bank acquisitions on its financials. On these allegations, the "strength and extent of correction," *Tronox*, 262 F.R.D. at 345, presented in the January 31 Release was sufficient to alert class members to the alleged fraud. The January 31 Release showed that (1) NYCB had crossed the threshold of becoming a Category IV bank "sooner than anticipated as a result of the Signature transaction"; (2) that, in response, NYCB recorded higher loan loss

4

provisions in the fourth quarter of 2023; and (3) that NYCB would "build[] capital by reducing [its] quarterly common dividend." *Lemm* Compl. ¶ 29.  While the subsequent disclosure on February 5, 2024 revealed to the public that pressure from regulatory agencies motivated the financial decisions announced in the January 31 Release, *Miskey* Compl. ¶ 84, class members were already on notice of the crux of the alleged fraud.

Seeking another route to undermine the Court's conclusion that the January 31 Release is strong enough to subject Sand Hollow to a unique defense, Sand Hollow points to prior disclosures that it argues had already revealed NYCB's status as a Category IV bank.  In support, Sand Hollow first cites to a joint proxy statement from outside the class period.  *See* Sand Hollow Mem. at 10.  Second, Sand Hollow references a press release from April 2023, stating that NYCB had recorded over $100 billion in assets at the end of the last quarter.  *See id.* at 11.  These statements do not change the Court's conclusion that Sand Hollow would be subject to a unique defense for purchasing its shares after the January 31 Release.  Sand Hollow cites no precedent showing that prior public statements may weaken the impact of a later corrective disclosure for purposes of asserting the fraud-on-the-market theory of reliance during class certification.

Lastly, Sand Hollow takes issue with the Court's invocation of Congress's preference for institutional investors.  Sand Hollow is correct that cases in this Circuit typically find institutional investor status determinative only in close cases—*i.e.*, where the competing movants suffered similar losses.  *See In re Sequans Commc'ns S.A. Sec. Litig.*, 289 F. Supp. 3d 416, 422 (E.D.N.Y. 2018) (preference for institutional investors "has been 'determinative' when an 'institutional investor has a slightly lower loss than another potential lead plaintiff.'" (quoting *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113 (E.D.N.Y. 2012))).  But Boston Retirement's status

5

as an institutional investor was not "determinative" in this Court's May 7 Order. Instead, the Court found that Boston Retirement sufficiently rebutted the presumption of Sand Hollow's adequacy on grounds of its exposure to a unique defense.

## CONCLUSION

For the foregoing reasons, the Court denies Sand Hollow's motion for reconsideration.

**SO ORDERED**

Dated: Brooklyn, New York
       March 31, 2025

s/ James R. Cho
James R. Cho
United States Magistrate Judge