May 28, 2025

**VIA ECF**

Honorable Nina R. Morrison, U.S.D.J.
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> Re:    ***In re New York Community Bancorp, Inc. Securities Litigation.***,
>        **Case No. 24-cv-00903-NRM-JRC**

Dear Judge Morrison,

Pursuant to Section 5 of the Court's Individual Practice Rules, Defendant New York Community Bancorp, Inc. ("NYCB")[1] writes to request a pre-motion conference regarding its intended motion to dismiss Plaintiffs' Amended Consolidated Class Action Complaint.

## BACKGROUND

Plaintiffs allege that NYCB and several individual defendants violated the securities laws in connection with statements made surrounding NYCB's acquisition of Flagstar Bancorp, Inc. and substantial assets of Signature Bridge Bank.  *See* Dkt. No. 69 ("Compl.").  According to Plaintiffs, Defendants fraudulently reassured the market regarding NYCB's performance, internal policies, and optimism regarding these acquisitions while misrepresenting the acquisitions' risks. The truth was allegedly revealed by NYCB disclosures from January 31 through February 29, 2024, and Plaintiffs allege they were injured when NYCB's stock dropped after those disclosures.

Based on these allegations, Plaintiffs claim defendants violated Section 10(b) of the Securities Exchange Act ("Exchange Act") and SEC Rule 10b–5, alleging dozens of misstatements across four categories:  FDIC opposition to the Flagstar merger, NYCB's risk management practices and controls, NYCB's loan review process and asset quality, and NYCB's internal controls over financial reporting.  *See* Compl. ¶¶ 224–346.  Plaintiffs also assert control-person liability under Section 20 of the Exchange Act for these alleged violations against individual defendants Thomas R. Cangemi, John. J. Pinto, Alessandro P. DiNello, and John T. Adams.  *Id*. at ¶¶ 390–95.  Relying on largely the same factual claims to allege misstatements in the "Offering Documents"[2] issued by NYCB in connection with its merger with Flagstar, Plaintiff Indiana Public Retirement System ("IPRS") also alleges NYCB and several individual defendants violated Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act").  *Id*. at ¶¶ 413–511.

Because the Complaint fails to adequately allege these claims, it should be dismissed in its entirety.  This letter is not intended to exhaustively detail the Complaints' flaws, and NYCB

---

[1] After the Amended Complaint was filed, Defendant New York Community Bancorp, Inc. legally became known as Flagstar Financial, Inc.  *See* Dkt. 82.  For purposes of clarity, this letter uses the name used in the complaint, NYCB.

[2] The Complaint defines "Offering Documents" to include "[t]he September 28, 2022 Registration Statement and the October 12, 2022 Prospectus Supplement, and documents incorporated by reference therein."  Compl. ¶ 446.

reserves the right to make additional arguments in its motion to dismiss. While NYCB and the individual defendants are filing separate pre-motion letters, the defendants intend to consolidate briefing on their motions to dismiss to the extent practicable.

## EXCHANGE ACT CLAIMS

To plead a claim under Section 10(b) of the Exchange Act and Rule 10b–5, a plaintiff must sufficiently allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation; (5) economic loss; and (6) loss causation." *Halliburton Co. v. Erica P. John Fund, Inc*., 573 U.S. 258, 267 (2014). Because these claims sound in fraud, plaintiffs must satisfy Rule 9(b)'s heightened pleading requirements, as well as those established by the Private Securities Litigation Reform Act ("PSLRA"). *See, e.g., In re Mobileye Glob. Sec. Litig*., 2025 WL 1126967, at *7 (S.D.N.Y. Apr. 16, 2025). The Complaint fails to do so (or to satisfy the lower bar of Rule 8) with respect to at least three of these elements, requiring dismissal.

*Material Misrepresentation or Omission*. To start, Plaintiffs have failed to sufficiently allege that each of the statements at issue was materially false or misleading, for several reasons.

First, many of the alleged misstatements are vague statements of "corporate optimism." *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004); *see also, e.g.,* Compl. ¶¶ 259, 271 (statements that NYCB's portfolio was "strong"). Such "expressions of puffery and corporate optimism do not give rise to securities violations." *Rombach*, 355 F.3d at 174.

Second, many of the alleged misrepresentations simply describe NYCB's policies. *See, e.g.,* Compl. ¶¶ 236, 246. Plaintiffs claim these statements were misleading because those policies were allegedly ineffective. But stating that policies are in place does not guarantee they are perfect or uniformly followed. *See, e.g.*, *Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 232 (S.D.N.Y. 2018). Plaintiffs do not plead facts showing these statements were literally false or otherwise provide a factual basis to support any claim that these statements were misleading.

Third, many of the statements at issue are opinions (*see, e.g.,* Compl. ¶¶ 226, 234, 323), and "[s]ubjective statements of opinion are generally not actionable as fraud," unless "(1) the speaker did not hold the belief she professed, (2) the supporting fact[s] she supplied were untrue, or (3) the stated opinion … omitted information" regarding the basis for the opinion and the speaker's investigation "whose omission made the stated opinion misleading." *In re AppHarvest Sec. Litig*., 684 F. Supp. 3d 201, 254 (S.D.N.Y. 2023). Plaintiffs fail to provide factual allegations to demonstrate any of these bases for finding an opinion false or misleading.

Fourth, for certain statements, Plaintiffs' allegations regarding falsity are facially implausible. For example, Plaintiffs claim that certain statements contained in NYCB's financial reporting were false or misleading because NYCB failed to adequately account for credit risk under GAAP standards. Compl. ¶¶ 257, 265, 278, 298. However, there is no allegation that there has been any restatement of any financial statement, as one would expect if the company, its auditors, or regulators had concluded that such financial statements were false or misleading when made. Failure to allege such a restatement undermines the plausibility of securities claims based on financial reporting. *Kuriakose v. Fed. Home Loan Mortg. Corp*., 897 F. Supp. 2d 168, 180–81

(S.D.N.Y. 2012). Courts thus regularly dismiss securities claims based on alleged misstatements in financial reports where no restatement has been issued. *See, e.g., id.*; *Malin v. XL Cap. Ltd.*, 499 F. Supp. 2d 117, 148 (D. Conn. 2007); *In re Fannie Mae 2008 Sec. Litig.*, 742 F. Supp. 2d 382, 409 (S.D.N.Y. 2010); *Druskin v. Answerthink, Inc.*, 299 F. Supp. 2d 1307 (S.D. Fla. 2004).

Finally, many of the alleged misstatements fall within the PSLRA safe harbor for forward-looking statements, because they were identified as forward-looking and "accompanied by meaningful cautionary statements." 15 U.S.C. § 78u-5(c)(1)(A)(i); *see also* Compl. ¶¶ 231, 234, 244. Relatedly, many of the statements at issue are immaterial as a matter of law under the "bespeaks caution" doctrine because they were accompanied by adequate cautionary language. *Rombach*, 355 F.3d at 173.

*Scienter*. Separately, nothing in the Amended Complaint comes close to pleading facts giving rise to the "strong inference of scienter" required by the PSLRA. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). Courts "must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff," and "[a] complaint will survive … only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324. To sufficiently plead recklessness, for example, plaintiffs must "specifically allege[] defendants' knowledge of facts" contradicting their public statements or, at least, "specifically identify the reports or statements containing this information" defendants were provided. *Maloney v. Ollie's Bargain Outlet Holdings, Inc.*, 518 F. Supp. 3d 772, 780 (S.D.N.Y. 2021).

Far from satisfying these standards, Plaintiffs instead largely plead fraud by hindsight, suggesting that NYCB's eventual recognition of certain weaknesses suggests scienter at the time of the prior statements. *See, e.g.,* Compl. ¶¶ 348–50. The Second Circuit has squarely rejected that approach. *See, e.g., Stevelman v. Alias Research Inc.*, 174 F.3d 79, 85 (2d Cir. 1999) (rejecting as "fraud by hindsight" argument based on "[m]anagement's optimism that is shown only after the fact to have been unwarranted").

Similarly, Plaintiffs claim NYCB's management, including the individual defendants, "were hands-on managers with specific knowledge of (or direct access to) data and facts regarding the Company's business." Compl. ¶ 351. But "broad allegations" of access to "data" are insufficient as a matter of law to plead scienter. *In re Barrick Gold Corp. Sec. Litig.*, 341 F. Supp. 3d 358, 373 (S.D.N.Y. 2018). While Plaintiffs try to paper over these weaknesses by alluding to "reports" allegedly created by confidential witnesses, they fail to allege any specific facts in those reports that contradict defendants' public statements—or even to specify when these reports were allegedly provided to the individual defendants. *See, e.g.,* Compl. ¶ 93. These allegations, too, fail to satisfy the PSLRA's heightened standard for pleading scienter.

*Loss Causation*. Plaintiffs also fail to sufficiently plead loss causation. Plaintiffs rely on a fraud-on-the-market theory under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), claiming that the drops in NYCB's stock price between January 31 and March 4, 2024, resulted from "a series of partial corrective disclosures and/or materializations of concealed risk" in the preceding days. Compl. ¶ 377. That theory requires pleading that these purported disclosures "reveal[ed] some then-undisclosed fact with regard to the *specific* misrepresentations alleged in the complaint." *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 511 (2d Cir. 2010) (emphasis added). Because

Plaintiffs fail to show how any of the supposed "corrective" disclosures connect to the specific misstatements alleged, they have failed to sufficiently assert this essential element.

*Additional Exchange Act Claims.* The Amended Complaint's conclusory scheme liability claim under Rule 10b-5(a) and (c) (*see* Compl. ¶¶ 394, 399-400) fails for lack of scienter or alleged misconduct distinct from supposed misstatements or omissions. *See SEC v. Rio Tinto*, 41 F.4th 47, 53–55 (2d Cir. 2022). The Section 20(a) claims fail because they are derivative of the flawed Rule 10b-5 claims and for lack of any culpable participation by any individual defendant. *See Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 484, 486 (3d Cir. 2013).

## SECURITIES ACT CLAIMS

The Amended Complaint fares no better in alleging the Securities Act claims, which are also governed by the heightened pleading standard of Rule 9(b). *See In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419, 436 (S.D.N.Y. 2009). As with the Exchange Act claims, Plaintiffs fail to allege any material misstatements and omissions. With the Securities Act claims, too, the alleged misstatements largely consist of inactionable puffery, descriptions of policies and programs that did not guarantee their effectiveness, opinions not sufficiently alleged to be false, statements alleged to be false only in hindsight, or otherwise factually implausible assertions of falsity. *See supra* at 2–3. Many alleged misstatements are also forward-looking statements protected by the PSLRA safe harbor and bespeaks caution doctrines. *Id*. at 3.

The Securities Act claims should also be dismissed because IPRS, the sole Securities Act plaintiff, fails to plead standing. Section 11 standing requires a plaintiff to "plead and prove that he purchased shares traceable to the allegedly defective registration statement." *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 770 (2023); *see also Pinter v. Dahl*, 486 U.S. 622 (1988) (Section 12 standing even more restrictive). IPRS alleges that it owns "44,435 shares of NYCB traceable to the Offering when Indiana's shares of Flagstar common stock were converted into NYCB shares pursuant to and traceable to the" relevant offering documents. Compl. ¶ 22. But IPRS's certification contradicts this conclusory allegation, as it (1) states that IPRS *purchased* shares of NYCB stock, rather than receiving them in a conversion; (2) never states that IPRS owned Flagstar stock at any time; and (3) represents that IPRS obtained *fractional* shares of NYCB, which was impossible with the Flagstar merger. *Compare* Compl. Ex. A *with* Ex. 1 (Merger Agreement) at §§ 2.1, 2.2(e); Ex. 2 (Prospectus) at 48.[3] "When documents attached to the complaint … contradict the allegations in the complaint, the documents control and the Court need not accept the allegations as true." *Endemann v. Liberty Ins. Corp.*, 390 F. Supp. 3d 362, 370 (N.D.N.Y. 2019). IPRS has thus failed to plausibly allege standing.

Finally, the Complaint fails to adequately allege Securities Act claims against the individual defendants. Because Section 15 imposes only secondary liability for Section 11 and Section 12(a) violations, the Section 15 claims fail for the same reasons. Moreover, merely signing a "Consent of Prospective Director" pursuant to Rule 438 of the Securities Act is insufficient to expose an individual to Securities Act liability for the registration statement. *City of Roseville Employees' Ret. Sys. v. EnergySolutions, Inc.*, 814 F. Supp. 2d 395, 417 (S.D.N.Y. 2011).

---

[3] "The Court may consider these documents because they are integral to the complaint and through judicial notice of public disclosures. *See, e.g., Wang v. Cloopen Grp. Holding Ltd*., 661 F. Supp. 3d 208, 223 (S.D.N.Y. 2023).

Respectfully submitted,

*/s/ Nina Yadava*

Encl.

cc:        All Counsel of Record