# EXHIBIT 1

Table of Contents

AGREEMENT AND PLAN OF MERGER

AGREEMENT AND PLAN OF MERGER, dated as of April 24, 2021 (this "Agreement"), by and among New York Community Bancorp, Inc., a Delaware corporation ("NYCB"), 615 Corp., a Delaware corporation and direct, wholly-owned subsidiary of NYCB ("Merger Sub"), and Flagstar Bancorp, Inc., a Michigan corporation ("Flagstar").

RECITALS

A. The Boards of Directors of NYCB, Merger Sub and Flagstar have determined that it is in the best interests of their respective companies and their stockholders and shareholders, as applicable, to consummate the strategic business combination transaction provided for in this Agreement, pursuant to which Merger Sub will, subject to the terms and conditions set forth herein, merge with and into Flagstar (the "Merger"), so that Flagstar is the surviving entity (hereinafter sometimes referred to in such capacity, the "Interim Surviving Entity") in the Merger, and, as soon as reasonably practicable following the Merger and as part of a single integrated transaction for purposes of the Internal Revenue Code of 1986, as amended (the "Code"), the Interim Surviving Entity will, subject to the terms and conditions set forth herein, merge with and into NYCB (the "Holdco Merger"), so that NYCB is the surviving entity in the Holdco Merger (hereinafter sometimes referred to in such capacity as the "Surviving Entity").

B. At a date and time following the Holdco Merger as determined by NYCB, Flagstar Bank, FSB, a federally chartered stock savings bank and Subsidiary of Flagstar ("Flagstar Bank"), will, subject to the terms and conditions set forth herein and in the Bank Merger Agreement, merge with and into New York Community Bank, a New York State-chartered savings bank and Subsidiary of NYCB ("NYCB Bank") (the "Bank Merger"), so that NYCB Bank is the surviving bank in the Bank Merger (hereinafter sometimes referred to in such capacity as the "Surviving Bank").

C. In furtherance thereof, the respective Boards of Directors of NYCB, Merger Sub and Flagstar have approved, adopted and declared advisable this Agreement and the transactions contemplated hereby and have resolved to submit this Agreement to their respective stockholders and shareholders, as applicable, for approval and to recommend that their respective stockholders and shareholders, as applicable, approve this Agreement.

D. For U.S. federal income tax purposes, it is intended that the Merger and the Holdco Merger, taken together, shall qualify as a "reorganization" within the meaning of Section 368(a) of the Code, and this Agreement is intended to be and is adopted as a plan of reorganization for purposes of Sections 354 and 361 of the Code.

E. In this Agreement, the parties desire to make certain representations, warranties and agreements in connection with the transactions contemplated hereby and also to prescribe certain conditions to the transactions contemplated hereby.

NOW, THEREFORE, in consideration of the mutual covenants, representations, warranties and agreements contained in this Agreement, and intending to be legally bound, the parties agree as follows:

ARTICLE I

THE MERGER

1.1 The Merger. Subject to the terms and conditions of this Agreement, in accordance with the Michigan Business Corporation Act (the "MBCA") and Delaware General Corporation Law (the "DGCL"), at the Effective Time, Merger Sub shall merge with and into Flagstar pursuant to this Agreement. Flagstar shall be the Interim Surviving Entity in the Merger, and shall continue its corporate existence under the laws of the State of Michigan. Upon consummation of the Merger, the separate corporate existence of Merger Sub shall terminate.

1.2 Closing. Subject to the terms and conditions of this Agreement, the closing of the Merger (the "Closing") will take place remotely by electronic exchange of documents at 10:00 a.m., New York City time, on a date which shall be no later than the second (2nd) business day after the satisfaction or waiver (subject to applicable law) of all the conditions set forth in Article VII hereof (other than those conditions that by their nature can only be satisfied at the Closing, but subject to the satisfaction or waiver thereof), unless another date, time or place is agreed to in writing by NYCB and Flagstar. The date on which the Closing occurs is referred to as the "Closing Date."

Table of Contents

(c) *Effects of the Holdco Merger*. At and after the Holdco Merger Effective Time, the Holdco Merger shall have the effects set forth in the applicable provisions of the MBCA, the DGCL and this Agreement.

(d) *Cancellation of Interim Surviving Entity Stock.* Each share of common stock, no par value, of the Interim Surviving Entity, as well as each share of any other class or series of capital stock of the Interim Surviving Entity, in each case that is issued and outstanding immediately prior to the Holdco Merger Effective Time, shall, at the Holdco Merger Effective Time, solely by virtue and as a result of the Holdco Merger and without any action on the part of any holder thereof, automatically be cancelled and retired for no consideration and shall cease to exist.

(e) *NYCB Stock.* At and after the Holdco Merger Effective Time, each share of NYCB Common Stock and each share of preferred stock of NYCB, par value $0.01 per share ("NYCB Preferred Stock") issued and outstanding immediately prior to the Holdco Merger Effective Time shall remain an issued and outstanding share of common stock or preferred stock, as applicable, of NYCB and shall not be affected by the Holdco Merger.

(f) *Charter of the Surviving Entity*. At the Holdco Merger Effective Time, the amended and restated certificate of incorporation of NYCB (the "NYCB Charter"), as in effect immediately prior to the Holdco Merger Effective Time, shall be the certificate of incorporation of the Surviving Entity until thereafter amended in accordance with its terms and applicable law.

(g) *Bylaws of the Surviving Entity*. At the Holdco Merger Effective Time, the amended and restated bylaws of NYCB as in effect immediately prior to the Holdco Merger Effective Time (including as amended as set forth in Exhibit C) (such amendment, the "NYCB Bylaws Amendment"), shall be the bylaws of the Surviving Entity until thereafter amended in accordance with its terms and applicable law.

(h) *Directors and Officers of the Surviving Entity.* Subject to Section 6.12, at the Holdco Merger Effective Time, the directors and officers of NYCB as of immediately prior to the Holdco Merger Effective Time shall, at and after the Holdco Merger Effective Time, be the directors and officers, respectively, of the Surviving Entity, such individuals to serve in such capacities until such time as their respective successors shall have been duly elected or appointed and qualified or until their respective earlier death, resignation or removal from office.

1.13 Bank Merger. At a date and time following the Holdco Merger as determined by NYCB, Flagstar Bank shall merge with and into NYCB Bank. NYCB Bank shall be the Surviving Bank in the Bank Merger and, following the Bank Merger, the separate corporate existence of Flagstar Bank shall terminate. The Bank Merger shall be implemented pursuant to an agreement and plan of merger (the "Bank Merger Agreement") entered into by NYCB Bank and Flagstar Bank on the date of this Agreement. Each of NYCB and Flagstar shall approve the Bank Merger Agreement and the Bank Merger as the sole voting shareholder of NYCB Bank and Flagstar Bank, respectively, and NYCB and Flagstar shall, and shall cause NYCB Bank and Flagstar Bank, respectively, to, execute any certificates or articles of merger and such other agreements, documents and certificates as are necessary to make the Bank Merger effective ("Bank Merger Certificates") at the Bank Merger Effective Time. The Bank Merger shall become effective promptly following the Holdco Merger Effective Time or at such date and time as specified in the Bank Merger Agreement in accordance with applicable law (such date and time hereinafter referred to as the "Bank Merger Effective Time").

ARTICLE II

EXCHANGE OF SHARES

2.1 NYCB to Make Consideration Available. At or prior to the Effective Time, NYCB shall deposit, or shall cause to be deposited, with an exchange agent designated by NYCB and reasonably acceptable to Flagstar (the "Exchange Agent"), for exchange in accordance with this Article II for the benefit of the holders of Old Certificates, (a) certificates or, at NYCB's option, evidence in book-entry form, representing shares of NYCB Common Stock to be issued pursuant to Section 1.5 (collectively, referred to herein as "New Certificates"), and (b) cash in lieu of any fractional shares to be paid pursuant to Section 2.2(e) (such cash and New Certificates, together with any dividends or distributions with respect to shares of NYCB Common Stock payable in accordance with Section 2.2(b), being hereinafter referred to as the "Exchange Fund").

2.2 Exchange of Shares.

(a) As promptly as practicable after the Effective Time, but in no event later than five (5) business days thereafter, NYCB shall cause the Exchange Agent to mail to each holder of record of one or more Old Certificates representing shares

Table of Contents

of Flagstar Common Stock immediately prior to the Effective Time that have been converted at the Effective Time into the right to receive NYCB Common Stock pursuant to Article I, a letter of transmittal (which shall specify that delivery shall be effected, and risk of loss and title to the Old Certificates shall pass, only upon proper delivery of the Old Certificates to the Exchange Agent) and instructions for use in effecting the surrender of the Old Certificates in exchange for New Certificates representing the number of whole shares of NYCB Common Stock and any cash in lieu of fractional shares, which the shares of Flagstar Common Stock represented by such Old Certificate or Old Certificates shall have been converted into the right to receive pursuant to this Agreement as well as any dividends or distributions to be paid pursuant to Section 2.2(b). Upon proper surrender of an Old Certificate or Old Certificates for exchange and cancellation to the Exchange Agent, together with such properly completed letter of transmittal, duly executed, the holder of such Old Certificate or Old Certificates shall be entitled to receive in exchange therefor, as applicable, (i) a New Certificate representing that number of whole shares of NYCB Common Stock to which such holder of Flagstar Common Stock shall have become entitled pursuant to the provisions of Article I, and (ii) a check representing the amount of (A) any cash in lieu of fractional shares which such holder has the right to receive in respect of the Old Certificate or Old Certificates surrendered pursuant to the provisions of this Article II, and (B) any dividends or distributions which the holder thereof has the right to receive pursuant to Section 2.2(b), and the Old Certificate or Old Certificates so surrendered shall forthwith be cancelled. No interest will be paid or accrued on any cash in lieu of fractional shares or dividends or distributions payable to holders of Old Certificates. Until surrendered as contemplated by this Section 2.2, each Old Certificate shall be deemed at any time after the Effective Time to represent only the right to receive, upon surrender, the number of whole shares of NYCB Common Stock which the shares of Flagstar Common Stock represented by such Old Certificate have been converted into the right to receive and any cash in lieu of fractional shares or in respect of dividends or distributions as contemplated by this Section 2.2.

(b) No dividends or other distributions declared with respect to NYCB Common Stock shall be paid to the holder of any unsurrendered Old Certificate until the holder thereof shall surrender such Old Certificate in accordance with this Article II. After the surrender of an Old Certificate in accordance with this Article II, the record holder thereof shall be entitled to receive any such dividends or other distributions, without any interest thereon, which theretofore had become payable with respect to the whole shares of NYCB Common Stock that the shares of Flagstar Common Stock represented by such Old Certificate have been converted into the right to receive.

(c) If any New Certificate representing shares of NYCB Common Stock is to be issued in a name other than that in which the Old Certificate or Old Certificates surrendered in exchange therefor is or are registered, it shall be a condition of the issuance thereof that the Old Certificate or Old Certificates so surrendered shall be properly endorsed (or accompanied by an appropriate instrument of transfer) and otherwise in proper form for transfer, and that the person requesting such exchange shall pay to the Exchange Agent in advance any transfer or other similar Taxes required by reason of the issuance of a New Certificate representing shares of NYCB Common Stock in any name other than that of the registered holder of the Old Certificate or Old Certificates surrendered, or required for any other reason, or shall establish to the satisfaction of the Exchange Agent that such Tax has been paid or is not payable.

(d) After the Effective Time, there shall be no transfers on the stock transfer books of Flagstar of the shares of Flagstar Common Stock that were issued and outstanding immediately prior to the Effective Time. If, after the Effective Time, Old Certificates representing such shares are presented for transfer to the Exchange Agent, they shall be cancelled and exchanged for New Certificates representing shares of NYCB Common Stock, cash in lieu of fractional shares and dividends or distributions as contemplated by this Section 2.2, as applicable.

(e) Notwithstanding anything to the contrary contained in this Agreement, no New Certificates or scrip representing fractional shares of NYCB Common Stock shall be issued upon the surrender for exchange of Old Certificates, no dividend or distribution with respect to NYCB Common Stock shall be payable on or with respect to any fractional share, and such fractional share interests shall not entitle the owner thereof to vote or to any other rights of a shareholder of NYCB. In lieu of the issuance of any such fractional share, NYCB shall pay to each former holder of Flagstar Common Stock who otherwise would be entitled to receive such fractional share an amount in cash (rounded to the nearest cent) determined by multiplying (i) the average of the closing-sale prices of NYCB Common Stock on the New York Stock Exchange (the "NYSE") as reported by *The Wall Street Journal* for the consecutive period of five (5) full trading days ending on the day preceding the Closing Date by (ii) the fraction of a share (after taking into account all shares of Flagstar Common Stock held by such holder immediately prior to the Effective Time and rounded to the nearest one-thousandth when expressed in decimal form) of NYCB Common Stock which such holder would otherwise be entitled to receive pursuant to Section 1.5. The parties acknowledge that payment of such cash consideration in lieu of issuing fractional shares is not separately bargained-for consideration, but merely represents a mechanical rounding off for purposes of avoiding the expense and inconvenience that would otherwise be caused by the issuance of fractional shares.

A-6

Table of Contents

(f) Any portion of the Exchange Fund that remains unclaimed by the shareholders of Flagstar for twelve (12) months after the Effective Time shall be paid to the Surviving Entity. Any former holders of Flagstar Common Stock who have not theretofore complied with this Article II shall thereafter look only to the Surviving Entity for payment of the shares of NYCB Common Stock, cash in lieu of any fractional shares and any unpaid dividends and distributions on the NYCB Common Stock deliverable in respect of each former share of Flagstar Common Stock such holder holds as determined pursuant to this Agreement, without any interest thereon. Notwithstanding the foregoing, none of NYCB, Flagstar, the Surviving Entity, the Exchange Agent or any other person shall be liable to any former holder of shares of Flagstar Common Stock for any amount delivered in good faith to a public official pursuant to applicable abandoned property, escheat or similar laws.

(g) NYCB shall be entitled to deduct and withhold, or cause the Exchange Agent to deduct and withhold, from any cash in lieu of fractional shares of NYCB Common Stock, cash dividends or distributions payable pursuant to this Section 2.2 or any other amounts otherwise payable pursuant to this Agreement to any holder of Flagstar Common Stock, such amounts as it is required to deduct and withhold with respect to the making of such payment under the Code or any provision of state, local or foreign Tax law. To the extent that amounts are so withheld by NYCB or the Exchange Agent, as the case may be, and paid over to the appropriate Governmental Entity, the withheld amounts shall be treated for all purposes of this Agreement as having been paid to the holder of Flagstar Common Stock in respect of which the deduction and withholding was made by NYCB or the Exchange Agent, as the case may be.

(h) In the event any Old Certificate shall have been lost, stolen or destroyed, upon the making of an affidavit of that fact by the person claiming such Old Certificate to be lost, stolen or destroyed and, if required by NYCB or the Exchange Agent, the posting by such person of a bond in such amount as NYCB or the Exchange Agent may determine is reasonably necessary as indemnity against any claim that may be made against it with respect to such Old Certificate, the Exchange Agent will issue in exchange for such lost, stolen or destroyed Old Certificate the shares of NYCB Common Stock and any cash in lieu of fractional shares, and dividends or distributions, deliverable in respect thereof pursuant to this Agreement.

ARTICLE III

REPRESENTATIONS AND WARRANTIES OF FLAGSTAR

Except (a) as disclosed in the disclosure schedule delivered by Flagstar to NYCB concurrently with the execution and delivery of this Agreement (the "Flagstar Disclosure Schedule") (it being understood that (i) no such item is required to be set forth as an exception to a representation or warranty if its absence would not result in the related representation or warranty being deemed untrue or incorrect, (ii) the mere inclusion of an item in Flagstar Disclosure Schedule as an exception to a representation or warranty shall not be deemed an admission by Flagstar that such item represents a material exception or fact, event or circumstance or that such item would reasonably be expected to have a Material Adverse Effect, and (iii) any disclosures made with respect to a section of this Article III shall be deemed to qualify (A) any other section of this Article III specifically referenced or cross-referenced, and (B) other sections of this Article III to the extent it is reasonably apparent on its face (notwithstanding the absence of a specific cross-reference) from a reading of the disclosure that such disclosure applies to such other sections), or (b) as disclosed in any Flagstar Reports publicly filed with or furnished to the SEC by Flagstar since January 1, 2020 and prior to the date hereof (but disregarding risk factor disclosures contained under the heading "Risk Factors," or disclosures of risks set forth in any "forward-looking statements" disclaimer or any other statements that are similarly non-specific or cautionary, predictive or forward-looking in nature), Flagstar hereby represents and warrants to NYCB and Merger Sub as follows:

3.1 Corporate Organization.

(a) Flagstar is a corporation duly organized, validly existing and in good standing under the laws of the State of Michigan, and is a savings and loan holding company duly registered under the Home Owners' Loan Act. Flagstar has the corporate power and authority to own, lease or operate all of its properties and assets and to carry on its business as it is now being conducted in all material respects. Flagstar is duly qualified to do business and in good standing in each jurisdiction in which the nature of the business conducted by it or the character or location of the properties and assets owned, leased or operated by it makes such qualification or standing necessary, except where the failure to be so qualified or to be in good standing would not reasonably be expected to have, either individually or in the aggregate, a Material Adverse Effect on Flagstar. As used in this Agreement, the term "Material Adverse Effect" means, with respect to NYCB, Flagstar or the Surviving Entity, as the case may be, any effect, change, event, circumstance, condition, occurrence or development that, either individually or in the aggregate, has had or would reasonably be expected to have a material adverse effect on (i) the

A-7