**COVINGTON**

BEIJING  BOSTON  BRUSSELS  DUBAI  FRANKFURT
JOHANNESBURG  LONDON  LOS ANGELES  NEW YORK
PALO ALTO  SAN FRANCISCO  SEOUL  SHANGHAI  WASHINGTON

**Mark Gimbel**

Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
T  +1 212 841 1161
mgimbel@cov.com

**By CM/ECF**

May 28, 2025

Honorable Nina R. Morrison
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re:  *In re N.Y. Cmty. Bancorp, Inc. Sec. Litig.*, No. 1:24-cv-00903-NRM-JRC (E.D.N.Y.)

Dear Judge Morrison:

We represent Defendants Thomas R. Cangemi and Hanif W. Dahya and write to request a pre-motion conference on their anticipated motions to dismiss Plaintiffs' Amended Consolidated Class Action Complaint (the "Complaint") (ECF 69).  Messrs. Cangemi and Dahya join in and incorporate by reference the pre-motion conference letter filed by Defendant New York Community Bancorp, Inc. ("NYCB") (ECF 106) and write separately to address grounds for dismissal of particular relevance to them, while reserving their right to make additional arguments.

## I.      Background.[1]

Mr. Cangemi is the former President, Chief Executive Officer, and Chairman of the Board of Directors of NYCB. *See* ECF 69, ¶ 25.  Mr. Dahya is a former member of NYCB's Board of Directors, where he served on the Compensation, Audit, Nominating and Corporate Governance, and Risk Assessment Committees.  *See id.* ¶ 427.

Plaintiffs allege that NYCB and several individual defendants violated the securities laws in connection with statements made before, during, and after NYCB's acquisition of Flagstar Bancorp, Inc. ("Flagstar") and substantial assets of Signature Bridge Bank in 2022 and 2023. According to the Complaint, various Defendants including Mr. Cangemi violated Sections 10(b) and 20(a) of the Exchange Act of 1934 ("Exchange Act") and Rule 10b–5 by reassuring the market in the lead-up to and in the wake of these acquisitions that NYCB maintained a stellar commercial real estate portfolio and was ready for heightened regulatory scrutiny as a Category IV bank.  *See, e.g.*, *id.* ¶¶ 3–4, 25, 45, 72, 76, 78–79, 89, 129–30, 134, 226, 229, 233.  Plaintiffs also allege generally that Messrs. Cangemi and Dahya violated Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act") by reviewing, contributing to, and signing documents associated with the offering of NYCB common stock in exchange for Flagstar securities in connection with NYCB's acquisition of Flagstar (the "Offering Documents").  *See, e.g.*, *id.* ¶¶ 421, 427, 434–35.

---

[1] Messrs. Cangemi and Dahya assume the truth of Plaintiffs' allegations only for purposes of this letter and any motion to dismiss briefing and reserve the right to dispute any such allegations.

**COVINGTON**

May 28, 2025
Page 2

## II.    Plaintiffs Fail to Plead Exchange Act Claims Against Mr. Cangemi.

As explained in NYCB's pre-motion letter (ECF 106) and below, nowhere in the Complaint do Plaintiffs plead facts establishing that any Defendant — including Mr. Cangemi — either made a false statement or acted with scienter, as required to state an Exchange Act claim.

**A.    Failure to Plead Actionable Misrepresentation or Omission.**  To state a Section 10(b) claim, Plaintiffs must plead "with particularity" that Defendants made a material misrepresentation or omission.  *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 462 (2d Cir. 2019) (quoting 15 U.S.C. § 78u-4(b)(1)).  The Complaint fails to meet this basic pleading requirement.

*First*, the Complaint relies heavily on inactionable opinions.  To plead a claim based on an opinion, Plaintiffs must demonstrate that Defendants "did not hold the belief [they] professed" or "omit[ted] material facts about [their] inquiry into or knowledge concerning a statement of opinion" that "conflict with what a reasonable investor would take from the statement itself." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186–89 (2015).  Plaintiffs allege neither predicate for opinion liability, and their claims based on opinions must therefore be dismissed.  This includes, without limitation, Plaintiffs' allegations challenging:

- Mr. Cangemi's statement on the Q2 2022 earnings call that "we feel very confident" of obtaining regulatory approval for the Flagstar merger, Compl. ¶ 226;

- Mr. Cangemi's statements on the Q4 2022 earnings call that NYCB's "balance sheet should serve us well in the event of a downturn in the economy," *id.* ¶ 283; and

- Mr. Cangemi's statement in the Q4 2022 earnings call that, "in the event" of "maybe some [] credit deterioration, we think we're well protected as a sponsorship as well as overall value." *Id.* ¶ 285.

All of these statements are inactionable opinions and should be dismissed on that basis.  *See City of Omaha, Neb. Civilian Emps.' Ret. Sys. v. CBS Corp.*, 679 F.3d 64, 68 (2d Cir. 2012) (dismissal affirmed absent allegations defendants "did not believe in their statements of opinion").

*Second*, the Complaint relies on inactionable statements about corporate culture.  For example, Plaintiffs challenge Mr. Cangemi's statements on the Q1 2023 earnings call that "we're prepared to do what we have to do to manage a safe and sound organization," "risk management is our number one focus," and "we're prepared to make sure we have the highest standard." *Id.* ¶ 249.  None of these statements are actionable because Plaintiffs do not plead facts showing these statements were false or misleading.  And even if Plaintiffs could plead falsity, "general statements about reputation, integrity, and compliance with ethical norms are inactionable 'puffery.'" *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 183 (2d Cir. 2014).

*Third*, many of the alleged misrepresentations are mere expressions of corporate optimism. For example, Plaintiffs challenge Mr. Cangemi's statements that the Flagstar merger is a "powerful opportunity for two companies to come together," Compl. ¶ 23; and that "we've built a very strong risk management team" that is "up for the challenge and … open to the regulatory landscape changing." *Id.* ¶ 241; *see also id.* ¶¶ 76, 349.  It is black-letter law that such "expressions of puffery

**COVINGTON**

May 28, 2025
Page 3

and corporate optimism do not give rise to securities violations." *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004).

      **B.**      **Failure to Plead Scienter.**  To state a Section 10(b) claim, Plaintiffs must also adequately allege facts giving rise to a strong inference of scienter, which is "an intent to deceive, manipulate or defraud." *In re Shanda Games Sec. Litig.*, 128 F.4th 26, 51 (2d Cir. 2025) (citation omitted). "A plaintiff can establish [scienter] either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001) (internal quotation omitted). The Complaint fails to establish scienter.

      <u>Impermissible Group Pleading.</u>  Most of Plaintiffs' scienter allegations are facially defective because they are directed at groups of defendants, like the "Exchange Act Defendants" and the "Signer Defendants." These allegations fail because "[s]cienter must be separately pled and individually supportable as to each defendant; scienter is not amenable to group pleading." *C.D.T.S. v. UBS AG*, 2013 WL 6576031, at *6 (S.D.N.Y. Dec. 13, 2013).

      <u>Motive and Opportunity.</u>  To plead scienter based on motive and opportunity, Plaintiffs must allege that a defendant "benefitted in some concrete and personal way from the purported fraud." *Novak v. Kasaks*, 216 F.3d 300, 307–08 (2d Cir. 2000). Here, to the extent Plaintiffs allege that Mr. Cangemi had any motives, they allege only motives "possessed by virtually all corporate insiders," such as "the desire to maintain a high stock price in order to increase executive compensation," — generalized motives that do not suffice to plead scienter. *Id.; see, e.g.,* Compl. ¶ 372 (alleging that "a significant portion of Defendant[] Cangemi's . . . compensation was directly tied to [his] ability to maximize NYCB's 2022 and 2023 financial results").

      <u>Conscious Misbehavior or Recklessness.</u>  Plaintiffs also fail to plead facts demonstrating conscious misbehavior or recklessness by Mr. Cangemi. Plaintiffs' reliance on nine purported confidential witnesses ("CWs") fails because Plaintiffs do not and cannot allege that any of the CWs had "direct personal contact" with Mr. Cangemi, *Maloney v. Ollie's Bargain Outlet Holdings, Inc.*, 518 F. Supp. 3d 772, 780 (S.D.N.Y. 2021) — let alone that a CW conveyed any information contradicting Mr. Cangemi's challenged statements. Similarly, Plaintiffs allegations about access to information fail, because the Complaint does not "specifically identif[y] any reports or statements that would have come to light in a reasonable investigation and that would have demonstrated the falsity of the allegedly misleading statements." *Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex* Cap. Inc., 531 F.3d 190, 196 (2d Cir. 2008). Plaintiffs' additional allegations, including impermissible claims of fraud by hindsight and allegations of scienter "founded on nothing more than a defendant's corporate position[,] are entitled to no weight." *In re Rockwell Med., Inc. Sec. Litig.*, 2018 WL 1725553, at *14 (S.D.N.Y. Mar. 30, 2018) (alteration in original) (citation omitted); *see, e.g.*, Compl. ¶¶ 369–70.

**III.**      **Plaintiffs Fail to Plead Securities Act Claims Against Messrs. Cangemi and Dahya.**

      As explained in NYCB's pre-motion letter (ECF 106), Plaintiffs' Securities Act claims largely repackage the same statements challenged in their Exchange Act claim. *Compare, e.g.*,

**COVINGTON**

May 28, 2025
Page 4

Compl. ¶¶ 79, 341, *with id.* ¶ 471; *id.* ¶¶ 229–31, *with id.* ¶¶ 452–53; *id.* ¶ 236, *with id.* ¶ 455; *id.* ¶ 246, *with id.* ¶ 460. Where, as here, a plaintiff seeks to establish violations of the Securities Act by pleading a course of allegedly fraudulent conduct, the particularity requirements of Rule 9(b) apply. *See, e.g.*, *Rombach*, 355 F.3d at 171. Because Plaintiffs fail to allege with particularity any material misstatements and omissions in the Offering Documents, Plaintiffs' Section 11 and Section 12(a)(2) claims should also be dismissed.

## IV.    Plaintiffs Fail to Plead Control Person Liability.

Because the primary claims against Messrs. Cangemi and Dahya fail, the secondary liability claims under Section 20(a) of the Exchange Act and Section 15 of the Securities Act necessarily fail as well. *See id.* at 177–78 (affirming dismissal of control person claims where primary liability claims were dismissed). In addition, the claims must be dismissed for failure to adequately plead culpable participation and control over the challenged statements. *See, e.g., Levy v. Maggiore*, 48 F. Supp. 3d 428, 461 (E.D.N.Y. 2014) (culpable participation an essential element of a claim under Section 20(a)); *Behrendsen v. Yangtze River Port & Logistics Ltd.*, 2021 WL 2646353, at *16 (E.D.N.Y. June 28, 2021) ("It is not sufficient for a plaintiff to allege that an individual defendant had control person *status*; instead, the plaintiff must assert that the defendant exercised *actual* control over the matters at issue." (cleaned up)); *Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp., N.V.*, 941 F. Supp. 1369, 1378 (S.D.N.Y. 1996) ("A person's status as an officer, director, or shareholder, absent more, is not enough to trigger liability under § 20." (citation omitted)).

Respectfully,

*s/ Mark P. Gimbel*

Mark P. Gimbel

cc:    Counsel of Record (by ECF)