# EXHIBIT 1

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------x
                                          21-CV-6176(NRM)
JEFF M. OWEN,
                                          United States Courthouse
          Plaintiff,                      Brooklyn, New York

          - versus -                      April 26, 2023
                                          12:00 p.m.
RECONNAISSANCE ENERGY AFRICA
LTD. ET AL,

          Defendant.

------------------------------x

          TRANSCRIPT OF CIVIL CAUSE FOR ORAL ARGUMENT
            BEFORE THE HONORABLE NINA R. MORRISON
                UNITED STATES DISTRICT JUDGE


APPEARANCES

Attorney for Plaintiff:  GLANCY PRONGAY & MURRAY, LLP
                         1925 Century Park East, Suite 2100
                         Los Angeles, California 90067
                         BY:  GARTH AVERY SPENCER, ESQ.
                              EX KANO S. SAMS, II, ESQ.


Attorney for Defendant:  NEAL GERBER & EISENBER, LLP
                         2 N. LaSalle Street, Suite 1700
                         Chicago, Illinois 60602
                         BY:  KARL BARNICKOL, ESQ.
                              SCOTT FISHER, ESQ.

                         PRYOR CASHMAN LLP
                         7 TIMES SQUARE
                         Suite Level 40
                         New York, New York 10036
                         BY:  NICHOLAS GEORGE SAADY, ESQ.


Court Reporter:          SHERNELLE GRIFFITH
                         shernelle.griffith.edny@gmail.com

Proceedings recorded by mechanical stenography.  Transcript produced by computer-aided transcription.

*SHERNELLE GRIFFITH – Official Court Reporter*

claim at least at this stage of the litigation.  And if I don't, then it would fail.

MR. BARNICKOL:  That's fair.

THE COURT:  All right.  It's now 1:25.  Why don't we take a break for about 20 minute and come back at 1:45.  And we can go off the record just to talk about the logistics of that.

Thank you.

(Off the record.)

(A short recess was taken.)

THE COURTROOM DEPUTY:  All rise.

(Judge enters the courtroom)

THE COURT:  You all can be seated.

All right.  After reviewing the complaint, the parties' briefs, underlining authorities, and additional materials in the record, and hearing argument from both parties on the record, I'm going to deny the defendant's motion to dismiss in its entirety and we'll state a summary of my reasons on the record.

As all parties are aware, on the current rule 12(b)(6) and 9(b) posture, I must accept as true all factual allegations in the amended complaint and draw all reasonable inferences from those facts in the plaintiff's favor.  I also must, of course, find that the plaintiff's complaint satisfies the heightened pleading requirements of the Private Securities

Litigation Reform Act of 1995 and Rule 9(b) of the Federal Rules of Civil Procedure by stating the particularity of the circumstances constituting fraud.

For each of the claims that the defendant's have moved to dismiss, and applying the standards outlined above, I find that the defendants have not met their burden of proving that the allegations in this complaint do not state with particularity the circumstances constituting fraud. I'll begin with the material misrepresentation and omission of fact allegations and then move onto scienter and loss causation and finally the controlling persons claim.

First, the disputes primarily concern whether the plaintiff has alleged with particularity that there was material information the defendants had a duty to timely disclose, but failed to do so in violation of Section 10(b) of the Exchange Act and SEC rules 10(b-5(a) through (c). A defendant's duty to disclose may be violated where "secret information renders prior public statements materially misleading." That's from the Second Circuit's decision *In re Time Warner Inc. Sec. Litig., 9 F.3d 259, 268 (2d Cir. 1993)*. Here, the parties dispute whether the defendants had a duty to disclose first, certain information bearing on whether Namibia had ever allowed or would fracking;

Second, whether after September 2020 report in the -- that periodical called the Namibian came out, fracking

remained part of the defendants business plan. And if so, to what extent;

And third, certain aspects of the initial test well data regarding the potential viability of conventional oil and gas production.

I find, first, that the plaintiff has alleged that the defendants did not disclose that they had not actually applied for a license to conduct fracking in Namibia as of September 18, 2020, that the Namibian government had not granted fracking licenses before, and the plaintiff has sufficiently alleged materiality of those facts. At the complaint stage, of course, I may not dismiss an alleged omission on the grounds that it is not material unless that statement or omission is "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." That's from _Ganino v. Citizens Utilities Co., 228 F.3d 154, 162 (2d Cir. 2000)_. Having considered the alleged omissions in light of the defendants published statements, I find that the defendants have not their burden Ganino.

Further, under Second Circuit case law, a company may be required to disclose alternate approaches to its announced business goals, but "whether consideration of the alternate approach constitutes material information remains a question for the trier of fact." That's from _Time Warner, 9_

PROCEEDINGS                          62

*F.3d at 268.*  Here, I find that plaintiff has pled with particularity that after removing references to "unconventional resources" from their published statements after the September 2020 announcement, the defendants should have disclosed their plans to continue to explore a possibility of fracking.  Specifically, I find that the issue of whether the defendants were required to disclose these plans throughout the class period as material information about their alternate approaches to petroleum exploration is a question that's inappropriate for dismissal at this stage of the litigation.

While the defendants have argued that much of the information at issue was publicly available, concerned future facts, or was covered by risk disclosures, I find those questions to be highly fact-specific inquires that make dismissal inappropriate at this time and that plaintiff's allegations meet the pleading requirements of the PLSRA.

Likewise, with respect to the statements about test well data that defendant's made initially in April 2021, I find the plaintiff has sufficiently alleged that the defendants made material omissions when they failed to disclose key results of this data at that time.  I am aware as we discussed today, the defendant's vigorously dispute the plaintiff's claim that the mud logs and wireline logs in test wells undermined ReconAfrica's prospects for oil and gas

*SHERNELLE GRIFFITH - Official Court Reporter*

exploration or was otherwise material facts that needed to be reconciled with the defendants other statements at that time. But these arguments are appropriate for summary judgment or trial, after further development of the record. And at this stage of the case, the plaintiff has sufficiently pled that these are omitted facts that a reasonable investor would view as material.

Second, I find the plaintiff has pled a strong inference of scienter by both one alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. And in addition, by alleging facts to show that the defendants had both motive and opportunity to commit fraud. That is from, among other cases, *Set Cap. LLC v. Credit Suisse Grp. AG, 996 F.3d 64, 78 (2d Cir. 2021)*. As the U.S. Supreme Court instructed in *Tellabs, Inc. v. Makar Issues and Rights, Ltd.,* a court must holistically ask would, "a reasonable person deem the inference of scienter at least as strong as any opposing inference?" *551 U.S. 308, 326 (2007)*.

With respect to circumstantial evidence of conscious misbehavior or recklessness, I find that the complaint sufficiently pleads facts raising a strong inference that the defendants made conscious decisions not to disclose material information. The plaintiff plead with particularity in the complaint facts from which I believe the following inferences

can be withdrawn at this stage of the litigation:

One, that when the defendants announced that the test well data revealed a working conventional petroleum system in the Kavango basin, the defendants cherry-picked the data that they released at that time, and consciously did not disclose material information about the quality of their data from the test wells; in particular, that they failed to disclose data regarding a relative lack of topseal on the rock as well as the negative impact of water saturation on their prospects for oil and gas recovery, and I find that they have pled sufficiently that after ReconAfrica made that initial incomplete announcement, its stock price surged.

Second, that the defendants early on projected a 90 percent chance of regulatory approval to mine the unconventional resources without any reliable basis to believe that Namibia would allow them to explorer or conduct fracking. On this point, I recognize that as the defendants asserted today, that even though they have argued that this statement related only to permission to drill test wells, not to fracking, I must accept as true what I find to be a well pled allegation by the plaintiff that this statement was intended to refer to regulatory approval of fracking.

Third, plaintiff has alleged that after the Namibian government issued a September 2020 press release disavowing any intent to allow ReconAfrica or any other entity to

fracking, the defendants removed all references to unconventional resources from their published statements. But the complaint plausibly alleges that fracking remained a key part of the defendants business plan even without any viable prospects to do so. And further alleges that the defendants mislead the public by privately relying on what they believed were political connections that could be leveraged within the Namibia by their so-called media consultant to get the Namibian government to change its position, a person they hired in the immediate wake of the government's announcement in September 2020, and whose relationship to the company, defendants initially denied before later acknowledging it existed.

I do note that the defendants have raised various challenges to the reliability or significance of the specific facts I've cited above, to which the plaintiff's seek to approve their claims. Defendants argue, for example, that Viceroy was a short seller and had no access to nonpublic information, and that Viceroy reports allegedly exposing flaws in the defendants business plan based on test well data were bias and unreliable. But on this record and under the applicable case law on reports by short sellers, I find that these arguments are fact-intensive ones that certainly do not render the plaintiff's allegations implausible on their face. The defendants challenges are appropriately reserved until

PROCEEDINGS 66

after the record has been fully developed, and do not entitle them to an order of dismissal at this stage.

I also find that the plaintiff stated with particularity allegations that the defendants have acted or -- excuse me. Did act with a required motive and opportunity to support a strong inference of scienter. Among these are allegations that the company itself made a $41 million Canadian dollar public offering of stock in May 2021, doubling the amount previously raised, that its CEO, Defendant Evans, sold 29 percent of his stock after holding it for just 18 months; that its CFO, Defendant Carlos Escribano, sold 43 percent of his stock two weeks prior to the substantial declines in stock price that began on August 5, 2021; and that other non-director insiders had suspiciously timed exercise of their stock options followed by immediate sales of large quantities of their holdings, just prior to the time when the defendants released additional test well data in August 2021.

The plaintiff has also alleged that the defendants had at least two suspiciously timed resignations of board members one year or less after they joined the company, including one who resigned just two weeks before the defendant's April 15, 2021, press release claiming active petroleum system. While the defendants are, of course, free to develop and present evidence as the litigation progresses, that there were other factors which promoted these

resignations, retirements, and stock trades, at this stage of the litigation, these well-pled facts, raise a strong inference of scienter that is at least as strong as any opposing inference.

Third, I find that the plaintiff has adequately pled loss causation. A plaintiff generally does so when he or she alleges that the shares price "fell significantly after the truth became known through an expressed, corrective disclosure or through events constructively disclosing the fraud like the materialization of the risk concealed." *Abramson v. Newlink Genetics Corp., 965 F.3d 165, 179 (2d Cir. 2020)*. The Second Circuit has deemed this a fact-based inquiry.

Here I find that the plaintiff have plead with particularity that the defendants were effectively forced to disclose additional test well data in August 2021, following the initial Viceroy reports, and that significant stock price -- excuse me. Significant declines in stock price, which resulted from those disclosure. For example, the plaintiff has pled that on August 5, 2021, ReconAfrica belatedly published additional data from its first test well, after which its stock prices declined from 29.1 percent in the ensuing four days. After further Viceroy reports in August 2021, analyzing that data, the stock price declined by an additional 19.9 percent.

Even though the defendants have pointed out that the

stock price continued to decline in the coming weeks and months, the timing and nature of these initial decreases are clearly significant enough to survive a motion to dismiss on the issue of loss causation.

Finally, I find insufficient grounds to dismiss plaintiff's claim for a violation of Section 20(a) of the Exchange Act against the individual defendants. If the plaintiff shows, "a primary violation by the controlled person;

Second, control of the primary violator by the defendant;

And third, that the defendant was in some meaningful sense a culpable participant in the controlled person's fraud."

I must find that the elements have been met for a prima facie case of control person liability. That's from, among other cases, *ATSI Commc'ns. Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 108 (2d Cir. 2007)*.

As we discussed today at oral argument, this aspect of the defendants motion to dismiss rest solely on their claim that the plaintiff failed to plead the first element of this test, namely, a primary violation under Section 10(b), because I have found that the amended complaint did adequately plead a primary violation of 10(b), this claim fails.

Thus, for the reasons above, I find that the

PROCEEDINGS                                    69

plaintiff has plausibly alleged with particularity allegations

of material misrepresentation or omission, scienter, loss

causation, and control person liability.  The defendants

motion to dismiss the amended complaint is therefore denied.

All right.  That concludes everything I have on the

motion to dismiss under my individual rules and procedure.

The next step would be for you all to schedule a conference

with the Magistrate Judge to discuss discovery plan.  Of

course, you are free at any time to let the Magistrate Judge

know if you believe it would be fruitful to engage in

mediation or settle discussions either prior to or

contemporaneous with conferral or conference over any

discovery plan, but I will leave that to your own judgment and

experience at this stage.

All right.  Anything else either party wishes to

address with me while you have me today?

MR. BARNICKOL:  Your Honor, I think we should also

get an answer date established.  I can do that by --

THE WITNESS:  Yes.

MR. BARNICKOL:  -- with agreement with the

plaintiff's counsel or we can do it by court order.  It

doesn't matter.

THE COURT:  That is correct.  Why don't you confer

and let me know what's agreeable.  I rather let you do it and

set a schedule if you can't agree, you are free to come to me.

PROCEEDINGS                    70

And at that point, I will leave you to Judge Levy.

Anything else from plaintiff's counsel?

MR. SPENCER:  Nothing further from plaintiff.

Thank you, your Honor.

THE COURT:  Thank you very much.

MR. BARNICKOL:  Thank you.

Sincerely, your Honor, thank you for giving us the time.

THE COURT:  Thank you very much.  Take care.

*     *     *     *     *

(Proceedings adjourned at this time.)

(Whereupon, the matter was concluded.)

*     *     *     *     *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

s/ Shernelle Griffith                May 16, 2023

SHERNELLE GRIFFITH              DATE